UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
——————————————————————————

KAREEM RASHAWN YOUNG,

                         Plaintiff,

                                                    6:18-cv-00135
v.                                                  (DNH/TWD)

COMMISSIONER OF INTERNAL REVENUE,

                         Defendant.
——————————————————————————

APPEARANCES:

Kareem Rashawn Young
Plaintiff, *pro se*
04-B-2504
Watertown Correctional Facility
PO Box 168
Watertown, NY 13601


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge


**<u>ORDER AND REPORT-RECOMMENDATION</u>**

On February 1, 2018, Plaintiff Kareem Rashawn Young commenced this action pursuant

to 26 U.S.C. § 7422 by filing a *pro se* complaint, together with an application for leave to

proceed *in forma pauperis* ("IFP application") and a motion for appointment of counsel.  (Dkt.

Nos. 1, 2, 3.)  Plaintiff's initial IFP application was denied as incomplete and the case was

administratively closed on July 11, 2018.  (Dkt. No. 5.)  Plaintiff thereafter filed a change of

address and submitted a complete IFP application, along with the requisite inmate authorization

form, and the case was reopened.  (Dkt. Nos. 6, 7, 8.)  For the reasons that follow, the Court

grants Plaintiff's second IFP application but recommends that this matter be *sua sponte* dismissed for lack of subject matter jurisdiction.

## I.      IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).  As to Plaintiff's second IFP application (Dkt. No. 7), the Court finds that Plaintiff has demonstrated the requisite economic need and has filed the inmate authorization form required in the Northern District to proceed with this matter *in forma pauperis*.  Therefore, Plaintiff's second IFP application (Dkt. No. 7) is granted.

## II.     INITIAL SCREENING

Having found that Plaintiff meets the financial criteria for commencing this case *in forma pauperis* and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. §1915A.

Section 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

Similarly, under § 1915A a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief can be granted; or . . . seeks monetary relief against a person who is immune from such relief." 28 U.S.C. § 1915A(a),(b)(1)-(2).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all

of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

## III.    BACKGROUND

Plaintiff filed his verified complaint on February 1, 2018. (Dkt. No. 1.[1]) On December 31, 2013, Plaintiff filed his 1040 tax return for 2013. (Dkt. No. 1 at 1.[2]) On or about May 26, 2014, Plaintiff received an adjusted refund letter issued by the U.S. Department of Treasury Internal Revenue Service ("IRS") that calculated his refund for tax year 2013 as $3,742,132.25. (Dkt. No. 1-1 at 2 [listing total payments as $6,125,000.00 and tax owed as $2,382,868.75—a difference of $3,742,132.25].) Plaintiff claims the May 26, 2014, tax return notice "was corrected from all errors made in the 1040 tax form." (Dkt. No. 1 at 1.) The May 26, 2014, tax

---

[1]  Plaintiff attaches several exhibits to the complaint: (1) May 26, 2014, tax notice (Exhibit 1); (2) August 7, 2014, letter from U.S. Representative Richard Hanna (Exhibit 2); (3) December 19, 2016, letter from Hinman, Howard & Kattell, LLP ("HHK") (Exhibit 3); (4) January 9, 2017, letter of inquiry sent to IRS by HHK (Exhibit 4); (5) documents filed in U.S. Tax Court, Dkt. No. 22937-17 (Exhibits 5-9, 11-12); and (6) December 18, 2017, letter from the Hofstra Law Federal Tax Clinic (Exhibit 10). (*See* Dkt. No. 1-1.)

[2]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

notice stated Plaintiff would receive his adjusted refund in the amount of $3,742,132.25 within four to six weeks. (Dkt. No. 1 at 1; Dkt. No. 1-1 at 2.)

Over the course of the next several years, Plaintiff unsuccessfully tried to secure payment of his 2013 adjusted tax return as set forth in the May 26, 2014, tax notice. (*See generally* Dkt. No. 1-1.) In 2014, he contacted U.S. Representative Richard Hanna. *See id.* at 6. In 2016 and 2017, a private law firm made several inquiries on Plaintiff's behalf regarding the status of the 2013 adjusted tax refund as set forth in the May 26, 2014, tax notice. *See id.* at 8, 10. On November 3, 2017, Plaintiff filed a *pro se* petition in the U.S. Tax Court, captioned *Young v. Commissioner of Internal Revenue*, Dkt. No. 22937-17, seeking a refund in the amount of $3,742,132.25, as determined in the May 26, 2014, tax notice. *See id.* at 12-18. In December 2017, Plaintiff contacted the Federal Tax Clinic at Hofstra Law. *See id.* at 31.[3] Subsequently, by Order entered January 17, 2018, the U.S. Tax Court dismissed Plaintiff's petition for lack of jurisdiction. *Id.* at 35-36.

On February 1, 2018, Plaintiff commenced this action. (Dkt. No. 1.) To date, Plaintiff has not received the refund of $3,742,132.00, as determined in the May 26, 2014, tax notice. *Id.* at 1. Plaintiff claims Defendant has "not given no significant reason by law for withholding the due refund." *Id.* Plaintiff avers he has exhausted all of his administrative remedies. *Id.* Plaintiff seeks permission to file a motion for judgment as a matter of law based on the following "undisputed" facts:

    1. The 1040 tax form that was filed December 31, 2013.

---

[3] By letter dated December 18, 2017, the Hofstra Federal Tax Clinic responded to Plaintiff's inquiry and advised, *inter alia*, "[i]f you are merely trying to 'get back' taxes that you already paid in error, the proper course of action would be to file a refund action in federal District Court. Our clinic does not handle refund suits." (Dkt. No. 1-1 at 31.)

2. The May 26, 2014, tax return notice that was corrected from all errors made in the 1040 tax form.

3. The Adjusted Refund that was made in the May 26, 2014, tax notice that concern the tax return in question.

4. The agreement or contract that concern the tax return in dispute.

5. The IRS records which reveal that there is no Notice of Deficiency, Notice of Determination, or any other notice issue by the IRS that would confer jurisdiction upon the United States Tax Court under Docket No. 22937-17.

*Id*. at 1-2.

## IV.    SUBJECT MATTER JURISDICTION

Federal courts are courts of limited jurisdiction and may not preside over cases absent subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552 (2005). "[S]ubject matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). When a court lacks subject matter jurisdiction, dismissal of the complaint is mandatory. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Federal courts "have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." *Id*. Pursuant to 28 U.S.C. § 1346(a)(1), federal district courts have original jurisdiction, concurrent with the United States Claims Court, over actions for the alleged overpayment of federal taxes.

### A.    The United States is the Proper Defendant

Although Congress has broadly consented to suits seeking a refund of taxes allegedly erroneously assessed or collected against the United States in district courts, *United States v. Forma*, 42 F.3d 759, 763 (2d Cir. 1994), the IRS "is immune from civil actions seeking tax

refunds." *Williams v. U.S. Dep't of Treasury I.R.S.*, No. 07-CV-212C, 2013 WL 7121192, at *3 (W.D.N.Y. Jan. 29, 2013)[4]; *see also Gavigan v. Comm'r,* No. 3:06-CV-942 (PCD), 2007 WL 1238651, at *4 (D. Conn. Apr. 27, 2007) ("The IRS itself is an improper party to this action because Congress has not authorized suits in federal courts against the Department of Treasury."); *Roberts v. I.R.S.*, 297 F. App'x 63, 65 (2d Cir. 2008) (explaining the IRS, including IRS employees acting in their official capacities, "are immune from suit under the doctrine of sovereign immunity"); *see also Blackmar v. Guerre*, 342 U.S. 512, 515 (1952) (holding that Congress must give express authorization for an agency to be sued in its own name).

For purposes of this initial review, the Court will construe Plaintiff's complaint as against the United States, thus allowing consideration of Plaintiff's claim. *See Williams*, 2013 WL 7121192, at *3 ("When, as in the instant action, the [IRS] has been sued for refund, the United States has been substituted for the [IRS] as the defendant.") (collecting cases); *see also* 26 U.S.C. § 422(f)(2) providing that where a suit for recovery of an internal revenue tax is improperly brought against an officer or employee of the United States, "the court shall order, upon such terms as are just, that the pleadings be amended to substitute the United States as a party for such officer or employee as of the time such action commenced").

### B.    Action for Refund against the United States

It is well established that under the doctrine of sovereign immunity, no person may sue the federal government absent its consent to be sued. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). In consenting to be sued, the government may establish terms of its consent. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). "If such terms are not met, a court does not have

---

[4] Plaintiff will be provided with copies of unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

jurisdiction over the suit—or specific claims therein—and it must be dismissed." *Silipigno v. United States*, No. 1:15-CV-0017 (LEK/CFH), 2017 WL 2973967, at *4 (N.D.N.Y. July 12, 2017) (citing *Meyer*, 510 U.S. at 475 (1994)). The taxpayer bears the burden of demonstrating compliance with the statutory procedural requirements. *Magnone v. United States*, 733 F. Supp. 613, 618-19 (S.D.N.Y. 1989).

"[W]hile the United States has provided for suits against the Government to recover taxes alleged to have been overpaid or wrongfully assessed and collected, it has also developed a series of procedural hurdles that taxpayers must surmount in order to maintain such suits." *Forma*, 42 F.3d at 763. To bring a refund suit, a taxpayer must have first filed a "claim for refund or credit . . . with the [IRS]." 26 U.S.C. § 7422(a). Section 1346 has also been interpreted to require the payment of the contested tax before the filing of any recovery action. *See Flora v. United States*, 357 U.S. 63 (1958). Thus, without making a claim for refund and paying the amount assessed, a plaintiff cannot establish the government's waiver of sovereign immunity, and the district court is without jurisdiction to hear the matter. *See United States v. Dalm*, 494 U.S. 596 (1990); *Magnone v. United States*, 902 F.2d 192, 193 (2d Cir. 1990) ("[T]he full payment rule requires as a prerequisite for federal court jurisdiction over a tax refund suit, that the taxpayer make a full payment of the assessment, including penalties and interest."); *see also Smith v. Shulman*, 333 F. App'x 607, 608 (2d Cir. 2009) ("With respect to a claim for refund of income tax paid, [the plaintiff] was statutorily required to file an administrative claim and pay the tax in full prior to filing suit in the district court."); *see also Follum v. United States*, No. 98-CV-0126A, 1999 WL 250746, at *3 (W.D.N.Y. Mar. 5, 1999) ("Under 26 U.S.C. § 7422(a), plaintiff may bring a refund action in district court only after paying his tax liability in full and filing a claim for refund with the IRS.").

To be timely, "[a] plaintiff suing in federal court for a tax refund must establish that he or she has filed a proper and timely administrative claim with the IRS, *see* 26 U.S.C. § 7422(a), received a final notice of denial from the IRS or failed to receive a decision on the claim within six months of its filing, *see id.* § 6532(a), and brought suit in federal court within two years of receiving notice from the IRS that it denied the refund, *see id.*" *Clavizzao v. United States*, 706 F. Supp. 2d 342, 348 (S.D.N.Y. 2009).

Liberally construed, Plaintiff seeks a refund for the 2013 tax year.  (See generally Dkt. No. 1.)  However, neither the allegations in the complaint nor the attached exhibits give any indication that Plaintiff actually *paid* the $6,125,000.00 tax he is seeking to contest, a jurisdictional prerequisite to a refund suit.  *See, e.g.*, *Williams*, 2013 WL 7121192, at *3 ("A taxpayer's ability to prosecute a refund action against the United States in federal district court is subject to the jurisdictional prerequisites that []he have first paid the tax at issue and timely filed a valid refund claim with the IRS."); *see also Metcalf v. I.R.S.*, No. 12-CV-2239 (ARR)(LB), 2012 WL 2357761, at *3 (E.D.N.Y. June 19, 2012) ("Without compliance with [26 U.S.C. §] 7422(a), this Court is without subject matter jurisdiction over plaintiff's complaint.").  While Plaintiff has attached the May 26, 2014, tax notice suggesting that in tax year 2013 he made payments in the amount of $6,125,000.00, the Court takes judicial notice that Plaintiff has been indicted under 18 U.S.C. § 287 for filing a false claim against the United States for payment of a refund of taxes in the amount of $6,125,000.00 on or about February 24, 2014.  *See United States v. Young*, No. 3:18-CR-124 (TJM).[5]

---

[5]  Court documents are public records of which the Court can take judicial notice.  *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("Courts routinely take judicial notice of documents filed in other courts[.]"); *Global Network Commc'ns v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of

Where, as here, a plaintiff does not show or allege that they actually *paid* the tax and a claim was timely filed and denied by the IRS, the district court lacks subject matter jurisdiction over any claim against the United States for a refund of taxes.  *See, e.g.*, *Williams*, 2013 WL 7121192, at *5 (*sua sponte* dismissing plaintiff's complaint for lack of subject matter jurisdiction over any claim for refund against the United States); *Metcalf*, 2012 WL 2357761, at *3 (same).

Because a taxpayer's failure to comply with a prerequisite to commencing suit in a federal court is a jurisdictional defect that cannot be waived, *see Deyo v. I.R.S.*, 134 F. App'x 475, 476 (2d Cir. 2005), the Court recommends dismissing the complaint.  *Williams*, 2013 WL 7121192, at *5 ("Inasmuch as the timely filing of a refund claim is a jurisdictional prerequisite of a refund suit, plaintiff's failure to explicitly show or allege that she filed such a claim and that such claim has been denied by the IRS, and the date of such denial, deprives this Court of subject matter jurisdiction over any claim for refund against the United States.") (internal citation omitted)); *see, e.g.*, *Johnson v. I.R.S.*, No. 3:18-cv-278 (VAB)(WIG), 2018 WL 1750469, at *1 (D. Conn. Feb. 26, 2018) (*sua sponte* dismissing refund action for lack of subject matter jurisdiction when the plaintiff did not comply with the jurisdictional prerequisites); *Dubay v. I.R.S.*, No. 3:96CV1399 AHN, 1997 WL 76577, at *3 (D. Conn. Feb. 7, 1997) (*sua sponte* dismissing a refund action for lack of subject matter jurisdiction when the plaintiff did not

---

such litigation and related filings.") (citation and internal quotation marks omitted); *see, e.g.*, *Blount v. Moccia*, No. 1:16-cv-4505-GHW, 2017 WL 5634680, at *2 n.5 (S.D.N.Y. Nov. 21, 2017) (taking judicial notice of indictment but expressing no opinion as to the innocence or guilty of those indicted); *Bond v. City of New York*, No. 14-cv-2431, 2015 WL 5719706, at *2 (E.D.N.Y. Sept. 28, 2015) (taking judicial notice of "fact of the grand jury indictment"); *Obilo v. City Univ. of N.Y.*, No. 10-cv-5118, 2003 WL 1809471, at *4-5 (E.D.N.Y. Feb. 28, 2003) (noting that it is "well established" that a court may take judicial notice of a grand jury indictment).  In taking judicial notice of the indictment, the Court expresses no opinion as to the innocence or guilt of the indicted party.

"fulfill the applicable preconditions").  Accordingly, the Court recommends dismissing the complaint for lack of subject matter jurisdiction.[6]

### C.      Leave to Amend

Although the Court finds it does not have subject matter jurisdiction over the complaint as currently presented, in light of this Court's duty to liberally construe *pro se* complaints, the Court recommends Plaintiff be granted thirty (30) days from the date the District Court files its Order on this Court's Report-Recommendation within which to file an amended complaint naming the United States as the proper defendant and which provides a basis for this Court's subject matter jurisdiction.  Any amended complaint must be a complete pleading that supersedes the original complaint in all respects and does not incorporate by reference any portion of the original complaint.  Plaintiff may attach copies of any documents filed with the IRS or correspondence from the IRS in support of his amended complaint.

In so recommending, the Court takes no position at this time on the merits of any such amended complaint.  If Plaintiff fails to submit a timely filed amended complaint, the Court recommends *sua sponte* dismissing the complaint without prejudice for lack of subject matter jurisdiction upon expiration of the thirty (30) days.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's second IFP application (Dkt. No. 7) is **GRANTED solely for purposes of initial review**; and it is further

---

[6]  Without subject matter jurisdiction, this Court has no power to address Plaintiff's motion for appointment of counsel.  (Dkt. No. 3.)

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be *sua sponte* **DISMISSED**

**for lack of subject matter jurisdiction without prejudice and with leave to amend** as set

forth above; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-

Recommendation, along with copies of all unpublished decisions cited herein in accordance with

*Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1)

(Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: October 4, 2018
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[7]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2013 WL 7121192, 112 A.F.T.R.2d 2013-7286

2013 WL 7121192
United States District Court,
W.D. New York.

Theresa WILLIAMS, Plaintiff,

v.

U.S. DEPARTMENT OF TREASURY*INTERNAL
REVENUE SERVICE, T. Rowe Price,
Entergy Services, Inc., Defendants.

No. 07–CV–212C.
|
Jan. 29, 2013.

**Attorneys and Law Firms**

Theresa Williams, Buffalo, NY, pro se.

**DECISION AND ORDER**

CHARLES J. SIRAGUSA, District Judge.

**INTRODUCTION**

**\*1** On March 30, 2011, this Court ordered, *inter alia*,
that *pro se* plaintiff's motions to file a third amended
complaint and to file supporting exhibits under seal
be granted. (Docket No. 23). [1] The Court accordingly
directed that plaintiff's proposed amended complaint
be filed as her "Third Amended Complaint" and that
plaintiff's supporting exhibits 1–3 be filed under seal in
accordance with W.D.N.Y. Loc. R. Civ. P. 5.4(b). (*Id.,
see also* Docket No. 24 (Third Amended Complaint) and
Docket No. 25 (Sealed Document). The March 30, 2011
Order noted that the third amended complaint would
be reviewed pursuant to 28 U.S.C. § 1915(e)(2)(B). For
the reasons set forth below, the Court determines that
plaintiff's claims must be dismissed.

[1]    Plaintiff commenced this action with a complaint
       filed on March 30, 2007 (Docket No. 1) and naming
       the "Internal Revenue Department" as the sole
       defendant. Shortly thereafter, she moved to stay the
       action. (Docket No. 3). By Order dated July 30,
       2007, the Court granted the request for a stay, and
       directed plaintiff to make appropriate application
       to the Court by October 15, 2007. (Docket No. 5).
       Plaintiff then moved to lift the stay and on May 30,

2008 filed an amended complaint which added as
defendants Entergy Services, Inc. and T. Rowe Price.
(Docket Nos. 6 and 7). By Order dated September
24, 2008, the Court granted plaintiff's motion to lift
the stay, and upon review of the amended complaint,
determined that the claims asserted therein would
be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)
unless plaintiff filed a further amended complaint as
directed in the Order by October 24, 2008. (Docket
No. 8). Thereafter, following the granting of several
requests for an extension of time (Docket Nos. 10, 12),
plaintiff filed a second amended complaint (Docket
No. 13) and a motion for leave to file supporting
exhibits under seal (Docket No. 14). Prior to the
Court's review of the second amended complaint,
plaintiff filed a motion requesting that the action
again be stayed pending the completion of certain
audits or investigative reports by several federal and
state agencies which plaintiff believed relevant to the
instant action. (Docket No. 15). Plaintiff's application
for a stay was granted, subject to the requirement that
she timely make application to lift the stay and explain
why it should be continued or withdraw the action,
and her motion to file exhibits under seal was ordered
to be held in abeyance until such time as the Court
either lifted the stay or dismissed the action. (Docket
No. 16). Thereafter, plaintiff filed, *inter alia*, a motion
to file a further amended complaint. (Docket No. 22).
By Order dated March 29, 2011, the Court (Hon.
Michael A. Telesca) granted plaintiff's motion to file
a further (third) amended complaint and directed that
the exhibits previously filed by plaintiff in support
of her second amended complaint be filed under seal
inasmuch as they appeared to be relevant to the
allegations set forth in the third amended complaint.
(Docket No. 23)

**STANDARD OF REVIEW**

Section 1915(e) (2)(B) of 28 U.S.C. provides that the Court
shall dismiss a case in which *in forma pauperis* status
has been granted if, at any time, the Court determines
that the action (i) is frivolous or malicious; (ii) fails to
state a claim upon which relief may be granted; or (iii)
seeks monetary relief against a defendant who is immune
from such relief. Section 1915 "provide[s] an efficient
means by which a court can screen for and dismiss legally
insufficient claims." *Abbas v. Dixon,* 480 F.3d 636, 639 (2d
Cir.2007) (citing *Shakur v. Selsky,* 391 F.3d 106, 112 (2d
Cir.2004)).

In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiffs favor. *See Larkin v. Savage,* 318 F.3d 138, 139 (2d Cir.2003) (per curiam); *King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999). Moreover, "a court is obliged to construe [*pro se* ] pleadings liberally" *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004); *and see Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998). "The policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.' " *Abbas,* 480 F.3d at 639 (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983)). "A document filed *pro se* is to be liberally construed, ..., and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson,* 551 U.S. at 94 (internal quotation marks and citations omitted).

Nevertheless, even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon,* 360 F.3d 73 (2d Cir.2004). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although a complaint need not include "detailed factual allegations," it must do more than put forth "labels and conclusions." *Id.* at 555. A claim will be considered "plausible on its face ... when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

**\*2** Moreover, even assuming that a complaint satisfies the liberal pleading standards applicable to a *pro se* plaintiff, a claim must be dismissed if it is one over which the Court lacks subject-matter jurisdiction. It is well established that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3); *see Natl. Comm. to Pres. Soc. Sec. & Medicare v. Philip Morris USA Inc.,* 395 Fed. Appx. 772, 774 (2d Cir.2010) (summary order); *Brow v. Gov't of the United States V.I.,* 2012 U.S. Dist. LEXIS 169223, at \*4 (E.D.N.Y.2012) (The court is duty bound to ascertain that it ha[s] jurisdiction before it may adjudicate the merits of a claim. Accordingly, it may dismiss an action

for lack of subject matter jurisdiction on motion or *sua sponte." )* (internal quoation and ciitations omitted).

### *DISCUSSION*

The third amended complaint restates plaintiff's claims that defendants Entergy Services, Inc. ("Entergy") and T. Rowe Price incorrectly reported to defendant Internal Revenue Service (IRS) certain distributions made to or on behalf on plaintiff for the years 2002 and 2004–2007, as a result of which the IRS incorrectly assessed additional taxes and penalties on plaintiff for the years in question. The sealed exhibits (Docket No. 25) include correspondence between plaintiff and defendant Entergy which plaintiff believes spells out the errors made by defendants Entergy and T. Rowe Price in reporting the distributions in question. Plaintiff asserts, as the jurisdictional bases for her claims against the defendants, Title 26 of the United States Code (Internal Revenue Code) and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

A. *Claims against the Internal Revenue Service* [2]

[2]    The third amended complaint designates the "U.S. Department of the Treasury\*Internal Revenue Service" as defendant. For the reasons explained *infra,* the Court is substituting the United States as a defendant in place of the IRS.

Plaintiff maintains that the improper "coding" on forms 1099 of certain distributions made to or on behalf of plaintiff defendants Entergy and T. Rowe Price caused the IRS to improperly treat such payments as taxable income and to issue tax assessments and penalties against plaintiff for the years in question. [3] Plaintiff seeks abatement or refund by the IRS. of those assessments.

[3]    The basis of plaintiff's claims that the payments or distributions made to her or on her behalf by defendants Entergy and T. Rowe Price were improperly coded on the forms 1099 issued by them are explained in *infra* in connection with the Court's review of her claims against those defendants.

This Court's jurisdiction over federal tax disputes was spelled out in its decision dated September 24, 2008 ("September 24 Order"), familiarity with which is assumed (Docket No. 8). The September 24, 2008 Order

noted, *inter alia,* in this regard that the United States Tax Court has exclusive jurisdiction to review IRS tax deficiency assessments; that this court has jurisdiction to review challenges to certain penalties imposed by the IRS, but lacks jurisdiction to address other penalties or claims for the abatement of interest imposed by the IRS for tax deficiencies, as such claims are the exclusive province of the Tax Court; and that while federal district courts have jurisdiction over a tax refund suits, such a suit must be preceded by a timely filed claim for refund with the IRS. (Docket No. 8, at 9–12). The September 24 Order noted that it was "difficult to ascertain, from the barebones allegations of the complaint, the precise nature of the tax claim or claims plaintiff is attempting to assert, *i.e.,* whether she is seeking to challenge the *assessment* of additional taxes, penalties and interest that were imposed upon her for the years 2002–2006, or whether she is instead asserting *refund claims* for amounts which she believes that the IRS erroneously forced her to pay." In this regard, the September 24 Order discussed and contrasted the jurisdiction of both this court and the United States Tax Court with respect to taxpayer claims arising from, e.g., assessments of tax and penalties, claims for refund of taxes paid and the imposition of interest on unpaid taxes. The Court then concluded that while it appeared doubtful, based upon the allegations of plaintiff's first amended complaint, that it had jurisdiction over plaintiff's tax claims, it would nevertheless afford plaintiff the opportunity to further amend her claims given plaintiff's *pro se* status, and the complexity of the statutes governing tax assessments, penalties and refund claims. The Court advised, in this regard, that in stating her claims against the IRS, plaintiff should "should clearly indicate whether she is seeking to contest an assessment or assessments of tax and penalties by the IRS, or to claim refunds of federal income taxes that she has paid. In addition, she should attach to her further amended complaint copies of notices of deficiency and other documents from the IRS that indicate the additional taxes and penalties that the defendant has assessed or otherwise claimed to be owing."

**\*3** As set forth in her third amended complaint, plaintiff's Statement of Claim against the IRS states:

> On 11/1/2004, defendant Internal Revenue Service issued a letter of stating Individual Tax assessments. Income was reported/recorded incorrectly. Tax calculation summary was incorrect.

> Therefore, all I.R.C. (Internal Revenue Codes) are not correct. Please note that the tax years for 2005, 2006 & 2007 remain coded incorrectly and therefore have added a 10% penalty to the taxpayer incorrectly. The federal basis for this claim is under Title 26 and Title 29. Plaintiff, seeks refund and applicable damages under the law. Note form # 843 and form # 5329 is pending a review in addition, the request for audit on the employer/sponsor, Entergy, Inc.

(Docket No. 24 at 6 ["First Claim"] ).

Plaintiff's allegations are not sufficient to allow her tax claims to proceed. As explained in the September 24 Order, this Court does not have jurisdiction over lawsuits seeking to challenge assessments of tax deficiency by the IRS; 26 U.S.C. § 6330(d) vests exclusive jurisdiction over determinations by the IRS assessing a tax deficiency with the United States Tax Court. *See* discussion, Docket No. 8 at pp. 10–11; *see also, Follum v. United States,* 1999 U.S. Dist. LEXIS 4036, at * 6 (W.D.N.Y. March 5, 1999) ("Plaintiff ... is attempting to challenge the underlying merits of the tax assessments made against him for the tax years 1990, 1991, 1992 and 1993. Generally, however, tax assessments may only be contested in the United States Tax Court or, *upon payment of the assessment,* in a refund action in federal district court or the Court of Claims.") (emphasis added) (citing *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962)). Therefore, to the extent that plaintiff's claim against the IRS is premised upon her allegation, quoted above, that defendant issued incorrect assessments of tax against her, this Court lacks subject matter jurisdiction.

This Court does, as explained in the September 24 Order, have jurisdiction over *refund* claims by plaintiff. (Docket No. 8, at 12). Pursuant to 28 U.S.C. § 1346(a)(1), District Courts have jurisdiction over actions for the recovery of taxes alleged to have been erroneously or illegally assessed or collected. The IRS itself is immune from civil actions seeking tax refunds. *Allison v. Internal Revenue Service,* 2012 U.S. Dist. LEXIS 45257, at *n. 1 (D.Conn.2012) (citing *Murphy v. IRS,* 493 F.3d 170, 173 (D.C.Circuit)). However, Congress has broadly consented to suits against the United States for the refund of any federal taxes.

2013 WL 7121192, 112 A.F.T.R.2d 2013-7286

28 U.S.C. § 1346(a)(1); *see Murphy,* 493 F.3d at 173 (waiver of immunity from tax refund actions under 28 U.S.C. § 1346(a)(1) applies to United States but not IRS). When, as in the instant action, the Internal Revenue Service has been sued for refund, the United States has been substituted for the Internal Revenue Service as the defendant. *See, e.g., Baker v. Internal Revenue Service,* 2009 U.S. Dist. LEXIS 44623, at *6 (D.W.Va.2009); *Toland v. Internal Revenue Service,* 2000 U.S. Dist. LEXIS 7467 (D.Nev.2000). Such substitution may be effected by the Court *sua sponte. See* 26 U.S.C. § 7422(f)(2) (providing that where a suit for recovery of an internal revenue tax is improperly brought against an officer or employee of the United States, "the court shall order, upon such terms as are just, that the pleadings be amended to substitute the United States as a party for such officer or employee as of the time such action commenced."); *Reyes v. Dep't of the Treasury,* 2009 U.S. Dist. LEXIS 31471, at *13–14 I. (E.D.Cal.2009) (deeming complaint to be amended to substitute the United States as the defendant); *Toland,* 2009 U.S. Dist. LEXIS 7467, at *1 (substituting the United States for the IRS as the defendant). Accordingly, the Court will substitute the United States as a defendant in this action in lieu of the U.S. Department of Treasury, Internal Revenue Service.

**\*4** However, as explained in the September 24 order, a taxpayer's ability to prosecute a refund action against the United States in U.S. district court is subject to the jurisdictional prerequisites that she have first paid the tax at issue and timely filed a valid refund claim with the IRS. (Docket No. 8 at 12). *Follum,* 1999 U .S. Dist. LEXIS 4036, at *7 ("Under 26 U.S.C. § 7422(a), plaintiff may bring a refund action in district court only after paying his tax liability in full and filing a claim for refund with the IRS."); *see also Falik v. United States,* 343 F.2d 38, 42 (2d Cir.1965) ("[A] person whose sole claim is that a federal tax assessment was not well grounded in fact and law must 'pay first and litigate later.' " *Falik,* 343 F.2d at 42 (quoting *Flora,* 362 U .S. at 164) (quoting *Flora v. United States,* 362 U.S. 145, 164, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960); *Stewart v. IRS,* 1995 U.S. Dist. LEXIS 5159, at *4–7 (E.D.N.Y.1995) (jurisdictional prerequisites for filing a tax refund suit require that claimant "have paid any outstanding tax assessment, including interest and penalties" and timely file a refund claim with the IRS. (citations omitted). The limitations period applicable to such refund claims is set forth in 26 U.S.C. § 6532:

   (a) Suits by taxpayers for refund.

(1) General rule. No suit or proceeding under section 7422(a) [26 USCS § 7422(a) ] [4] for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

4     26 U.S.C. § 7422(a) provides:
          No suit or proceeding shall be maintained in any
          court for the recovery of any internal revenue
          tax alleged to have been erroneously or illegally
          assessed or collected, or of any penalty claimed
          to have been collected without authority, or of
          any sum alleged to have been excessive or in
          any manner wrongfully collected, until a claim
          for refund or credit has been duly filed with the
          Secretary, according to the provisions of law in
          that regard, and the regulations of the Secretary
          established in pursuance thereof.

26 U.S.C. § 6532(a)(1).

While plaintiff in the instant matter alleges that she "seeks refund," neither the allegations of the amended complaint nor the sealed exhibits contain information showing that she paid the tax she is seeking to contest and timely filed a refund claim or claims with the IRS. The Court notes, in this regard, that the September 24 Order advised plaintiff to "clearly indicate whether she is seeking to contest an assessment or assessments of tax and penalties from the IRS or to claim refunds of federal income taxes that she has paid" and, in addition, to attach to the amended complaint copies of notices of deficiency and other relevant documents from the IRS that would serve to elucidate that nature of her claims. (Docket No. 8 at 13). The amended complaint does not clearly indicate the nature of plaintiff's claims, nor does plaintiff append notices or statements from the IRS that would enable the Court to ascertain whether plaintiff is seeking to contest assessments of tax or to obtain refunds of taxes paid-or both. Plaintiff does refer to "form # 843," which is the IRS "Claim for Refund" form, as well as "form # 5329" which is the IRS form used to report additional taxes on the early distribution of e.g., qualified retirement plans. However,

she does not attach copies of those forms, assuming she has filed them with the IRS, and she does not explain what she means by indicating that the forms are "pending a review."[5] As noted, the commencement of a refund suit in this Court is jurisdictionally proper only where a taxpayer has paid the tax at issue, and has filed a refund claim which has been denied by the IRS. Plaintiff's third amended complaint gives no indication that a refund claim has been filed with *and* denied by the IRS or that the IRS has not rendered a decision on or otherwise responded to a refund claim.

[5]    The Court notes that Form 843, which the complaint indicates is "pending" before the IRS, is not the correct form to use in requesting a refund of income tax. *See* Instructions for Form 843 (Department of the Treasury), http://www.irs.gov/pub/irs-pdf/i843.pdf.

**\*5** Inasmuch as the timely filing of a refund claim is a jurisdictional prerequisite of a refund suit, *Deyo v. IRS,* 134 Fed. Appx. 475, 476 (2d Cir.2005) (unpublished), plaintiff's failure to explicitly show or allege that she filed such a claim and that such claim has been denied by the IRS, and the date of such denial, deprives this Court of subject matter jurisdiction over any claim for refund against the United States The Court will accordingly dismiss plaintiff's claim against the United States but such denial will be without prejudice to plaintiff re-filing in the event that she does in fact (as her allegations might be construed as indicating) have a claim for refund timely submitted to the IRS on form 843, and such claim is, as plaintiff appears to state, "pending." *See Jurca v. United States,* 1999 U.S.App. LEXIS 34060, at \*3–4 (6th Cir.1999) ("Jurca's district court action was premature because the IRS had not denied Jurca's refund claim, and less than six months had elapsed from the date Jurca filed his return requesting a refund until he filed suit. *See* 26 U.S.C. § 6532(a).").

The Court likewise lacks jurisdiction over plaintiff's related claims that the IRS incorrectly assessed penalties and interest. (Docket No. 24 at 1, 6). To the extent that plaintiff's barebones allegation[6] with respect to interest can be construed as a request for an *abatement* of interest imposed by the IRS on the deficiencies assessed against her, as explained in the September 24 Order (Docket No. 8 at 14), under 26 U.S.C. § 6404, only "the Tax Court provides the exclusive forum for judicial review of a refusal to abate interest under § 6404(e)(1)." *Hinck*

*v. United States,* 550 U.S. 501, 506–07, 127 S.Ct. 2011, 2013, 167 L.Ed.2d 888 (2007). While the Court would arguably have jurisdiction under 28 U.S.C. § 1346(a)(1) to consider a claim for the *refund* of interest imposed by the IRS, *see Magnone v. United States,* 733 F.Supp. 613, 615 (S.D.N.Y.1989), affd, 902 F.2d 192 (2d Cir.1990), as with the taxes to which the interest relates, the Court can only entertain such a claim for refund if all of the interest that has accrued on the deficiency has been paid. *Id.* at 616.

[6]    With respect to penalties and interest, plaintiff's third amended complaint contains only the conclusory assertion that "[p]enalties and interest are assessed incorrectly." (Docket No. 24 at 1).

The allegations of the third amended complaint likewise provide no basis for this Court to exercise jurisdiction over whatever penalties plaintiff is seeking to contest. *See* September 24 Order at 10–11 (Docket No. 8) (discussion of the jurisdiction of the Tax Court and the U.S. District Court regarding tax penalties).

### B. *Claims against Enterav Services, Inc.*

Plaintiff alleges (Second Claim) that defendant Entergy issued two forms 1099–R (Distributions From Pensions, Annuities, Retirement or Profit–Sharing Plans, IRAs, Insurance Contracts, etc.) for the year 2002 which erroneously reported distributions from the "Savings Plan of Entergy Corporation and Subsidiaries" as taxable income when such distributions should have been reported as tax-free. The two Forms 1099–R are included in the sealed exhibits to the complaint, *See* Docket No. 25 at p. 15. They show distributions to plaintiff from Entergy's Savings Plan in the amounts of $1,120 and $60,994.51, respectively.

**\*6** Plaintiff asserts that her claim against Entergy arises under Title 29 of the U.S.Code (ERISA), and she seeks damages "of investment, credit defamation, financial loss, failing to maintain employment records, etc. In addition, the incorrect coding added to the loss of benefits." (Docket No. 24 at 6). A more specific statement of plaintiff's ERISA claims against Entergy is set forth in the attachment to the third amended complaint, which is a copy of a letter dated December 17, 2010 which she sent to the Employment Benefits Security Administration of the U.S. Department of Labor asking that an investigation and audit of Entergy be initiated for "the E.R.I.S.A. violations that have occurred." Plaintiffs letter then recites

five sections of the ERISA statute: §§ 1021 (Duty of Disclosure and Reporting), 1027 (Retention of Records), 1059 (Record Keeping and Reporting), 1104 (Fiduciary Duties), and 1105 (Liability for Breach of Co–Fiduciary Duty). (Docket No. 24 at 7). The essence of plaintiff's claim against Entergy appears to be that defendant breached its fiduciary duties to plaintiff by issuing, or allowing T. Rowe Price in its capacity as savings plan administrator to issue, incorrectly coded forms 1099–R in reporting certain distributions from the savings plan to plaintiff upon termination of her employment.

(i) *Distribution of $60,994.51*
As explained in her letter to Entergy dated April 10, 2009, responding to a letter from defendant dated January 12, 2009, both of which are contained in the sealed exhibits (Docket No. 25), plaintiff maintains that Entergy failed to use the proper distribution code in box 7 of the Form 1099–R in reporting the $60,994.51 distribution. Plaintiff alleges (Docket No. 25 at 3) that the distribution code that should have been used in reporting the distribution to the IRS in box 7 was the number "3" which is used to report distributions to recipients who are disabled within the meaning of I.R.C. § 72(m)(7). *See* IRS Instructions for Forms 1099–R at p. 13, http://www.irs.gov/pub/irs-pdf/i1099r.pdf. *see also Welker v. Comm'r,* T.C. Summary Opinion 2009–193, at *2–3 (Tax Court 2009) ("Each of these amounts was reported on a Form 1099–R designating a distribution code 3 indicating an early distribution due to disability.") The distribution was instead coded in Box 7 of the Form 1099–R as "G", which is used to report direct rollovers from qualified retirement plans "to an eligible retirement plan (another qualified plan, a 403(b) plan *or an IRA."* IRS Instructions for Forms 1099–R at at p. 14.

The January 12, 2009 letter from Entergy to which plaintiff's April 10 letter responded, explained that the 1099–R was coded "G" to reflect the fact that the distribution had been made in the form of a direct rollover from a qualified retirement plan to an Individual Retirement Account (IRA) maintained by defendant T. Rowe Price. (Docket No. 25 at 25–26). It is clear from other documents contained in plaintiff's exhibits that she did, in fact make a rollover contribution to an IRA maintained by T. Rowe Price in 2002. *See* Docket No. 25 at 2–13 [letter dated August 8, 2002 from T. Rowe Price to Theresa C. Williams indicating a rollover distribution from Entergy Savings Plan] and at 14 [2002 Form 5498,

issued by T. Rowe Price Trust Co. and reporting "rollover contributions" by "Theresa Williams Rollover Account"].

**\*7** A rollover of amounts held in a qualified retirement plan to an IRA is not a taxable event. *See* 26 U.S.C. § 402(c); 26 C.F.R. § 1.402(c)–2; *Timmerman v. Comm'r,* 2002 Tax Ct. Summary LEXIS 51, at *7 (Tax Court 2002) ("Section 402(c) provides that certain amounts paid to an employee from a qualified trust are considered "rollover" distributions, and thus excludable from income. Under section 402(c)(5), a transfer from a qualified plan to an eligible retirement plan, including an individual retirement account described in section 408(a) or individual retirement annuity described in section 408(b), shall be treated as a rollover contribution described in section 408(d)(3).") Therefore, Entergy's coding of the form 1099–R issued to plaintiff for 2002, reporting the rollover of the amount in the Entergy Savings Plan to an IRA did not, contrary to plaintiff's allegation, report that distribution as taxable income. Defendant's use of the "G" code in reporting the rollover distribution of $60,994.51 from the Entergy Savings Plan as a rollover contribution to an IRA maintained with T. Rowe Price was correct, and would not have caused he IRS to treat that distribution as a taxable event to the plaintiff. Plaintiff's assertion that Entergy "[r]eported rollover 2X to the internal revenue and issued 21099's to the plaintiff, stating savings plan was actually, taxable income when savings plan was actually tax-free savings" (Docket No. 24 [Third Amended Complaint] at 6 is thus not correct: the 1099s issued by Entergy in fact reported the distribution to plaintiff as a tax-free rollover.

Plaintiff also alleges that Entergy "reported false information to benefit carrier concerning employment status." *Id.* This allegation is fleshed out in the April 10, 2009 letter sent by plaintiff to Entergy in which she maintains that T. Rowe Price's use of distribution code1 in subsequently reporting distributions to plaintiff from her IRA, (*see* discussion at "C" *infra),* resulted her being coded by defendant T. Rowe Price, when it subsequently issued 1099s to plaintiff as "terminated' (Code "1")[7] rather than as disabled (Code "3").*See* Docket No. 25 at pp. 3–5. There is nothing, however, in the 1099R issued by Entergy reporting the $60,994 distribution which uses Code 1 or which otherwise reports plaintiff as having been "terminated". As explained above, the 1099–R reflecting the $60,994.51 distribution shows only Code G, reflecting a distribution from the Entergy Saving Plan to plaintiff's IRA.

7     Contrary to plaintiff's characterization of Code 1 as "terminated," Code 1 is labeled by the IRS as "early distribution, no known exceptions." *See* http://www.irs.gov/pub/irs-pdf/i1099r.pdf. (P. 13).

In accordance with the foregoing analysis, the Court concludes that plaintiff's allegations with respect to the Form 1099–R issued by Entergy and reporting plaintiff's rollover of $60,994.51 from Entergy's savings plan to an IRA fail to state a claim, and must be dismissed.

(ii) *Distribution of $1,120*

The second distribution reported by Entergy to plaintiff on a Form 1099–R for the year 2002 reflects a distribution of $1,120, and uses the distribution code "3" to classify the distribution in box 7 of the form. (Docket No. 25, p. 14). As explained in connection with the discussion of the $60,994.51 distribution, *supra,* code "3" is used to report distributions to recipients who are disabled. Accordingly, as explained in Entergy's letter to plaintiff plaintiff's claims against defendant T. Rowe Price concern the coding of Forms 1099–R issued to plaintiff. Plaintiff alleges that defendant incorrectly coded distributions made to her for the years 2004–2007 from the IRA maintained by T. Rowe Price with the result that the distributions were treated by the IRS as taxable or at least partly taxable. For the years in question, defendant issued forms 1099–R to the plaintiff showing distributions to her in the amounts of 10,082.96, 23,034.01, 10,451.14 and 1,700.00, respectively. (Docket No. 25, pp. 5, 16–18). Box 7 of the forms 1099–R for these years reported a distribution code of "1". As stated in the IRS Instructions for Forms 1099–R, distribution code "1" is used to report an early distribution, *i.e.,* before age 59/4, from, e.g., an IRA, where the payer does not know that any of the exceptions to the taxability of the distribution set forth under Codes 2, 3 or 4 applies to the distribution. *See* http://www.irs.gov/pub/irs-pdf/i1099r.pdf., p. 13.

**\*8** Plaintiff asserts that the distributions to her for the years in question should have been coded "3", which as noted *supra,* is used to report distributions to recipients who are disabled within the meaning of I.R.C. § 72(m)(7). The consequence of classifying a recipient as "disabled" within the meaning of distribution code 3 is that she will be relieved of the 10–percent additional tax that would otherwise be owing on an early distribution from a qualified retirement plan pursuant to 26 U.S.C. § 72(t)(1). *See Welker,* 2009 Tax Ct. Summary LEXIS

196, at \*4–5 ("Section 72(t)(1) generally imposes a 10–percent additional tax on an early distribution from a qualified retirement plan, unless the distribution comes within one of the statutory exceptions under section 72(t)(2).... Section 72(t)(2)(A)(iii) provides an exception for distributions 'attributable to the employee's being disabled within the meaning of subsection (m)(7)' "). The disability exception, if applicable, relieves the taxpayer only of the 10–percent additional tax; ordinary income tax is still owed on an early distribution out of an IRA. 26 U.S.C. § 408(d)(1); *see also, Colegrove v. Comm'r,* T.C. Summary Opinion 2010–44, 2010 Tax Ct. Summary LEXIS 45, at \*4–5 ("Generally, section 408(d)(1) provides that 'any amount paid or distributed out of an individual retirement plan shall be included in gross income by the payee or distributee * * * in the manner provided under section 72.' " (citing *Campbell v. Commissioner,* 108 T.C. 54, 1997 WL 65944 (1997)).

Review of this claim necessitates close examination of the forms 1099–R issued by the defendant to plaintiff for the four years in question and the IRS instructions to the payers of IRA distributions and to the recipients of such distributions. The instructions for reporting a distribution from pensions, IRAs etc. advise that the payer is "not required to compute the taxable amount of a traditional IRA." Therefore, the payer is instructed to report the total amount distributed from an IRA in box 2a ("Taxable Amount") of form 1099–R which will be the same as the amount reported in Box 1 "Gross Distribution". *See* Instructions for Forms 1099–R and 5498 for years 2004–2007. [8] The instructions to the recipient of the 1099–R advise that "[f]or distributions from a traditional individual retirement arrangement (IRA) ... generally the payer is not required to compute the taxable amount. Therefore the amounts shown in boxes 1 and 2a will be the same most of the time. *See* the form 1040 or 1040A instructions to determine the taxable amount." *See* 1099–R Instructions for Recipient, years 2004–2007. [9] Review of the forms 1099–R issued by T. Rowe Price to plaintiff for the years in question shows that the same distribution amounts are reported in boxes 1 and 2a. (Docket No. 25 at 16–19).

8     The 1099–R instructions for both the payer and recipient for the years at issue (2004–2007), discussed and quoted herein, are available on the IRS website, and have been reviewed by the Court in considering plaintiff's claims against

T. Rowe Price. See http://www.irs.gov/pub/irs-prior/f1099r_2004.pdf; http://www.irs.qov/pub/irs-prior/f1099r_2005.pdf; http://1099plus.com/2006% 201099–R% 20Instructions% 20for% 20Recipient.pdf; http://1099plus.com/2007% 201099–R% 20Instructions% 20for% 20Recipient.pdf (Recipient Instructions); http://www.irs.gov/pub/irs-prior/i1099r_2004.pdf; http://www.irs.gov/pub/irs-prior/i1099r_2005.pdf; http:// www.irs.qov/pub/irs-prior/i1099r_2005.pdf; http://www.irs.gov/pub/irs-prior/i1099r_2006.pdf; http://www.irs.gov/pub/irs-prior/i1099r_2007.pdf

9    See n. 1, supra.

The instructions to payers further advise with respect to the first box 2b ("Taxable Amount Not Determined") that an "X" should be entered in this box "only if you are unable to reasonably obtain the data needed to compute the taxable amount. If you check this box, leave box 2a blank. Except for IRAs, make every effort to compute the taxable amount." The corresponding instructions to the recipient advise that if the first box on the box 2b is checked "the payer was unable to determine the taxable amount, and box 2a should be blank. However, if this is a traditional IRA, SEP or SIMPLE distribution, then *see IRAs* earlier." The reference here is to the section of the recipient instructions, quoted previously, which instructs that in the case of a distribution from, *inter alia,* an IRA, the payer is not required to compute the taxable amount and therefore the amounts reported in boxes 1 and 2a "will be the same most of the time." While hardly a model of clarity, when read together, the 1099–R instructions for the payer and the recipient appear to indicate that while box 2a ("Taxable amount") should be left blank if the first box 2b ("taxable amount not determined") is checked, this directive does not apply where the distribution is from an IRA, as to which the payer is not required to compute the taxable amount. In that situation, the payer is to report the same figure for the total distribution (box 1) and the taxable amount of that distribution (box 1a), even while checking box 2b ("Taxable amount not determined"). It is then encumbent upon the recipient, as indicated in the IRS instructions to the recipient, to consult the form 1040 or 1040A instructions to determine the taxable amount.

**\*9** The forms 1099–R issued by T. Rowe Price for the years in question appear to follow the reporting format outlined above: boxes 1 and 2a report the same distribution amount and box 2b is checked, which, as explained above, left it to the recipient, the plaintiff herein,

to determine the taxable amount of the IRA distribution that she had received. (Docket No. 25, at 16–19).

Plaintiff's claim, with respect to the 1099s issued by defendant, is that T. Rowe Price should have coded box 7 ("Distribution code") of the form as "3", which, as explained *supra* in connection with the Court's consideration of the claim against defendant Entergy, is the designation for a recipient classifiable as disabled within the meaning of I.R.C. § 72(m)(7). Rather than using distribution code 3, however, defendant used code 1, which, according to the form's instructions, is to be used "only if the employee/taxpayer has not reached age 59½ and you do not know if any of the exceptions under Code 2, 3 or 4 apply." Notably, the general instructions to issuers of form 1099–R with respect to Box 7 state that the payer should, in filling out the Form 1099–R, "[r]ead the codes carefully and enter them accurately because the IRS uses the codes to help determine whether the recipient has properly reported the distribution. If the codes you enter are incorrect, the IRS may improperly propose changes to the recipient's taxes." See Instructions for Forms 1099–R and 5498 ["Box 7. Distribution Code(s)"], cited in n. 7, *supra.*

Construing the allegations of the third amended complaint liberally, as required with respect to the pleadings of *pro se* litigants, plaintiff is asserting that defendant T. Rowe Price, as trustee of her IRA, breached a fiduciary duty when it failed to properly code IRA distributions made to her for the years 2004–2007, as a result of which the Internal Revenue Service treated as taxable distributions that would not have been so classified had the defendant used the proper code (code 3–"disability"). Plaintiff invokes, as the basis for this claim, Title 29 of the United States Code, which contains the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq.

Only plaintiffs who are properly considered "participants" or "beneficiaries" (or "fiduciaries") of an employee benefit plan have standing to sue under ERISA. *See Caltagirone v. N.Y. Cmty. Bancorp, Inc.,* 257 Fed. Appx. 470, 472 (2d Cir.2007) (unpublished); *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC,* 433 F.3d 181, 200–01 (2d Cir.2005); *DaPonte v. Manfredi Motors, Inc.,* 157 Fed. Appx. 328, 331 (2d Cir.2005) (quoting *Aetna Health Inc. v. Davila,* 542 U.S. 200, 210, 124 S.Ct. 2488, 159 L.Ed.2d

Case 6:18-cv-00135-DNH-TWD Document 10 Filed 10/04/18 Page 21 of 95
Williams v. U.S. Dept. of Treasury I.R.S., Not Reported in F.Supp.2d (2013)

2013 WL 7121192, 112 A.F.T.R.2d 2013-7286

312 (2004)). IRA accounts, like those held by plaintiff, "are explicitly carved out of the scope of ERISA." *Burns v. Del. Charter Guar. & Trust Co.,* 805 F.Supp.2d 12, 20 (S.D.N.Y.2011); see 29 U.S.C. § 1051(6) (exempting from coverage under Title I of ERISA "an [IRA] or annuity described in section 408 of [the Code]"); 29 C.F.R. § 2510.3–2(d)(1) ( "For purposes of title I of [ERISA], the terms 'employee pension benefit plan' and 'pension plan' shall not include an [IRA] described in section 408(a) of the Code."). Courts have repeatedly held that ERISA does not apply to IRAs. *See, e.g., Rose v. The Long Island R.R. Pension Plan,* 828 F.2d 910, 913 (2d Cir.1987); *Charles Schwab & Co. v. Debickero,* 593 F.3d 916, 919 (9th Cir.2010) ("IRAs are specifically excluded from ERISA's coverage" because IRAs involved "no employer oversight, no ongoing employer commitment, nor any potential for employer abuse"); *Burns, supra; Grund v. Del. CharterGuar. & Trust Co.,* 788 F.Supp.2d 226, 236 (S.D.N.Y.2011).

**\*10** In addition, the fact that the amounts held in plaintiff's IRA maintained with T. Rowe Price were rolled over from the Entergy Savings Plan, which was administered by T. Rowe Price, makes no difference in this regard. *See SEC v. Aragon Capital Advisors, LLC,* 2011 U.S. Dist. LEXIS 82531, at \*23, n. 12 (S.D.N.Y.2011) ("[T]o the extent that [defendant] contends that ERISA protects his IRAs because they were "rolled-over" from a qualified plan, his contention is meritless. ERISA plainly states that IRAs are not within the statute's coverage. 29 U.S.C. § 1051(6). Moreover, the fact that the funds in an IRA may have come from a qualified plan 'is beside the point' if the IRA is 'established and maintained' by the employee, not the employer, and therefore outside the scope of ERISA." (citations omitted); *see also In re Rayl,* 299 B.R. 465, 467 (Bankr.S.D.Ohio 2003) (rejecting bankruptcy trustee's argument that IRA plans were employee benefit plans and therefore ERISA preempted state law which allowed IRA accounts to be considered exempt: "Although the ultimate source of the rolled-over funds was a plan established and maintained by the debtor's former employer, it does not follow that the IRA accounts were established and maintained by her former employer. Rather, it is the debtor who rolled over the funds into the IRA accounts and who maintains them with T. Rowe Price."); *In re Mann,* 134 B.R. 710, 713 (Bankr.E.D.N.Y.1991) ("The use or disposition of funds after distribution from an ERISA Plan is not governed by the provisions of ERISA.") (emphasis added).

In accordance with the above, the Court concludes that plaintiff's claims against T. Rowe Price must be dismissed because does not have standing to assert ERISA claims against the defendant and has otherwise failed to state a claim. *See Burns,* 805 F.Supp.2d at 20–21 (dismissing plaintiff's ERISA claims related to IRA accounts for failure to establish standing or to state a claim).

## *CONCLUSION*

For the reasons set forth above, the Court determines that United States shall be substituted for the U.S. Department of Treasury, Internal Revenue Service as a defendant in this action; that plaintiff's claims against the United States challenging the assessment of taxes, penalties and interest by the Internal Revenue Service are dismissed with prejudice for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(h)(3), and in the alternative for failure to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e)(2)(B)(ii); that plaintiff's claims for refund of income taxes, penalties and/or interest against the United States are dismissed without prejudice; that plaintiff's claims against Entergy Services, Inc. are dismissed with prejudice for failure to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e)(2)(B) (ii); and that plaintiff's claims against T. Rowe Price are dismissed with prejudice for lack of standing and for failure to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e) (2)(B)(ii).

**\*11** The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

## *ORDER*

IT HEREBY IS ORDERED, that the United States be substituted for the U.S. Department of Treasury, Internal Revenue Service as a defendant in this action;

**Williams v. U.S. Dept. of Treasury I.R.S., Not Reported in F.Supp.2d (2013)**

2013 WL 7121192, 112 A.F.T.R.2d 2013-7286

FURTHER, that plaintiff's claims against the United States challenging the assessment of taxes, penalties and interest by the Internal Revenue Service are dismissed with prejudice;

FURTHER, that plaintiff's claims for refund of income taxes, penalties and/or interest against the United States are dismissed without prejudice;

FURTHER, that plaintiff's claims against Entergy Services, Inc. are dismissed with prejudice;

FURTHER, that plaintiff's claims against T. Rowe Price are dismissed with prejudice;

FURTHER, that leave to appeal to the Court of Appeals as a poor person is denied;

FURTHER, that the Clerk of the Court is hereby ordered to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 7121192, 112 A.F.T.R.2d 2013-7286

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 1238651, 99 A.F.T.R.2d 2007-2501, 2007-1 USTC P 50,506

2007 WL 1238651
United States District Court, D. Connecticut.

Dennis M. GAVIGAN and
Laura A. Gavigan, Plaintiffs,
v.
COMMISSIONER, INTERNAL REVENUE
SERVICE, and the United States, Defendants.

No. 3:06–CV–942 (PCD).
|
April 27, 2007.

**Attorneys and Law Firms**

Dennis M. Gavigan, Middletown, CT, pro se.

Laura A. Gavigan, Middletown, CT, pro se.

Lisa L. Bellamy, U.S. Department of Justice, Washington, DC, for Defendant.

*RULING ON MOTION TO DISMISS*

PETER C. DORSEY, U.S. District Judge.

**\*1** Defendants, the Commissioner of the Internal Revenue Service and the United States, move to dismiss Plaintiffs' action, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. For the reasons stated herein, Defendants' Motion to Dismiss [Doc. No. 19] is **granted in part** and **denied in part.**

**I. BACKGROUND**

Plaintiffs Dennis M. Gavigan and Laura A. Gavigan are residents of Middletown, Connecticut, and are proceeding pro se. Plaintiffs bring a series of claims alleging unlawful tax collection and assessment based on various taxes assessed and liens and levies imposed for tax years 1998–2005. On June 10, 2004, the Internal Revenue Service ("IRS") issued a Notice of Federal Tax Lien ("NFTL") in the amount of $29,460.47 for tax periods 1998–2001. (Am.Compl.¶ 13, Ex. B.)[1] On June 18, 2004, the Middletown Town Clerk recorded a NFTL against

Plaintiffs' property which was prepared by the IRS for the same amount covering the same tax periods as the June 10th NFTL. (Am.Compl.¶ 15, Ex. C.) On June 14, 2004, the IRS issued to Fleet National Bank ("Fleet") a Notice of Levy ("NOL") in the amount of $30,694.48 against Plaintiffs' bank deposits for tax years 1998–2001. (*Id.* ¶¶ 18, 31, Ex. E.) Neither a warrant of distraint, a court order, nor a notice of seizure was appended to the NOL. (*Id.* ¶¶ 10, 20.) In response to the NOL, Fleet surrendered $3,340.45 of Plaintiffs' money to the government. (*Id.* ¶¶ 9, 19, Ex. F.) On November 4, 2005, the Middletown Town Clerk filed and recorded a second NFTL against Plaintiffs' property in the amount of $11,540.41 for tax years 1996, 1997, and 2004. (*Id.* ¶¶ 16, 17, Ex. D.)[2] On January 18, 2006, the IRS issued the following NOLs, each in the amount of $30,155.94 for tax years 1998–2001: to Fleet against Plaintiffs' deposits (Am.Compl.¶ 25, Ex. H); to Citizens Bank of Connecticut against Plaintiffs' deposits (*id.* ¶ 26, Ex. I); to Bio–Medical Applications against Plaintiffs' wages (*id.* ¶ 27, Ex. J); and to P & B Trucking against Plaintiffs' wages. (*Id.* ¶ 28, Ex. K.)

[1] Plaintiffs describe the NFTL as "undated." (Am.Compl.¶ 13.) However, the NFTL included in Exhibit B is dated "June 10, 2004"; therefore the Court will use this date. (*See* Pls.' Ex. B.)

[2] In the Amended Complaint, Plaintiffs describe the second NFTL as "undated." (Am.Compl.¶ 16.) However, the NFTL included in Exhibit D is dated "November 4, 2005"; therefore the Court will use this date. (*See* Pls.' Ex. D.)

In February 2006, Plaintiffs sent numerous Freedom of Information Act ("FOIA") requests to the IRS for various documents pertaining to the assessment of Plaintiffs' tax deficiency. (Am.Compl.¶¶ 44, 55, 60, 63, 65, 66, Exs.M, O–1, O–2, O–3, Q–1, Q–2, R, S.) In addition to their FOIA requests, on February 9, 2006 Plaintiffs sent the IRS Area Director of the North Atlantic Region a request titled "Release of Liens/Levy; Request for Refund/Abatement of Improper Assessments or Liability; Attempt to Exhaust Administrative Remedies." (*Id.* ¶ 68, Ex. T.) On April 30, 2006, Plaintiffs submitted to the IRS five separate Form 843s, "Claims for Refund and Request for Abatement," claiming a 1040A tax refund in the amounts of $3,340.45, $11,745.85, $11,861.05, $5,555.99, and $1,531.59 for tax years 1998–2001 respectively. (*Id.* ¶¶ 23, 71–74, Exs.G, V, W, X, Y.) Each Form 843 noted that the reason for the claim of refund/abatement was that "collection was

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

legally unenforceable." The IRS has not responded to any of these claims. (*Id.* ¶¶ 24, 69, 75.) Plaintiffs further allege that they filed timely requests for their 2003, 2004, and 2005 overpayments, which the IRS has not yet refunded. (*Id.* ¶¶ 76–81.)

**\*2** On May 3, 2006, Plaintiffs sent the IRS a Notice of Intent to Sue. (Am. Compl. ¶ 69, Ex U.) After more than 30 days elapsed without their receiving a response from the IRS (*id.* ¶ 70), Plaintiffs commenced this action on June 20, 2006. On October 11, 2006, they filed their Amended Complaint, in which they assert claims against the Commissioner of the IRS and the United States for improper assessment and collection of taxes, failure to abate, failure to refund tax overpayments, failure to release a lien and levy, unjust enrichment, fraud, negligence, intentional infliction of emotional distress, and violations of the Fourth, Fifth and Fourteenth Amendments. (*Id.* ¶¶ 5, 29, 82–124.) On November 28, 2006, Defendants filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. STANDARD OF REVIEW

### A. Lack of Subject Matter Jurisdiction under Fed.R.Civ.P. 12(b)(1)

A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate it. FED.R.CIV.P. 12(b)(1); *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). Plaintiff, as the party asserting subject matter jurisdiction, has the burden of establishing that it exists, *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996) (citation omitted), and the Court should not draw argumentative inferences in her favor. *Atl. Mut. Ins. Co. v. Balfour MacLaine Int'l,* 968 F.2d 196, 198 (2d Cir.1992) (citation omitted). When considering a motion to dismiss for lack of subject matter jurisdiction, the court "must determine whether or not the factual predicate for subject matter exists." *Tilley v. Anixter Inc.,* 283 F.Supp.2d 729, 733 (D.Conn.2003) (citation omitted). In making a determination of a motion to dismiss under Rule 12(b)(1), a court is not "limited to the face of the complaint, but may consider evidence, including affidavits submitted by the parties." *Id.* at 733 (citing *Robinson v. Malaysia,* 269 F.3d 133, 141 (2d Cir.2001)).

### B. Failure to State a Claim under Fed.R.Civ.P. 12(b)(6)

In determining a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). "The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir .1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 235–36, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (internal quotations omitted)). A district court should not grant a motion to dismiss under Rule 12(b)(6) unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (internal citation omitted). Furthermore, in deciding a Rule 12(b)(6) motion, the Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999) (citation and internal quotations omitted); *Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999).

### C. Special Considerations for Pro Se Plaintiffs

**\*3** As stated previously, Plaintiffs are proceeding pro se. The Second Circuit has repeatedly cautioned that because "most pro se plaintiffs lack familiarity with the formalities of pleading requirements, [courts] must construe pro se complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel." *Taylor v. Vermont Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir.2002) (citation and internal quotations omitted). The Second Circuit has also emphasized that "pro se litigants ... cannot be expected to know all of the legal theories on which they might ultimately recover," and, accordingly, "[i]t is enough that they allege that they were injured, and that their allegations can conceivably give rise to a viable claim." *Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir.2005). It is up to the district court to determine what claims a pro se plaintiff's complaint could raise, and in doing so, " 'the court's imagination should be limited only by [the plaintiff]'s factual allegations, not by the legal claims set out in his pleadings.' " *Ford v. New Britain Trans. Co.,*

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case No. 3:03cv150 (MRK), 2005 WL 1785269, at *1 (D.Conn. July 26, 2005) (quoting *Phillips,* 408 F.3d at 130). Importantly, however, the Court is not required to engage in "rank speculations" in an effort to manufacture a federal claim for pro se plaintiffs, *Ford,* 2005 WL 1785268 at *5, and thus, a court may dismiss a complaint if it appears beyond doubt that no set of facts could be proven that would establish an entitlement to relief. *Weixel v. Bd. of Educ. of New York,* 287 F.3d 138, 145–46 (2d Cir .2002).

## III. DISCUSSION

The Government moves to dismiss Plaintiffs' action pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction because Plaintiffs' action is barred by the sovereign immunity of the United States, the Anti–Injunction Act, and the Declaratory Judgment Act. The Government also moves to dismiss the Plaintiffs' Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Because the Government has only argued the jurisdictional issues in its memorandum in support of its motion, the Court, reading the papers in the light most favorable to the Plaintiffs and in deference to their pro se status, declines to review their claims for failure to state a claim upon which relief can be granted.

Before discussing the issues raised by the motion to dismiss, it must be stated that a fundamental aspect of Plaintiffs' position in this case is without merit. Plaintiffs assert in their opposition memorandum that they are nontaxpayers and as such are not liable for federal income taxes. (Pls.' Mem. at 4–5, 8–13, 14–15.) They further argue that the tax system is voluntary. (*Id.* at 9.) However, the payment of income taxes is "not optional," *United States v. Schiff,* 876 F.2d 272, 275 (2d Cir.1989); *see United States v. Gerads,* 999 F.2d 1255, 1256 (8th Cir.1993) (rejecting argument that payment of income taxes is voluntary), and there is no question that all citizens working in the United States are required to pay taxes. *See* 26 U.S.C. §§ 1, 1441(a), (b); 26 C.F.R. § 1.1–1 (2007); *Schiff v. United States,* 919 F.2d 830, 832–33 (2d Cir.1990); *United States v. Drefke,* 707 F.2d 978, 981 (8th Cir.1983) (stating that claim of immunity from IRS jurisdiction as "nontaxpayer" is "totally without arguable merit"); *Bey v. City of New York Dep't of Corr.,* No. 97 Civ. 4866(RPP), 1997 WL 576090, at * 2 (S.D.N.Y. Sept.17, 1997).

### A. Sovereign Immunity

**\*4** The Government contends that the Court lacks subject matter jurisdiction over Plaintiffs' claims against the United States because they are barred by sovereign immunity. Under well-established principles of sovereign immunity, claims against the United States and its agencies are barred unless sovereign immunity has been "unequivocally" waived by statutory text, *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996), or the United States consents to be sued, in which case " 'the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' " *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (*quoting United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). Moreover, the "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957) (citing *Sherwood,* 312 U.S. at 590–91).

As an initial matter, the Court dismisses the Commissioner of the IRS and the IRS from this suit as improper defendants. The Commissioner, as a federal official, may be subjected to suit for damages in his personal capacity. *Akers v. United States,* 539 F.Supp. 831, 833 (D.Conn.1982), *aff'd,* 718 F.2d 1084 (2d Cir.1983). Although the Plaintiffs name the Commissioner in the title of their Amended Complaint, they do not allege any actions taken by him or otherwise mention him in the body of their complaint or in their opposition to the Government's motion. Therefore, the Plaintiffs fail to state a claim against the Commissioner in his personal capacity. *Id.* (dismissing claims against the IRS Commissioner because the plaintiffs did not make any allegations against the Commissioner in their complaint). The IRS itself is an improper party to this action because Congress has not authorized suits in federal courts against the Department of Treasury. *See Blackmar v. Guerre,* 342 U.S. 512, 151, 72 S.Ct. 410 (1952) (holding that Congress must give express authorization in order for an agency to be sued in its own name); *Posey v. U.S. Dep't of Treasury–I.R.S.,* 156 B.R. 910, 917 (W.D.N.Y.1993) (citation omitted); *Clegg v. U.S. Treasury Dep't,* 70 F.R.D. 486, 488–89 (D.Mass.1976) (citation omitted). Actions against the IRS are deemed actions against the United States, *Posey,* 156 B.R. at 917; *Dubay v. I.R.S.,* Civ. No. 3:96cv1399 (AHN), 1997 WL 76577, at *4 (D.Conn. Feb. 7, 1997), and so the

2007 WL 1238651, 99 A.F.T.R.2d 2007-2501, 2007-1 USTC P 50,506

United States remains the sole Defendant in this action. The sovereign immunity of the United States has been expressly waived in several instances; each waiver, as it relates to Plaintiffs' claims, will be addressed in turn below.

### 1. Erroneous or Illegal Tax Assessment and Collection Claims (Counts I and II)

Plaintiffs contend that they are entitled to a refund of the $3,340.45 levied from their Fleet bank account for tax year 1998, an abatement of the unpaid portions of their liability for tax years 1998–2001, and a refund for their overpayment for tax years 2003–2005. (*See* Am. Compl. ¶¶ 23–24, 30, 71–80, 82–88, Pls.' Ex. G, V, W, X, Y.) The Government moves to dismiss these claims for lack of subject matter jurisdiction. Taxpayers have federal statutory rights to challenge certain erroneously or illegally assessed taxes in federal court. Section 1346 of Title 28 of the United States Code gives district courts jurisdiction over:

> **\*5** [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

28 U.S.C. § 1346(a)(1). Although Section 1346 appears to give broad power to the district courts to hear actions brought by taxpayers to recover payments on allegedly erroneous, illegal or wrongfully assessed or collected taxes, several restrictions limit a taxpayer's independent right to bring a refund suit in federal court. *First*, 26 U.S.C. § 7422(a) requires that a taxpayer must file a "claim for refund or credit" with the IRS before bringing suit in district court. In addition, a taxpayer cannot file suit against the IRS "before the expiration of 6 months from the date of filing the claim," 26 U.S.C. § 6532(a)(1); *see also Harriman v. I.R.S,* 233 F.Supp.2d 451, 459 (E.D.N.Y.2002) ("a claimant must give the Internal Revenue Service at least six months to process a claim prior to commencing suit in federal court") and a taxpayer must pay the full amount of the assessment before he may challenge its validity in an action under § 1346(a)(1). *Flora v. United States,* 362 U.S. 145, 177, 80

S.Ct. 630, 4 L.Ed.2d 623 (1960) ("correctly construed, [§ 1346(a)(1)] requires full payment of the assessment before an income tax refund suit can be maintained in a Federal District Court"); *see also United States v. Forma,* 42 F.3d 759, 763 (2d Cir.1994).

Plaintiffs' first claim for a refund of the $3,340.45 levied from their Fleet bank account is dismissed for several reasons. First, Plaintiffs have not paid their tax liability in its entirety; Plaintiffs have only paid $3,340.45 of a tax liability that exceeds $60,000. (*See* Pls.' Ex. A–1, A–2, A–3, B, C, D, E.) Until Plaintiffs have paid the full amount of the tax liability assessed, the Court lacks jurisdiction to hear the case, and their claim for a refund must be dismissed. *Forma,* 42 F.3d at 763. Plaintiffs' claim for a refund also appears to be invalid because they filed the wrong form. In order for a claim for refund to be valid, it must satisfy the requirements imposed by statute and regulation. *Dubay v. Scott,* No. CIV. 3:98–0029(DJS), 1998 WL 1035429, at \*3 (D.Conn. Sept.30, 1998). One such regulation requires the refund claim to be filed on the correct IRS form. *Id.* (citation omitted). A claim for a refund of an allegedly illegally assessed or collected tax arising out of a "1040" or "1040A" income tax must be filed on IRS Form 1040X, 26 C.F.R. § 301.6402–3, whereas a claim for a refund of taxes other than income tax must be filed on IRS Form 843. 26 C.F.R. § 301.6402–2(c); *see also Dubay,* 1998 WL 1035429, at \*3. Plaintiffs filed a claim for refund of $3,340.45 on IRS Form 843 specifying the type of tax to be refunded as a "1040A" tax. (Pls.' Ex. G.) Because Plaintiffs should have filed their income tax refund claim using IRS Form 1040X rather than IRS Form 843, their claim for a refund is invalid.

**\*6** Moreover, the Court lacks jurisdiction because Plaintiffs failed to wait the requisite six months before bringing suit. While statute of limitations defenses are often reviewed in the Second Circuit pursuant to Fed.R.Civ.P. 12(b)(6) as an element of a claim, statutes of limitation are jurisdictional in tax cases. *Harriman,* 233 F.Supp.2d at 457; *see also United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). Plaintiffs submitted their claim for a refund on April 30, 2006 (Pls.' Ex. G), and so they should have waited until October 31, 2006 in order to comply with the six-month waiting period required by 26 U.S.C. § 6532(a)(1). However, Plaintiffs commenced this action on June 20, 2006, and filed their Amended Complaint on October 11, 2006. Because both complaints were filed

before the requisite six-month waiting period, the Court lacks subject matter jurisdiction over Plaintiffs' action for refund of their $3,340.45 payment. Plaintiffs' February 9, 2006 letter titled "Release of Liens/Levy; Request for Refund/Abatement of Improper Assessments or Liability; Attempt to Exhaust Administrative Remedies" (Pls.' Ex. T.) could be viewed as an "informal request" for a refund to satisfy the six-month waiting period. *See Forma,* 42 F.3d at 767 n. 13 ("an informal claim is sufficient to satisfy the statutory prerequisite of a timely administrative claim found in 26 U.S.C. § 7422(a)" (citation and internal quotations omitted)). To be considered a satisfactory informal claim, the claim "must at least alert the IRS that the taxpayer seeks a refund and must also indicate the grounds upon which the taxpayer's claim is based." *Id.* (citations omitted). Reviewing the February 9th letter liberally, the Court may consider it an informal request because it clearly states that it is a "request for a refund" and explicitly refers to 27 U.S.C. §§ 1346 and 7422. (Pls.' Ex. T.) Nevertheless, even if it were to consider this letter an informal request that started the six-month waiting period earlier and saved the timing of Plaintiff's Amended Complaint, the Court still lacks subject matter jurisdiction because Plaintiffs did not pay their tax liability in full prior to filing this suit and because they did not use the correct forms when filing a refund for the $3,045 levy against Fleet Bank.

Plaintiffs' second claim against the IRS to abate the erroneously assessed taxes for years 1998–2001 is also dismissed. Congress prohibits taxpayers from filing claims for abatement of taxes erroneously or illegally assessed. 26 U.S.C. § 6404(b); *see also Bax v. C.I.R.* 13 F.3d 54, 58 (2d. Cir.1993) (holding § 6404(b) "expressly bars abatement claims predicated on the illegality of income tax assessments"). Accordingly, the Plaintiffs' claim for abatement of the unpaid portions of their tax liability (Count II) is hereby dismissed.

However, Plaintiffs' claim for a refund for their alleged overpayment of taxes for tax years 2003–05 is not dismissed because the Court is unable to determine at this time whether the Plaintiffs filed a timely request for a refund of these overpayments. Section 6511(a) provides:

> **\*7** [A c]laim for credit or refund of an overpayment of any tax ... shall be filed by the taxpayer *within 3 years from the time the return was filed or 2 years from the time the tax*

> *was paid, whichever of such periods expires the later,* or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

26 U.S.C. § 6511(a) (emphasis added). In their Amended Complaint, Plaintiffs simply state that they made a "timely request for refund of an overpayment" (Am.Compl.¶¶ 76, 78, 80), but they have not attached any documents or letters specifically addressing the 2003, 2004, and 2005 overpayments. For purposes of this motion and in deference to Plaintiffs' pro se status, the Court accepts the statements made on the face of the complaint that Plaintiffs have fulfilled the statutory requirements for the refund of overpayments for tax years 2003–2005. Thus, the Government's motion to dismiss Plaintiffs' overpayment claims for tax years 2003–2005 (Count I) for lack of subject matter jurisdiction is denied.

### 2. Wrongful Levy Claim (Count III)

Defendants also move to dismiss Plaintiffs' wrongful levy claim brought pursuant to 26 U.S.C. § 7426. Plaintiffs allege that, pursuant to 26 U.S.C. § 6343(b)(1), they requested that the Government release levies and return property wrongfully imposed and collected. (Am.Compl.¶¶ 90–92.) If an individual believes that a levy against him or her was wrongful, his or her only recourse is to seek administrative review under 26 U.S.C. § 6343(b) within nine months or file suit in federal district court under § 7426(a)(1) within the same amount of time. *See United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 736, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). Section 7426 only waives the government's sovereign immunity, however, for a person "other than the person against whom is assessed the tax out of which the levy arose [.]" 26 U.S.C. § 7426(a)(1). The statute is strictly construed in order to preclude a waiver of sovereign immunity where the action is brought by the taxpayer. *Soffer v. United States,* No. 01 Civ. 0945(KMW) THK, 2002 WL 741653, at \* 4 (S.D.N.Y. Mar.20, 2002); *see also Dubay,* 1998 WL 1035429, at \*4. Accordingly, the United States has not consented to a wrongful levy action brought by Plaintiffs in federal district court, and so Plaintiffs' wrongful levy action (Count III) is dismissed.

### 3. Section 7432 Claim for Failure to Release a Lien (Count IV)

2007 WL 1238651, 99 A.F.T.R.2d 2007-2501, 2007-1 USTC P 50,506

Plaintiffs allege that an unknown officer or employee of the IRS failed to release a lien pursuant to 26 U.S.C. § 6325(a)(1) in violation of 26 U.S.C. § 7432(a). (Am.Compl.¶¶ 4, 94.) However, unlike in wrongful levy actions, Congress has expressly waived sovereign immunity for taxpayers alleging that an employee or official of the IRS did not release a lien pursuant to § 6325(a)(1). 26 U.S.C. § 7432(a). The Court accordingly has jurisdiction over Plaintiffs' § 7532 claim. The Government, presumably, moves to dismiss the claim pursuant to Rule 12(b)(6). However, since the Government did not brief the issue and makes only passing references to dismissing all of Plaintiffs' claims under Rule 12(b)(6), the Court will not grant Defendant's motion to dismiss Plaintiffs' § 7432(a) claim at this time.

### 4. *Section 7433* Claim for Unauthorized Collection Actions (Count V)

**\*8** Plaintiffs also bring a claim for unauthorized collection of taxes by individual IRS agents (Count V), alleging that IRS employees Susan Meredith, C. Sherwood, Jane Finnegan, R.M. Connolly, Susan Hansen, and Ronald Johnson violated 26 U.S.C. § 6325 by issuing unsupportable NFTLs and NOLs. (*See* Am. Compl. ¶ 98.) The United States consents to be sued by a taxpayer in district court in actions relating to the collection of federal taxes if "any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision of this title[.]" 26 U.S.C. § 7433(a). In order to bring a claim under § 7433 in district court, a plaintiff must first exhaust her administrative remedies or six months must have elapsed since she filed her administrative claim. *See* 26 U.S.C. § 7433(d)(1); 26 C.F.R. § 301.7433–1(e)(1); *Roberts v. I.R.S.,* 468 F.Supp.2d 644, 650 (S.D.N.Y.2006) ("failure to comply with the regulation deprives the federal district court of jurisdiction" (citing *Stephens v. United States,* 437 F.Supp.2d 106, 109 (D.D.C.2006))). Plaintiffs allege that the IRS has not responded to their claim made in a letter dated February 9, 2006, titled "Release of Liens/Levy; Request for Refund/Abatement of Improper Assessments or Liability; Attempt to Exhaust Administrative Remedies." (Am.Compl.¶¶ 68, 69.) Therefore, because no final agency decision exists for the court to review, Plaintiffs could not file a claim in this court until six months after they filed their administrative claim with the IRS. Plaintiffs filed this action on June 20, 2006, only four and a half months after filing their IRS claim. Accordingly, Plaintiffs failed to exhaust their administrative remedies on their § 7433 claim for the unauthorized collection of taxes, and so Count V is hereby dismissed.

### 5. Common Law Tort Claims

Plaintiffs' common law tort claims of fraud, negligence, and intentional infliction of emotional distress must also be dismissed for lack of subject matter jurisdiction. Although the Federal Torts Claims Act (FTCA), 28 U.S.C. §§ 2671 *et seq.,* provides an express waiver of sovereign immunity for the tortious acts or omissions of government employees acting within the scope of their office or employment, it specifically excludes tort claims "arising in respect to the assessment or collection of any tax." 28 U.S.C. § 2680(c). Because Plaintiffs' tort claims are based on the wrongful collection and/or assessment of taxes (Am.Compl.¶¶ 101–115, 120–124), the Court lacks subject matter jurisdiction over them. *See Weiner v. I.R.S., 986* F.2d 12, 13 (2d Cir.1993); *Webb v. Smith,* No. 97 CIV. 0787(MGC), 1997 WL 438794, at \*2–3 (S.D.N.Y. Aug.4, 1997). Thus, Plaintiffs' tort claims (Counts VI, VII, and IX) are hereby dismissed.

### B. Anti–Injunction Act and Declaratory Judgment Act

Although the Plaintiffs do not explicitly ask for an injunction or for a declaratory judgment, the Plaintiffs' Amended Complaint, read in conjunction with their opposition memorandum, may be interpreted to request injunctive and/or declaratory relief. The Government moves to dismiss on the grounds that, to the extent Plaintiffs seek injunctive or declaratory relief, their claims are barred by the Anti–Injunction Act and/or the Declaratory Judgment Act.

**\*9** The Anti–Injunction Act provides in relevant part: "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a). The purpose of the Act is both to protect the "Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference and to require that the legal right to the disputed sums be determined in a suit for refund." *Randell v. United States,* 64 F.3d 101, 106 (2d Cir.1995) (quoting *Bob Jones Univ. v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974)) (internal quotations omitted). However, a taxpayer may sue to restrain the assessment or collection of a tax where he or she shows: "(1) that 'it is clear that under no circumstances

could the Government ultimately prevail' on the tax liability and (2) that 'equity jurisdiction otherwise exists' because the taxpayer would suffer irreparable injury if collection were effected." *Randell,* 64 F.3d at 106–07 (quoting *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962)). Furthermore, the court must "take the view of the facts that is most liberal to the Commissioner, not to the taxpayer seeking injunctive relief." *Randell,* 64 F.3d at 107 (citations omitted). In the case at bar, Plaintiffs have made no allegations to satisfy this standard. Plaintiffs make no showing anywhere in their complaint or their brief that under no circumstances could the government prevail in this matter. Moreover, the Plaintiffs have not alleged or implied that the monies levied or the lien on Plaintiffs' property would cause them "irreparable harm." Because nothing in Plaintiffs' complaint of brief could be interpreted as satisfying either exception to the Anti–Injunction Act, any claim by Plaintiffs for injunctive relief is hereby dismissed.

The Declaratory Judgment Act expressly precludes federal courts from granting declaratory relief in cases "with respect to federal taxes." 28 U.S.C. § 2201(a). "Thus, whether or not that Act waives the sovereign immunity of the United States with respect to other types of actions, it explicitly excludes from any such waiver the power to declare rights or obligations with respect to federal taxes." *S.E.C. v. Credit Bancorp, Ltd.,* 297 F.3d 127, 137 (2d Cir.2002). Because Plaintiffs' claims all relate to the assessment or collection of federal taxes, they are dismissed to the extent they request declaratory relief.

### C. Constitutional Claims

Although Plaintiffs do not clearly state a count alleging any constitutional violations, they make statements in their Amended Complaint which may be construed to allege deprivations of their property in violation of the Fourth, Fifth, and Fourteenth Amendments. (Am.Compl.¶¶ 10, 12, 20–22.) To the extent Plaintiffs bring claims for violations of their constitutional rights to due process of law and to be free from unreasonable seizures, they are dismissed for failure to state a claim

upon which relief can be granted. Plaintiffs apparently claim that their due process rights were violated because no court ordered that the property in their bank accounts be conveyed to the IRS. (*Id.* ¶ 9.) Plaintiffs cite 26 U.S.C. § 7323, relating to judicial action to seize and enforce property subject to forfeiture, to support their allegation that the IRS failed to follow procedures mandated by statute with respect to the assessment and collection of income taxes. (*Id.* ¶ 11.) However, there is no requirement that the IRS or the United States obtain a court order before it can assess a tax, file a notice of federal tax levy, or begin collection actions, unless they are imposing a levy on a personal residence or entering private property for the purposes of collecting taxes. Neither of those exceptional circumstances apply to the case at bar. Plaintiffs further allege that the NOL issued to Fleet was defective because it was not accompanied by warrants of distraint or a notice of seizure. (*Id.* ¶¶ 20, 22.) However, warrants of distraint are no longer required under the statute authorizing the IRS to collect unpaid tax by a levy on property. *See* 26 U.S.C. § 6331(a); *see also Nat'l Bank of Commerce,* 472 U.S. at 721, 105 S.Ct. 2919, 86 L.Ed.2d 565 ("The constitutionality of the levy procedure ... 'has long been settled.' " (quoting *Phillips v. Comm'r,* 283 U.S. 589, 595, 51 S.Ct. 608, 75 L.Ed. 1289 (1931))); *Celauro v. United States,* 411 F.Supp.2d 257, 264–65 (E.D.N.Y.2006). Plaintiffs have therefore failed to state any constitutional claim upon which relief can be granted, and any due process or unreasonable seizure claims raised by Plaintiffs are hereby dismissed.

### IV. CONCLUSION

**\*10** For the foregoing reasons, Defendant's Motion to Dismiss [Doc. No. 19] is **granted in part** and **denied in part.** Counts II, III, V, VI, VII, and XI are hereby dismissed.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2007 WL 1238651, 99 A.F.T.R.2d 2007-2501, 2007-1 USTC P 50,506

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 2973967
United States District Court,
N.D. New York.

David B. SILIPIGNO, Plaintiff,
v.
UNITED STATES of America, Defendant.

1:15-CV-0017 (LEK/CFH)
|
Signed 07/12/2017

**Attorneys and Law Firms**

Lauren S. Owens, William J. Dreyer, Dreyer, Boyajian Law Firm, Albany, NY, for Plaintiff.

Stephen T. Lyons, U.S. Department of Justice, Washington, DC, for Defendant.

**MEMORANDUM-DECISION AND ORDER**

Lawrence E. Kahn, U.S. District Judge

**I. INTRODUCTION**

 *1 Plaintiff David B. Silipigno commenced this action against the United States on January 7, 2015, to recover tax refunds for the 2004 and 2005 tax years. Dkt. No. 1 ("Complaint") ¶ 1. Plaintiff seeks a refund for the 2004 tax year in the amount of $806,586, plus statutory interest, due to a net operating loss ("NOL") carryback from the 2009 tax year. Id. ¶ 13. He also seeks a refund for the 2005 tax year in the amount of $509,752, plus statutory interest, due to a NOL carryback from the 2007 tax year. Id. ¶ 13. [1]

[1]    The Complaint includes a third cause of action regarding Plaintiff's alleged entitlement to restitution. Id. at 6. However, Plaintiff consented to the dismissal of this claim. Dkt. No. 29 ("Plaintiff's Opposition") at 1.

On October 11, 2016, both parties moved for summary judgment. Dkt. No. 27 ("Plaintiff's Motion"); Dkt. No. 26 ("Defendant's Motion"); see also Dkt. No. 27-1 ("Plaintiff's Memorandum"); Dkt. No. 27-2 ("Plaintiff's Statement of Material Facts"); Dkt. No. 26-20 ("Defendant's Memorandum"); Dkt. No. 26-1 ("Defendant's Statement of Material Facts"). On November 29, 2016, the parties filed memoranda in opposition. Pl.'s Opp.; Dkt. No. 29-8 ("Plaintiff's Responsive Statement of Material Facts"); Dkt. No. 30 ("Defendant's Opposition"); Def.'s Opp., Ex. 1 ("Defendant's Responsive SMF"). The Government also filed a reply to Plaintiff's Opposition on December 8, 2016. Dkt. No. 34 ("Defendant's Reply"). [2] For the reasons stated below, Plaintiff's motion for summary judgment is denied, Defendant's motion for summary judgment is granted in part, and the Court dismisses Plaintiff's first claim for lack of subject matter jurisdiction.

[2]    The Government submitted a Second Responsive Statement of Facts in the same document as its Reply. To avoid confusion, the paragraphs beginning on page one of the Reply are cited as "Def.'s Second Responsive SMF ¶ _____."

**II. BACKGROUND**

Plaintiff is an individual taxpayer residing in Saratoga Springs, New York. Pl.'s SMF ¶ 1; Def.'s SMF ¶ 1. Since 1990, he has had a diverse business career, working for, owning, and investing in a number of businesses. Pl.'s SMF ¶ 2; Def.'s SMF ¶ 1; Pl.'s Responsive SMF ¶ 1. As relevant to the issues before the Court, Plaintiff was a consultant to First Guarantee Mortgage, LLC ("FGM"), a mortgage brokering company, from 2000 to 2008 or 2009. Pl.'s SMF ¶ 2; Def.'s SMF ¶ 1; Pl.'s Responsive SMF ¶ 1. He was the sole owner of Saratoga Venture Capital, LLC ("SVC"), a venture capital business, and Consumer Direct Marking ("CDM"), a telemarketing leads company. Pl.'s Responsive SMF ¶ 10; Def.'s Second Responsive SMF ¶ 10. He was also an investor, through contributions made by SVC and CDM, in Drug Risk Solutions, LLC ("DRS"), a drug testing company that filed for bankruptcy in 2006. Pl.'s Responsive SMF ¶ 11–12; Def.'s Second Responsive SMF ¶ 11–12.

**A. Tax Returns**

Plaintiff brought this action to recover tax refunds for the 2004 and 2005 tax years attributable to NOL carrybacks from the 2009 and 2007 tax years, respectively. Compl. ¶ 13. "Net operating loss carryback is a form of income averaging that permits a taxpayer to use current losses to reduce taxable income in prior years." In re First Cent. Fin. Corp., 269 B.R. 481, 488–89 (Bankr. E.D.N.Y. 2001), aff'd, 377 F.3d 209 (2d Cir. 2004). NOLs are regulated by 26 U.S.C. § 172. A claim for refund attributable to an NOL puts at least two tax returns at issue: The return for the

2017 WL 2973967, 120 A.F.T.R.2d 2017-5161

year in which the NOL occurred and the return for the year to which the NOL is being applied. Therefore, the tax returns directly relevant to Plaintiff's refunds are from the 2004, 2005, 2007, and 2009 tax years.

**\*2** Plaintiff timely filed (with extensions) his 2004 U.S. Individual Income Tax Return (Form 1040) on October 17, 2005. Pl.'s SMF ¶ 7; Def.'s Responsive SMF ¶ 7. Plaintiff reported $10,659,032 in total income and paid $2,536,431 in federal taxes. Dkt. No. 26-7, Ex. D2, at 2747–48.

Plaintiff timely filed (with extensions) his 2005 U.S. Individual Income Tax Return (Form 1040) on October 16, 2006. Pl.'s SMF ¶ 8; Def.'s Responsive SMF ¶ 8. Plaintiff reported $8,286,060 in total income and paid $2,630,185 in federal taxes. Dkt. No. 26-8, Ex. D3, at 2–3. [3] He also filed an Amended U.S. Individual Income Tax Return (Form 1040X) for the 2005 tax year on November 29, 2007, seeking a refund of $9,723. Def.'s SMF ¶ 6; Pl.'s Responsive SMF ¶ 6.

[3]     The cited page numbers for this Exhibit refer to those generated by the Court's electronic filing system ("ECF").

Plaintiff did not timely file (with extensions) his 2007 U.S. Individual Income Tax Return (Form 1040) on or before October 15, 2008. Def.'s SMF ¶ 5; Pl.'s Responsive SMF ¶ 5. He filed his Form 1040 for his 2007 taxes on October 4, 2010, claiming an NOL of $1,414,014. Def.'s SMF ¶ 5; Pl.'s Responsive SMF ¶ 5. He also timely filed an Amended U.S. Individual Income Tax Return (Form 1040X) on October 15, 2010, seeking a refund of $509,752 from his 2005 taxes attributable to his 2007 NOL. Id.

Plaintiff timely filed (with extensions) his 2009 U.S. Individual Income Tax Return (Form 1040) on October 15, 2010, claiming an NOL of $2,194,793. Def.'s SMF ¶ 4; Pl.'s Responsive SMF ¶ 4. He also timely filed an Application for Tentative Refund (Form 1045) on October 15, 2010, seeking a refund of $806,586 from his 2004 taxes attributable to his 2009 NOL. Def.'s SMF ¶ 4; Pl.'s Responsive SMF ¶ 4. This Form 1045 was the only document submitted by Plaintiff to the IRS that sought a refund of income taxes for the 2004 tax year. Def.'s SMF ¶ 4; Pl.'s SMF ¶ 4.

**B. IRS Audit**

On or about February 4, 2008, the Internal Revenue Service ("IRS" or "Service") initiated an audit of Plaintiff's taxes, in particular his Amended U.S. Individual Income Tax Return (Form 1040X) for the 2005 tax year, filed on November 29, 2007. Dkt. No. 26-15, Ex. F ("Donnelly Declaration"), ¶ 2. The examining officer was Anne Donnelly, an IRS revenue agent. Id. ¶ 1. As part of the audit, Donnelly communicated with Plaintiff's power of attorney, John Gilooly. Id. ¶ 3. Gilooly, a certified public accountant, had prepared tax returns for Plaintiff and several of Plaintiff's business interests for approximately twenty years. Pl.'s SMF ¶ 5; Def.'s SMF ¶ 5. The audit continued until September 8, 2009, when Donnelly suspended her work. Donnelly Decl., Ex. 1, at 8; [4] see also Pl.'s SMF ¶ 31; Def.'s Responsive SMF ¶ 31.

[4]     The cited page numbers for this Exhibit refer to those generated by the Court's electronic filing system ("ECF").

**C. Criminal Investigation**

In 2009, the United States Attorney's Office for the Northern District of New York ("USAO") initiated a criminal investigation into mortgage, bank, and tax fraud with respect to Plaintiff and FGM. Pl.'s SMF ¶ 19; Def.'s Responsive SMF ¶ 19. On June 9, 2009, the USAO, with the assistance of agents from the IRS and the Federal Bureau of Investigation, executed a search warrant on FGM's office in Saratoga Springs and Gilooly's offices. Def.'s SMF ¶ 9; Pl.'s SMF ¶ 9. The agents seized hundreds of boxes of documents, computers, servers, and other items from FGM. Pl.'s SMF ¶ 18; Def.'s Responsive SMF ¶ 18. The USAO also issued subpoenas to dozens of entities related to Plaintiff. Pl.'s SMF ¶ 19; Def.'s Responsive SMF ¶ 19. On September 8, 2009, the IRS suspended the audit to await the completion of the criminal investigation. Pl.'s SMF ¶ 31; Def.'s Responsive SMF ¶ 31.

**\*3** On or around January 13, 2011, the investigators served a subpoena on Gilooly, and he produced documents in or around March 2011. Pl.'s SMF ¶ 20; Def.'s Responsive SMF ¶ 20. [5]

[5]     The parties dispute the content of the documents that Gilooly produced in response to this subpoena. See Pl.'s SMF ¶ 20; Def.'s Responsive SMF ¶ 20.

On multiple occasions between 2011 and 2014, Plaintiff's representatives contacted the IRS—both through phone calls and in-person visits to the IRS office in Glen Falls, New York—to discuss Plaintiff's outstanding refund requests. Pl.'s SMF ¶ 34; Def.'s Responsive SMF ¶ 34. The IRS informed Plaintiff's representatives that the refund requests were being "held." Pl.'s SMF ¶ 34; Def.'s Responsive SMF ¶ 34.

In or around August 2014, the USAO declined to prosecute Plaintiff. Pl.'s SMF ¶ 21; Def.'s Responsive SMF ¶ 21. On or around December 11, 2014, Plaintiff's tax file was removed from the IRS's fraud suspense, and Agent Donnelly resumed her review of the file. Pl.'s SMF ¶ 32; Def.'s Responsive SMF ¶ 32; Donnelly Decl., Ex. 1, at 8. Plaintiff commenced this action soon thereafter on January 7, 2015.

## III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

### A. 2009 NOL Carryback for the 2004 Tax Year

**\*4** Under the doctrine of sovereign immunity, no suit may be brought against the United States unless it has explicitly consented by statute to be sued. United States v. Dalm, 494 U.S. 596, 608 (1990). When a statutory waiver of immunity exists, the government may establish the terms of its consent, with which a plaintiff must strictly comply. Lane v. Pena, 518 U.S. 187, 192 (1996). If such terms are not met, a court does not have jurisdiction over the suit—or specific claims therein—and it must be dismissed. F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).

For actions that seek the recovery of taxes alleged to have been erroneously or illegally assessed or collected by the United States, Congress has waived sovereign immunity through 28 U.S.C. § 1346. United States v. Forma, 42 F.3d 759, 763 (2d Cir. 1994). However, under 26 U.S.C. § 7422(a), a plaintiff must "duly file[ ]" a claim with the IRS before initiating an income tax refund action in federal court. See Dalm, 494 U.S. at 601 ("Despite its spacious terms, § 1346(a)(1) must be read in conformity with other statutory provisions which qualify a taxpayer's right to bring a refund sit upon compliance with certain conditions. The first is § 7422(a) ...."). The statute provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary [of the Treasury], according to the provisions of law ... and

the regulations of the Secretary established in pursuance thereof.

§ 7422(a).

The Government argues that Plaintiff failed, as required by § 7422(a) and the relevant implementing regulations, to duly file a claim for refund with respect to the 2009 NOL carryback for the 2004 tax year, and thus this Court lacks jurisdiction over this claim. Def.'s Mem. at 4–6. The Court agrees.

Regulations promulgated by the Department of the Treasury describe the manner in which a refund claim should be made. See 26 C.F.R. § 301.6402–3(a)(1) ( "In general, in the case of an overpayment of income taxes, a claim for credit or refund ... shall be made on the appropriate income tax return."). Because Plaintiff is seeking a refund of individual income tax, "a claim for refund shall be made on a Form 1040X ('Amended U.S. Individual Income Tax Return')." Id.; Weisman v. C.I.R., 103 F. Supp. 2d 621, 627 (S.D.N.Y. 2000).

It is undisputed that Plaintiff did not comply with Section 301.6402–3(a)(2) by filing a Form 1040X for the 2004 tax year with respect to the 2009 NOL carryback. Def.'s SMF ¶ 4; Pl.'s Responsive SMF ¶ 4. Instead, he filed a Form 1045 ("Application for Tentative Refund"), pursuant to 26 U.S.C. § 6411(a), which provides the right to apply for a tentative carryback adjustment. Def.'s SMF ¶ 4; Pl.'s Responsive SMF ¶ 4. The relevant provisions of law and the IRS's regulations could not be clearer in stating that Form 1045 "shall not constitute a claim for credit or refund" as required by § 7422(a). See § 6411(a) ("an application under this subsection shall not constitute a claim for credit or refund."); Treas. Reg. § 1.6411-1(b)(2) ( "An application for a tentative carryback adjustment does not constitute a claim for credit or refund.").

Nevertheless, Plaintiff argues that his Form 1045, coupled with additional written and oral submissions to the IRS, constitutes a timely informal claim that satisfies the jurisdictional requirement of § 7422(a). Pl.'s Mem. at 10–11. The Court disagrees.

**\*5** The informal claim doctrine permits a taxpayer's informal request, "i.e. one that does not comply with the formal requirements of the statute and regulations," to satisfy § 7422 under certain conditions. Sumrall v. C.I.R., 83 T.C.M. (CCH) 1405, at \*5 (T.C. 2002). The Supreme

Court first recognized this doctrine in United States v. Kales, 314 U.S. 186 (1941), and while "[t]here are no bright line rules as to what constitutes an informal claim," Sumrall, 83 T.C.M., at \*5, federal courts have generally required "three components to an informal claim." New England Elec. Sys. v. United States, 32 Fed. Cl. 636, 641 (1995) (citing Am. Radiator & Standard Sanitary Corp. v. United States, 162 Ct. Cl. 106 (1963)). "First, an informal claim must provide the Commissioner of the IRS with notice that the taxpayer is asserting a right to a refund. Second, the claim must describe the legal and factual basis for the refund. Finally, an informal claim must have some written component." Id.

"Numerous courts have held that an application for tentative refund [Form 1045] does not constitute an 'informal claim' for purposes of satisfying section 7422's administrative exhaustion requirement." McKenzie v. I.R.S., No. 12-cv-1336, 2013 WL 1181801, at \*6 (W.D. Pa. Mar. 20, 2013); see also Emax Fin. Grp., LCC v. United States V.I., No. 2009-cv-86, 2012 WL 1190470, at \*6 (D.V.I. Mar. 31, 2012) ("Numerous courts ... have rejected the argument that an application for a tentative carryback adjustment is an 'informal claim' for purposes of satisfying section 7422's administrative exhaustion requirement."); I.C.T.S. U.S.A., Inc., v. United States, No. 06-CV-6553, 2007 WL 512791, at \*2 (S.D.N.Y. Feb. 15, 2007) ("This argument [that an application for a tentative carryback adjustment may constitute an informal claim], if accepted, would not only contradict the plain meaning of the relevant regulations quoted above but would obliterate the distinction between a tentative application and a formal claim for a refund...."); Kirsh v. United States, 131 F. Supp.2d 389, 392 (S.D.N.Y. 2000) ("[C]ase law firmly supports the notion that Form 1045 does not provide timely informal notice for Form 1040X" (citing Rock v. United States, 279 F. Supp. 96, 98 (S.D.N.Y. 1968))), aff'd, 258 F.3d 131 (2d Cir. 2001). Given the clarity of the statutory language and this case law, the Court will not consider Plaintiff's Application for Tentative Refund (Form 1045) in its analysis of whether he filed a timely informal claim. Emax Fin. Grp., 2012 WL 1190470, at \*7. [6]

[6]     Plaintiff argues that the IRS did not provide "notice and a timely opportunity to file a Form 1040X," because the IRS did not respond to Plaintiff's Form 1045. Pl.'s Opp. at 6. The IRS typically responds to a Form 1045 within ninety days of submission,

but the IRS is not required to do so. See § 6411(b) ("Within a period of 90 days from the date on which an application for a tentative carryback adjustment is filed ... the Secretary shall make, *to the extent he deems practicable in such period*, a limited examination of the application...." (emphasis added)); see also Comm'r v. Van Bergh, 209 F.2d 23, 25 (2d Cir. 1954) ("It will be observed that the Commissioner's action not only is described as a 'tentative carry-back adjustment', but that he need not make his 'limited examination' at all except 'to the extent he deems practicable' within the ninety days."). As discussed above, the relevant statutory and regulatory language could not be clearer in stating that Form 1045 does not constitute a proper, formal claim for refund. The IRS provides notice to all taxpayers through these documents. Cf. Thrif-Tee, Inc. v. United States, 492 F. Supp. 530, 534 (W.D.N.C. 1979) ("It was not necessary for the Plaintiff to await action by the Secretary on its application for tentative carryback adjustment to file its claim for refund. Such claim could have been filed at any time without regard to action or lack of action on the carryback application.").

**\*6** Plaintiff has not presented any evidence that he submitted relevant written correspondence (other than the Form 1045) to the IRS between October 15, 2010, the date he filed his Form 1040 for the 2009 tax year, and October 15, 2013, the date after which a claim for refund attributable to the 2009 NOL is time barred. [7] Plaintiff's correspondence with the IRS in 2015 and 2016, Pl.'s Opp. at 4, is irrelevant because it occurred after the statute of limitations on his refund claim had run and after Plaintiff had commenced this lawsuit. There is no indication in the communication between the IRS and Plaintiff that the IRS was aware of "the legal and factual basis" for Plaintiff's refund claim before the filing of his Complaint or the running of the statute of limitations. See Pl.'s Opp., Ex. C, at 1–2. [8]

[7]    The applicable period of limitations to file a claim for refund relating to an overpayment of taxes attributable to an NOL carryback is provided in 26 U.S.C. § 6511(d)(2). As relevant to the facts before the Court, a taxpayer must file such a claim within the "period which ends 3 years after the time prescribed by law for filing the return (including extensions thereof) for the taxable year of the net operating loss ... which results in [the] carryback." § 6511(d)(2)(A).

[8]    The cited page numbers for this Exhibit refer to those generated by the Court's electronic filing system ("ECF").

The oral communication between Plaintiff's representatives and the IRS is similarly insufficient to qualify as a timely informal claim. Plaintiff's representative, Terry DeLong, testified that he spoke to the IRS on the phone and visited its office multiple times between 2011 and 2014. Pl.'s Mem, Ex. Q ("DeLong Deposition"), at 78–79. However, DeLong did not testify that he had any substantive conversations with the IRS that would have notified it of the "legal and factual basis" of the claim for refund. When asked about his conversations with the IRS, he testified, "But I mean, we really got nothing, every time we called, we got nothing." Id. at 83. In any event, an informal claim must have a written component, which Plaintiff has not presented, and there is no evidence that the IRS documented these conversations. See Emax Fin. Grp., 2012 WL 1190470, at \*5 ("In United States v. Kales, 314 U.S. 186 (1941), the Supreme Court established the general parameters of an informal claim for a tax refund: (1) the claim must be in writing...."); Pinckes v. United States, 7 Cl. Ct. 570, 571 (1985) ("[U]ndocumented oral statements are insufficient.").

Since Plaintiff did not duly file a formal or informal claim for refund regarding his 2009 NOL carryback as applied to the 2004 tax year, this Court lacks jurisdiction over this claim and it must be dismissed.

### B. 2007 NOL Carryback for the 2005 Tax Year

There is no dispute regarding the Court's jurisdiction over Plaintiff's claim for refund due to an NOL that occurred in 2007, which Plaintiff elected to carryback to his 2005 income taxes. As noted above, IRS regulations direct individual taxpayers to make a claim for refund on Form 1040X. 26 C.F.R. § 301.6402–3(a)(1). Plaintiff timely filed a Form 1040X on October 15, 2010, seeking a refund of his 2005 taxes due to an NOL generated in 2007. Def.'s SMF ¶ 5; Pl.'s Responsive SMF ¶ 5.

With regard to the merits of Plaintiff's claim, "the burden of proof is on the taxpayer to prove an overpayment of tax and the amount he is entitled to recover." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993); see also Zeeman v. United States, 394 F.2d 861, 865 (2d Cir. 1968) ("It was the well-established rule when

the appellant began this suit that the burden of showing
her right to carryback her loss ... would be on her.");
Michael I. Saltzman & Leslie Book, IRS Practice and
Procedure ¶ 1.04[2] (2d ed. 2005). However, a plaintiff
may shift the burden of proof to the Government "with
respect to any factual issue related to a taxpayer's tax
liability if they maintained adequate records, satisfied
applicable substantiation requirements, cooperated with
[the IRS], and introduced during the court proceeding
credible evidence on the factual issues." Tilman v. United
States, 644 F. Supp.2d 391, 398 (S.D.N.Y. 2009) (quoting
Gutierrez v. Comm'r, 86 T.C.M. (CCH) 611, at *2 (T.C.
2003)).

 *7 Plaintiff argues that his burden does not apply to the
income taxes he paid for the 2005 tax year, because the IRS
may no longer assess previously undiscovered deficiencies
against him regarding his 2005 income taxes due to the
expiration of the relevant statute of limitations. Pl.'s Mem.
at 5–9. This is not correct.

A claim for refund based on an NOL puts at least two tax
returns at issue: The return for the year in which the NOL
occurred and the return for the year to which the NOL is
being applied. Plaintiff has put his 2005 income taxes at
issue by seeking a refund from the taxes he paid for 2005.
Case law is clear that time limitations on the IRS's ability
to assess previously undiscovered deficiencies do not affect
its—and this Court's—duty to determine whether a refund
is properly due. The Supreme Court settled this issue in
Lewis v. Reynolds, 284 U.S. 281 (1932), which courts have
applied consistently since. In Lewis, the Supreme Court
stated, "[T]he ultimate question presented for decision,
upon a claim for refund, is whether taxpayer has overpaid
his tax. This involves a redetermination of the entire tax
liability. While no new assessment can be made, after the
bar of the statute has fallen, the taxpayer, nevertheless,
is not entitled to a refund unless he has overpaid his
tax." Id. at 283 (emphasis added); see also Fisher v.
United States, 80 F.3d 1575, 1581 (Fed. Cir. 1996) ("Lewis
and Dysart together stand for the proposition that the
government may offset against a tax refund claim any
additional amounts the taxpayer owes with respect to
the tax shown on the return, even though the statute of
limitations would bar assessing the additional amount
owed."); Dysart v. United States, 340 F.2d 624, 628 (Ct.
Cl. 1965) ("It is not enough that [the taxpayer] can prevail
on the particular items on which he sues, for he may have
underpaid with respect to other components entering into

that tax.... His entire tax liability under the particular tax
return is therefore open for redetermination."); Saltzman
¶ 11.02[1][a] ("Under the principles of Lewis v. Reynolds,
the Service is permitted to reduce the amount of the
taxpayer's refund by the correct tax for the year, even if the
Service can no longer assess the amount of any deficiency
it may have determined to be due."). Plaintiff bears the
burden of proof that the taxes he paid in 2005 and the loss
he claimed in 2007 are correct.

The Government raises two deficiencies with regard to
Plaintiff's tax returns: (1) the inclusion of $4,510,050 in
expenses for "cost of goods sold" on Plaintiff's 2005
Schedule C for his mortgage consultancy business, and (2)
the loss of Plaintiff's $2,129,876 investment in DRS, which
created the NOL on his 2007 return. Def.'s Mem. at 16–
21. [9]

[9]   Since both parties moved for summary judgment,
      the Court "must evaluate each party's motion on its
      own merits, taking care in each instance to draw all
      reasonable inferences against the party whose motion
      is under consideration." Schwabenbauer v. Bd. of Ed.
      of City Sch. Dist. of City of Olean, 667 F.2d 305,
      314 (2d Cir. 1981). Because this section considers the
      Government's argument that Plaintiff did not provide
      proper support for his 2005 or 2007 tax returns, Def.'s
      Mem. at 16–21, "the Court is obligated to draw all
      factual inferences in favor of" Plaintiff, Reeves, 530
      U.S. at 150.

 *8 On his original 2005 tax return, Plaintiff subtracted
$4,510,050 from his gross business income as a mortgage
consultant for "cost of goods sold." Dkt. No. 26-8, Ex.
D3, at 6–7. He did not amend these expenses on his
Form 1040X for the 2005 tax year, filed on October 15,
2010. Dkt. No. 26-11, Ex. D6, at 2. [10] Under 26 C.F.R.
§ 1.61–3(a), "[t]he cost of goods purchased for resale
in a taxpayer's business [may be] subtracted from gross
receipts to compute gross income." Newman v. Comm'r,
80 T.C.M. (CCH) 661, at *2 (T.C. 2000). However,
Plaintiff did not submit any records to justify these
expenses or why he is entitled to include such expenses
on his personal tax return. Plaintiff admits that he does
not have an ownership interest in FGM, the entity that
directly incurred these expenses; instead, he claims that
he is entitled to subtract FGM's cost of goods from his
business income because of an expense-sharing agreement
between FGM and other entities he owned. Dkt. No.

27-18, Ex. O ("Silipigno Deposition"), at 25. Plaintiff did not submit any records that verify this arrangement.

10    The cited page numbers for this Exhibit refer to those generated by the Court's electronic filing system ("ECF").

Taxpayers must keep sufficient records to substantiate the cost of goods sold. § 6001; Newman, 80 T.C.M. (CCH) at *2. Without such records, Plaintiff is not able to demonstrate that his 2005 taxes were filed correctly. Wages v. Comm'r, T.C.M. (RIA) 2017-103, at *19–20 (T.C. 2017) ("All we have before us are petitioners' unsubstantiated claims in their petition, brief, and other filings that they incurred certain expenses. These unsupported statements are insufficient to justify even the roughest estimate of their true expenses."); WB Acquisition, Inc. v. Comm'r, 101 T.C.M. (CCH) 1157, at *20 (T.C. 2011) ("Petitioners have not provided receipts, invoices, canceled checks, or any other evidence to prove the nature of these [cost-of-goods] expenses or whether such expenses were paid. Accordingly, petitioners have failed to meet their burden of proof....").

Plaintiff's record keeping was clearly complicated by the fact that federal investigators seized thousands of records from FGM and Gilooly on June 9, 2009. Pl.'s SMF ¶ 18; Def.'s Responsive SMF ¶ 18. Plaintiff raised this fact multiple times in his papers, even after he consented to the dismissal of his claim for equitable restitution. E.g., Pl.'s Opp. at 11. Nevertheless, he does not present an argument as to its relevance, possibly because "equitable considerations" will not affect Plaintiff's burden except in the most extraordinary circumstances. See Fisher, 80 F.3d at 1581; Andrew Crispo Gallery, Inc. v. Comm'r, 16 F.3d 1336, 1341 (2d. Cir. 1994). Plaintiff has not attempted to show that his experience was extraordinary or even to delineate what documents might have been lost in the 2009 raid, which might justify their absence from the record. In addition, Plaintiff failed to produce records during the initial phase of the IRS audit in 2008, more than a year prior to the raid, when asked for documentation to support these expenses. Donnelly Decl. ¶ 5. Plaintiff also reaffirmed the validity of his 2005 tax return under the penalty of perjury when he filed his Form 1040X for 2005 on October 15, 2010, more than a year after the raid occurred. 11

11    The parties dispute whether additional documents were taken from Plaintiff's possession in 2011, when Gilooly responded to a subpoena issued by the USAO. Pl.'s SMF ¶ 20; Def.'s Responsive SMF ¶ 20. However, the Government submitted the only sworn statement from a person with personal knowledge of the documents produced in response to the 2011 subpoena. See Dkt. No. 26-19, Ex. J, ("Carruthers Declaration") ¶ 4. IRS Special Agent Julie Carruthers states in this declaration that "[t]he documents obtained pursuant to the subpoena served on Mr. Gilooly in January 2011 were only copies of some of Mr. Silipigno's previously filed tax returns." Id. Plaintiff did not submit any sworn statement from a person with personal knowledge of these documents to dispute this declaration. Therefore, the Court shall credit Carruthers's description of the documents produced. Fed. R. Civ. P. 56(c)(4); Deshais v. Consol. Rail Corp., 956 F. Supp. 230, 238 (N.D.N.Y. 1997) ("It is well settled that affidavits of persons without personal knowledge of the facts, inadmissible hearsay statements, and conclusory allegations are not sufficient to defeat a properly supported summary judgment motion.").

**\*9** While the Court is sympathetic to the large number of years over which the investigation spanned, Plaintiff is not excused from his responsibility to maintain sufficient records to justify his returns. Given the complete lack of records submitted in support of Plaintiff's 2005 "cost of goods" expenses, no reasonable jury could find that Plaintiff was entitled to subtract these expenses from his business income. Therefore, Plaintiff's 2005 income taxes were under-reported based on the inclusion of $4,510,050 in cost-of-goods expenses on his Schedule C for his mortgage consultancy business.

Although the IRS is time barred from assessing this deficiency, it may be used to offset any refund to which Plaintiff is entitled. Even if the Court were to find that he is entitled to carryback the $1,414,014 in net operating losses from 2007 to 2005, the deficient $4,510,050 in gross income would negate any refund to which Plaintiff would be entitled. Thus, the Court will not address whether Plaintiff's 2007 NOL was calculated properly. In any event, Plaintiff has failed to demonstrate that a reasonable jury could return a verdict on his behalf. Therefore, Plaintiff's Motion must be denied and Defendant's Motion, with respect to the requested refund from Plaintiff's 2005 taxes, must be granted.

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 2973967, 120 A.F.T.R.2d 2017-5161

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Second Cause of Action (Dkt. No. 1) is **DISMISSED for lack of subject matter jurisdiction**; and it is further

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No. 26) is **GRANTED in part**; and it is further

**ORDERED**, that Plaintiff's Motion for summary judgment (Dkt. No. 27) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court enter judgment for the Defendant and close this case; and it is further

**ORDERED**, that the Clerk serve copies of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

### All Citations

Slip Copy, 2017 WL 2973967, 120 A.F.T.R.2d 2017-5161

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

1999 WL 250746
United States District Court, W.D. New York.

Warren Richard FOLLUM, Plaintiff,
v.
UNITED STATES of America,
Commissioner of the IRS, Defendant.

No. 98–CV–0126A.
|
March 5, 1999.

**Attorneys and Law Firms**

Warren Richard Follum, Pro Se, Lewiston, for the
Plaintiff.

Jane B. Wolfe, Esq., Assistant United States Attorney,
Buffalo, William M. Kostak, Esq., Tax Division Dept. of
Justice, Washington, DC, for the Government.

## DECISION AND ORDER

ARCARA, District J.

## INTRODUCTION

*1 Plaintiff Warren Richard Follum commenced this
action *pro se* on February 24, 1998, against the United
States, seeking relief under 28 U.S.C. § 2410. Plaintiff
claims that the United States Internal Revenue Service
("IRS") has improperly assessed that he owes taxes for the
tax years 1990, 1991, 1992, and 1993. More specifically,
plaintiff claims that the tax assessments regarding 1990
and 1991 are barred by the three-year statute of limitations
in 26 U.S.C. § 6501(a) and that any levy or lien claimed
by the United States under 26 U.S.C. § 6502 regarding
those assessments is therefore invalid. He further claims
that all the disputed assessments should be barred because
the IRS improperly conducted a second investigation of
his records, without notice, in violation of 26 U.S.C. §
7605(b). Plaintiff asks that the Court enjoin the IRS from
placing a lien on plaintiff's property for the purpose of
collecting the disputed tax assessments.

On March 10, 1998, plaintiff filed a motion for a
preliminary injunction, seeking an order from the Court
enjoining the IRS from "proceeding with tax levy/liens

against the plaintiff for the tax years 1990, 1991, 1992 and
1993 until a final disposition" of this case on the merits.
In a Decision and Order filed April 29, 1998, the Court
denied plaintiff's motion for a preliminary injunction.

On May 11, 1998, the United States moved to dismiss
the action, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)
(6), or in the alternative, for summary judgment, pursuant
to Fed.R.Civ.P. 56. On that same day, May 11, 1998,
plaintiff moved to amend his complaint. By Order filed
May 18, 1998, the Court granted plaintiff's motion to
amend his complaint and denied, without prejudice,
the United States' motion to dismiss and for summary
judgment.

On May 19, 1998, the Clerk of Court filed plaintiff's
amended complaint. The amended complaint is similar
to the first complaint, except: (1) instead of naming the
United States as a defendant, the amended complaint
identifies the defendant as "United States of America,
Commissioner of the IRS;" and (2) while plaintiff's
original complaint did not specify any real or personal
property to which his quiet title action related, the
amended complaint specifies such personal property (two
motor vehicles and his wages from his employer).

On June 15, 1998, the United States moved to dismiss the
amended complaint, pursuant to Fed.R.Civ.P. 12(b)(1)
and 12(b)(6), or in the alternative, for summary judgment,
pursuant to Fed.R.Civ.P. 56. Plaintiff filed a response to
the motion on July 15, 1998. The United States filed a
reply on March 1, 1999.

Because in their motion papers both parties have referred
to and included evidence outside the pleadings, the
Court will consider the United States' motion as one
for summary judgment rather than a motion to dismiss.
After carefully reviewing the papers, the Court grants the
United States summary judgment.

## DISCUSSION

A. *Summary Judgment Standard*
*2 Summary judgment is appropriate if the moving party
can demonstrate that there is no genuine issue as to any
material fact and that it is entitled to a judgment as a
matter of law. Fed.R.Civ.P. 56(c). In other words, the
moving party in entitled to summary judgment where the

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.   1

record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). Once a motion for summary judgment has been made and supported, the nonmoving party may not rest on mere allegations, but must set forth proof of specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party. *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985). At the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In other words, on a motion for summary judgment, a court cannot try issues of fact, it can only determine whether there are issues to be tried. *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987). Finally, the Supreme Court has directed that allegations contained in a *pro se* complaint are to be held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520 (1972). Accordingly, when a party seeks summary judgment against a *pro se* litigant, the Court must afford the nonmovant special solicitude. *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

## B. *Lack of Jurisdiction Over Merits of the Tax Assessments*

In order to maintain an action against the United States, the plaintiff must demonstrate that the United States has waived its sovereign immunity and consented to the suit. *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 475 (1994); *United States v. Mitchell,* 445 U.S. 535, 538 (1980). A waiver of sovereign immunity must be unequivocally expressed in an Act of Congress and cannot be implied. *Lehman v. Nakshian,* 453 U.S. 156, 160–61 (1981). Such waivers are strictly construed in favor of the sovereign. *Lane v. Pena,* 518 U.S. 187, 192 (1996).

Plaintiff, through this suit, is attempting to challenge the underlying merits of the tax assessments made against him for the tax years 1990, 1991, 1992 and 1993. Generally, however, tax assessments may only be contested in the United States Tax Court or, upon payment of the assessment, in a refund action in federal district court or the Court of Claims. *Enochs v. Williams Packing &*

*Navigation Co.,* 370 U.S. 1, 7 (1962); *Falik v. United States,* 343 F.2d 38, 40–43 (2d Cir.1965).

Plaintiff attempted to proceed in the Tax Court, but his petition was dismissed for lack of jurisdiction. The Tax Court found that the petition was untimely under 26 U.S.C. § 6213(a) because it was not filed within 90 days after the IRS mailed notices of deficiency to plaintiff at the address shown on his most recently filed income tax return, and that the address was the proper address for mailing such notices, because at the time of mailing, the IRS had no reason to know plaintiff had, in fact, moved without leaving a forwarding address. The Tax Court rejected plaintiff's contention that the IRS failed to show that it had sent the deficiency notices to plaintiff by certified mail. The Tax Court's dismissal was affirmed by the Second Circuit Court of Appeals. *Follum v. Commissioner of Internal Revenue,* 128 F.3d 118 (2d Cir.1997).

**\*3** At the present time, plaintiff is barred from pursuing a refund action in this Court. Under 26 U.S.C. § 7422(a), plaintiff may bring a refund action in district court only after paying his tax liability in full and filing a claim for refund with the IRS. *See also Flora v. United States,* 362 U.S. 145 (1960). To date, plaintiff has not fully paid his assessed tax liabilities for 1990, 1991, 1992 and 1993, nor has he filed a claim for refund. Accordingly, the United States has not waived its sovereign immunity for a refund action and the Court lacks jurisdiction to entertain any part of the plaintiff's suit that directly challenges the underlying merits of the tax assessments made against plaintiff for the 1990, 1991, 1992 and 1993 tax years.

## C. *Anti–Injunction Act*

Plaintiff is barred by the Anti–Injunction Act, 26 U.S.C. § 7421(a), from obtaining injunctive relief in this case. The Anti–Injunction Act provides that, with certain statutory exceptions not applicable here, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person ...." "The object of § 7421(a) is to withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes." *Williams Packing,* 370 U.S. at 5. Under the Anti-injunction Act, the United States is permitted "to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the

United States is assured of prompt collection of its lawful revenue." *Id.* at 7; *see also Bob Jones Univ. v. Simon,* 416 U.S. 725, 736–37 (1974).

In *Williams Packing,* 370 U.S. at 7, the Supreme Court did enunciate a narrow exception to the bar against suits to enjoin the collection of taxes. The Court stated that the attempted collection may be enjoined "if it is clear that under no circumstances could the Government ultimately prevail" and "if equity jurisdiction otherwise exists." Thus, under *Williams Packing,* a district court may enjoin the collection of a tax if: (1) the disputed tax assessment is unquestionably incorrect; (2) the plaintiff will suffer irreparable injury if forced to pay; and (3) the plaintiff is without an adequate remedy at law.

The Court finds that the *Williams Packing* exception to the Anti–Injunction Act does not apply in this case. First, plaintiff has failed to show that under no circumstances could the IRS ultimately prevail. In fact, as discussed in more detail *infra,* plaintiff's arguments that the disputed tax assessments are incorrect are totally without merit.

Second, plaintiff has failed to show that he will suffer irreparable harm if forced to pay the disputed tax assessments. Plaintiff claims he will suffer irreparable harm if the injunction is not granted because he is already in a precarious financial position and will have to declare personal bankruptcy if he is forced to pay the taxes. However, other than his own affirmation in support of his preliminary injunction motion, plaintiff has failed to provide any proof of his financial situation. For example, plaintiff has not provided any documentation regarding his income, his assets or his liabilities. He states that he must pay child support and that his family will suffer if he is forced to pay the tax, but he provides no documentation regarding the child support payments and gives no specifics as to his family situation or his family's other sources of income. Plaintiff also states without support that he will be unable to secure a loan to pay the taxes. There is no indication in his papers that he ever tried to secure such a loan. Nor has he provided any information regarding his credit status. The fact that plaintiff may have a difficult time paying the tax and may have to declare personal bankruptcy does not constitute the type of irreparable harm contemplated by the Supreme Court in *Williams Packing.*

**\*4** Third, plaintiff has an adequate remedy at law—he may fully pay his assessed tax liability, file a claim for refund with the IRS and, if the claim is denied (or not acted upon within six months), he may file a complaint in district court or the Court of Claims for a refund. If he is successful in such an action, he will be refunded the payment plus interest. *See United States v. Dema,* 544 F.2d 1373, 1377 (7th Cir.1976), *cert. denied,* 429 U.S. 1093 (1977). The Court further notes that plaintiff could have pursued his case in Tax Court without first paying the tax, but lost that right when he neglected to provide a forwarding address when he moved. Equity does not favor a plaintiff who puts himself in a precarious situation through his own actions or omissions.

In sum, as the Second Circuit stated in *Falik,* "a person whose sole claim is that a federal tax assessment was not well grounded in fact and law must 'pay first and litigate later.' " *Falik,* 343 F.2d at 42 (quoting *Flora,* 362 U.S. at 164).

### D. *Lack of Jurisdiction Over Suit for Wrongful Levy*

To the extent that plaintiff's action may be viewed as suit for wrongful levy against the United States, the Court lacks jurisdiction over such a suit because 26 U.S.C. § 7426(a) states, in pertinent part, that "[i]f a levy has been made on property or property has been sold pursuant to a levy, any person (*other than the person against whom is assessed the tax out of which such levy arose* ) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States ...." (emphasis added). As specifically stated in § 7426(a), the United States has not waived its sovereign immunity to be sued by the person against whom is assessed the tax out of which the levy arose. Therefore, a wrongful levy suit brought by such person against the United States or its agencies must be dismissed for lack of jurisdiction. *McGinness v. United States,* 90 F.3d 143, 145 (6th Cir.1996); *Shannon v. United States,* 521 F.2d 56, 59 (9th Cir.1975). Accordingly, in this case, the Court lacks jurisdiction to entertain a wrongful levy action by plaintiff against the United States with regard to the levying of plaintiff's property for satisfaction of the tax assessments for the 1990, 1991, 1992 and 1993 tax years.[1]

---

[1]      In addition, the IRS has not yet levied against any property or wages of the plaintiff to satisfy the

assessed tax liabilities of the plaintiff for the 1990, 1991, 1992 and 1993 tax years, and the plaintiff has not alleged that the IRS has done so. Accordingly, a suit for wrongful levy, even if otherwise proper, would not be ripe for adjudication until a levy is made. *See* 26 U.S.C. § 7426(a).

### E. *Lack of Jurisdiction Over Quiet Title Action*

As stated above, in order to maintain an action against the United States, plaintiff must demonstrate that the United States has waived its sovereign immunity and consented to the suit. Here, plaintiff has styled his amended complaint as an action to quiet title against the United States under 28 U.S.C. § 2410. Section 2410 provides that "the United States may be named a party in any civil action or suit in any district court ... to quiet title to ... real or personal property on which the United States has or claims a mortgage or other lien." Under § 2410, the United States has expressly waived its sovereign immunity for actions to quiet title to property on which it has a lien. [2]

[2]     In his amended complaint, plaintiff identifies the personal property in which the United States may have or claim a tax lien—two motor vehicles and the plaintiff's wages from his employer. While it is settled law that present (earned but not yet paid) wages can be subject of a quiet title action, it is unclear whether future (not yet earned) wages can be the subject of a quiet title action. In *Harrell v. United States,* 13 F.3d 232, 234 (7th Cir.1993), the Seventh Circuit held that a taxpayer "has no property right in wages that he has not yet earned, his entitlement to them being contingent on his continued employment. Without a colorable title, [the plaintiff] has no basis for a quiet-title action." (citations omitted).

**\*5**  It is well established, however, that a taxpayer may not use § 2410 to circumvent the Anti–Injunction Act and attack the validity of an underlying tax assessment. *Laino v. United States,* 633 F.2d 626, 633 n.8 (2d Cir.1980) (the Anti-injunction Act cannot be circumvented by coloring a complaint as an action to quiet title where the plaintiff clearly seeks to attack the validity of the underlying assessment); *Falk,* 343 F.2d at 41; *see also Hughes v. United States,* 953 F.2d 531, 538 (9th Cir.1992); *Lonsdale v. United States,* 919 F.2d 1440, 1442–43 (10th Cir.1990); *Fisher v.. United States,* 860 F.Supp. 680, 683 (D.Ariz.1994). Allowing taxpayers to challenge the substantive validity of tax assessments simply by styling their complaints as quiet title actions would render the Anti–Injunction Act illusory. Accordingly, "courts have

rejected attempts by taxpayers to invoke the waiver of sovereign immunity for the purpose of circumventing the time honored 'pay first, litigate later' rule, by framing their contest to the Government's tax assessment or collection actions in the guise of a quiet title action." *Lonsdale,* 919 F.2d at 1443 (citations omitted).

A narrow exception to this restriction allows a party to use § 2410 to challenge "procedural irregularities" in the assessment process. *Johnson v. United States,* 990 F.2d 41, 42 (2d Cir.1993); *Kulawy v. United States,* 917 F.2d 729, 733 (2d Cir.1990). The scope of this exception includes "procedural violations arising from assessment, levy and seizure." *Guthrie v. Sawyer,* 970 F.2d 733, 735 (10th Cir.1992). A procedural claim is one which does not challenge the "existence or extent of the substantive tax liability." *Id.* at 736.

In his amended complaint, plaintiff claims that the tax assessments for 1990 and 1991 are barred by the three-year statute of limitations in 26 U.S.C. § 6501(a), and asks that the defendant be permanently enjoined from collecting the tax assessments for those years. He further claims that all the disputed assessments are invalid because the IRS improperly conducted a second investigation of his records, without notice, in violation of 26 U.S.C. § 7605(b), and asks that defendant be enjoined from placing liens on his property to collect on the disputed assessments. [3] When plaintiff's claims are boiled down, it is clear that what he is attempting to do in this lawsuit is to attack the validity of the underlying tax assessments. This is not a case where the taxpayer is simply asking the Court to require the IRS to correct a procedural irregularity. To the contrary, what plaintiff is asking the Court to do here is to declare that the disputed tax assessments are invalid and to permanently enjoin the IRS from collecting on them. Such a challenge is clearly substantive rather than procedural in nature and therefore cannot be brought under § 2410. [4]

[3]     Section 7605(b) provides, in pertinent part, that "only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the [IRS], after investigation, notifies the taxpayer in writing that an additional inspection is necessary."

[4]     In his response to the motion for summary judgment, plaintiff claims that the disputed tax assessments are

also invalid because: (1) the assessment officer failed to sign the record of assessment; and (2) the IRS failed to give him timely notice of the tax demand. These claims, however, were not raised in the amended complaint and therefore may not be considered. The Court is mindful of plaintiff's *pro se* status, but he has already been given an opportunity to amend his complaint. In any event, plaintiff's claims that the tax assessments are invalid are without merit for the reasons stated by the United States in its reply brief.

### F. Lack of Substantive Merit

Even if it is assumed *arguendo* that plaintiff's claims in this case deal with "procedural irregularities" rather than the substantive validity of the underlying tax assessments, and that the Court therefore has jurisdiction under § 2410 to hear the claims, summary judgment in favor of the defendant is still appropriate because plaintiff's claims are contrary to the evidence in the record and therefore lack any substantive merit.

**\*6** Official acts of the IRS are presumed to be procedurally correct. *United States v. Ahrens,* 530 F.2d 781, 785–86 (8th Cir.1976). The presumption is defeated only by a showing of clear evidence to the contrary. *Id.* Plaintiff has failed to make such a showing.

Plaintiff argues that the tax assessments made against him for the 1990 and 1991 tax years were untimely. This argument, however, is not supported by the facts in the record.

On December 1, 1992, plaintiff filed a Form 5213 with the IRS. The Form 5213 was signed by the plaintiff and dated October 16, 1992. Filing the Form 5213 is the means by which a taxpayer elects to postpone, for a certain number of years, the determination as to whether a certain activity is engaged in for profit, for purposes of applying 26 U.S.C. § 183. [5] The Form 5213 provides that if a taxpayer makes the election, "[t]he determination is postponed until the close of: (a) the 6th tax year, for an activity that consists mainly of breeding, training, showing, or racing horses; or (b) the 4th year for any other activity, after the tax year in which the taxpayer first engaged in the activity." *See* Item No. 20, Exhibit 9.

[5]      Specifically, the Form 5213 is the IRS form for taxpayers to make the election as provided under 26 U.S.C. §§ 183(e)(1) and (3). Section 183 is the Internal Revenue Code section that generally

disallows deductions for activities not engaged in for profit (which are more commonly known as "hobby losses").

26 U.S.C. § 183(e) provides as follows:

(e) Special Rule.—

(1) In general.—*A determination as to whether the presumption provided by subsection (d) applies with respect to any activity shall, if the taxpayer so elects, not be made before the close of the fourth taxable year (sixth taxable year, in the case of an activity described in the last sentence of such subsection) following the taxable year in which the taxpayer first engages in the activity.* For purposes of the preceding sentence, a taxpayer shall be treated as not having engaged in an activity during any taxable year beginning before January 1, 1970.

(2) Initial period.—If the taxpayer makes an election under paragraph (1), the presumption provided by subsection (d) shall apply to each taxable year in the 5–taxable year (or 7–taxable year) period beginning with the taxable year in which the taxpayer first engages in the activity, if the gross income derived from the activity for 3 (or 2 if applicable) or more of the taxable years in such period exceeds the deductions attributable to the activity (determined without regard to whether or not the activity is engaged in for profit).

(3) Election.—An election under paragraph (1) shall be made at such time and manner, and subject to such terms and conditions, as the Secretary may prescribe.

(4) Time for assessing deficiency attributable to activity.—*If a taxpayer makes an election under paragraph (1) with respect to the activity, the statutory period for the assessment of any deficiency attributable to such activity shall not expire before the expiration of 2 years after the date prescribed by law (determined without extensions) for filing the return of tax under chapter 1 for the last taxable year in the period of 5 taxable years (or 7 taxable years) to which the election relates. Such deficiency may be assessed notwithstanding the provisions of any law or rule of law which would otherwise prevent such an assessment.* (emphasis added).

On the Form 5213, the plaintiff described the activity for which he elected to postpone the "for profit" determination as "Tournament Sport Fishing—The activity consists of fishing the various tournaments with the intent of earning income from these events." *Id.* The

Follum v. U.S., Not Reported in F.Supp.2d (1999)
Case 6:18-cv-00135-DNH-TWD   Document 10   Filed 10/04/18   Page 43 of 95
1999 WL 250746, 83 A.F.T.R.2d 99-1622, 99-1 USTC P 50,395

plaintiff also indicated on this form that the first tax year in which he engaged in this activity was 1990. *Id.*

Under 26 U.S.C. § 183(e)(4), if a taxpayer elects to postpone the determination of whether an activity is engaged in for profit, then the statutory period for making assessments with regard to that activity does not expire until two years after the end of the five-taxable-year period to which the election applies. Because the plaintiff elected to postpone the determination of whether his "tournament sport fishing" activity was engaged in for profit, beginning with the 1990 tax year, the statute of limitations for making tax assessments with regard to that activity for the 1990 and 1991 tax years did not expire until April 15, 1997. [6] The Notice of Deficiency for tax year 1990 and the Notice of Deficiency for tax years 1991, 1992 and 1993 were both dated November 3, 1995. In both of these Notices, the IRS explained that the adjustments in the plaintiff's tax liability for these years were the result of the disallowance of certain Schedule C losses attributable to the plaintiff's "tournament sport fishing" activity which the IRS had determined was not engaged in for profit. On April 8, 1996, the IRS made tax assessments against the plaintiff based on these adjustments. Accordingly, these tax assessments were not made after the expiration of the statute of limitations as alleged by plaintiff in his amended complaint.

[6]   The Court calculated this date in the following manner. Plaintiff's election applied for the tax years beginning 1990 through 1994. The tax return for 1994 was due, without extensions, on April 15, 1995. Under 26 U.S.C. § 183(e)(4), the statute of limitations for making assessments with regard to that activity for the years 1990 through 1994 remained open for the greater of the period of time as provided in 26 U.S.C. § 6501 or two years after April 15, 1995.

Plaintiff argues that the filing of the Form 5213 did not constitute a "waiver" of the statute of limitations because the IRS did not sign the Form 5213. There was no requirement, however, for the IRS to sign the Form 5213 in order for it to be effective. As stated above, the Form 5213 is the IRS form used by taxpayers to make the election under 26 U.S.C. § 183(e)(1) to postpone the determination as to whether a certain activity is engaged in for profit. This election is one statutorily available to the taxpayer, and the IRS has no power or authority to prevent a taxpayer from making this election. Thus, once a taxpayer signs and files a Form 5213, the three-

year statute of limitations under § 6501(a) is automatically extended by operation of law. *See* 26 U.S.C. § 183(e)(4). There is no requirement that the Form 5213 be signed by the IRS, as the election is made by the taxpayer unilaterally.

 **\*7** Plaintiff next argues that the disputed tax assessments are void because the IRS made a second inspection of his books and records, without his knowledge or consent, in violation of 26 U.S.C. § 7605(b). Plaintiff alleges in his amended complaint that the "IRS considers an audit with a taxpayer and the examination of the taxpayer's books and records for the year or years under examination completed when the taxpayer is notified in writing of an adjustment to his tax liability .... Therefore the first examination and determination of a tax deficiency for years 1990, 1991, 1992 and 1993 took place in April and June of 1994 and was concluded when the IRS sent the plaintiff the thirty (30) day letter dated 21 June 1994 ." [7] He also alleges that the IRS mailed him a letter dated August 29, 1995, instructing him to appear for an office audit and to bring all records needed to verify his Schedule C business expenses for 1990, 1991, 1992 and 1993. He further alleges that the IRS sent a thirty-day letter to him on September 27, 1995 proposing adjustments to his federal income taxes for years 1990, 1991, 1992 and 1993. From these facts, plaintiff argues that the IRS improperly undertook a second examination of his books and records, and that this second inspection renders the underlying tax assessments null and void. The Court finds this argument without merit.

[7]   The term "thirty-day letter" refers to a Notice of Proposed Deficiency. The thirty-day letter referenced by plaintiff here was actually dated June 24, 1994 rather than June 21, 1994.

As stated above, on December 1, 1992, plaintiff filed with the IRS a Form 5213 dated October 12, 1992, electing to postpone a determination of whether his "tournament sport fishing" activity was engaged in for profit until after the close of the 1994 tax year. By doing so, the plaintiff consented to have his books and records inspected with regard to that activity after the expiration of the five-year period to which the election applied.

By filing the Form 5213, plaintiff prevented the IRS from closing its first investigation with regard to his "tournament sport fishing" activity. [8] Therefore, the IRS

did not improperly make a second inspection of the plaintiff's books and records when it sent him the letter dated August 29, 1995, requesting him to appear and bring documentation to support his Schedule C deductions for his "tournament sport fishing" activity for the tax years 1990, 1991, 1992 and 1993. The IRS was simply continuing the inspection of that activity for those tax years that it had originally begun in 1992.[9]

8      Plaintiff does not allege in his amended complaint that the IRS sent him a Notice of Deficiency (commonly known as a "ninety-day letter") prior to the mailing of the second "thirty-day letter" in September 1995. Only a ninety-day letter makes a final adjustment to a taxpayer's tax liability (because a thirty-day letter only gives notice regarding a proposed adjustment). In any event, 26 U.S.C. § 183(e)(4) provides that if a taxpayer makes an election to postpone the "for profit" determination under § 183, the deficiency ultimately arising as a result of that postponement "may be assessed notwithstanding the provisions of any law or rule of law which would otherwise prevent such assessment." *See also* 26 U.S.C. § 6212(c)(2)(C) (provides a cross-reference to § 183(e)(4) as an *exception* to the general rule in § 6212(c)(1), which states that the IRS may not determine any additional deficiency for the same tax year once the IRS mails a ninety-day letter to a taxpayer and the taxpayer timely files a petition with the Tax Court).

9      Plaintiff further alleges in his amended complaint that the IRS improperly issued an administrative summons upon him, citing *United States v. Powell,* 379 U.S. 48 (1964). However, plaintiff has not alleged any further facts or presented any evidence which supports the contention that the IRS issued an administrative summons in this case. In any event, even if a summons was issued, such fact would have no bearing on the outcome of this case.

CONCLUSION

This Court is without jurisdiction to consider plaintiff's attack on the merits of the disputed tax assessments. Further, the Court finds that in light of the lack of probative contrary evidence, plaintiff's filing of a Form 5213 effectively extended the statute of limitations period and allowed the IRS to continue its inspection of plaintiff's books and records. Therefore, the Court finds that there is no genuine issue as to any material fact and summary judgment is appropriate in this case. Accordingly, the Clerk of Court is hereby ordered to enter judgment in favor of defendant and to take all steps necessary to close the case.

**\*8**  IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 250746, 83 A.F.T.R.2d 99-1622, 99-1 USTC P 50,395

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 2357761
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

John Glenn Barry METCALF, Sr., Plaintiff,

v.

IRS, Federal Payment Levy Program, Defendant.

No. 12–CV–2239 (ARR)(LB).
|
June 19, 2012.

**Attorneys and Law Firms**

John Glenn Barry Metcalf, Sr., Brooklyn, NY, pro se.

## *MEMORANDUM AND ORDER*

ROSS, District Judge.

**\*1** On May 2, 2012, plaintiff, appearing *pro se,* brought this action seeking tax refunds for 2009, 2010, and 2011 from the Internal Revenue Service ("IRS"). The Court grants plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a), solely for the purpose of this order, and directs plaintiff to submit an amended complaint within thirty (30) days of the date of this order that properly sets forth his claim and a basis for this Court's jurisdiction.

## *STANDARD OF REVIEW*

Under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action is "(I) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." However, a court must construe a *pro se* litigant's pleadings liberally. *See Chavis v. Chappius,* 618 F.3d 162, 171 (2d Cir.2010). A *pro se* complaint should not be dismissed without granting a *pro se* plaintiff leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (*per curiam* ).

Although courts must read *pro se* complaints with "special solicitude" and interpret them to raise the "strongest arguments that they suggest," *Triestman v. Federal Bureau of Prisons,* 470 F.3d 471, 474–76 (2d Cir.2006) (internal quotation marks omitted), a complaint must plead enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 446 U.S. 662, 671 (2009) (citation omitted). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly,* 550 U.S. at 555). Similarly, a complaint is insufficient to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly,* 550 U.S. at 557).

Finally, Metcalf must establish that the court has subject matter jurisdiction over the action. *See, e.g., Rene v. Citibank NA,* 32 F.Supp.2d 539, 541–42 (E.D.N.Y.1999) (dismissing *pro se* complaint for lack of subject matter jurisdiction). Federal jurisdiction is available only when a "federal question" is presented, 28 U.S.C. § 1331, or when the plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. "[S]ubject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived." *United States v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)). When a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety. *Id., see also* Fed.R.Civ.P. 12(h)(3).

## *BACKGROUND*

**\*2** The complaint is very brief. Plaintiff's claim, in its entirety, is:

> Briefly, the IRS inspite [sic] of receiving evidence package to the contrary that proves taxpayer's innocen[c]e, and full compliance with the law, the IRS has refuse to return all funds illegally confiscated by unfair audit asse [ss]ment and wrongfully stopped payment of 2009, 2010, and 2011 tax returns (see attached docu[ ]ments).

Plaintiff states that the remedy he seeks is for the "IRS to take plaintiff-out-of-collections and return all funds illegally confiscated plus interest, because the IRS has been harassing plaintiff since 2009 and denying taxpayer rightful returns, after correct and accurate information was given." Complaint at 2. The documents which are attached to the complaint are a "Business Certificate" for a company named "Mettown Records," the significance of which is unexplained, and a copy of a complaint that plaintiff prepared for the New York State Court of Claims seeking "earned income tax credit," tax refunds for the years 2009 to 2011 totaling $7,000, and an exemption from income tax because he is a Moorish American.[1] *See* Complaint at 3.[2]

---

[1]    To the extent that plaintiff seeks to argue that he is a "Moor by Birth and Exempt" from the payment of income taxes, Complaint at 3, such claim is without merit. The payment of income taxes is "not optional," *United States v. Schiff,* 876 F.2d 272, 275 (2d Cir.1989), and there is no question that all citizens working in the United States are required to pay taxes. *See* 26 U.S.C. §§ 1, 1441(a), (b); 26 C.F.R. § 1.1–1 (2007); *Schiff v. United States,* 919 F.2d 830, 832–33 (2d Cir.1990); *Bey v. City of New York Dep't of Corr.,* No. 97 Civ. 4866(RPP), 1997 WL 576090, at * 2 (S.D.N.Y. Sept.17, 1997).

[2]    Plaintiff has not provided page numbers for the exhibits, so the Court uses the page numbers assigned by its electronic filing system.

---

### DISCUSSION

A. *The United States is the Proper Defendant*

As a preliminary matter, the United States should be substituted for the IRS as the proper party in this action.

Congress has not authorized federal court actions against the IRS. *See Blackmar v. Guerre,* 342 U.S. 512, 515, 72 S.Ct. 410, 96 L.Ed. 534 (1952) (holding that Congress must give express authorization for an agency to be sued in its own name); *Gavigan v. Comm'r,* No. 3:06–CV–942 (PCD), 2007 WL 1238651, at * 4 (D.Conn. April 27, 2007) ("The IRS itself is an improper party to this action because Congress has not authorized suits in federal courts against the Department of Treasury.").

B. *Action for Refund against the United States*

It is well established that under the doctrine of sovereign immunity, no person may sue the federal government absent its consent to be sued. *See F.D.I.C. v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *see also Morpurgo v. Bd. of Higher Educ. of N.Y.,* 423 F.Supp. 704 (S.D.N.Y.1976). In consenting to be sued, the government may establish terms of its consent. *See United States v. Mitchell,* 445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). If the delineated terms are not met, a court does not have jurisdiction over the action. *See id.* at 538.

"Through 28 U.S.C. § 1346, Congress has broadly consented to suits [seeking a refund of taxes allegedly erroneously assessed or collected] against the U.S. in district courts." *United States v. Forma,* 42 F.3d 759, 763 (2d Cir.1994). Prior to initiating an action in federal court pursuant to 28 U.S.C. § 1346, 26 U.S.C. § 7422(a) requires that a claim be "duly filed" with the IRS.[3] *See United States v. Felt & Tarrant Mfg. Co.,* 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931). First, 26 U.S.C. § 7422(a) requires that a taxpayer must file a "claim for refund or credit" with the IRS before bringing suit in district court. The claim may be made by filing a Form 1040X by informal request for a refund. *See United States v. Forma,* 42 F.3d 759, 767 n. 13 (2d Cir.1994) ("The Supreme Court and lower courts have consistently held that an informal claim is sufficient to satisfy the statutory prerequisite of ... I.R.C. § 7422(a).") (internal quotation and citation omitted). *In United States v. Kales,* 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941), the Supreme Court established general parameters for an informal notice of claim: (1) the claim must be in writing and (2) the writing must "fairly advis[e] the Commissioner of the nature of the taxpayer's claim." *Id.* at 194.

---

[3]    Section 7422(a) states in pertinent part:

Metcalf v. IRS, Not Reported in F.Supp.2d (2012)

2012 WL 2357761, 109 A.F.T.R.2d 2012-2715

> (a) No suit ... shall be maintained in any court for the recovery of ... any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund ... had been duly filed.

**\*3** Second, a taxpayer cannot file suit against the IRS "before the expiration of 6 months from the date of filing the claim," *see* 26 U.S.C. § 6532(a)(1); *see also Harriman v. I.R.S,* 233 F.Supp.2d 451, 459 (E.D.N.Y.2002) ("[A] claimant must give the Internal Revenue Service at least six months to process a claim prior to commencing suit in federal court"). Third, a taxpayer must pay the full amount of the assessment before he may bring an action seeking a refund of taxes allegedly erroneously assessed or collected under § 1346(a)(1). *Flora v. United States,* 362 U.S. 145, 177, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) ("[C]orrectly construed, [§ 1346(a)(1) ] requires full payment of the assessment before an income tax refund suit can be maintained in a Federal District Court."); *see also United States v. Forma,* 42 F.3d at 763.

Here, it does not appear that plaintiff has complied with the jurisdictional prerequisite under 26 U.S.C.A. § 7422 of filing a valid claim with the Secretary of the Treasury. Plaintiff states that he provided to the I.R.S. an "evidence package ... that proves taxpayer's innoce[c]e," Complaint at 1. He does not state if he filed a claim seeking a refund, to whom he addressed the claim, when he made it, or what response, if any, he received. Without compliance with Section 7422(a), this Court is without subject matter jurisdiction over plaintiff's complaint.

## CONCLUSION

Accordingly, although the Court does not have subject matter jurisdiction over the complaint as currently presented, in light of this Court's duty to liberally construe *pro se* complaints, plaintiff is given 30 days leave to file an amended complaint. *Cruz v. Gomez,* 202 F.3d 593 (2d Cir.2000). Plaintiff is directed that his amended complaint must provide a basis for this Court's subject matter jurisdiction and comply with Rule 8(a) of the Federal Rules of Civil Procedure.

The amended complaint must be captioned as an "Amended Complaint" and bear the same docket number as this Order and name the United States as the proper defendant. No summons shall issue at this time and all further proceedings shall be stayed for 30 days. Plaintiff may attach copies of any document filed with the IRS or correspondence from the IRS in support of his amended complaint. If plaintiff fails to amend his complaint within 30 days as directed by this Order, the Court shall dismiss this complaint for lack of subject matter jurisdiction and judgment shall enter. If submitted, the amended complaint will be reviewed for compliance with this Order and for sufficiency under 28 U.S.C. § 1915(e)(2)(B). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 2357761, 109 A.F.T.R.2d 2012-2715

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 1750469
United States District Court, D. Connecticut.

Adrien JOHNSON, Plaintiff,
v.
IRS, Defendant.

No. 3:18-cv-278 (VAB)(WIG)
|
Signed 02/26/2018

**Attorneys and Law Firms**

Adrien Johnson, Bridgeport, CT, pro se.

### RECOMMENDED RULING OF DISMISSAL

WILLIAM I. GARFINKEL, United States Magistrate
Judge

**\*1** Plaintiff Adrien Johnson filed this action against
defendant IRS [1] on February 15, 2018. Now before the
Court is Plaintiff's motion for leave to proceed *in forma
pauperis* pursuant to 28 U.S.C. § 1915. [Doc. # 19]. For
the reasons that follow, Plaintiff's motion is granted, but
the Court recommends this matter be dismissed pursuant
to 28 U.S.C. § 1915(e)(2)(B).

[1]    The Court assumes Plaintiff intends to refer to the
Internal Revenue Service with the use of the acronym
"IRS."

Applications to proceed *in forma pauperis* require a
two-step process of review by the district court. *See
Bey v. Syracuse Univ.*, 155 F.R.D. 413, 413 (N.D.N.Y.
1994). First, the Court must determine whether the
litigant qualifies to proceed *in forma pauperis* based upon
economic status. 28 U.S.C. § 1915. Based upon review
of Plaintiff's financial affidavit, the motion to proceed *in
forma pauperis* is granted.

Second, the Court must determine whether the cause
of action is frivolous, malicious, or without merit. 28
U.S.C. § 1915(e)(2)(B). This Court "*shall dismiss* the case
at any time if the court determines that ... the action
(i) is frivolous or malicious; (ii) fails to state a claim on
which relief may be granted; or (iii) seeks monetary relief
against a defendant who is immune from such relief." *Id.*

(emphasis added). The term "frivolous" is not intended to
be insulting or demeaning; it is a term of art that has a
precise meaning. A claim is said to be frivolous if it does
not have an arguable basis in law or fact. *See Neitzke v.
Williams*, 490 U.S. 319, 325 (1989). The Court, by using
this term as required, does not intend to diminish what the
plaintiff has experienced.

When a plaintiff appears *pro se*, the complaint must be
construed liberally in the plaintiff's favor and must be
held to a less stringent standard than formal pleadings drafted
by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Estelle
v. Gamble*, 429 U.S. 97, 106 (1976). It is well established
that "[t]he power to dismiss *sua sponte* must be reserved
for cases in which a *pro se* complaint is so frivolous that,
construing the complaint under the liberal rules applicable
to *pro se* complaints, it is unmistakably clear that the court
lacks jurisdiction or that the claims are lacking in merit."
*Mendlow v. Seven Locks Facility*, 86 F. Supp. 2d 55, 57 (D.
Conn. 2000).

Here, the complaint alleges that Plaintiff should have
received tax checks, but someone stole them and threw
them away. Plaintiff's suit against the IRS fails for several
reasons. First, the IRS is not an entity that can be named
as a defendant in a law suit under the circumstances
Plaintiff alleges here. *See Roberts v. I.R.S.*, 297 Fed.Appx.
63, 65 (2d Cir. 2008) (explaining that the IRS, including
IRS employees acting in their official capacities, "are
immune from suit under the doctrine of sovereign
immunity"). Read liberally, Plaintiff's complaint may
plead an action for a refund of taxes. The IRS itself,
however, is immune from tax refund actions. *Williams
v. U.S. Dept. of Treasury*, No. 07-cv-212C, 2013 WL
7121192, at \* 3, (W.D.N.Y. Jan. 29, 2013). While the
United States may be sued for refund of federal taxes, such
suits are "jurisdictionally proper only where a taxpayer
has paid the tax at issue, and has filed a refund claim
which has been denied by the IRS." *Id.* at \*3, 4. When,
as here, a plaintiff does not show or allege that a claim
was filed and denied, the district court lacks subject matter
jurisdiction over any claim against the United Stated for
a refund of taxes. *See id.* at \*5. Therefore, the complaint
should be dismissed. *See also Dubay v. I.R.S.*, No. CIV.
3:96CV1399 AHN, 1997 WL 76577, at \*3 (D. Conn. Feb.
7, 1997) (dismissing a refund action for lack of subject
matter jurisdiction when the plaintiff did not "fulfill the
applicable preconditions").

**\*2** Further, the complaint does not allege any facts that would allow the Court to determine that the IRS committed any wrongful conduct in this case. Even construing the complaint liberally, the Undersigned cannot determine the legal basis for this action. The complaint fails to contain information sufficient to provide "a fair understanding of what the plaintiff is complaining about and ... whether there is a legal basis for recovery." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). Because the complaint does not, as it must, put the defendant on notice of the allegations against it, it should be dismissed for failing to state a claim on which relief can be granted.

For the reasons set forth above, the Court recommends that this matter be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). This is a Recommended Ruling. *See* Fed. R. Civ. P. 72(b)(1). Any objection to this Recommended Ruling should be filed within 14 days after service. *See* Fed. R. Civ. P. 72(b)(2). Failure to timely object will preclude appellate review. *Impala v. United States Dep't of Justice*, 670 Fed.Appx. 32, 32 (2d Cir. 2016).

SO ORDERED, this 26ᵗʰ day of February, 2018, at Bridgeport, Connecticut.

**All Citations**

Slip Copy, 2018 WL 1750469, 121 A.F.T.R.2d 2018-1262

---

End of Document

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

Dubay v. I.R.S., Not Reported in F.Supp. (1997)

1997 WL 76577, 79 A.F.T.R.2d 97-1238

1997 WL 76577
United States District Court, D. Connecticut.

Richard M. DUBAY, Plaintiff,

v.

INTERNAL REVENUE SERVICE, Defendant.

Civ. No. 3:96cv1399(AHN).
|
Feb. 7, 1997.

*RULING ON MOTION TO DISMISS*

NEVAS, District Judge.

**\*1** This is an action for refund of a tax penalty assessed and collected by the named defendant, the Internal Revenue Service ("IRS"). The Government has moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that the court does not have subject matter jurisdiction. For the following reasons, the motion to dismiss [doc. # 4] is GRANTED.

*STANDARD*

On a motion to dismiss for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), the allegations of plaintiff's complaint must be accepted as true. *Cruz v. Beto,* 405 U.S. 319, 322 (1972); *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir. 1992). In general, courts construe complaints broadly and liberally in conformity with the principles set out in Fed. R. Civ. P. 8(f), but "argumentative inferences favorable to the pleader will not be drawn." 5A C. Wright & A. Miller, Federal Practice and Procedure § 1350 at 218-19 (1990 & Supp. 1991). The requirement of construing the complaint liberally is essential when the plaintiff is pro se. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972). On a motion to dismiss, the party asserting subject matter jurisdiction bears the burden of proof. *Thomson v. Gaskill,* 315 U.S. 442, 446 (1942); *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir. 1994). Lastly, dismissals for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) should not be predicated upon the merits of the claim. *Exchange National Bank of Chicago v. Touche Ross & Co.,* 554 F.2d 1126, 1130-31 (2d Cir. 1976).

*FACTS*

Richard M. Dubay ("Dubay"), the plaintiff, alleges that the IRS illegally levied one of his bank accounts in New Jersey. Dubay claims that the IRS incorrectly determined that he had filed a frivolous tax return and owed a penalty. Dubay does not specify either the tax year involved or the amount of the penalty. Dubay seeks the return of the levied property, monetary compensation for his trouble and the imprisonment of the agents responsible. The Government asserts that on June 19, 1995, Dubay was assessed, pursuant to 26 U.S.C. § 6702, a $500 penalty for filing a frivolous income tax return for the 1994 tax year. On August 16, 1996, subsequent to the filing of Dubay's complaint in this action, the IRS collected, by levy, the entire penalty plus the interest owed thereon. It does not appear that Dubay filed an administrative claim for refund prior to bringing this action.

*DISCUSSION*

The Government contends that the court lacks subject matter jurisdiction because the IRS is not a suable entity. The Government argues that federal government agencies cannot be sued directly unless Congress has explicitly authorized suit against the agency itself. Further, the Government maintains that, even if plaintiff's complaint is construed as an action against the United States, dismissal is warranted because the federal government has not waived sovereign immunity under the circumstances alleged by plaintiff. Essentially, the Government claims that the plaintiff's complaint should be dismissed because he has failed to comply with the statutory prerequisites to a refund suit.

**\*2** In response, the plaintiff claims that the IRS acted improperly in levying his property and that the IRS violated, *inter alia,* the Due Process Clause of the Constitution, U.S. Const., amend. XIV, § 5. Further, the plaintiff asserts that he would like to sue each agent responsible as an individual.

*I. The IRS As A Proper Defendant*
The IRS, as a federal agency, is not an entity subject to suit in its own name and, technically, plaintiff's complaint

Dubay v. I.R.S., Not Reported in F.Supp. (1997)

1997 WL 76577, 79 A.F.T.R.2d 97-1238

could be dismissed upon that ground. *Blackmar v. Guerre,* 342 U.S. 512 (1952); *Krouse v. United States Government Treasury Dep't Internal Revenue Service,* 380 F. Supp. 219, 221 (C.D. Cal. 1974).* However, most courts interpret a suit against the IRS as effectively a suit against the United States. *See, e.g., Posey v. United States Dep't of Treasury,* 156 B.R. 910, 917 (W.D.N.Y. 1993); *Provenza v. Rinaudo,* 586 F. Supp. 1113, 1117 (D. Md. 1984) (citing *Dugan v. Rank,* 372 U.S. 609, 613 (1963)). Because the plaintiff is proceeding pro se, the court construes the complaint liberally and does not view the pleading error as dispositive. *See Platsky v. Central Intelligence Agency,* 953 F.2d 26, 28 (2d Cir. 1991) (reminding district courts to apply a more lenient standard in assessing the sufficiency of a pro se complaint than they apply when assessing a complaint submitted by counsel). Accordingly, the court will not dismiss the action on this ground but will determine whether the United States can be sued given the circumstances presented here.

## II. *Waiver of Sovereign Immunity*

As a sovereign, the United States "may only be sued to the extent that it has waived sovereign immunity by enacting a statute consenting to suit." *Kulawy v. United States,* 917 F.2d 729, 733 (2d Cir. 1990) (citing *United States v. Sherwood,* 312 U.S. 584 (1941)). In order for a suit against the United States to stand, the pleader must demonstrate that there are statutes which (1) confer subject matter jurisdiction upon the court before which the suit is brought and (2) waive the sovereign immunity of the United States for the type of action sought to be maintained. *See Krouse,* 380 F. Supp. at 221 (citing *United States v. Alabama,* 313 U.S. 274 (1941); *Sherwood,* 312 U.S. 584 (1941); *United States v. Shaw,* 309 U.S. 495 (1940)).

The plaintiff asserts jurisdiction pursuant to 18 U.S.C. § 241 ("Conspiracy Against Rights"), 26 U.S.C. § 7214 ("Offenses by Officers and Employees of the United States"), 28 U.S.C. § 2410 ("Actions Affecting Property on Which United States has a Lien"), and 26 I.R.C. § 7421 ("Prohibition of Suits to Restrain Assessment or Collection"). While none of these statutes suffice to grant the court subject matter jurisdiction, in the spirit of construing a pro se plaintiff's complaint liberally, the court will explore whether other statutes provide jurisdiction. *See Platsky,* 953 F.2d at 28 (2d Cir. 1991).

In general, the subject matter jurisdiction of a district court in cases relating to tax matters is governed by 28 U.S.C. § 1346(a)(1) which provides, in relevant part, that "[t]he district courts shall have original jurisdiction ... [of] any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority." Section 1346 "requires full payment of the assessment [[[including penalties and interest] before an income tax refund suit can be maintained in a Federal District Court." *Flora v. United States,* 362 U.S. 145, 177 (1960); *see also Magnone v. United States,* 902 F.2d 192 (2d Cir.), *cert. denied,* 498 U.S. 853 (1990). However, it has not been conclusively determined whether this statute requires full payment to be made before a complaint can be filed or whether it is sufficient if, as here, the assessment is collected after suit is instituted. Despite this ambiguity and because of the plaintiff's pro se status, the court determines that the collection of the penalty after the plaintiff filed suit satisfies the requirement of section 1346. Accordingly, the court may have jurisdiction to hear plaintiff's claim if there is a statute in which the United States has waived sovereign immunity for the type of action presented here and if all the preconditions of suit have been met.

**\*3** The United States has waived sovereign immunity for some types of actions relating to the assessment, payment and collection of income taxes and penalties. *See* 26 U.S.C. § 7421 et seq. ("Subchapter B-Proceedings by Taxpayers and Third Parties"). However, there are preconditions which must be fulfilled before a suit may be brought in federal district court under this statute.

Civil actions for a tax refund are governed by 26 U.S.C. § 7422. This section provides that a suit cannot be maintained "for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority ... until a claim for refund or credit has been duly filed with the Secretary." 26 U.S.C. § 7422. Here, the plaintiff has failed to fulfill the applicable preconditions. He did not bring a claim for refund to the IRS directly and, therefore, cannot avail himself of the waiver of sovereign immunity under section 7422 to support his assertion that a federal district court has jurisdiction over his claim. *See Magnone,* 902 F.2d at 193 (2d Cir. 1990).[1]

**Dubay v. I.R.S., Not Reported in F.Supp. (1997)**
Case 6:18-cv-00135-DNH-TWD    Document 10    Filed 10/04/18    Page 52 of 95
1997 WL 76577, 79 A.F.T.R.2d 97-1238

1   While the plaintiff's failure to bring a claim for a refund prior to instituting this action is dispositive, the court will, nonetheless, briefly address the other issues raised by the plaintiff in his response to the Government's motion to dismiss. First, the plaintiff indicates a desire to sue the IRS agents involved in his case in their individual capacities. However, under 26 U.S.C. § 7422(f)(1) a suit may be maintained only against the United States and not against any officer or employee of the United States. Thus, the court would not have subject matter jurisdiction in a case under section 7422 against the individual IRS agents. Second, the court observes that, to the extent the plaintiff's claims can be considered a tort action, they are barred under the Federal Tort Claims Act. This statute does not waive sovereign immunity for

any "claim arising in respect of the assessment or collection of any tax ...." 28 U.S.C. § 2680(c). Finally, the Court notes that the plaintiff's allegations relating to a violation of the federal constitution do not articulate a basis for finding a constitutional injury.

*CONCLUSION*

For the reasons stated above, the Government's motion to dismiss [doc. # 4] is GRANTED.

**All Citations**

Not Reported in F.Supp., 1997 WL 76577, 79 A.F.T.R.2d 97-1238

---

End of Document                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.    3

2017 WL 5634680
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Kelly BLOUNT, Plaintiff,

v.

Mark MOCCIA; William Puskas; Jason Korpolinski;
Stewart A. Lieber; Michael Gee; Robert Regnier;
Javier Valentin; Lieutenant Bhoj; Officer O'Rourke;
Jessica Groppe; Robert T. Johnson; Sean
Marynes; the City of New York, Defendants.

1:16-cv-4505-GHW
|
Signed 11/21/2017

**Attorneys and Law Firms**

Kelly Blount, Elmira, NY, pro se.

Megan Patricia Conger, Daniel Louis Passeser, Suzanna
Publicker Mettham, New York City Law Department,
Melissa Kim, NYC Law Department, Office of
Corporation Counsel, New York, NY, for Defendants.

## OPINION AND ORDER

GREGORY H. WOODS, United States District Judge

**\*1** Plaintiff Kelly Blount was arrested and indicted in
2012 for robbery and other related crimes. Three years
later, the charges against him were dismissed. Plaintiff
filed this action against several members of the New
York City Police Department (the "NYPD Defendants"),
members of the Bronx District Attorney's Office (the
"D.A. Defendants"), and the City of New York, alleging
violations of his constitutional rights in connection with
the prosecution of the criminal charges against him. In
his second amended complaint, Plaintiff expressly pleads
a claim for malicious prosecution under 42 U.S.C. § 1983
("section 1983"). The Court also construes the second
amended complaint to suggest a due process claim under
section 1983, *Monell* liability, and claims for intentional
infliction of emotional distress and *respondeat superior*
liability under New York state law.

Defendants moved to dismiss the second amended
complaint for failure to state a claim under Rule
12(b)(6). Because the D.A. Defendants are entitled to
absolute immunity, the claims against them are dismissed.
Plaintiff's federal claims against the other defendants
are also dismissed, and the Court declines to exercise
supplemental jurisdiction over Plaintiff's state law claims.
Defendants' motion to dismiss is therefore GRANTED.

## I. BACKGROUND [1]

[1]     Unless otherwise noted, the facts are taken from the
        second amended complaint or Plaintiff's opposition
        to Defendant's motion, and are accepted as true for
        the purposes of this motion. *See, e.g.*, *Chambers v.
        Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002);
        *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir.
        2013) ("A district court deciding a motion to dismiss
        may consider factual allegations made by a *pro se*
        party in his papers opposing the motion."). However,
        "the tenet that a court must accept as true all of the
        allegations contained in a complaint is inapplicable
        to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662,
        678 (2009).

### A. The July 31, 2012 Armed Robbery

Shortly after midnight in the morning hours of August
1, 2012, Plaintiff's brother, Jesse Blount, was arrested in
connection with the armed robbery of two victims that
had occurred just hours before on July 31, 2012. Plaintiff's
Opp. to Mot. to Dismiss, ECF No. 66 ("Pl.'s Opp."), Ex.
1. [2] Jesse was carrying Plaintiff's identification at the time.
Pl.'s Supp. Opp. to Mot. to Dismiss, ECF No. 78 ("Pl.'s
Supp. Opp.") at 4. [3] Jesse was taken to the 47th Precinct,
where Officer Jason Korpolinski was assigned to process
his arrest. Pl.'s Opp., Ex. 1.

[2]     "In considering a motion to dismiss for failure to state
        a claim pursuant to Rule 12(b)(6), a district court may
        consider the facts alleged in the complaint, documents
        attached to the complaint as exhibits, and documents
        incorporated by reference in the complaint." *DiFolco
        v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.
        2010).

[3]     Because Plaintiff's submissions were not filed with
        clearly labeled page numbers, the Court cites to the
        page numbers indicated on the ECF docket notation
        when citing to the second amended complaint and to
        Plaintiff's opposition papers. *See Walker*, 717 F.3d at

122 n.1 ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

**\*2** Both robbery victims positively identified Jesse during a show-up identification. *Id.* Several pieces of jewelry that were identified as stolen items by one of the victims were recovered from the front yard of 3327 Barker Avenue—the same area where Jesse's arresting officer first saw him. *Id.* A semi-automatic handgun was also recovered from nearby. *Id.* According to the report prepared by Captain Stewart A. Lieber, the duty captain responsible for investigating the robbery, the following NYPD members "were present": Sergeants Gee, Quiles, O'Rourke, and Laliberte; Detectives Regnier, Higgins, and Cacce; Lieutenants Bhoj and Valentin; and Officers Martinez and Moccia. *Id.* Captain Lieber recommended that the matter be "followed up by the 47th Precinct Detective Squad." *Id.*

That same day, Detective Mark Moccia of the 47th Precinct Detective Squad requested that a "Deputy Commissioner's Subpoena" be issued to T-Mobile USA, Inc. in connection with a stolen cell phone. Pl.'s Opp., Ex. 2. The request noted that one of the robbery victim's cell phone was stolen on July 31, 2012, and that the cell phone records were "required to determine if the cell phone was used after it was stolen and to aid in locating the perpetrator." *Id.* The request for the subpoena was approved weeks later by the Commanding Officer of the 47th Precinct Detective Squad. *Id.*

### B. Plaintiff's Arrest and Indictment
On August 8, 2012, at approximately 6:00 a.m., Detectives William Puskas and Mark Moccia, [4] accompanied by other plain-clothed detectives, knocked and banged on Plaintiff's windows and doors. Second Amended Complaint, ECF No. 41 ("SAC") at 3. When Plaintiff answered the door, Detectives Puskas and Moccia knocked him to the floor and "[s]eized" him "because of an alleged robbery that occurred the night of July 31, 2012" (the "robbery"). *Id.* A little over an hour later, Plaintiff was transported to the "Detective Bureau" located at 1086 Simpson Street in the Bronx. *Id.* Plaintiff was neither interrogated nor asked to provide any handwritten or oral statements in connection with the robbery. *Id.*

[4] Defendant Moccia is identified in Captain Lieber's August 1, 2012 report as an officer. Pl.'s Opp., Ex. 1. Plaintiff's second amended complaint, however, identifies him as a detective. SAC at 2.

The following day, Plaintiff was arraigned in the Bronx County Criminal Court, and an "[e]xcessive [b]ail" was set. SAC at 4. Plaintiff was then taken to the Vernon C. Bain Center ("V.C.B.C.") in the Bronx, where he was detained for six days. *Id.*

On August 14, 2012, at approximately 6:00 p.m., Plaintiff testified before a grand jury and was questioned by Assistant District Attorney ("ADA") Sean Marynes about the robbery. *Id.* The "complainant witness did not implicate Plaintiff in the robbery." Pl.'s Supp. Opp. at 4. That same evening, Plaintiff was released home. SAC at 4. At some point between August 30, 2012 and September 10, 2012, Plaintiff was indicted on various robbery and other related charges. *Id.* [5] Among other things, the indictment charged Plaintiff and his brother with committing various counts of robbery by "acting in concert with each other and another, and each aiding the others actually present." Declaration of Melissa Kim in Supp. of Def.'s Mot. to Dismiss, ECF No. 59 ("Kim Decl."), Ex. B. [6]

[5] The Court takes judicial notice of the grand jury indictment—attached as an exhibit to Defendants' motion—as a public record. *See Ives Lab., Inc. v. Darby Drug Co.*, 638 F.2d 538, 544 n.8 (2d Cir. 1981), rev'd on other grounds sub nom. *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844 (1982) (taking judicial notice of several indictments simply to establish that such indictments had in fact been returned, but "express [ing] no opinion as to the guilt or innocence of those indicted"); *Bryant v. Rourke*, No. 15-cv-5564, 2017 WL 1318545, at \*3 (E.D.N.Y. Feb. 8, 2017) (magistrate judge) ("[I]t is well established that a district court may rely on matters of public record [,] ... including ... indictments...."); *Obilo v. City of New York*, No. 14-cv-2431, 2015 WL 5719706, at \*2 (E.D.N.Y. Sept. 28, 2015) (taking judicial notice of "fact of the grand jury indictment"); *Bond v. City Univ. of N.Y.*, No. 10-cv-5118, 2003 WL 1809471, at \*4-5 (E.D.N.Y. Feb. 28, 2003) (noting that it is "well established" that a court may take judicial notice of a grand jury indictment). In taking judicial notice of the indictment, the Court expresses no opinion as to the innocence or guilt of the indicted parties.

6    The copy of the indictment filed by Defendants redacts Plaintiff's co-defendant's name. However, it is clear from Plaintiff's submissions that he was indicted with his brother, Jesse Blount. *See* Pl.'s Opp., Ex. 3.

### C. Plaintiff's Criminal Proceedings

**\*3** Plaintiff was initially represented by attorney David Barnhard in connection with the criminal charges. SAC at 4. At some point, Plaintiff's brother provided "Exculpatory Materials" to Mr. Barnhard, after the receipt of which Mr. Barnhard withdrew as counsel to Plaintiff out of concern that he would be called upon as a potential witness. *Id.*[7] Attorney Victor Schurr then assumed Plaintiff's representation. *Id.* Mr. Barnhard provided Mr. Schurr with Plaintiff's file, including the "BRADT [sic] Materials." *Id.*

7    In the second amended complaint, Plaintiff provides very little information about the alleged exculpatory materials to which he refers. In his supplemental opposition, Plaintiff generally references "statements" given by his brother to "exonerate" Plaintiff. Pl.'s Supp. Opp. at 5.

On March 6, 2014, ADA Jessica Groppe issued a subpoena duces tecum to Mr. Schurr, commanding that Mr. Schurr produce "[a]udio calls, letters and notes from Jesse Blount to former attorney for Kelly Blount (David Barnhard) regarding Indictment 2726/2012 (People v. Jesse Blount & Kelly Blount)" on March 7, 2014. Pl.'s Opp., Ex. 3. Mr. Schurr provided the "Brady Materials" to ADA Groppe. SAC at 4. Plaintiff alleges that, despite ADA Groppe's receipt of the exculpatory materials, she "never investigated correctly or stated any of these materials to the Judge." *Id.* ADA Groppe then "stepped off" Plaintiff's case. *Id.*

### D. Plaintiff's Charges Are Dismissed

In a letter dated January 27, 2015, Plaintiff's brother Jesse acknowledged that he decided to "be a big man" and "to tell the truth about July 31st." Pl.'s Opp., Ex. 4.[8] The letter describes the robbery and states that, after stealing jewelry and a cell phone from his victims, Jesse ran to Plaintiff's house "and asked him for car fair [sic] so [he] could pawn the jewlery [sic]." *Id.* The letter affirms that Plaintiff "never knew what happend [sic]."

8    It appears that the copy of the letter attached to Plaintiff's opposition is not a complete copy. Only the first page of the letter is attached, and the bottom portion of the letter is missing.

On August 7, 2015, after "an extensive 1,072 days," the charges against Plaintiff were dismissed. SAC at 3.[9]

9    The reason for the dismissal of the charges is unclear. In Plaintiff's second amended complaint, he alleges "All prosecutors dragging the case out for an extensive 1,072 days, which resulted with "ALL CHARGES BEING DISMISSED IN COMPLAINANTS FAVOR." SAC at 4. Defendants assert that the charges were dismissed on speedy trial grounds. Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 57 ("Def.'s Mem.") at 2 (citing SAC at 3-4). In his opposition, Plaintiff states, "the defendants alleged that it was dismissed on speedy trial issues, but the plaintiff differ [sic] with them." Pl.'s Opp. at 16.

Plaintiff alleges that Defendants maliciously prosecuted him by arresting him while knowing that the real suspect was already in custody, suppressing exculpatory evidence, and violating New York's speedy trial laws. SAC at 4. Plaintiff claims that, as a result, he has endured "cruel and unusual pain, mental anguish, emotional distress, a divorce, and pain to [his] daughter." SAC at 5. Plaintiff seeks damages in the amount of fourteen million dollars. *Id.*

### E. Procedural History

Plaintiff filed this action *pro se* on June 15, 2016, naming as defendants various members of the New York City Police Department ("NYPD"), former Bronx County District Attorney Robert T. Johnson, ADA Sean Marynes, the Bronx County 47th Precinct, and the City of New York. ECF No. 1. The case was initially assigned to Chief Judge McMahon. Plaintiff was granted leave to proceed *in forma pauperis* on October 24, 2016. ECF No. 6.

**\*4** On November 10, 2016, Chief Judge McMahon issued an order *sua sponte* granting Plaintiff leave to amend his complaint to address the timeliness of his claims arising out of his August 2012 arrest. ECF No. 7. Chief Judge McMahon also granted Plaintiff leave to plead whether *all* of the charges brought against him in connection with his arrest were dismissed. *Id.* On December 20, 2016, Plaintiff filed an amended complaint, naming in large part the same defendants as the original complaint. ECF No. 9.

On January 31, 2017, the case was reassigned to this Court. On February 1, 2017, the Court dismissed as time-barred Plaintiff's claims for false arrest, excessive force, and false imprisonment, noting that Plaintiff failed to address the timeliness of these claims in his amended complaint. ECF No. 12. On April 5, 2017, the Court granted Plaintiff leave to file a second amended complaint, which Plaintiff filed on April 17, 2017. ECF Nos. 39, 41. The second amended complaint again names as defendants various NYPD members, Bronx County District Attorney defendants, and the City of New York. ECF No. 41.

Defendants filed a motion to dismiss the second amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on June 16, 2017. ECF No. 56. [10] Plaintiff filed his opposition to Defendants' motion on July 17, 2017. ECF No. 66. Defendants filed a reply on August 22, 2017, and Plaintiff filed a supplemental opposition on September 12, 2017. ECF Nos. 74, 78.

[10]   The Court granted Defendant Javier Valentin's request to join the motion to dismiss on September 22, 2017. ECF No. 80. Defendants note in their motion papers that Defendants Valentin, Groppe, and O'Rourke are not properly defendants in this case because they have not been served with process. Pl.'s Mem. at 1 n.2; Pl.'s Reply at 1 n.2. The Court notes that on June 20, 2017, after Defendants filed their motion to dismiss, Defendants acknowledged that Groppe had been served. ECF No. 60. On June 21, 2017, the Court noted in its order that it understood O'Rourke to also accept that he had been served with process. ECF No. 61. By proof of service filed on August 14, 2017, it appears that Valentin has also been served. ECF No. 75. Accordingly, the Court is satisfied that all named defendants have been served and are properly defendants in this action.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

**\*5** Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). Finally, the Court may also consider "matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted).

Because he is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' ...." (citation omitted)); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where ... the

complaint was filed *pro se*, it must be construed liberally to raise the strongest claims it suggests." (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013))). This mandate "applies with particular force when a plaintiff's civil rights are at issue." *Bell v. Jendell*, 980 F. Supp. 2d 555, 558 (S.D.N.Y. 2013) (quoting *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009)). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Id.* at 559 (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997))).

### III. DISCUSSION

While Plaintiff specifically frames his allegations as bringing a claim under section 1983 for malicious prosecution, he also asserts that Defendants violated his constitutional rights secured by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. SAC at 4. [11] Defendants move to dismiss only Plaintiff's malicious prosecution claim. However, to the extent that Plaintiff's second amended complaint can be read to raise other claims, the Court also addresses those claims.

[11]  As an initial matter, Plaintiff fails to state a claim under the Fifth Amendment. "The Fifth Amendment's Due Process Clause protects citizens against only federal government actors," *Mitchell v. Home*, 377 F. Supp. 2d 361, 372 (S.D.N.Y. 2005) (citing *Dusenbery v. United States,* 534 U.S. 161, 167 (2002)), and because Plaintiff alleges deprivations only by state government officials, his claims "arise solely from the Fourteenth Amendment due process clause." *Id.* at 373 (citing *Dusenbery*, 534 U.S. at 167). Thus, insofar as Plaintiff's section 1983 claim is based on a violation of his constitutional rights under the Fifth Amendment, that claim is dismissed.
Additionally, to the extent that Plaintiff's second amended complaint attempts to resurrect claims for false arrest, false imprisonment, and excessive force, those claims were dismissed with prejudice as time-barred by the Court's February 1, 2017 order, ECF No. 12.

### A. Claims Against the District Attorney Defendants

**\*6** Plaintiff claims that former Bronx County D.A. Johnson and ADAs Marynes and Groppe (the "D.A. Defendants") violated his constitutional rights by (1) delaying his prosecution in violation of his speedy trial rights under New York law, (2) withholding exculpatory evidence, and (3) proceeding with his prosecution despite the exculpatory evidence. To the extent Plaintiff seeks damages from these defendants in their official capacities, the Eleventh Amendment bars Plaintiff's claims. *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997); *see Hafer v. Melo*, 502 U.S. 21, 30 (1991) ("[T]he Eleventh Amendment bars suits in federal courts by private parties seeking to impose a liability which must be paid from public funds in the state treasury." (internal quotation marks and citation omitted)).

To the extent that Plaintiff seeks damages from the D.A. Defendants in their individual capacities, these defendants enjoy absolute immunity. "Absolute immunity bars a civil suit against a prosecutor for advocatory conduct that is 'intimately associated with the judicial phase of the criminal process.' " *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "This immunity attaches to conduct in court, as well as conduct 'preliminary to the initiation of a prosecution and actions apart from the courtroom.' " *Id.* (quoting *Imbler*, 424 U.S. at 431 n.33).

"To determine whether an official enjoys absolute immunity," courts are to "take a 'functional approach,' examining 'the nature of the function performed, not the identity of the actor who performed it.' " *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). "Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Giraldo*, 694 F.3d at 165 (quoting *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995)) (internal quotation marks omitted)). "These functions include deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." *Simon*, 727 F.3d at 171 (citing *Imbler*, 424 U.S. at 431 n.33). More specifically, the "Supreme Court has explained that a prosecutor's functions preliminary to the initiation of proceedings include 'whether to present a case to a grand jury, whether to file an information,

whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present.' " *Giraldo*, 694 F.3d at 165 (quoting *Imbler*, 424 U.S. at 431 n.33).

The "relevant question ... is whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor." *Id.* at 166. "[T]he 'functional' test for absolute immunity is an objective one; it does not depend upon the state actor's subjective intent." *Hill*, 45 F.3d at 662. As a result, if the challenged acts are "reasonably within the functions of a prosecutor," then "absolute immunity applies to protect the prosecutor even in the fact of a complaint's allegations of malicious or corrupt intent behind the acts." *Giraldo*, 694 F.3d at 166.

On the other hand, a "prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley*, 509 U.S. at 273. "Although all investigative activity could be considered in some sense to be 'prepar[ation] for the initiation of judicial proceedings,' the Supreme Court has sought to draw a line between those preparatory steps that a prosecutor takes to be an effective advocate of a case already assembled and those investigative steps taken to gather evidence." *Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998) (quoting *Buckley*, 509 U.S. at 273). "[A]ctions taken as an investigator enjoy only qualified immunity." *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000). "The investigative acts that are entitled to only qualified immunity are those undertaken in the phase of law enforcement that involves the gathering and piecing together of evidence for indications of criminal activities and determination of the perpetrators." *Giraldo*, 694 F.3d at 166.

**\*7** Here, all of the alleged conduct of former D.A. Johnson and ADAs Marynes and Groppe falls "within the functions of a prosecutor" and is entitled to absolute immunity. *Giraldo*, 694 F.3d at 166. Plaintiff's second amended complaint alleges that ADA Groppe issued a subpoena in March 2014, as a result of which she received "[B]rady materials" which she "never elicited" "before Judge Lieb" in the Bronx County Criminal Court. SAC at 4. Plaintiff's allegations with respect to ADA Marynes are thinner, indicating that ADA Marynes questioned Plaintiff during his grand jury testimony, but alleging no

further specific acts by that defendant. SAC at 4. In his opposition, Plaintiff generally asserts that "[t]he Bronx County District Attorney/Assistant District Attorney withheld exculpatory evidence from the Grand Jury, suppressed and concealed evidence and conspired with one another to obtain a Grand Jury indictment, permitted the presentation of false and misleading testimony to the Grand Jury, and took no action to correct the same." Pl.'s Opp. at 19.

The Court need not determine whether Plaintiff sufficiently alleges constitutional violations by each of the D.A. Defendants. This is because all of the alleged acts are directly tied to the D.A. Defendants' prosecutorial functions, particularly to the presentation of the case to the grand jury and the court, and are thus cloaked in absolute immunity. *See Simon*, 727 F.3d at 171; *Zanfardino v. City of New York*, 230 F. Supp. 3d 325, 333 (S.D.N.Y. 2017) (finding that assistant district attorney's "subornation of perjury before, and withholding of exculpatory evidence from, the grand jury" were shielded by absolute immunity).

Plaintiff argues in his opposition that the D.A. Defendants are entitled only to qualified, not absolute, immunity with respect to their "investigation by the issuance of Grand Jury Subpoena." Pl.'s Opp. at 17. According to Plaintiff, under the circumstances of his case, "the Bronx County District Attorney officer was essentially engaged in police activity well outside his quasi-judicial capacity." *Id.* at 18. Plaintiff pleads no other facts regarding a subpoena issued for the purpose of securing grand jury testimony. Rather, the only subpoena otherwise described in Plaintiff's pleadings and opposition papers is the March 2014 subpoena issued by ADA Groppe to Plaintiff's attorney. Pl.'s Opp., Ex. 3. That subpoena was issued approximately eighteen months after the grand jury had convened and returned an indictment and is more appropriately characterized as a "preparatory step[ ]" taken by ADA Groppe "to be an effective advocate of a case already assembled." *Smith*, 147 F.3d at 94. In any event, the issuance of either subpoena falls well within the bounds of the D.A. Defendants' quasi-judicial prosecutorial role— a role which includes "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and *issuing subpoenas*." *Zanfardino*, 230 F. Supp. 3d at 332 (emphasis added) (quoting *Simon*, 727 F.3d at 171). Plaintiff's claims

against the D.A. Defendants related to their decision to prosecute him and any alleged withholding of exculpatory evidence are therefore dismissed with prejudice.

With respect to Plaintiff's speedy trial claim, Plaintiff expressly alleges a violation of his speedy trial rights under N.Y. C.P.L. § 30.30. Nonetheless, his submissions may also be read to raise a claim under the Sixth Amendment. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial...."). Violations of this constitutional right can be redressed through civil actions brought under section 1983. *See, e.g.,* Varrichio v. County of Nassau, 702 F. Supp. 2d 40, 51 (E.D.N.Y. 2010) (permitting section 1983 claim for deprivation of speedy trial right to proceed where plaintiff alleged a "two-year detention without being tried for the contempt charges for which he was arrested"); Brooks v. Panas, No. 14-cv-4835, 2016 WL 614684, at *4 (E.D.N.Y. Feb. 16, 2016) (reading allegations to raise a Sixth Amendment claim based on the plaintiff's deprivation of his right to a speedy trial).

**\*8** Plaintiff's allegations with respect to a speedy trial claim, however, amount to nothing more than legal conclusions. He alleges that former D.A. Johnson "disregarded" his "30.30 speedy trial time," SAC at 4, but fails to allege any facts as to how the D.A. Defendants caused or contributed to the delay in his criminal proceedings. It is well settled that a "naked assertion" without "further factual enhancement" is insufficient to state a claim. Iqbal, 556 U.S. at 678. Moreover, as just discussed, the steps taken by the D.A. Defendants to prosecute Plaintiff's case are entitled to absolute immunity to the extent they fall within the traditional prosecutorial functions. Plaintiff's Sixth Amendment claim is thus also dismissed with prejudice.

## B. Claims Against the NYPD Defendants

### 1. Malicious Prosecution

"To sustain a § 1983 claim of malicious prosecution, a plaintiff must demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty." Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003). To state a claim for malicious prosecution under New York law, a plaintiff must allege (1) that the defendant commenced or

continued a criminal proceeding against the plaintiff; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice. *Id.*; Drummond v. Castro, 522 F. Supp. 2d 667, 677 (S.D.N.Y. 2007) (citing Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995)). To plead a constitutionally cognizable deprivation of liberty, a plaintiff must allege that there was "a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." Washington v. County of Rockland, 373 F.3d 310, 316 (2d Cir. 2004) (internal quotation marks omitted). That seizure must be post-arraignment. Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013).

Here, Plaintiff clearly alleges a deprivation of liberty—he states that he was arrested, arraigned, and detained for six days. *See* United States v. Mendenhall, 446 U.S. 544, 553-54 (1980) (holding that, under standard Fourth Amendment analysis, a person is considered "seized" if he is unable to leave an officer's presence without permission). The legal sufficiency of his malicious prosecution claim therefore turns on whether he has stated a claim under New York law.

### a. Detectives Puskas and Moccia

Defendants argue that Plaintiff insufficiently pleads the commencement or continuation of criminal proceedings and that his allegations do not overcome the presumption of probable cause generated by Plaintiff's indictment. While Plaintiff does allege sufficient facts to suggest that Detectives Puskas and Moccia commenced criminal proceedings against him and that those proceedings terminated in his favor, the Court agrees that Plaintiff's allegations with respect to probable cause cannot withstand a motion to dismiss. Plaintiff also insufficiently pleads malice.

### i. Commencement or Continuation of Criminal Proceedings

Defendants argue that Plaintiff fails to allege the first element of his claim—the commencement or continuation of a criminal proceeding—because he alleges that Detectives Puskas and Moccia only initiated

Plaintiff's *arrest.* Construing Plaintiff's submissions liberally, however, the Court concludes that Plaintiff sufficiently pleads the involvement of these defendants in the commencement of criminal proceedings against him.

In his second amended complaint, Plaintiff alleges that Detectives Puskas and Moccia arrived at Plaintiff's home and arrested him on August 8, 2012. SAC at 3. Although the second amended complaint states that "these defendants" did not interrogate Plaintiff or otherwise take a statement from him at the "Detective Bureau" after his arrest, *id.*, Plaintiff's opposition asserts that "[s]everal police officers, Detectives, and other officials came to plaintiff [sic] home, seized him, removed him from his residents [sic], falsely arrested him and accused him of criminal activities ... *and then falsely initiated criminal charges against him,*" Pl.'s Opp. at 16 (emphasis added). Drawing all reasonable inferences in Plaintiff's favor, the Court construes these allegations to plausibly suggest that Detectives Puskas and Moccia were involved in the filing of a criminal complaint, and thus commenced criminal proceedings against him. *See, e.g.,* *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ("Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments."); *Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir. 1994) (concluding that state troopers "commenced a criminal proceeding" against the plaintiff "by formally charging [him] with violating the VIN statute and having him arraigned before the town justice"); *Shabazz v. Kailer,* 201 F. Supp. 3d 386, 392 (S.D.N.Y. 2016) ("A police officer may initiate criminal proceedings by bringing charges and having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints."); *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 295 (S.D.N.Y. 2001) (finding that a defendant "initiated a prosecution against [the] plaintiff by filing charges against her in a felony complaint").

### ii. Termination in Plaintiff's Favor

**\*9** Under New York law, "any final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination for purposes of a malicious prosecution action." *Poventud v. City of New York*, 750 F.3d 121, 130-31 (2d Cir. 2014) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (Ct. App. 2000)). "New York

law does not require a malicious prosecution plaintiff to prove his innocence, or even that the termination of the criminal proceeding was indicative of innocence. Instead, the plaintiff's burden is to demonstrate a final termination that is not inconsistent with innocence." *Genovese v. County of Suffolk*, 128 F. Supp. 3d 661, 671 (E.D.N.Y. 2015); *Cantalino v. Danner,* 96 N.Y.2d 391, 396 (Ct. App. 2001) ("[T]he question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused.").

Here, Plaintiff pleads, and Defendants do not contest, that the criminal proceedings against him were terminated in his favor. Plaintiff alleges that the result of his prosecution was "ALL CHARGES BEING DISMISSED IN COMPLAINANTS FAVOR." SAC at 4. [12] In his opposition, he also alleges that his brother's signed "confession" demonstrated that Plaintiff "had nothing whatsoever to do with the July 31, 2012 robbery, all charges was dismiss [sic]." Pl.'s Opp. at 2. Plaintiff further states that "on August 7, 2015, all charges against plaintiff were dismissed and plaintiff was found once again not to be responsible for the alleged incident in question." *Id.* at 14. For purposes of this motion, the Court is satisfied that Plaintiff sufficiently pleads that the criminal charges were dismissed in his favor.

[12]   As noted earlier, Defendants state in their moving papers that the charges against Plaintiff were dismissed on speedy trial grounds. Def.'s Mem. at 2. Although Plaintiff does not agree that the charges were dismissed on speedy trial grounds, such a dismissal would be a dismissal in his favor for purposes of a malicious prosecution claim. *See Smith-Hunter v. Harvey,* 95 N.Y.2d 191, 195-96 (Ct. App. 2000) (holding that a dismissal based on a violation of the right to a speedy trial under CPL 30.30 constitutes "termination of the proceeding in favor of the accused").

### iii. Probable Cause

"[T]he existence of probable cause constitutes a complete defense to a claim of malicious prosecution in New York." *Hicks v. City of New York*, 232 F. Supp. 3d 480, 492 (S.D.N.Y. 2017) (alteration in original) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). A grand jury indictment "creates a presumption of probable cause that can *only* be overcome by evidence that the indictment

'was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith.' " *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (emphasis added) (quoting *Green v. Montgomery*, 219 F.3d 52, 60 (2d Cir. 2000)). That is, a plaintiff may overcome the presumption of probable cause "only by evidence establishing that the police [defendants] have not made a complete and full statement of the facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 272 (S.D.N.Y. 2010) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82-83 (Ct. App. 1983)). Therefore, to rebut a presumption of probable cause at the pleading stage, a plaintiff must plead facts that plausibly allege the existence of fraud, perjury, suppression of evidence, or bad faith on the part of the police defendants. *Hicks*, 232 F. Supp. 3d at 492. " '[M]ere conjecture and surmise' are insufficient to rebut the presumption." *Id.* (quoting *Savino*, 331 F.3d at 73).

**\*10** Here, Plaintiff acknowledges in his second amended complaint that he was indicted for robbery and other related offenses. Thus the presumption of probable cause applies. Defendants argue that Plaintiff's allegations do not overcome that presumption, and the Court agrees.

Plaintiff alleges that Detectives Puskas and Moccia arrested him despite having the true guilty party in custody and "without a warrant or probable cause." Pl.'s Opp. at 4. He does not allege that the detectives failed to provide exculpatory evidence to the District Attorney's office. In fact, Plaintiff alleges that the District Attorney's office had the exculpatory materials when it "still seek[ed] [sic] to have charges brought against" him. Pl.'s Opp. at 14. Nor do the allegations suggest that the detectives fabricated or suppressed evidence in their processing of Plaintiff's arrest and in the filing of charges against him. Therefore, Plaintiff's pleadings cannot be read to allege that the indictment was procured by fraud, perjury, or the suppression of evidence on the part of the detectives. *Cf. Shabazz*, 201 F. Supp. 3d at 392 (allegation that the indictment was procured by evidence fabricated by the defendant and forwarded to the prosecution was sufficient to overcome the presumption of probable cause at the pleading stage); *Gannon v. City of New York*, 917 F. Supp. 2d 241, 245 (S.D.N.Y. 2013) (finding complaint sufficient when it alleged facts that raised the possibility that the

defendant lied about the circumstances of a search in order to secure the plaintiff's indictment).

To the extent that the complaint can be read to allege bad faith, it does so insufficiently. While "[b]ad faith may be shown 'through evidence that police witnesses have not made a complete and full statement of facts,' " *Hicks*, 232 F. Supp. 3d at 492 (quoting *Newton v. City of New York*, 640 F. Supp. 2d 426, 442 (S.D.N.Y. 2009)), "police officers act in bad faith only when they fail to disclose evidence that would conclusively establish the plaintiff's innocence or negate the possibility that [the] plaintiff had committed the crime," *id.* (quoting *Stukes v. City of New York*, No. 13-cv-6166, 2015 WL 1246542, at \*5 (E.D.N.Y. Mar. 17, 2015)). Here, Plaintiff asserts that Detectives Puskas and Moccia arrested him and filed charges against him knowing that Jesse Blount was already in custody. However, Jesse's apprehension would not have "conclusively" established Plaintiff's innocence. The indictment charged Plaintiff and his co-defendant with various robbery and other related crimes that they allegedly committed by "acting in concert with each other and another, and each aiding the others actually present." Def.'s Mem., Ex. B. Therefore, the fact that the detectives had one suspect in custody did not "conclusively establish" Plaintiff's "innocence or negate the possibility that [P]laintiff had committed the crime[s]." *Hicks*, 232 F. Supp. 3d at 492; *see Bonds v. City of New York*, No. 12-cv-1772, 2014 WL 2440542, at \*8 (E.D.N.Y. May 30, 2014) (finding that allegations that the plaintiff did not match a witness's description of the perpetrator and eyewitnesses did not identify the plaintiff were insufficient to overcome the presumption of probable cause because police had received reports of possible multiple suspects); *Williams v. City of New York*, No. 02-cv-3693, 2003 WL 22434151, at \*7 (S.D.N.Y. Oct. 23, 2003) (dismissing claim based on withholding of exculpatory evidence where "the information [did] not negate the possibility" that the plaintiff had committed the crime).

**\*11** In his prayer for relief, Plaintiff asserts that he brings claims for, among other things, "failure to properly investigate." SAC at 5. Plaintiff has "no constitutional right to an adequate investigation." *Hicks*, 232 F. Supp. 3d at 495 (quoting *Newton v. City of New York*, 566 F. Supp. 2d 256, 278 (S.D.N.Y. 2008)). To the extent that Plaintiff's allegations can be read to raise an argument of bad faith based on the detectives' failure to properly investigate

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

the charges brought against him, those allegations are equally insufficient to overcome the presumption of probable cause. *See Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006) ("[A]n officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause."); *Hicks*, 232 F. Supp. 3d at 493 ("[F]ailure to pursue alternative avenues of investigation or possible negligence in failing to discover or forward exculpatory evidence is insufficient to rebut the presumption created by the indictment." (internal quotation marks and citation omitted)); *see also Gisondi v. Town of Harris*, 72 N.Y.2d 280, 285-86 (Ct. App. 1988) (noting that "the police are not obligated to pursue every lead that may yield evidence beneficial to the accused, even though they had knowledge of the lead and the capacity to investigate it" and acknowledging that the New York Court of Appeals has "held that the police need not investigate every asserted alibi").

Because Plaintiff fails to plead any facts plausibly suggesting that the indictment was procured by fraud, perjury, suppression of evidence, or bad faith, the presumption of probable cause created by the indictment stands, and is sufficient by itself to defect Plaintiff's claim for malicious prosecution.

### iv. Malice

Plaintiff also fails to allege any facts giving rise to an inference of malice on the part of Detectives Puskas and Moccia. The fourth element of a malicious prosecution claim, malice, "does not require a plaintiff to prove that the defendant was motivated by spite or hatred, ... [r]ather, it means that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994) (omission and alteration in original) (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03 (Ct. App. 1978)). Generally, a lack of probable cause "creates an inference of malice." *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003).

Here, as just discussed, Plaintiff's allegations do not rebut the presumption of probable cause created by the indictment. Therefore, no inference of malice can be presumed and Plaintiff must plead facts that plausibly suggest that the detectives filed charges against him out of a "wrong or improper motive." *Rounseville*, 13 F.3d at 630. This Plaintiff fails to do. Although Plaintiff alleges that the detectives arrested and brought charges against him knowing that his brother was already in custody, nothing in Plaintiff's allegations suggests that the detectives filed charges against him for a motive other than to serve justice. In fact, Plaintiff alleges nothing with respect to the detectives' motivation. Therefore, Plaintiff fails to plead that Detectives Puskas and Moccia acted with malice in bringing criminal charges against him. *See Rogers v. Bisono*, No. 15-cv-6670, 2016 WL 4224072, at *3-4 (S.D.N.Y. Aug. 9, 2016) (finding insufficient allegations of malice when complaint contained no allegation regarding the defendants' motives despite allegations that one defendant made false statements about the plaintiff's actions giving rise to the criminal charges); *but see Li v. City of New York*, 246 F. Supp. 3d 578, 614-15 (E.D.N.Y. 2017) (finding sufficient allegations of malice where complaint alleged that defendants signed the criminal complaint knowing that its content was false, made a false statement under oath, and sought to use the plaintiff as a "bargaining chip" to pressure another individual to plead guilty).

\* \* \*

Accordingly, because Plaintiff's second amended complaint does not suggest facts that could rebut the presumption of probable cause produced by the indictment and is otherwise devoid of any allegation of malice in the detectives' initiation of the criminal proceedings against him, Plaintiff's malicious prosecution claim against Detectives Puskas and Moccia is dismissed.

### b. Other NYPD Defendants

**\*12** Plaintiff's malicious prosecution claim against the other NYPD defendants is also dismissed. The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (internal quotation marks omitted)). Plaintiff's only mention of the remaining individual Defendants is a reference to their presence at the time of Jesse Blount's arrest and processing in Captain Lieber's August 1, 2012 report, Pl.'s Opp., Ex. 1. Plaintiff pleads nothing to suggest that these Defendants were also involved in his arrest or

the handling of his case in any way. Because Plaintiff has only alleged the personal involvement of Detectives Puskas and Moccia in the relevant events, Plaintiff's malicious prosecution claim with respect to the remaining officers is dismissed.

### 2. Due Process Claim

Plaintiff alleges that Detectives Puskas and Moccia never interrogated him after his arrest, that no "Audio or Hand written Statements were taken from [Plaintiff] saying that he did anything pertaining to the July 31, 2012 incident," that the detectives and D.A. Defendants filed and prosecuted criminal charges against him despite knowing that the real culprit of the robberies at issue was already in custody, that ADA Groppe withheld exculpatory evidence, and that former D.A. Johnson violated Plaintiff's right under N.Y. C.P.L. § 30.30 to a speedy trial. SAC at 3-4. To the extent that Plaintiff's second amended complaint can be construed to raise a due process claim, that claim is dismissed.

For the reasons already explained, any due process claim against the D.A. Defendants is dismissed on the grounds of absolute immunity insofar as it challenges the manner in which those defendants prosecuted the criminal charges.

Further, any due process claim against Detectives Puskas and Moccia is time-barred. As Chief Judge McMahon explained in her order during the early stages of this litigation, the statute of limitations for a section 1983 claim is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). Under New York law, the applicable limitations period is three years. N.Y. C.P.L.R. § 214(5). "Federal law determines when a section 1983 cause of action accrues, and [the Second Circuit has] ruled that accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (quoting *Pearl*, 296 F.3d at 80)).

Plaintiff's allegations with respect to Detectives Puskas and Moccia are limited to their arrest of Plaintiff and their handling of his case until the moment that charges were filed against him—actions which were all confined

to August 2012. Nothing in Plaintiff's allegations suggests that he did not know or have reason to know of any alleged due process violation until a date after August 2012. Therefore, Plaintiff's due process claim is construed to have accrued in August 2012. Because Plaintiff did not commence this action until June 15, 2016, nearly a year after the three-year statute of limitations period expired, his due process claim against Detectives Puskas and Moccia is dismissed as out of time. [13]

13    Although the failure to file an action within the limitations period is an affirmative defense and a plaintiff is generally not required to plead that the case is timely filed, *see Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007), dismissal is appropriate where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading, *see Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.") (internal quotation marks and citation omitted); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint as frivolous on statute of limitations grounds); *see also Abbas*, 480 F.3d at 640 (concluding that district court should grant notice and opportunity to be heard before dismissing complaint *sua sponte* on statute of limitations grounds). Here, the Court identified the facially apparent time bar with respect to claims arising from Plaintiff's August 2012 arrest in its November 10, 2016 order. ECF No. 7. Plaintiff was given the opportunity to amend his pleadings to address the timeliness of those claims. *Id.* Despite this opportunity to amend to avoid dismissal, Plaintiff's second amended complaint still fails to plead any facts to show that a due process claim against Detectives Puskas and Moccia has been brought timely.

**\*13**    Furthermore, any due process claim against the remaining NYPD Defendants is also dismissed as Plaintiff has failed to allege any personal involvement by those defendants. *See Victory*, 814 F.3d at 67 ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

### 3. Eighth Amendment Claim

Plaintiff asserts that he brings a claim under the Eighth Amendment. SAC at 4. Although Plaintiff alleges that he suffered a violation of his Eighth Amendment rights, the Court construes any such claim as a violation of Plaintiff's Fourteenth Amendment rights because he was a pretrial detainee during the period of his detention. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment."). Plaintiff alleges that he sustained "cruel and unusual pain" and that he was detained for six days in the V.C.B.C. However, he alleges no facts regarding the conditions of his confinement and no facts alleging that Defendants acted with deliberate indifference to those conditions. *See id.* ("A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions."). Moreover, any claim based on the conditions of his six-day confinement in August 2012 is time-barred for the same reasons discussed in Section III.B.2, *supra.* Therefore, Plaintiff's Eighth Amendment claim is dismissed with prejudice.

### C. Claims Against the City of New York

Plaintiff alleges that the City of New York is vicariously liable for the acts of the D.A. Defendants and the NYPD Defendants. Plaintiff's claims against the City are dismissed.

"To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks and alterations omitted); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Accordingly, "a municipality cannot be made liable [under § 1983] by application of the doctrine of *respondeat superior*," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986), but rather the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the moving force behind the

alleged injury," *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (internal quotation marks omitted).

A plaintiff may satisfy the "policy or custom" prong in one of four ways: by proving the existence of (1) a formal policy, *see Monell*, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights, *see Pembaur*, 475 U.S. at 483–84; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of persons with whom [municipal employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996).

**\*14** Here, Plaintiff fails to state a claim for municipal liability with respect to the conduct of NYPD officers because, as previously discussed, Plaintiff fails to plead a constitutional violation by those defendants. *See, e.g.*, *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[None] of our cases authorize[ ] the award of damages against a municipal corporation based on the actions of one of its officers ... [i]f a person has suffered no constitutional injury...."); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (where "district court properly found no underlying constitutional violation," it was not necessary to consider claims of municipal liability under *Monell*); *Levy v. Alfano*, 47 F. Supp. 2d 488, 498 (S.D.N.Y. 1999) ("It is well settled that a municipality may not be held liable where there is no underlying constitutional violation by a municipal official." (citation omitted)).

Turning to the D.A. Defendants, a district attorney or assistant district attorney acting in his or her official capacity as a prosecutor is an agent of the State, and therefore immune from suit. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993); *see Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) ("When prosecuting a criminal matter, a district attorney in New York State ... represents the State not the county."). Accordingly, "a district attorney's misconduct in prosecuting an individual [does] not give rise to municipal liability." *Walker v. City of New York*, 974 F.2d 293, 301 (2d Cir. 1992).

2017 WL 5634680

Municipal liability for a section 1983 malicious prosecution claim may lie, however, "when a county district attorney ha[s] a 'long history of negligent disciplinary practices regarding law enforcement personnel, which g[ives] rise to the individual defendants' conduct in promoting the malicious prosecution of plaintiffs.' " *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1153 n.14 (2d Cir. 1995) (quoting *Gentile v. County of Suffolk*, 926 F.2d 142, 152 n.5 (2d Cir. 1991)); *Ying Jing Gan*, 996 F.2d at 536 (If claims center "on the administration of the district attorney's office," the district attorney is "considered a municipal policymaker."). "Consequently, as long as a plaintiff's 'claims center [ ] not on decisions whether or not, and on what charges, to prosecute but rather on the administration of the district attorney's office,' there can be liability against a New York county for an alleged malicious prosecution." *Pinaud,* 52 F.3d at 1154 n.14 (citing *Ying Jing Gan,* 996 F.2d at 536; *Walker,* 974 F.2d at 301; *Gentile,* 926 F.2d at 152 n.5).

Here, Plaintiff alleges at great length that former D.A. Johnson is liable for the actions of those under his supervision. Plaintiff's allegations, however, say nothing of D.A. Johnson's training practices or other administrative policies that could give rise to the City's liability, and the allegation that ADA Groppe withheld exculpatory evidence is insufficient to allege such a policy. *See Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 649 (S.D.N.Y. 2015) ("The unconstitutional conduct of a single prosecutor does not give rise to municipal liability." (citing *City of Canton v. Harris*, 489 U.S. 378, 386 (1989))); *see also DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." (citation omitted)); *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992) ("A municipal agency may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees." (citing *Monell,* 436 U.S. at 694)). Moreover, all of Plaintiff's allegations relating to the D.A. Defendants are based on their prosecution of Plaintiff's individual case—actions for which the City cannot be held liable under section 1983. *Walker,* 974 F.2d at 301.

**\*15** Accordingly, Plaintiff's claims against the City are dismissed.

**D. State Law Claims**

To the extent that Plaintiff's second amended complaint can be construed to raise claims under New York law for intentional infliction of emotional distress and *respondeat superior* liability, those claims are dismissed.

According to the second amended complaint, each of the parties to this action is domiciled in New York. SAC at 2-3. Although Plaintiff is currently incarcerated, before his incarceration, he was a resident of the Bronx. SAC at 3. Therefore, it appears on the face of the second amended complaint that Plaintiff was at all relevant times a citizen of New York. Because the parties are non-diverse, Plaintiff's state law claims are before the Court as a matter of supplemental jurisdiction. Federal district courts have supplemental jurisdiction over state law claims "that are so related to" federal claims "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Such jurisdiction, however, is "discretionary," *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173, (1997), and a district court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c).

Because the Court has dismissed all of Plaintiff's federal claims over which the Court has original jurisdiction, it declines to exercise supplemental jurisdiction over any pendent state claims. *See Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988))). Accordingly, any claims under New York law for intentional infliction of emotional distress and *respondeat superior* liability are dismissed.

**IV. LEAVE TO AMEND**
In this circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

Case 6:18-cv-00135-DNH-TWD   Document 10   Filed 10/04/18   Page 66 of 95

Accordingly, the Court grants Plaintiff leave to amend the complaint, solely with respect to those claims that were dismissed without prejudice, to correct the deficiencies identified in this opinion. Any amended complaint must be filed no later than 30 days after the date of this order.

## V. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED in its entirety:

All of Plaintiff's claims against the D.A. Defendants are dismissed with prejudice to the extent they are based on those defendants' prosecutorial functions, *i.e.* the decision to prosecute Plaintiff, the presentation or withholding of evidence in grand jury and court proceedings, and any speedy trial violations.

**\*16**  Plaintiff's malicious prosecution claim against the NYPD Defendants is dismissed without prejudice.

Plaintiff's due process claim against the NYPD Defendants is dismissed without prejudice.

Plaintiff's Eighth Amendment claim against the NYPD Defendants is dismissed with prejudice.

Plaintiff's *Monell* claim against the City of New York is dismissed without prejudice.

Plaintiff's state law claims against the NYPD Defendants and the City of New York for intentional infliction of emotional distress and *respondeat superior* liability are dismissed without prejudice.

Plaintiff is granted leave to replead those claims that have been dismissed without prejudice no later than 30 days following the date of this order. If Plaintiff fails to file a third amended complaint within 30 days, this action will be dismissed and judgment will enter.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court requests that counsel for Defendants provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Clerk of Court is directed to terminate the motion pending at ECF No. 56 and to mail a copy of this order to Plaintiff by certified mail.

SO ORDERED.

## All Citations

Slip Copy, 2017 WL 5634680

---

 © 2018 Thomson Reuters. No claim to original U.S. Government Works.

 © 2018 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment
Declined to Follow by McLennon v. City of New York, E.D.N.Y.,
March 18, 2016

2015 WL 5719706
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Mitchell BOND, Plaintiff,
v.
CITY OF NEW YORK, Defendant.

No. 14–CV–2431 (RRM)(VVP).
|
Signed Sept. 28, 2015.

**Attorneys and Law Firms**

George T. Peters, Law Office of George T. Peters, New
York, NY, for Plaintiff.

Richard Weingarten, New York City Law Department,
New York, NY, for Defendant.

*MEMORANDUM AND ORDER*

ROSLYNN R. MAUSKOPF, District Judge.

*1  Plaintiff Mitchell Bond brings this action against
defendant City of New York (the "City") under 42 U.S.C.
§ 1983 and state law, alleging claims for false arrest, false
imprisonment, malicious prosecution, and negligence.
Before the Court is the City's motion to dismiss, or in the
alternative, for summary judgment. For the reasons set
forth below, the City's motion to dismiss is granted in its
entirety.

**BACKGROUND**

**1. Factual Background**
The following allegations are taken from Bond's
complaint and, for purposes of this motion to dismiss,
accepted as true. See Stratte–McClure v. Morgan Stanley,
776 F.3d 94, 97 n. 1 (2d Cir.2015). On September 8,
2010, Bond was arrested by the New York City Police
Department ("NYPD") and charged with robbery.[1]
(Compl.(Doc. No. 1) at ¶¶ 10–11.)

1    Although Bond's complaint states that he was
arrested on August 11, 2010, the parties agree that
the correct date was September 8, 2010. (*Compare*
Compl. (Doc. No. 1) at ¶ 10, *with* Def.'s Mem. Mot.
Dismiss (Doc. No. 17) at 1 n. 1, *and* Pl.'s Mem. Opp'n
Mot. Dismiss (Doc. No. 18) at 2.)

According to the Criminal Complaint filed in the state
court action, the victim, Sanjeev Singh, a livery cab
driver, reported to police the following. On the evening
of August 9, 2010 Singh was dispatched to a location and
was provided with a phone number from the caller. At
the location, Bond, together with Edwin DeJesus and
Bobby Tillman, both of whom were previously arrested,
approached his vehicle. Bond sat in the left rear passenger
seat, directly behind Singh. DeJesus, wearing a black
face mask, sat in the front passenger seat, while Tillman
stood outside the driver's door. DeJesus placed a pistol
against Singh's hip and demanded Singh's property. Singh
complied, handing over money. DeJesus searched the
vehicle for additional property, and Tillman reached in
through an open window and removed a GPS device.
Tillman then removed Singh from his car, and then he
and Bond searched Singh pockets and took a camera
from livery cab. The assailants then fled. The police later
recovered a black bb gun, a black face mask, and a Garmin
GPS from Tillman's vehicle, all of which were identified
by Singh from the night of the incident. DeJesus admitted
that the phone number accompanying the dispatch call
was his. (Def.'s Mem. Mot. Dismiss. (Doc. No. 17) at 1
(citing Criminal Compl. (Doc. No. 16–3) at 1).) A DD–
5 Report dated August 11, 2010 indicated that the livery
driver had identified Bond in a photo array as one of
the participants in the armed robbery. (*Id.* (citing DD–5
Report (Doc. No. 16–4) at 1; Photo Array (Doc. No. 16–
5) at 1).)

By criminal indictment, filed on October 21, 2010, a New
York State grand jury charged Bond with Robbery in the
Second Degree. (*Id.* (citing Grand Jury Indictment (Doc.
No. 16–6) at 4).) Bond was held in custody, and eventually
released in the winter of 2013 after a New York Supreme
Court Judge dismissed the charges against him. (*Id.* at ¶¶
11–13.)

**2. Procedural Background**
Bond brought the current action against the City on April
15, 2014, alleging violations of his constitutional rights

and state law and asserting causes of action for (1) false arrest, (2) false imprisonment, (3) malicious prosecution, and (4) negligence. (*See* Compl.) On January 20, 2015, the City moved to dismiss, or in the alternative for summary judgment, arguing that (i) Bond's claims for false arrest and false imprisonment are time-barred by the three-year statute of limitations, (ii) Bond's claim for negligence is precluded because he failed to file a notice of claim within ninety days of the incident giving rise to the claim, and (iii) Bond's claim for malicious prosecution fails because Bond has failed to rebut the presumption of probable cause created by his grand jury indictment. (*See* Def.'s Mem. Mot. Dismiss.) For the reasons that follow, the City's motion is granted.

### STANDARD OF REVIEW

#### 1. Legal Standard

**\*2** A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to examine the legal, rather than factual, sufficiency of a complaint. Generally, under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

A court considering a 12(b)(6) motion must "take[ ] factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." *Harris v. Mills,* 572 F.3d 66, 71 (2d Cir.2009) (citation omitted). A complaint need not contain "detailed factual allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Rather, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663 (citing

*Twombly,* 550 U.S. at 570). The determination of whether "a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663–64 (citing *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007)).

#### 2. Extrinsic Documents

As a general rule, a court may not consider matters outside of the pleadings on a motion to dismiss for failure to state a claim under Rule 12(b)(6), and Rule 12(d) instructs that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Bejaoui v. City of New York,* No. 13–CV–5667(NGG) (RML), 2015 WL 1529633, at \*4 (E.D.N.Y. Mar. 31, 2015) (quoting Fed.R.Evid. 12(d)). Notwithstanding this conversion requirement, a court may also consider the following for purposes of a motion to dismiss: (1) documents attached to the complaint or incorporated in it by reference, (2) documents that are integral to the complaint, and (3) matters of which judicial notice may be taken under Rule 201 of the Federal Rules of Evidence. *Grant v. Cty. of Erie,* 542 F. App'x 21, 23 (2d. Cir.2013); *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.,* 697 F.3d 59, 63 n. 4 (2d Cir.2012) (citing *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007)). In order to find a document "integral" to a complaint, it must be shown that the plaintiff "relie [d] heavily upon its terms and effect" when drafting the complaint; "mere notice or possession is not enough." *Glob. Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 155 (2d Cir.2006); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002). A court may take judicial notice of a fact "that is not subject to reasonable dispute because it ... is generally known within the trial court's territorial jurisdiction; or ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201. Guided by these principles, the Court will consider both the Criminal Complaint filed in the state court criminal proceedings, and the fact of the grand jury indictment as both integral to the complaint in this action. *Obilo v. City Univ. of N .Y.,* No. 01–CV–5118 (DGT), 2003 WL 1809471 at \*4–5 (E.D.N.Y. Feb.28, 2003) (It is "well established" that it is appropriate for the Court to take judicial notice of Bond's arrest report, criminal complaint, grand jury indictment and "criminal disposition data."); *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.,* 969 F.2d

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

1384, 1389 (2d Cir.1992) (noting with approval that the court had previously taken judicial notice of several indictments); *Weaver v. City of New York,* No. 13–CV–20 (CBA)(SMG), 2014 WL 950041, at \*3 (E.D.N.Y. Mar. 11, 2014) ("A court may certainly take judicial notice of public records for their existence, such as an indictment or documents relating to the disposition of a criminal case.").

## DISCUSSION

### 1. False Arrest and False Imprisonment [2]

[2] The Court analyzes the charges for false arrest and false imprisonment together. *See Covington v. City of New York,* 171 F.3d 117, 125 (2d Cir.1999) ("False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment.").

**\*3** The City moves to dismiss Bond's claims for false arrest and false imprisonment as time-barred under the statute of limitations. The parties agree that the proper statute of limitations in this case is three years, and each cites the Supreme Court's decision in *Wallace v. Kato* as the authority for determining when the statute of limitations begins to run. (Def.'s Mem. Mot. Dismiss at 6; Pl.'s Mem. Opp'n Mot. Dismiss at 5; *see generally Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1994) (citing *Owens v. Okure,* 488 U.S. 235, 250–01 (1989) (three-year statute of limitations)); *Wallace v. Kato,* 549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007).) The parties disagree, however, as to the application of *Wallace.* The City maintains that the statute of limitations begins to run when the alleged false imprisonment ends and the victim becomes held pursuant to legal process, namely at the time he is bound over to a magistrate judge or arraigned on charges. (Def.'s Mem. Mot. Dismiss at 6 (citing *Wallace,* 549 U.S. at 389).) Noting that Bond was arrested on September 8, 2010, the City argues that "plaintiff's false arrest claim began to accrue—conservatively estimating—on or about September 10, 2010, when he was arraigned." (*Id.*) Accordingly, the City concludes that the statute of limitations expired on or about September 10, 2013. (*Id.*)

Bond, on the other hand, cites *Wallace* for the proposition that the statute of limitations begins to run "when the wrongful act or omission results in damages ... even though the full extent of the injury is not then known or

predictable." (Pl.'s Mem. Opp'n Mot. Dismiss at 5 (citing *Wallace,* 549 U.S. at 391).) He argues that his injury was ongoing and continued until his charges were dismissed in December of 2013, and that the statute of limitations therefore did not begin to run until then. (*Id.* at 6 .)

Bond's interpretation of *Wallace* is simply unsupported. The court's decision is that case was clear:

> Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends.... Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process—when, for example, he is bound over by a magistrate or arraigned on charges.... We conclude that the statute of limitations on petitioner's § 1983 claim commenced to run when he appeared before the examining magistrate and was bound over for trial.

*Wallace,* 549 U.S. at 389–90. Bond has not challenged the City's estimation that he was arraigned on or about September 10, 2010. The Court thus finds that the statute of limitations as to Bond's claims for false arrest and false imprisonment expired on or about September 10, 2013, well before he brought this action on April 15, 2014.

Even so, Bond also claims that the statute of limitations, if it has expired, should be equitably tolled. (Pl.'s Mem. Opp'n Mot. Dismiss at 2, 6.) He states in general terms that "[a] statute of limitations may be tolled as necessary to avoid inequitable circumstances," (Pl.'s Mem. Opp'n Mot. Dismiss at 6 (citing *Bowers v. Transp. Maritima Mexicana, S.A.,* 901 F.2d 258, 264 (2d Cir.1990)), but provides no explanation for why equitable tolling is appropriate in this case.

**\*4** "The burden of demonstrating the appropriateness of equitable tolling ... lies with the plaintiff." *Boos v. Runyon,* 201 F.3d 178, 185 (2d Cir.2000). The Second Circuit has stated that equitable tolling should be applied only in "rare and exceptional circumstances," where "extraordinary circumstances" have prevented a

party from timely performing a required act, and the party acted with reasonable diligence throughout the period he seeks to toll. *Walker v. Jastremski,* 430 F.3d 560, 564 (2d. Cir.2005). "The term 'extraordinary' refers not to the uniqueness of a party's circumstance, but rather to the severity of the obstacle impeding compliance with a limitations period." *Bailey v. City of New York,* 79 F.Supp.3d 424, 441 (E.D.N.Y 2015) (quoting *Harper v. Ercole,* 648 F.3d 132, 137 (2d Cir.2011)). For example, courts have found equitable tolling appropriate in instances of "a corrections officer's intentional confiscation of a prisoner's petition shortly before the filing deadline, ... a state appellate court's failure to inform a prisoner that his leave to appeal was denied, ... [and] an attorney's failure to file a habeas petition on behalf of a prisoner, despite explicit directions from the prisoner to do so...." *Dillon v. Conway,* 642 F.3d 358, 364 (2d Cir.2011) (internal citations omitted); *see also, e.g., Moses v. Westchester Cty. Dep't of Corrections,* 951 F.Supp.2d 448, 454 (S.D.N.Y.2013) (Finding equitable tolling appropriate where victim for whom estate brought § 1983 action was "a mentally-ill, homeless, incarcerated immigrant beaten into a coma, [who] subsequently die[d], with estranged next-of-kin living in a foreign country").

In an effort to support a claim for equitable tolling, Bond asserts for the first time in his opposition to the City's motion a litany of new allegations in an attempt to call into question the probable cause supporting his arrest and grand jury indictment. For example, he writes that "the taxi cab driver told officers that the plaintiff sat directly behind him in the dark and therefore was not able to see the person's face at any time," that "the actual participants in the robbery informed the police officers that Plaintiff was not involved," and that "[n]o real evidence was submitted to the grand jury connecting the Plaintiff to this crime." (Pl.'s Mem. Opp'n Mot. Dismiss (Doc. No. 18) at 2–3.) He also contends that "the complaining witness had given a statement to the police on a prior occasion that he had not seen the Plaintiff and could not identify him," and that the City "knew that the photo array they asked the complaining witness to view would be, at a minimum, inaccurate." (*Id.* at 7.) Bond asserts that the identification was "very likely coerced by the officer to meet his objective, which was to punish the defendant [sic] for not cooperating in other investigations" regarding other robberies in his neighborhood. (*Id.* at 3, 7.)

**\*5** Critically, none of these new allegations is made in admissible form. They are the unsworn statements of Bond's counsel, with no evidentiary support whatsoever, from Bond himself, or otherwise. It is well-established that when assessing a motion to dismiss, "a court considers only the allegations made in the complaint and any documents attached thereto, and thus disregards allegations made in a memorandum of law." *Llanos v. Brookdale Univ. Hosp. & Med. Ctr .,* No. 10–CV–1726 (DLI)(RML), 2011 WL 809615, at \*4 (E.D.N.Y. Mar. 2, 2011) (citing *Khanukayev v. Times Square Alliance,* 2010 WL 2000552, at \*2 n. 4 (S.D.N.Y. May 20, 2010)); *see also Hayden v. Cty. of Nassau,* 180 F.3d 42, 54 (2d Cir.1999) ("[A] district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint."). Bond may not attempt to defeat the City's motion to dismiss by asserting new facts through counsel for the first time in his opposition. *See Peacock v. Suffolk Bus. Corp.,* No. 14–CV–4479 (LDW)(AKT), 2015 WL 1849870, at \*5 (E.D.N.Y. Apr. 23, 2015) ("It is well-settled that a plaintiff cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss.") (alterations in original) (internal quotation marks omitted) (citing *K.D. v. White Plains Sch. Dist.,* 921 F.Supp.2d 197, 209 n. 8 (S.D.N.Y.2013); *Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir.1998)).

Moreover, even accepting as true the allegations in Bond's complaint, as well as his opposition to the City's motion to dismiss, Bond has failed to demonstrate that equitable tolling is appropriate in this case. He has not alleged anything to suggest that he was not aware of the facts giving rise to this action or that he was somehow precluded from bringing this action during the three years following his arraignment. *See, e.g., Ellis v. Wilkson,* 81 F.Supp.3d 229, 235 (E.D.N.Y.2015) ("Plaintiff was aware of the allegedly unconstitutional conduct in 2010, and has failed to provide to the Court any facts that could give rise to equitable tolling."); *Rene v. Jablonski,* No. 08–CV–3968 (JFB)(AKT), 2009 WL 2524865, at \*7 (E.D.N.Y. Aug. 17, 2009) ("[A]lthough plaintiff's allegations of misconduct by the defendant ... are quite serious, if true, there is absolutely no indication that such actions interfered with plaintiff's awareness of potential alleged injuries for which he could bring a civil action under Section 1983 ...."). Bond's claims for false arrest and false imprisonment must therefore be dismissed as time-barred under the statute of limitations.) Thus, Bond has failed to meet the standard

for equitable tolling, and his claims for false arrest and false imprisonment are thus barred by the statute of liminations.

### 2. Malicious Prosecution

The City argues that Bond's claim for malicious prosecution must be dismissed because probable cause was established by the grand jury indictment, and Bond has failed to rebut that presumption. The Court agrees.

**\*6** To state a claim for malicious prosecution under New York law, the plaintiff must show: (1) the defendant initiated a criminal proceeding; (2) the proceeding terminated in plaintiffs favor; (3) there was no probable cause for the criminal charge; and (4) the defendant acted maliciously. *Rothstein v. Carriere,* 373 F.3d 275, 282 (2d Cir.2004); *see also Boyd v. City of New* York, 336 F.3d 72, 76 (2d Cir.2003); *Savino v. City of New York,* 331 F.3d 63, 72 (2d Cir.2003); *Kinzer v. Jackson,* 316 F.3d 139, 143 (2d Cir.2003); *Jocks v. Tavernier,* 316 F.3d 128, 136 (2d Cir.2003); *Colon v. City of New York,* 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 468 N.Y.S.2d 453 (1983). In addition, the Court of Appeals requires that in order "to sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Washington v. County of Rockland,* 373 F.3d 310, 316 (2d Cir.2004) (internal quotation marks omitted); *see also Rohman v. New York City Transit Auth.,* 215 F.3d 208, 215 (2d Cir.2000) ("In order to allege a cause of action for malicious prosecution [* \*25] under § 1983, [the plaintiff] must assert, in addition to the elements of malicious prosecution under state law, that there was ... a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." (emphasis omitted)).

Here, it is undisputed that a criminal proceeding was initiated, that it terminated in Bond's favor, and that Bond suffered a liberty restraint having been held in custody until the charges were dismissed. Therefore, for Bond to raise a viable malicious prosecution claim, he must allege facts sufficient to demonstrate that the City lacked probable cause and that the City, through its agents, acted maliciously.

"Once a suspect has been indicted ... the law holds that the Grand Jury action creates a presumption of probable cause." *Colon,* 60 N.Y.2d at 82, 468 N.Y.S.2d

453, 455 N.E.2d 1248; *see Boyd,* 336 F.3d at 76 (same). A plaintiff may overcome the presumption "only by evidence establishing that the police witnesses have not made a complete and full statement of the facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." *Id.* at 82–83. "Thus, in order for a plaintiff to succeed in a malicious prosecution claim after having been indicted, 'he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.' " *Rothstein,* 373 F.3d at 283 (quoting *Colon,* 60 N.Y.2d at 83, 468 N.Y.S.2d 453, 455 N.E.2d 1248). In order to rebut the presumption of probable cause, a plaintiff must "establish what occurred in the grand jury and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially.' " *Id.* at 284, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (quoting *Colon,* 60 N.Y.2d at 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248.) Here, Bond has failed to meet this standard.

**\*7** Where, as here, a plaintiff's only evidence to rebut the presumption of the indictment is his version of events, courts will find such evidence to be nothing more than "mere conjecture and surmise that [the plaintiff's] indictment was procured as a result of conduct undertaken by the defendants in bad faith," which is insufficient to rebut the presumption of probable cause. *Reid v. City of New York,* 00 Civ. 5164, 2004 U.S. Dist. LEXIS 5030, 2004 WL 626228, at \*7 (S.D.N.Y. Mar.29, 2004) (quoting *Savino,* 331 F.3d at 73); *see also Simmons v. New York City Police Dep't,* No. 03–7464, 97 F. App'x 341, 343 (2d Cir. Apr.29, 2004) ("Although [plaintiff] testified that the arresting officer ... told him that the officers would falsify evidence and manipulate line-ups in order to implicate him, this allegation is not, without more, sufficient to raise an inference that the indictment was procured by fraud or bad faith conduct."); *Scully v. City of Watertown,* No. 03 CV 846, 2005 U.S. Dist. LEXIS 40261, 2005 WL 1244838, at \*11 (N.D .N.Y. May 25, 2005) ("The simple assertion that [plaintiff] was acquitted and therefore the officers must have lied is insufficient to overcome the presumption created by the grand jury's indictment ...."); *Montes v. King,* 00 Civ. 4707, 2002 U.S. Dist. LEXIS 14464, 2002 WL 1808209, at \*3 n. 5 (S.D.N.Y. Aug.6, 2002) (finding that "unsubstantiated speculation" that officer acted in bad faith was not enough to survive summary judgment); *Jenkins v. City of New York,* 98 Civ. 7170, 98 Civ. 7338,

1999 U.S. Dist. LEXIS 15353, 1999 WL 782509, at *9, 11 (S.D.N.Y. Sept.30, 1999) [* *29] (despite later-discovered perjury by a civilian witness at the grand jury, plaintiff "failed to produce any evidence of intentional police misconduct and his allegations are contradicted by the affidavits and contemporaneous documentary record in support of the motion. [Plaintiff] has thus failed to rebut the presumption that probable cause to commence the proceeding existed."), *aff'd,* 216 F.3d 1072 (2d Cir.2000).

Here, Bond has failed to rebut this presumption. As an initial matter, as noted above, Bond may not attempt to defeat the City's motion to dismiss by attempting to amend his complaint with new facts asserted through counsel for the first time in his opposition. In addition, he has asserted no facts in his complaint or otherwise, other than his attorney's own conjecture, to suggest that any of the officers involved in this prosecution engaged in any conduct before the grand jury, let alone intentional misconduct that rises to the level required for a malicious prosecution claim. He asserts wholly conclusory allegations, for example, that "no real evidence was submitted to the grand jury connecting the Plaintiff to this crime," and that the victim's identification of Bond was 'very likely coerced by the officer to meet his objective, which was to punish the defendant for not cooperating in other investigations." These allegations are unsworn, and unsupported by any facts. They amount to nothing more than "unsubstantiated speculation" that is not sufficient to rebut the presumption of probable cause created by the grand jury's indictment. As such, his claim for malicious prosecution cannot survive.

**3. Negligence**

**\*8** Bond alleges that the City's failure to get him "the aid he needed" constituted negligence, and that the city acted "negligently, carelessly, and recklessly" in allowing his rights to be violated. (Compl. at ¶¶ 31, 33.) As a result, he claims to have sustained unspecified "emotional, physical, and psychological injuries." (*Id.* at ¶¶ 23, 33.) The City argues that Bond's claim for negligence must be dismissed because under New York law a plaintiff bringing a cause of action for negligence must file a notice of claim within ninety days of the injury. (Def.'s Mem. Mot. Dismiss at 7–8.)

As an initial matter, Bond's memorandum in opposition to the City's motion to dismiss entirely fails to respond to the City's arguments on this point, and courts in this circuit have held that a plaintiff's failure to respond to contentions raised in a motion to dismiss constitutes an abandonment of the applicable claims. *McLeod v. Verizon New York,* 995 F.Supp.2d 134, 143–44 (E.D.N.Y.2014) (gathering cases). Even if the Court disregards Bond's failure to respond, he has nonetheless failed to state a claim as required under Rule 12(b)(6).

State law claims, even when brought in federal court, are subject to state notice-of-claim requirements. *Hardy v. N.Y.C. Health & Hosp. Corp.,* 164 F.3d 789, 793 (2d. Cir.1999) (citing *Felder v. Casey,* 487 U.S. 131, 151, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988)). Under New York law, a notice of claim is a "condition precedent" to bringing a personal injury action against a municipality. *Id.* at 794 (citing *Felder,* 487 U.S. at 152; *Brooks v. Maryland Gen. Hosp., Inc.,* 996 F.2d 708, 714–15 (4th Cir.1993)). Bond was therefore required to comply with Section 50–e of New York General Municipal Law, which states that a notice of claim must be served "within ninety days after the claim arises ...." *Burks v. Nassau Cty. Sherriff's Dep't,* 288 F.Supp.2d 298, 301 (E.D.N.Y.2003) (citing N.Y. Gen. Mun. Law § 50–e(1)(a)).

As noted by the City, even accepting December 2013 as the accrual date for Bond's negligence claim, the ninety-day time period to file a notice of claim expired before the April 15, 2014 initiation of this action. Nowhere in Bond's complaint does he allege that he filed the necessary notice of claim. *See generally* N.Y. Gen. Mun. Law § 50–i(1)(b) (requiring that a plaintiff plead in his complaint or moving papers that at least thirty days have lapsed since the service of a notice of claim). Bond's claim for negligence must therefore be dismissed.

**CONCLUSION**

For the reasons stated in this Memorandum and Order, the City's motion to dismiss (Doc. No. 14) is granted, and the Complaint is hereby dismissed. The Clerk of Court shall enter judgment in accordance with this Memorandum and Order, and close the case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5719706

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Declined to Follow by McLennon v. City of New York, E.D.N.Y.,
March 18, 2016

2003 WL 1809471
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Henry U. OBILO, Plaintiff,

v.

CITY UNIVERSITY OF THE CITY OF NEW
YORK; College of Staten Island of the City
University of New York; Police Officer/Detective
burgess # 3107, Tax Registry No.: 885309
of the 122nd Precinct of the New York Police
Department; Public Safety Officer/Director
Gene Martinez; Public Safety Officer/Asst.
Director, Robert Yurman; and Vice President
Carol Jackson of the College of Staten Island of
the City University of New York, and Police Officer
"John Doe 1", thru "John Doe 5", Defendants.

Civil Action No. CV–01–5118 (DGT).
|
April 7, 2003.

**Synopsis**
City university student, acquitted of charge he sexually
assaulted classmate, brought civil rights and tort claims
against university and city officials. On defendants'
motions to dismiss, the District Court, Trager, J., held
that: (1) police officer had probable cause to arrest
student; (2) probable cause existed to prosecute student;
(3) complaint failed to state § 1981 claim; (4) university
was entitled to Eleventh Amendment immunity; and (5)
campus security officers had probable cause to detain
student.

Motions granted.

Opinion, 2003 WL 715749, superseded.

West Headnotes (14)

**[1]    Civil Rights**

↳ **Arrest and detention**

City police officer had probable cause to
arrest sexual assault suspect, and thus could
not be held personally liable under § 1983
for false arrest, even though suspect had
protested his innocence; officer was entitled to
rely on victim's complaint identifying suspect,
investigation by college security officers, and
his own observations. 42 U.S.C.A. § 1983.

7 Cases that cite this headnote

**[2]    Civil Rights**

↳ **Sheriffs, police, and other peace officers**

Arresting officer's determination that he
had probable cause to arrest sexual assault
suspect was objectively reasonable, and thus
he was entitled to qualified immunity from
§ 1983 liability arising out of allegedly
false arrest; officer was entitled to rely on
victim's complaint, absent showing that it was
inherently incredible. 42 U.S.C.A. § 1983.

5 Cases that cite this headnote

**[3]    Civil Rights**

↳ **Criminal prosecutions**

Probable cause existed for prosecution of
indicted sexual assault defendant, despite his
protestations of innocence, and thus arresting
officer could not be held personally liable
under § 1983 for malicious prosecution, absent
showing that indictment had been obtained in
bad faith. 42 U.S.C.A. § 1983.

2 Cases that cite this headnote

**[4]    Civil Rights**

↳ **Sheriffs, police, and other peace officers**

Arresting officer's determination that he had
probable cause to pursue prosecution of
indicted sexual assault suspect was objectively
reasonable, and thus he was entitled to
qualified immunity from § 1983 liability
arising out of allegedly malicious prosecution;
officer was entitled to rely on victim's
complaint, absent showing that it was
inherently incredible. 42 U.S.C.A. § 1983.

WESTLAW  © 2018 Thomson Reuters. No claim to original U.S. Government Works.

1 Cases that cite this headnote

**[5]    Civil Rights**

👉 Arrest and detention

Allegation that arresting officer believed white sexual assault complainant over black suspect was insufficient to establish racially discriminatory intent needed to state § 1981 claim. 42 U.S.C.A. § 1981.

4 Cases that cite this headnote

**[6]    Civil Rights**

👉 Arrest and detention

Black arrestee failed to state § 1981 claim against white arresting officer, absent allegation that officer prevented him from enforcing or pursuing judicial enforcement of any rights, contractual or otherwise. 42 U.S.C.A. § 1981.

1 Cases that cite this headnote

**[7]    Civil Rights**

👉 Criminal law enforcement;prisons

City could not be held liable to arrestee under § 1983, based on officer's alleged false arrest and malicious prosecution, absent allegation that any failure of city to train or supervise officer amounted to municipal policy or custom. 42 U.S.C.A. § 1983.

2 Cases that cite this headnote

**[8]    Federal Courts**

👉 Higher education;colleges and universities

City University of New York and one of its senior colleges were effectively arms of state, and thus entitled to Eleventh Amendment immunity from § 1981 and § 1983 claims by student who was arrested and prosecuted for sexually assaulting classmate; any damage award would be paid out of state treasury, and state exercised significant supervisory functions. U.S.C.A. Const. Amend. 11; 42 U.S.C.A. §§ 1981, 1983.

1 Cases that cite this headnote

**[9]    Federal Courts**

👉 Higher education;colleges and universities

**Federal Courts**

👉 Suits for injunctive or other prospective or equitable relief;Ex parte Young doctrine

Arrested student's official capacity § 1981 and § 1983 claims against public college official and security employees did not come within *Ex Parte Young* exception to Eleventh Amendment bar; claims sought solely retrospective compensatory relief. U.S.C.A. Const. Amend. 11; 42 U.S.C.A. §§ 1981, 1983.

5 Cases that cite this headnote

**[10]    Civil Rights**

👉 Arrest and detention

Campus security officers had probable cause to detain college student accused of sexually assaulting classmate, and thus could not be held liable for false arrest under § 1983; officers' reliance on victim complaint was justified, even though student claimed to be innocent. U.S.C.A. Const. Amend. 4; 42 U.S.C.A. § 1983.

1 Cases that cite this headnote

**[11]    Civil Rights**

👉 Schools

**Civil Rights**

👉 Sheriffs, police, and other peace officers

Even if campus security officers lacked probable cause to detain student accused of sexually assaulting classmate, their reliance on victim complaint was objectively reasonable, and thus they were entitled to qualified immunity from § 1983 liability. U.S.C.A. Const. Amend. 4; 42 U.S.C.A. § 1983.

Cases that cite this headnote

**[12]  Civil Rights**
  📌 Education

Allegation that college administrator refused to readmit student acquitted of sexual assault charges failed to state equal protection claim, absent allegation that similarly situated students had been treated differently. U.S.C.A. Const. Amend. 14.

Cases that cite this headnote

**[13]  Civil Rights**
  📌 Education

Allegation that college administrator refused to readmit student acquitted of sexual assault charges failed to state due process claim, absent allegation of liberty or property interest of which student was deprived. U.S.C.A. Const. Amend. 14.

Cases that cite this headnote

**[14]  Civil Rights**
  📌 Education
**Civil Rights**
  📌 Criminal law enforcement;prisons

College administrator, as supervisor of campus security officers, could only be held liable under § 1983 if: (1) she directly participated in officers' violation of student's rights; (2) created policy or custom under which unconstitutional practices occurred, or allowed such policy or custom to continue; or (3) was grossly negligent in managing officers. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**Attorneys and Law Firms**

Edward A. Roberts, Brooklyn, NY, for plaintiff.

Bruce B. McHale, Esq., NYS Atty General's Office, New York, NY, for defendant.

*CORRECTED OPINION*

TRAGER, Judge.

**\*1** Plaintiff Henry Obilo brings this civil rights action against defendants City University of New York ("CUNY"), the College of Staten Island ("CSI"), [1] "Police Officer/Detective" Burgess ("Burgess"), "Public Safety Officer/Director" Gene Martinez ("Martinez"), "Public Safety Officer/Asst. Director" Robert Yurman ("Yurman"), [2] Vice President of CSI Carol Jackson ("Jackson"), and Police Officer "John Doe 1" thru "John Doe 5", alleging that plaintiff's arrest and subsequent prosecution for an alleged sexual assault violated various of his constitutional rights. In both his initial and amended complaint, plaintiff sued Burgess, Martinez and Yurman in their official capacity and Jackson in both her official and individual capacity. *See* Compl. ¶¶ 8–9, 11–12; Am. Compl. ¶ 7–8, 10–11. [3]

[1]     Under New York Education Law, CUNY is a distinct corporate body. *See* N.Y. Educ. Law § 6203. In addition, CUNY is considered to include "each senior college and each community college." *Id.* § 6202(2). CSI is a senior college within the CUNY system. *See id.* § 6205(5). A senior college, such as CSI, is not a legally cognizable entity apart from CUNY. *See id.* §§ 6202(2) & 6202(5). Consequently, CUNY appears to be the only properly named institutional defendant in this action.

[2]     In his complaint, plaintiff misspelled Yurman's name as "Youman".

[3]     In his complaint, plaintiff also sued Rudolph Guliani, in his official capacity as Mayor of the City of New York ("Guliani"), and Bernard B. Kerik, in his official capacity as Commissioner of the New York City Police Department ("NYPD") ("Kerik"). At a February 5, 2002 conference, plaintiff's counsel agreed to withdraw all claims against Guliani and Kerik. Accordingly, those defendants will be treated as dismissed from this case and Count III of plaintiff's original complaint (which alleges a claim of municipal liability against Guliani and Kerik) and other allegations against the City of New York and the NYPD will be considered as effectively withdrawn. As discussed in more detail below, plaintiff has submitted an amended complaint with his opposition

memorandum. In the amended complaint, plaintiff has withdrawn Count III and all allegations against Guliani and Kerik, although plaintiff still asserts allegations of failure to train and investigate police officers against the City of New York, NYPD and "the City of Staten Island." These claims will be addressed *infra* in the context of plaintiff's claims against Burgess in his official capacity.

Plaintiff's four count initial complaint is not the most artful pled. In Count I, plaintiff appears to allege claims against defendants CUNY, CSI, Martinez, Yurman and Jackson (collectively, "state defendants") under 42 U.S.C. § 1981 and § 1983, arguing that his detention by Martinez and Yurman, and their subsequent call to the NYPD, violated his rights under the Fourth Amendment to the Constitution. *See* Compl. ¶ 36. [4] Plaintiff also alleges that "the Board of Trustees of [CUNY], nor the Executive Department of [CSI] nor the Executive Department of the City of New York nor the [NYPD] caused an investigation to be made to ascertain the conduct of the defendant Polices Officers." *Id.* ¶ 34. In Count II, plaintiff seems to assert another § 1983 claim against Burgess and the state defendants, alleging that his arrest and prosecution violated his Fourth Amendment rights. [5] *See id.* ¶¶ 37–39. In Count IV, plaintiff asserts against Burgess pendent state law claims under New York law for false arrest and malicious prosecution. *See id.* ¶¶ 49–51. In addition, it appears that Count IV contains allegations of, *inter alia,* assault and intentional and negligent infliction of emotional distress against the unnamed police officers for failure to intervene and stop "the abuse" they were witnessing. *Id.* ¶ 50. As relief, plaintiff seeks $1 million in compensatory damages for each of Counts I and II, $500,000 in compensatory damages for Count IV, and $1 million in punitive damages for each of Counts I and IV.

[4]   Except as otherwise indicated, citations to paragraphs in plaintiff's original complaint correspond to the identical paragraphs in plaintiff's amended complaint and vice versa.

[5]   Actually, in Counts I and II, plaintiff asserts that the alleged false arrest and malicious prosecution for which his § 1983 claim is premised violated his rights under the First, Fourth, Fifth and Fourteenth Amendment. *See* Compl. ¶ 36. However, the Second Circuit has found that "the Fourth Amendment provides the source of a § 1983 claim premised on a person's arrest." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 115 (2d Cir.1995) (footnote omitted).

Burgess moves to dismiss plaintiff's original complaint pursuant to Rule 12(b)(6) for failure to state a claim, arguing that (1) probable cause existed for plaintiff's arrest and subsequent criminal prosecution; (2) Burgess is entitled to qualified immunity; and (3) with regard to plaintiff's pendent state law claims, except malicious prosecution, plaintiff failed to comply with conditions precedent to suit. In a separate motion, state defendants move to dismiss the original complaint pursuant to Rules 12(b)(1) and 12(b)(6), claiming that (1) Eleventh Amendment immunity bars the § 1981 and § 1983 claims for money damages; (2) state defendants do not constitute "persons" subject to suit within the meaning of § 1981 and § 1983; and (3) the complaint fails to allege a viable claim against defendant Jackson.

**Background**

**\*2** Plaintiff, a black male student matriculating at CSI, alleges that on October 6, 1999, [6] he was escorted from class by campus security officers Martinez and Yurman and accused of criminal activity—sexually assaulting Kathleen Tomey ("Tomey"), [7] a white female college student who plaintiff alleges was his girlfriend. *See* Compl. ¶¶ 3, 16–18. At CSI, Plaintiff was "fully interrogated" by defendants Martinez and Yurman. *Id.* ¶ 20. During the interrogation, plaintiff "attempt[ed] to plead his innocence regarding the criminal allegations." *Id.* Nonetheless, Martinez and Yurman contacted the 122nd Precinct of the NYPD, and plaintiff was subsequently arrested and transported to the precinct. *See id.* ¶¶ 21–22. While in police custody, plaintiff spoke to Burgess and others, "pleading his innocence and informing them that he was not involved in the alleged criminal activity." *Id.* ¶ 22. Plaintiff was charged, arraigned and subsequently prosecuted by the District Attorney under Indictment No. 301/99 encaptioned *People of the State of New York v. Henry Obilo. See id.* ¶¶ 23–24. Plaintiff was acquitted of all charges on or about May 2, 2000, after a jury trial in the Supreme Court of the State of New York, County of Richmond. *See id.* ¶ 25.

[6]   Plaintiff's complaint alleges that he was escorted from class and detained by Martinez and Yurman on "October 6, *2001.*" Compl. ¶ 16 (emphasis added). Based on the time sequence of the other allegations contained in the complaint, it is fairly evident that plaintiff meant to assert that he was escorted from

Obilo v. City University of City of New York, Not Reported in F.Supp.2d (2003)

2003 WL 1809471

class on October 6, *1999*. *See* Compl. ¶ 21 (alleging plaintiff was arrested on or about October 6, 1999); *see also* Am. Compl. ¶ 17 (alleging plaintiff was escorted from class on or about October 6, 1999).

7     The parties' submissions to the court contain various spellings of the complaining victim's last name. For purposes of this memorandum, the spelling in plaintiff's complaint will be adopted.

On July 17, 2000, [8] plaintiff filed a Notice of Claim with the Comptroller of the City of New York. *See id.* ¶ 26. In the Notice of Claim, plaintiff indicated that the nature of his claim against the City of New York and CUNY was false arrest, unlawful detention, and malicious prosecution in that New York City police officers "fail[ed] to observe proper standards of investigation" when arresting him and, in concert with the District Attorney's office, "wrongfully prosecute[d] him." Notice of Claim ¶ 2. Plaintiff also stated that these alleged crimes were at the "urging" of CUNY and CSI officials. [9] *Id.* In addition, plaintiff indicated that his claim arose on or about May 3, 2000 when he was acquitted by a jury. *See id.* ¶ 3. According to plaintiff, a 50–h hearing was conducted on April 18, 2001, *see* Compl. ¶ 26, during which plaintiff was orally examined under oath about the occurrence and extent of the injuries presented in his Notice of Claim. *See* Notice of 50–h hearing, attached to Notice of Claim.

8     In his complaint, plaintiff alleges that he served a Notice of Claim on the Comptroller on July 27, 2000. A review of the Notice of Claim, a copy of which is attached to, *inter alia,* the Declaration of Conception A. Montoya in support of Burgess' motion to dismiss indicates that it was received by the Comptroller's office on July 17, 2000. *See* Decl. of Conception A. Montoya ("Montoya Decl."), Ex. G. A copy of the Notice of Claim is also attached to plaintiff's opposition memorandum, but it did not contain the "Received City of New York" stamp indicating the date filed with the Comptroller. *See* Pl.'s Opp'n, Ex. B ("Notice of Claim"). The Notice of Claim and its contents can properly be considered since it was expressly referred to in paragraph 26 of plaintiff's original and amended complaint. *See Brass v. Am. Film Techs.,* 987 F.2d 142, 150 (2d Cir.1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991)).

9     Interestingly, plaintiff makes no such discernible allegation in either his original or amended complaint.

Plaintiff filed a timely complaint against all defendants on August 1, 2001. At a February 5, 2002 pre-motion conference, it was ordered that in lieu of permitting Burgess and the state defendants to proceed on their respective motions to dismiss, plaintiff was to file an amended complaint by March 8, 2002. *See* Tr. at 12–13, Attached to Decl. of Bruce McHale. When plaintiff failed to submit an amended complaint by early May 2002, a briefing schedule was approved for motions directed to the original complaint.

Plaintiff attached an amended complaint to his opposition memorandum dated June 13, 2002. The amended complaint seeks to sue Burgess, Martinez and Yurman in their individual as well as official capacity. *Compare* Am. Compl. ¶¶ 8, 10–11 *with* Compl. ¶¶ 9, 11–12. In addition, the amended complaint contains allegations that Jackson "coerced and forced and threatened the plaintiff and in effect disbarred and unlawfully removed the plaintiff as a student of [CSI], even though the plaintiff was duly qualified to be in attendance at [CSI]" in violation of unspecified constitutional rights. Am. Compl. ¶ 37. Count III of the amended complaint appears to assert a claim against Jackson for inadequate training and supervision of campus security officers. *See id.* ¶¶ 41–47. In all other respects, plaintiff's amended complaint is virtually identical to his original complaint.

**\*3** To the extent that plaintiff seeks to belatedly introduce the amended complaint, state defendants argue that this request should be denied as futile because the amended complaint is subject to dismissal on the basis that (1) Martinez and Yurman had probable cause to detain plaintiff and/or (2) Martinez and Yurman are entitled to qualified immunity. State defendants do not, however, address the new claims asserted against Jackson. Burgess asserts that the amended complaint should be dismissed for the same reasons he argues with regard to the original complaint. For purposes of the current motions to dismiss, plaintiff's request will be entertained for the limited purpose of analyzing Burgess and state defendants' arguments on their respective motions with respect to the amended complaint to determine whether the amendment is futile.

**Discussion**

### Standard of Review

A complaint cannot be dismissed under Rule 12(b)(6) unless "it appears beyond reasonable doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). However, a complaint should be dismissed if an affirmative defense, or other defense barring relief, is apparent from the face of the complaint. *See Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74–75 (2d Cir.1998) (citations omitted). When determining the sufficiency of a plaintiff's claim, "consideration is limited to the factual allegations in [the] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in [plaintiff's] possession or of which plaintiff[ ] had knowledge and relied on in bring suit." *Brass,* 987 F.2d at 150 (citing *Cortec,* 949 F.2d at 47–48).

With Burgess' Notice of Motion, he attached a declaration from his lawyer, Conception A. Montaya, to which seven lettered exhibits were attached. These exhibits are as follows: (A) a copy of plaintiff's summons and original complaint; (B) a copy of the incident report filed by Tomey with CSI on October 2, 1999 ("incident report"); (C) a copy of the complaint filed by Tomey with the 122nd Precinct on October 2, 1999 ("police complaint"); (D) a copy of Burgess' complaint follow-up report (commonly referred to as a "DD5") dated October 3, 1999, which contains details about a conversation with Tomey ("October 3, 1999 DD5"); (E) a copy of Burgess' DD5 dated October 6, 1999, which contains details about a conversation with plaintiff ("October 6, 1999 DD5"); (F) a copy of plaintiff's handwritten statement to Burgess dated October 6, 1999 ("plaintiff's statement"); and (G) a copy of plaintiff's Notice of Claim filed with the Comptroller on July 17, 2000.[10] Plaintiff's complaint can obviously be considered as can plaintiff's Notice of Claim because, as indicated above, it was specifically referenced in his original and amended complaint. *See* Compl. ¶ 26.

---

[10]  State defendants have attached to their memorandum an excerpt of the transcript from the February 5, 1999 pre-motion conference, of which judicial notice may be taken. State defendants do not appear to request

consideration of documents outside the complaint for purposes of their motion.

**\*4** Other exhibits may also properly be considered because they too were referenced (albeit implicitly) in plaintiff's complaint and/or are central to plaintiff's allegations.[11]

---

[11]    In fact, at oral argument, plaintiff's counsel conceded that the exhibits were incorporated in plaintiff's complaint by reference.

First, plaintiff asserts that the allegations against him were of a "conspiratorial nature" and that he was therefore arrested and prosecuted without probable cause. Compl. ¶ 23–24; *see also* Compl. ¶ 35 (alleging actions were done "without any probable cause"). This is an implicit reference to the incident report and police complaint filed by Tomey, and the October 3, 1999 DD5, all of which set forth her allegations against plaintiff. Accordingly, these exhibits may be considered because they are incorporated by reference in the complaint.

Moreover, these documents are "central" to plaintiff's claims. *See Adipar Ltd. v. PLD Int'l Co.,* CV–01–0765, 2002 WL 31740622, at * 4 & n. 1 (S.D.N.Y. Dec.6, 2002) (citing *Brass,* 987 F.2d at 150); *see also Cortec,* 949 F.2d at 48 (determining that documents not publicly filed, attached to complaint nor incorporated by reference to it could be considered on 12(b)(6) motion because plaintiff did not lack notice of the documents and the documents were integral to its complaint); 5 *C. Wright & A. Miller, Federal Practice & Procedure* § 1327, at 489 & n. 15 (stating that when "plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading"). Indeed, the Second Circuit has indicated that notice to the pleader is the critical element in determining whether extrinsic documents may properly be considered on a motion to dismiss. *See Cortec,* 949 F.2d at 48. If assertions in plaintiff's complaint are based on allegations of sexual assault by Tomey, it should come as no surprise to plaintiff if the documents that initiated those allegations are considered when determining whether to dismiss plaintiff's claims. Alternatively, at the very least, judicial notice can be taken of the fact that Tomey filed an incident report with CSI and a complaint with the NYPD, both on October 2, 1999, and that Burgess interviewed Tomey on October 3, 1999.

Second, plaintiff asserts that after being accused of sexual assault, he repeatedly proclaimed his innocence and that, while in police custody, he spoke to Burgess and informed the police that he was not involved in the alleged criminal activity. *See* Compl. ¶¶ 20, 22. Plaintiff also makes vague and generalized allegations about "clear and unequivocal evidence" of the conspiratorial nature of the allegations against him, *id.* ¶ 23, and "evidence tending to clearly exonerate" him. *Id.* ¶ 24. It appears that the "evidence" that plaintiff claims exonerates him is, or includes, the report from his conversation with Burgess and his written statement to the police. [12] If so, plaintiff's malicious prosecution claim is based on plaintiff's assertion that certain of the defendants and the state prosecutors rejected this evidence when determining whether to prosecute him. Accordingly, the October 6, 1999 DD5 and plaintiff's handwritten notes can properly be considered. As with consideration of the incident report and police complaint, consideration of these documents should not surprise plaintiff in light on the allegations of his repeated pronouncements of innocence to Martinez, Yurman, Burgess and others.

[12]      This assumption is supported by plaintiff's opposition memorandum, in which he argues that defendants failed to consider "statements and proofs submitted to the investigating officers." Pl.'s Opp'n, Point II. As plaintiff's opposition memorandum did not contain any page numbers, sections of the memorandum will be referred to by point headings.

**\*5** Lastly, Burgess also submitted an affidavit in support of his motion to dismiss in which he attests that he testified at neither the grand jury proceedings nor the trial proceedings in the criminal matter underlying plaintiff's lawsuit. *See* Burgess Aff. ¶¶ 3, 4. However, plaintiff's complaint does not reference his grand jury proceedings, although he does allege that he was indicted (presumably by the grand jury). Accordingly, it appears to be improper to consider Burgess' affidavit. [13]

[13]      It should be noted, however, that at oral argument, plaintiff's counsel conceded that Burgess did not testify at trial, although counsel was not certain whether he testified at the grand jury proceedings.

In sum, at the very least the contents of the Notice of Claim can be considered and judicial notice can be taken of the incident report, police complaint and two DD5s completed by Burgess. There is a strong argument that the

contents of the incident report, police complaint, the two DD5s and plaintiff's handwritten statement can properly be considered as integral to plaintiff's complaint.

### Defendant Burgess

### (1)

### Individual Capacity Claims

An individual capacity suit seeks to impose personal liability on an official for actions taken under color of state law. In his amended complaint, plaintiff seeks to assert a § 1983 claim for false arrest and malicious prosecution against Burgess, alleged to be an NYPD officer, in his official capacity. To assert a § 1983 claim, plaintiff must allege that Burgess "acting under color of state law, caused the deprivation of a federal right." *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991) (citing *Graham,* 473 U.S. at 166, 105 S.Ct. at 3105). In his complaint, plaintiff alleges that Burgess was acting under color of state law. *See* Compl. ¶ 15. Therefore, the critical issue is whether plaintiff adequately alleges a claim for false arrest or malicious prosecution against Burgess.

### A. False Arrest

Probable cause to arrest is a complete defense to an action for false arrest, whether the action is brought under state law or § 1983. *See Singer,* 63 F.3d at 188 (citing *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994)); *Broughton v. State,* 37 N.Y.2d 451, 458, 335 N.E.2d 310, 315, 373 N.Y.S.2d 87, 95 (1975). Burgess maintains that he had probable cause to arrest plaintiff because he relied on (1) Tomey's complaint and her identification of plaintiff, (2) his own observations, which corroborated Tomey's allegations that she was accosted by plaintiff, and (3) information provided by Martinez and Yurman, who were investigating the same complaint. [14] In response, plaintiff argues that Burgess' "exclusive reliance" on Tomey's statements as a basis for probable cause is without merit.

[14]      Burgess also contends that the fact that the grand jury indicted plaintiff, *see* Compl. ¶ 24, creates a presumption of probable cause to arrest. Burgess is correct in his recitation of the law; however, the

presumption created by plaintiff's indictment applies only to a malicious prosecution action, not a false arrest action. *See Broughton v. State,* 37 N.Y.2d at 456, 335 N.E.2d at 313, 373 N.Y.S.2d at 93; *but see Montes v. King,* CV–00–4707, 2002 WL 424318, at *3 (S.D.N.Y. March 19, 2002).

Plaintiff also incorrectly asserts that the "critical element of the tort [sic] of false arrest and malicious prosecution is not whether there was probable cause to effectuate the arrest, but rather whether there was a 'reckless disregard' " by defendants for plaintiff's constitutional rights. Pl.'s Opp'n, Point II. Plaintiff then asserts that "malice can be inferred from the fact that the defendant has acted with reckless disregard for the rights of another party." *Id.* In support of this position, plaintiff cites two cases from the State of Mississippi. Plaintiff appears to have confused the tort of false arrest with that of malicious prosecution and to have introduced a subjective determination into the analysis of probable cause in the false arrest context.

**\*6** **[1]** Actual malice is not an essential element of an action for false arrest; it is, however, an essential element of an action for malicious prosecution. *Broughton,* 37 N.Y.2d at 456–57, 373 N.Y.S.2d at 93–94, 335 N.E.2d at 314. Moreover, "[p]robable cause consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe the plaintiff guilty," clearly an objective standard. *Colon v. City of New York,* 60 N.Y.2d 78,82, 455 N.E.2d 1248, 1250, 468 N.Y.S.2d 453, 455 (1983); *see also Maryland v. Macon,* 472 U.S. 463, 470–71, 105 S.Ct. 2778, 2782–83, 86 L.Ed.2d 370 (1985); *Lee v. Sandberg,* 136 F.3d 94, 103, n. 5 (2d Cir.1997); 1 *LaFave and Israel, Criminal Procedure* § 3.3, at 188 (stating the probable cause test is "an objective one"). Thus, the crucial issue is whether the facts in Burgess' possession at the time he arrested plaintiff were sufficient to establish probable case for the arrest and not whether he acted in "reckless disregard" given the facts at hand. Burgess contends that probable cause is established by the allegations in plaintiff's complaint and the supporting documents.

"In general, probable cause exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant,* 101 F.3d at 852. Moreover, "a finding of probable cause can be made based on the 'totality of

the circumstances.' " *Bernard,* 25 F.3d at 102 (quoting *Ill. v.. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1982)). In evaluating probable cause to arrest, the court should consider the information available to the arresting officer at the time of arrest. *See Peterson v. County of Nassau,* 995 F.Supp. 305, 313 (E.D.N.Y.1998) (citing *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987)).

In this case, Burgess relied on several factors in reaching probable cause to arrest plaintiff. First, Burgess relied on information provided by the security officers at CSI, including Martinez and Yurman, who were investigating the same complaint filed by Tomey in a CSI incident report. Plaintiff's complaint establishes that, as part of Martinez and Yurman's investigation, they "fully interrogated" plaintiff before contacting the NYPD. To establish probable cause to effect an arrest, officers are allowed to rely on information provided to them by fellow officers. *See Bernard,* 25 F.3d at 102–03; *see also Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir.2000) (citing *Bernard,* 25 F.3d at 102–03). Even if the information relied upon turns out to be false, there is still probable cause to arrest if the arresting officer acted reasonably and in good faith in relying on the information. *See Bernard,* 25 F.3d at 102–03 (citing *Colon,* 60 N.Y.2d at 82, 455 N.E.2d at 1250, 468 N.Y.S.2d at 455). Here, Burgess investigated Tomey's complaint after she filed an incident report at CSI and after CSI investigated the same complaint. Plaintiff's complaint asserts no viable challenge to Martinez and Yurman's investigation. Thus, Burgess had every right to rely on the CSI investigation in establishing probable cause to arrest plaintiff.

**\*7** Second, Burgess interviewed the complainant, Tomey, one day after she filed her police complaint.[15] *See* October 3, 1999 DD5. It is well-established law in the Second Circuit that "[a]n arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint ... charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer,* 63 F.3d at 199; *accord Mistretta v. Prokesch,* 5 F.Supp.2d 128, 133 (E.D.N.Y.1998); *Miloslavsky v. AES Eng'g Soc'y, Inc.,* 808 F.Supp. 351, 355 (S.D.N.Y.1992), *aff'd without opinion,* 993 F.2d 1534 (2d Cir.2003). In addition, "the veracity of citizen complaints who are the victims of the very crimes they report to the police is assumed." *Lee,* 136 F.3d at 103 (quoting *Miloslavsky,* 808 F.Supp. at 355);

*see also* 2 Wayne LaFave, Search and Seizure, § 3.4(a), at 205 (noting that the Supreme Court has "proceeded as if veracity may be assumed when information comes from the victim of ... criminal activity"). In this case, the veracity of Tomey's complaint was bolstered when, during Burgess' interview of Tomey, he observed bruises on her left and right arms that were consistent with her allegations that plaintiff physically accosted her. *See* October 3, 1999 DD5. Moreover, Tomey identified plaintiff in person as her assailant. *See* October 6, 1999 DD5.

15    Burgess also emphasizes that he conducted an interview of plaintiff, an action that he maintains further supports his claim of probable cause to effectuate plaintiff's arrest. However, plaintiff's complaint appears to allege that plaintiff was interviewed by Burgess after being arrested. *See* Compl. ¶ 22 ("Plaintiff, *after being arrested* by Police Officers from the 122nd Precinct, the plaintiff [sic] was transported to the 122nd Precinct. While in custody of the arresting officers the plaintiff spoke to Police Officer/Detective Burgess ....") (emphasis added). For purposes of this motion, plaintiff's version of the events will be credited and it will be assumed that Burgess' interview of plaintiff occurred after plaintiff's arrest.

While plaintiff alleges that Tomey was his girlfriend, his complaint is devoid of any allegations that Tomey was an incredible complainant. *C.f.* Mistretta, 5 F.Supp.2d at 133 ("The most common situation in which [doubts as to veracity] arise is when there exists a prior relationship between the victim and the accused that gives rise to a motive for a false accusation."). In fact, all plaintiff appears to assert is that he was arrested despite his repeated protestations of innocence. *See* Compl. ¶¶ 20 (alleging Martinez and Yurman contacted police despite plaintiff's proclamations of innocence), 22 (alleging Burgess detained, charged and arraigned plaintiff despite his pronouncements of innocence). In his opposition papers, plaintiff also asserts that all defendants in this case failed to investigate further the allegations of sexual abuse before arresting plaintiff.[16] *See* Pl.'s Opp'n, Point II. However, the Second Circuit has rejected the argument that conflicting accounts from an alleged victim and an arrestee should have prompted a more thorough investigation by police. Indeed, a finding of probable cause is not foreclosed where a police officer is presented with different stories from an alleged victim and an arrestee. *See* Curley v. Village of Suffern, 268

F.3d 65, 70 (2d Cir.2001) (citing Singer, 63 F.3d at 113, 119); Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir.1997). In any event, despite plaintiff's assertion, Burgess did not merely rely on Tomey's complaint and identification of plaintiff; he also relied on CSI's investigation and his own observations which corroborated Tomey's allegations.

16    To the extent that plaintiff maintains that his allegations regarding Burgess, Martinez and Yurman's respective "failure to investigate" Tomey's allegations set forth an independent claim, plaintiff is mistaken. Instead,

allegations of an officer's failure to investigate are considered under the rubric of false imprisonment, false arrest, or malicious prosecution. *See* Mistretta, 5 F.Supp.2d at 135 (allegations of an officer's failure to investigate exculpatory statements prior to arrest addressed in the context of a false arrest claim); Dukes v. City of New York, 879 F.Supp. 335, 343 (S.D.N.Y.1995) (allegations of an officer's failure to interview witnesses and discover addition [sic] evidence addressed in context of a malicious prosecution claim).

Campbell v. Guliani, et al., 2000 U.S. Dist. LEXIS 1617, at * 11, n. 6 (E.D.N.Y. Feb. 16, 2000); c.f. Stone v. Dept. of Investigation of New York, 1992 WL 25202, at *2 (S.D.N.Y. Feb.4, 1992) ("There is ... no constitutional right to an investigation by government officials.") (citations omitted).

**\*8** Moreover, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti, 124 F.3d at 128 (finding probable cause even though police officer chose to believe claimed victim's version of a fight based on visible injuries, notwithstanding the alleged assailants cries of innocence); *see also* Curley, 268 F.3d at 70 ("Although it would have been better procedure for the arresting officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him.") (citing Krause v. Bennett, 887 F.2d 363, 373 (2d Cir.1989)); Mistretta, 5 F.Supp.2d at 135 ("[Law enforcement officers] have no duty to investigate an exculpatory statement of the accused, and their refusal to do so does not defeat probable cause.") (citations omitted).

Thus, even if plaintiff can prove that he furnished exculpatory statements to the police, a finding of probable cause is not foreclosed. In fact, to take plaintiff's assertions one step further, even if plaintiff can establish that an investigation might have cast doubt on the basis of his arrest, probable cause can still be established. *See Curley,* 268 F.3d at 70 (citing *Krause,* 887 F.2d at 371). Indeed, the Second Circuit has found that "[b]efore making an arrest, if the arresting officer has probable cause, he need not also believe with certainty that the arrestee will be successfully prosecuted." *Id.* Thus, considering the totality of the circumstances, plaintiff has not shown why Burgess had reason to doubt the veracity of Tomey or discredit the investigation by CSI in formulating a probable cause determination. Therefore, Burgess had probable cause to effectuate plaintiff's arrest plaintiff. Accordingly, plaintiff's proposed § 1983 false arrest claim against Burgess in his individual capacity would be subject to dismissal and is denied as futile.

**[2]**   As an alternative, Burgess maintains that he is entitled to qualified immunity. [17] The doctrine of qualified immunity protects police officers from being subject to personal liability in cases where official conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ricciuti,* 124 F.3d at 127. The right not to be arrested without probable cause is a clearly established right. *See Lee,* 136 F.3d at 102. Thus, the critical issue is whether Burgess' probable cause determination was objectively reasonable. *See Lennon v. Miller,* 66 F.3d 416, 422 (2d Cir.1995) ("[I]n qualified immunity cases, we are not concerned with the correctness of the defendant's conduct, but rather the 'objective reasonableness' of their chosen course of action given the circumstances confronting them at the scene.").

[17]   In his memorandum, it appears that Burgess is asserting qualified immunity as a defense to plaintiff's claims against him in his official capacity. However, the Second Circuit has stated that "[t]he defense of qualified immunity protects only individual defendants sued in their individual capacity...." *Ford v. Reynolds,* CV–01–9200, 316 F.3d 351, 2003 WL 132977, at *4 (2d Cir. Jan.17, 2003). Therefore, the qualified immunity defense will be considered only in the context of plaintiff's claims against Burgess in his individual capacity. In his opposition memorandum, plaintiff does not address Burgess' claim that he is entitled to qualified immunity other than a simple

argument that all defendants carry the burden of showing that *absolute* immunity is justified in this case. *See* Pl.'s Opp'n, Point III. While plaintiff is correct that Burgess must establish the defense of immunity, *see Lee,* 136 F.3d at 101, Burgess is seeking *qualified* immunity, which Burgess maintains is established in this case.

In the Second Circuit, even when there is no probable cause to arrest, a police officer is immune from a false arrest claim " 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met .' " *Lee,* 136 F.3d at 102 (quoting *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991)); *accord Posr v. Court Officer Shield # 207,* 180 F.3d 409, 416 (2d Cir.1999) (same). In other words, "[i]n an unlawful arrest action, an officer is immune if he has 'arguable probable cause,' and is subject to suit only if his 'judgment was so flawed that no reasonable officer would have made a similar choice.' " *Provost v. City of Newburgh,* 262 F.3d 146, 169 (2d Cir.2001) (quoting *Lee,* 136 F.3d at 103; *Lennon,* 66 F.3d at 425, respectively).

**\*9**   Lastly, it should be noted that the qualified immunity entitlement is an "immunity from suit rather than a mere defense to liability; and ... is effectively lost if the case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985). Thus, to satisfy the goal of the doctrine, it is necessary that qualified immunity questions be resolved at the earliest possible stage of litigation. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (per curiam)).

Even if plaintiff's arrest and prosecution were without actual probable cause, Burgess' decision to arrest and criminally charge plaintiff was objectively reasonable under the circumstances of this case. As noted above, the Second Circuit allows police officers, in making a probable cause determination, to rely on a victim's allegations that a crime has been committed. *See Singer,* 63 F.3d at 119. Moreover, police officers can rely on information supplied by fellow officers, even if that information ultimately turns out to be false. *See Bernard,* 25 F.3d at 102–03. Lastly, it is not unreasonable for police officers to rely on accounts provided by a victim or officer, even when an arrestee proclaims his innocence. *See Curley,* 268 F.3d at 70 (victim); *Ricciuti,* 124 F.3d

at 128 (officer). The complaint in this case contains no allegations that undermine the veracity of the CSI officers or that allege that the CSI investigation was implausible. In addition, other than the mere allegation that Tomey was plaintiff's girlfriend, the complaint also lacks assertions that undermine the victim's credibility. Accordingly, even if there is no actual probable cause in this case, there is "arguable" probable cause that entitles Burgess to qualified immunity. Thus, plaintiff's proposed § 1983 claim for false arrest against Burgess in his individual capacity would be subject to dismissal on this alternative ground. Consequently, plaintiff's request to submit an amended complaint containing such allegations is denied as futile.

### B. Malicious Prosecution

[3]   Malicious prosecution claims brought under § 1983 are guided by the tort law of the forum state. *See Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995); *Singer,* 63 F.3d at 118. To state a claim for malicious prosecution under New York law, plaintiff must allege that: "(1) [defendants] initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice, and (4) the matter terminated in plaintiff's favor." *Ricciuti,* 124 F.3d at 130 (citing *O'Brien v. Alexander,* 101 F.3d 1479, 1484 (2d Cir.1996)). Accordingly, a finding of probable cause defeats a malicious prosecution claim. *See Moore v. Comesanas,* 32 F.2d 670, 673 (2d Cir.1994). Probable cause to arrest is sufficient for probable cause to prosecute unless facts come to light between the arrest and arraignment that vitiate the probable cause. *See Carson v. Lewis,* 35 F.Supp.2d 250, 263 (E.D.N.Y.1999) (citing *Dukes v. City of New York,* 879 F.Supp. 335, 342 (S.D.N.Y.1995)); *see also Dimascio v. City of Albany,* 205 F.3d 1322 (2d Cir.2000) (table). Burgess argues that since the facts at plaintiff's arraignment were based on the facts known at the time of his arrest, probable cause existed for both the arrest and the prosecution of plaintiff. In response, plaintiff makes only vague and general allegations that a prosecution was begun despite evidence given to the NYPD and Burgess before plaintiff's arrest, and allegedly in the District Attorney's possession, that exonerated plaintiff. *See* Compl. ¶¶ 23, 24. These allegations do not suffice to demonstrate that new evidence came to light after plaintiff's arrest that undermined the probable cause for his arrest.

**\*10** Moreover, once a suspect has been indicted, there is a strong presumption of probable cause for purposes of defending against a malicious prosecution claim. *See Green v. Montgomery,* 219 F.3d 52, 60 (2d Cir.2000) (citing *Marshall v. Sullivan,* 105 F.3d 47, 50 (2d Cir.1996)); *Colon,* 60 N.Y.2d at 82, 455 N.E.2d at 1250, 468 N.Y.S.2d at 455 (citations omitted). Plaintiff's complaint establishes that he was indicted. *See* Compl. ¶ 24. Therefore, to overcome this presumption, plaintiff must allege that "the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Colon,* 60 N.Y.2d at 83, 455 N.E.2d at 1251, 468 N.Y.S.2d at 456; *accord Marshall,* 105 F.2d at 50; *Bernard,* 25 F.3d at 104. Plaintiff's complaint contains no allegations of fraud, perjury or suppression of evidence. [18]

[18]   Burgess argues that plaintiff cannot in fact support an allegation of fraud, perjury or suppression of evidence as to him since he did not testify before the grand jury that indicted plaintiff. However, as noted above, this fact, which was attested to in Burgess' affidavit, is not properly before this court and, therefore, will not be considered for purposes of this motion.

The only assertion of "bad faith" that can be gleaned from plaintiff's complaint is that the allegations against him were of a "conspiratorial nature." Compl. ¶¶ 23, 24. However, plaintiff's proclamations of conspiracy amount to nothing more than generalized accusations. To be sure, plaintiff's complaint merely asserts that certain defendants disregarded information supplied by plaintiff apparently demonstrating the "conspiratorial nature" of the allegations lodged against him. *Id.* In his opposition memorandum, plaintiff attempts to flesh out these allegations with an argument that police misconduct can be inferred from the fact that the jury acquitted plaintiff, despite Tomey's testimony at trial. *See* Pl.'s Opp'n, Point II. Plaintiff appears to be asserting that Burgess acted in bad faith by relying for purposes of probable cause on Tomey's allegations, which, because plaintiff was ultimately acquitted, plaintiff argues were patently false. *See* Pl.'s Opp'n, Point II (arguing that "the defendants unreasonably sided with the complainant...."). Plaintiff's argument is unpersuasive and contrary to law.

As noted above, Burgess was not required to investigate plaintiff's protestations of innocence. *See Ricciuti,* 124 F.3d at 128. Indeed, an officer is not required to play judge or jury with conflicting evidence presented to him at the

time of an arrest. *See Curley,* 268 F.3d at 70 (citing *Krause,* 887 F.2d at 371). Moreover, an arrestee's ultimate guilt or innocence is irrelevant to the determination of probable cause. *See United States v. Patrick,* 899 F.2d 169, 171 (2d Cir.1990); *Miloslavsky,* 808 F.Supp. at 354 (citations omitted). Thus, the fact that plaintiff was ultimately found not guilty has no effect on the fact that there was probable cause to arrest him and bring him before a grand jury. Therefore, plaintiff's vague allegations of conspiracy and exculpatory evidence are insufficient to defeat the strong presumption of probable cause created by his indictment. [19] Accordingly, as plaintiff's amended complaint fails to adequately allege that Burgess' did not have probable cause to prosecute him, plaintiff's proposed § 1983 claim of malicious prosecution is subject to dismissal as to Burgess.

[19]  Moreover, to the extent that plaintiff's conspiracy allegations attempt to assert a separate § 1983 claim, such allegations fail. A conspiracy is actionable under § 1983 only if plaintiff can prove an actual violation of constitutional rights. Since there was probable cause to arrest and prosecute plaintiff, plaintiff cannot prove an actual violation of his constitutional rights as to Burgess. *See Singer,* 63 F.3d at 119–20. Moreover, assuming *arguendo* that the complaint establishes a violation of plaintiff's constitutional rights, a complaint "containing only conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss ." *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) (per curiam). Thus, plaintiff's conspiracy claim is dismissed as to Burgess because plaintiff's complaint cannot support a violation of his constitutional rights, and even if it could, the complaint contains no specific allegations to support his claim of conspiracy.

**\*11** [4]  Lastly, in a § 1983 claim for malicious prosecution, "the Court applies the same standard used to evaluate qualified immunity in the false arrest context." *Hardin v. Meridien Foods,* CV–98–2268, 2001 WL 1150344, at \*5 (S.D.N.Y. Sept.27, 2001) (citing *Lennon,* 66 F.3d at 425). Thus, for the reasons stated above, even if Burgess did not have actual probable cause to prosecute plaintiff, he had arguable probable cause. Accordingly, like plaintiff's proposed § 1983 false arrest claim, plaintiff's proposed § 1983 malicious prosecution claim against Burgess in his individual capacity is denied as futile.

## C. § 1981 [20]

[20]  In his motion to dismiss, Burgess does not address plaintiff's § 1981 claim.

[5]  Count I of plaintiff's amended complaint appears to allege a § 1981 claim against Burgess. [21] Section 1981 "prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race, [and it] covers ... efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations." *Mian v. Donaldson, Lufkin & Jenrett Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993). To state a claim under § 1981, plaintiff must allege: (1) that he is a member of a racial minority; (2) that Burgess had an intent to discriminate against him on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute, namely make and enforce contracts, sue and be sued, give evidence, etc. *See Mian,* 7. F.3d at 1087.

[21]  Plaintiff also asserts a violation of his rights under the Ninth and Thirteenth Amendments. The Ninth Amendment, which concerns unenumerated rights, and the Thirteenth Amendment, which concerns slavery and involuntary servitude, are inapplicable to this case. Accordingly, these claims are dismissed. *See Campbell,* 2000 U.S. Dist. Lexis 1617, at \*17 (dismissing claims premised on Ninth and Thirteenth Amendment as inapplicable in case involving claims of false arrest and malicious prosecution under § 1981 and § 1983).

[6]  To sustain a motion to dismiss, plaintiff's complaint must assert "that the defendant['s] acts were purposefully discriminatory ... and racially motivated." *Albert v. Caravano,* 851 F.2d 561, 571–72 (2d Cir.1988) (en banc). Plaintiff cannot defeat a Rule 12(b)(6) motion with "naked assertions" of discrimination; instead "the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar College,* 35 F.3d 709, 713–14 (2d Cir.1994) (internal citations omitted).

Plaintiff's compliant establishes that he is black and that Tomey, the complainant, is white. *See* Compl. ¶¶ 19, 29. Plaintiff also alleges, "on information and belief" that some of the defendant police officers and/or CSI campus security officers also are white. *Id.* ¶ 29. While plaintiff's

amended complaint asserts that Burgess and other police officers "turned a deaf ear on the repeated pleas [of innocence] of the plaintiff, solely because the complainant was a white female and because the plaintiff ... was Black," *see* Am. Compl. ¶ 22, these bald allegations are insufficient to establish racially discriminatory intent under § 1981. *See Yusuf,* 35 F.3d at 713–14 Even if these allegations could establish such intent, plaintiff's complaint is devoid of any allegations that Burgess or any other police officers prevented plaintiff from enforcing or pursuing judicial enforcement of any rights, contractual or otherwise. Accordingly, to the extent plaintiff's amended complaint seeks to assert a § 1981 claim against Burgess in his individual capacity, it fails to state a viable claim and is dismissed as futile.

**D. Pendent State Law Claims**

*12 Since none of plaintiff's federal law claims against Burgess in his individual capacity survive a motion to dismiss, this court declines to exercise pendent jurisdiction over the state law claims asserted against Burgess and the unnamed police officers in Count IV of plaintiff's original and amended complaint. *See Grace v. Rosenstock,* 228 F.3d 40, 55 (2d Cir.2000) (stating that if all of plaintiff's "federal claims are dismissed before trial ... the state claims should be dismissed as well.") (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)); *Tops Markets, Inc. v. Quality Markets, Inc.,* 142 F.3d 90, 103 (2d Cir.1998) (stating that since all of plaintiff's federal claims fail, "the balance of factors ... favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice") (citing *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988)). Consequently, the issue of whether plaintiff's state law tort claims were instituted in accordance with the Notice of Claim requirements under New York General Municipal Law will not be addressed.

**(2)**

**Official Capacity Claims**

**[7]** In both his original and amended complaint, plaintiff asserts claims under § 1981 and § 1983 against Burgess in his official capacity as a police officer with the NYPD. *See* Compl. ¶ 9; Am. Compl. ¶ 8. A suit against an officer is his official capacity is essentially a suit against the government entity itself. *See Monell v. Dept. of Social Servs.,* 436 U.S. 658, 691, n. 55, 98 S.Ct. 2018, 2036, n. 55, 56 L.Ed.2d 611 (1978). Accordingly, plaintiff's claim against Burgess in his official capacity is basically a claim against the City of New York. To establish municipal liability, plaintiff must allege that a municipal custom or policy resulted in a deprivation of plaintiff's constitutional rights. *See id.* at 690–91, 98 S.Ct. at 2035– 36. "The inference that such a policy existed may arise from 'circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.' " *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993) (quoting *Ricciuti,* 941 F.2d at 123).

While Count III of plaintiff's initial complaint contained numerous allegations of municipal liability against the City of New York and the NYPD relating to the conduct of defendant police officers, at this court's urging, those allegations were withdrawn and do not appear in plaintiff's amended complaint. [22] The only discernible allegations of municipal liability in plaintiff's amended complaint are bald claims against the City of New York and "City of Staten Island" of failure to "properly train, supervise and discipline its officers to avoid the use of unnecessary force, to refrain from acting without racial animus, to avoid the arbitrary stop and harassment of law-abiding black persons without probable cause." Am. Compl. ¶¶ 30 (City of New York), 32 (Staten Island). In addition, plaintiff asserts that the City of New York and its Executive Department and the NYPD, among others, failed to investigate the conduct of defendant police officers and to discipline defendants for their conduct. *See id.* ¶¶ 31 (discipline), 32 & 34 (investigate). Notably, plaintiff's complaint lacks any allegations of deliberate indifference to plaintiff's rights. Thus, these conclusory allegations are insufficient to establish a municipal policy or custom.

[22]    Plaintiff's amended complaint does, however, contains such allegations against Jackson relating to the conduct of CSI campus security officers. These claims are discussed *infra* in the context of plaintiff's claims against Jackson in her individual capacity.

*13 Even if plaintiff's conclusory allegations could suffice to allege a municipal policy or custom, "a claim of inadequate training and supervision under § 1983 cannot

be made out against a supervisory body without a finding of a constitutional violation by the persons supervised." *Ricciuti,* 941 F.2d at 132 (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986)). In this case, Burgess has established that he had probable cause to arrest plaintiff and that, if he did not, he at least was objectively reasonable in his determination of probable cause and thus entitled to qualified immunity. Consequently, since plaintiff cannot sustain a claim for constitutional deprivation by Burgess, plaintiff's claim of municipal liability also fails.

Accordingly, since the allegations against Burgess are premised on allegations of personal liability, the claims against Burgess in his official capacity are dismissed. *See Campbell,* 2000 U.S. Dist. LEXIS 1617, at *4–5 (dismissing claims of false arrest and malicious prosecution brought against NYPD detective in his official capacity because such claims were based on allegations of personal liability and not on a government entity's official policy or custom).

### State Defendants

State defendants maintain that they are immune from suit under the Eleventh Amendment and have moved to dismiss plaintiff's complaint under Rule 12(b)(1) for lack of jurisdiction. Plaintiff argues that this assertion is "without merit and really begs the question." Pl.'s Opp'n, Point III. "[C]ourts must police subject matter delineations on their own initiative." *Preston v. New York,* 223 F.Supp.2d 452, 461 (S.D.N.Y.2002) (citing, *inter alia,* Fed.R.Civ.P. 12(h)). Thus, when considering a motion to dismiss pursuant to Rule 12(b)(1), a court is required to resolve disputed jurisdictional facts. *See Cargill Int'l S.A. v. M/T Pavel Dybenko,* 991 F.2d 1012, 1019 (2d Cir.1993); *see also Ruhrgas A.G. v. Marathon Oil Co.,* 526 U.S. 574, 583–84, 119 S.Ct. 1563, 1569–70, 143 L.Ed.2d 760 (1999). When doing so, the court may reference evidence outside the pleadings, *see Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir.2000), and the court is not required to draw inferences in favor of the plaintiff. *See Newsom–Lang v. Warren Int'l,* 129 F.Supp.2d 662, 663–64 (S.D.N.Y.2001). As the party "seeking to invoke the subject matter jurisdiction of the district court," plaintiff bears the burden of demonstrating that there is subject matter jurisdiction in this case. *Scelsa*

*v. City Univ. of New York,* 76 F.3d 37, 40 (2d Cir.1996) (citations omitted).

### Defendants CUNY and CSI

**[8]** It is well settled that the Eleventh Amendment bars suits for any kind of relief brought in federal court by a private individual against a state or its agencies in the absence of Congress' explicit abrogation of the state's sovereign immunity or the state's unequivocal waiver of its immunity. [23] *See, e.g., Bd. of Trustees v. Garrett,* 531 U.S. 356, 363–64, 121 S.Ct. 955, 962, 148 L.Ed.2d 866 (2001); *Kentucy v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3009, 3107 (1985); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 97–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The State of New York and its agencies have not consented to suit in federal court. *See Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38–40 (2d Cir.1977). Moreover, neither § 1981 nor § 1983 validly abrogates a state's sovereign immunity. [24] *See Quern v. Jordan,* 440 U.S. 332, 343–45, 99 S.Ct. 1139, 1146–47, 59 L.Ed.2d 358 (1979); *see also Chinn v. City Univ. of New York,* 963 F.Supp. 218, 224 n. 1 (1997) (§ 1981); *Trotman,* 557 F.2d at 38 (§ 1983).

<table>
<tr><td>23</td><td>The Eleventh Amendment to the U.S. Constitution reads as follows: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.</td></tr>
<tr><td>24</td><td>For this reason, while plaintiff is correct in his assertion that Congress may authorize suits against nonconsenting states through its enforcement powers under § 5 of the Fourteenth Amendment, such argument is inapplicable in this context. *See* Pl.'s Opp'n, Point IV (citing *Fitzpatrick v. Bitzes,* 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Scheur v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).</td></tr>
</table>

**\*14** An entity like CUNY, [25] which is not a state agency, is nevertheless entitled to immunity if it is an "arm of the state." *Rosa R. v. Connelly,* 889 F.2d 435, 437 (1989) (considering whether local school board was "arm of the state and thus entitled to Eleventh Amendment protection from suit in federal court"); *accord Pikulin v. City Univ. of*

*New York,* 176 F.3d 598, 600 (2d Cir.1999) (per curiam) (quoting *Rosa R.,* 889 F.2d at 437).

25    As noted earlier, CUNY is considered to include "each senior college and each community college." N.Y. Educ. Law § 6202(2). CSI is specifically referred to in the statute as a "senior college." *Id.* § 6202(5); *see also Weinbaum v. Cuomo,* 219 A.D.2d 554, 555, 631 N.Y.S.2d 825, n*, 219 A.D.2d 554, 631 N.Y.S.2d 825, 826 n* (1st Dep't 1995) (finding CSI a CUNY senior college).

In *Pikulin,* a case involving a CUNY community college, the Second Circuit vacated and remanded the district court decision based on a line of cases that found CUNY and/or its senior colleges arms of the state for purposes of Eleventh Amendment immunity.[26] *See* 176 F.3d at 600–01. These cases relied on the State of New York's obligation, under New York Education Law § 6205(1),[27] to indemnify CUNY's trustees, officers, and staff against liability. *See, e.g., Burrell,* 995 F.Supp. at 411; *Moche,* 781 F.Supp. at 165; *Minetos,* 875 F.Supp. at 1053; *Scelsa,* 806 F.Supp. at 1137. The court criticized exclusive reliance on the indemnification provisions of § 6205(1) as inadequate, noting that the provision "requires the state to indemnify only such individuals affiliated with CUNY and does not address the state's financial responsibility, if any, to satisfy judgment entered against CUNY itself." *Pikulin,* 176 F.3d at 600. Instead, the court stated that when determining whether an institution is an arm of the state entitled to Eleventh Amendment immunity,

26    *See Burrell v. City Univ. of New York,* 995 F.Supp. 398, 410–11 (S.D.N.Y.1998); *Minetos v. City Univ. of New York,* 875 F.Supp. 1046, 1053 (S.D.N.Y.1995); *Moche v. City Univ. of New York,* 781 F.Supp. 160, 165 (E.D.N.Y.1992); *Scelsa v. City Univ. of New York,* 806 F.Supp. 1126, 1137 (S.D.N.Y.1992); *Silver v. City Univ. of New York,* 767 F.Supp. 494, 499 (S.D.N.Y.1991); *Ritzie v. City Univ. of New York,* 703 F.Supp. 271, 276–77 (S.D.N.Y.1989).

27    That section of the New York Education Law provides as follows:

§ 6205. Liability of board of trustees and liability of city university of New York.

1. The state shall save harmless and indemnify members of the board of trustees and any duly appointed member of the teaching or supervising staff, officer or employee of the senior colleges under the jurisdiction of such board pursuant

to section seventeen of the public officers law against any claim, demand, suit or judgment arising by reason of any act or omission to act by such person occurring in the discharge of its duties and within the scope of his service on behalf of such university.

N.Y. Educ. Law § 6205(1).

[t]he appropriate analysis focuses both on the extent to which the state would be responsible for satisfying the judgment that might be entered against the defendant entity, *see* [*Rosa R.,* 889 F.2d] at 437–38; [*Trotman,* 557 F.2d at 38], and on the degree of supervision exercised by the state over the defendant entity. *See Rosa R.,* 889 F.2d at 437.

*Id.* at 600.

The distinction between this case and *Pikulin* is that this case involves a CUNY senior college, while *Pikulin* involved a CUNY community college. This distinction is important because senior colleges enjoy a different relationship with the state than do community colleges. *Compare* N.Y. Educ. Law §§ 6244(1) and 6229 *with* N.Y. Educ. Law §§ 6224(4) and 6230; *see also Hester–Bey v. New York City Tech. Coll.,* CV–98–5129, 2000 WL 488484, at *3–4 (E.D.N.Y. Mar.22, 2000) (describing differences in the New York Education Law between CUNY senior colleges and community colleges). Accordingly, in the post-*Pikulin* era, courts ruling on the immunity status of CUNY and its senior colleges have distinguished the holding in *Pikulin* and have found the colleges to be arms of the state and thereby immune from suit. *See, e.g., Sacay v. Research Found. of the City Univ. of New York,* 193 F.Supp.2d 611, 624–25 (E.D.N.Y.2002); *Salerno v. City Univ. of New York,* CV–99–11151, 2000 WL 1277324, at *2–4 (S.D.N.Y. Sept.8, 2000), *vacated in part on reconsideration on other grounds,* 2002 WL 31856953 (S.D.N.Y. Dec.19, 2002); *Becker v. City Univ. of New York,* 94 F.Supp.2d 487, 489 (S.D.N.Y.2000); *Hester–Bey,* 2000 WL 488484, at *2–4.

**\*15** With regard to the first *Pikulin* analysis, "senior colleges of CUNY are both funded and administered by the state to a great degree." *Hester–Bey,* 2000 WL 488484, at *4. Indeed, the New York Education Law specifically provides for the state's payment of money judgments entered against CUNY senior colleges:

Notwithstanding any inconsistent provisions of law, with respect to claims against the city university

which arise on or after July first, nineteen hundred seventy-nine, the comptroller of the state of New York is authorized to examine, audit, certify for payment and pay from funding sources available for payment of claims by the state any settlement, order or judgement in any federal or state court, other than the court of claims, or any administrative tribunal which pertains to a senior college of the city university of New York.

N.Y. Educ. Law § 6224(6); *see Perry v. City of New York,* 126 A.D.2d 714, 714, 511 N.Y.S.2d 310, 310 (2nd Dept.1987) (finding state responsible for paying money judgments against CUNY senior colleges); *see also Becker,* 94 F.Supp.2d at 489; *Hester–Bey,* 2000 WL 488484, at *2–3. Moreover, the state court of claims, which hears claims against New York State and its agencies, has exclusive jurisdiction over claims brought by any person against CUNY and its senior colleges for wrongful death, breach of contract and in tort. *See* N.Y. Educ. Law § 6224(4); *see also id.* § 6224(5) (providing for state's payment of judgments entered against CUNY in state court of claims); *Hester–Bey,* 2000 WL 488484, at *4. In addition, the state has ultimate responsibility for funding the budget of CUNY senior colleges. Indeed, § 6221(A)(4) provides for the state's reimbursement of CUNY senior college's net operating expenses. *See* N.Y. Educ. Law § 6221(A)(4); *see also id.* § 6201(1).

In his opposition memorandum, plaintiff cites § 6201(1) of the New York Education Law in support of his contention that CUNY is not an arm of the state for Eleventh Amendment purposes. *See* Pl.'s Opp'n, Point IV. This provision, which sets forth legislative findings and intent, states in relevant part: "[I]n order to meet the state's responsibility to provide postsecondary education in New York city beyond the associate degree level, as it does elsewhere in the state, *there should be full state funding of senior college operating and debt service.*" N.Y. Educ. Law § 6201(1) (emphasis added). Contrary to plaintiff's assertion, this provision actually *strengthens* the argument that the state has assumed financial responsibility for CUNY. *See Becker,* 94 F.Supp.2d at 490 (relying on, *inter alia,* § 6201 as support for finding that the state would pay a judgment against a CUNY senior college). Accordingly, "it is clear that any award against a senior

college of CUNY will be paid for by public funds of the New York State treasury." *Hester–Bey,* 2000 WL 488484, at *4; *accord Becker,* 94 F.Supp.2d at 491.

**\*16** However, as the *Pikulin* court advised, the analysis of CUNY's relationship to the state does not stop at this conclusion. With regard to the second *Pikulin* analysis, the state "has ultimate authority over how CUNY senior colleges are operated and governed." *Becker,* 94 F.Supp.2d at 491. In fact, the state supervises the process for determining the budget for CUNY senior colleges, which includes presentment of a proposed budget for the senior colleges' operating and capital expenses to the governor. *See* N.Y. Educ. Law § 6230(2); *see also Becker,* 94 F.Supp.2d at 490; *Hester–Bey,* 2000 WL 488484, at *4. This process also provides for the governor to add his recommendations as part of the executive budget submitted to the state legislature. *See* N.Y. Educ. Law § 6230(3). In addition, the state comptroller is required to perform annual audits of the senior colleges' annual financial reports and to prepare a report to the governor and other officials. *See id.* § 6230(4); *see also Becker,* 94 F.Supp.2d at 490.

Moreover, other factors that indicate that the State exercises a great degree of supervision over CUNY senior colleges include: (1) the fact that the governor appoints 10 out of 17 members of CUNY's board of trustees, *see* N.Y. Educ. Law §§ 6204(2)(a) & 6204(2)(d); (2) the fact that the real property of the CUNY senior colleges is owned by the state, *see id.* § 6219(a)(1), and (3) the fact that CUNY may acquire property for use by senior colleges using the state's eminent domain power, *see id.* §§ 301, 6213. *See Becker,* 94 F.Supp.2d at 490–91; *Hester–Bey,* 2000 WL 488484, at *4. These factors adequately establish that CUNY and its senior colleges are supervised by the State to a great degree.

Again, plaintiff asserts that § 6201(1) and § 6201(2) compel a different conclusion. Plaintiff has emphasized the legislature's finding that "[t]he governance of the university must reflect increased state responsibility but should preserve the city's participation in the governance of the university it created and developed at city expense." N.Y. Educ. Law § 6201(1). Section 6201(2) states, in relevant part, that "[t]he legislature intends that the city university of New York should be maintained as an independent system of higher education." *Id.* § 6201(2). These provisions do not undermine a finding that the

state has a great deal of supervision over CUNY and its senior colleges. If anything, in light of all the other factors supporting state authority and control over CUNY and its senior colleges, these legislative findings indicate that "although CUNY has a degree of independence, it is ultimately accountable to, and dependent upon, the state." *Becker,* 94 F.Supp.2d at 491. Thus, defendants CUNY and CSI—a CUNY senior college—are arms of the state of New York and are therefore immune from suit under § 1981 and § 1983. [28] Consequently, all of plaintiff's claims against these defendants are dismissed as barred by the Eleventh Amendment.

[28]    This finding is consistent with every post-*Pikulin* case that has addressed the question of whether CUNY and/or its senior colleges are arms of the state for Eleventh Amendment purposes. *See Husain v. Springer, et al.,* 193 F.Supp.2d 664 (E.D.N.Y.2002); *Sacay,* 193 F.Supp.2d 664; *Hamilton v. City College of the City Univ. of New York,* 173 F.Supp.2d 181, 184 (S.D.N.Y.2001); *see also Johnson v. City Univ. of New York,* CV–00–4964, 2002 WL 1750841 (S.D.N.Y. July 24, 2002); *Ware v. City Univ. of New York,* CV–01–9305, 2002 WL 1343752 (S.D.N.Y. June 18, 2002); *Sank v. City Univ. of New York, et al.,* CV–94–0253, 2002 WL 523282 (S.D.N.Y. Apr.5, 2002); *Kulkarni v. City Univ. of New York, et al.,* CV–01–3019, 2001 WL 1415200 (S.D.N.Y. Nov.13, 2001); *Loren v. Levy, et al.,* CV–00–7687, 2001 WL 921173 (S.D.N.Y. Aug.14, 2001); *During v. City Univ. of New York, et al.,* CV–01–9584, 2002 WL 1159675 (S.D.N.Y. May 31, 2001); *Bunch v. City Univ. of New York,* CV–98–1172, 2000 WL 1457078 (S.D.N.Y. Sept.28, 2000), *reconsideration denied by,* 2000 WL 1810959; *Salerno,* 2000 WL 1277324; *Becker,* 94 F.Supp.2d 487; *Hester–Bey,* 2000 WL 488484.

### Defendants Jackson, Martinez and Yurman

### (1)

### Official Capacity Claims

**\*17** **[9]** Eleventh Amendment immunity also extends to claims for monetary damages brought against state officers sued in their official capacities. *See Ford,* 316 F.3d 351, 2003 WL 132977, at \*3; *Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997); *see also Chinn,* 963 F.Supp. at 224. In both his initial and amended complaint, plaintiff

sued defendants Jackson, Martinez and Yurman in their official capacities. [29] *See* Compl. ¶¶ 8, 11, 12; Am. Compl. ¶¶ 7, 10–11. Accordingly, these defendants assert that they are immune from suit. Plaintiff, however, argues that under the doctrine of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), these defendants are not entitled to immunity.

[29]    Plaintiff alleges in his complaint that Jackson is "Vice President" of CSI, Martinez is "employed as a Public Safety Officer/Director of Public Safety" with CSI, and Yurman is "employed as a Public Safety Officer/ Asst. Director of Public Safety" at CSI. Compl. ¶¶ 8, 11–12; *accord* Am. Compl. ¶¶ 7, 10–11.

In *Ex Parte Young,* the Supreme Court established

> a limited exception to the general principal of sovereign immunity [that] allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law under the theory that such a suit is not one against the State, and therefore not barred by the Eleventh Amendment.

*Ford,* 316 F.3d 351, 2003 WL 132977, at \*3 (quotation omitted). Very recently, the Second Circuit stated that " '[i]n determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " *Id.* (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635,—, 122 S.Ct. 1753, 1760 (2002) (internal citation and quotation marks omitted)). This characterization is important since, "retrospective compensatory relief, whether 'expressly denominated as damages ... or tantamount to an award for damages for a past violation of federal law,' does not vindicate sufficient interests to justify overcoming the Eleventh Amendment bar." *Chinn,* 963 F.Supp. at 225 (quoting *Papasan v. Allain,* 478 U.S. 265, 278, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986)).

In this case, plaintiff's original and amended complaint unequivocally seek monetary relief against defendants Jackson, Martinez and Yurman for an alleged deprivation of plaintiff's rights based on an arrest and subsequent

Case 6:18-cv-00135-DNH-TWD   Document 10   Filed 10/04/18   Page 91 of 95
Obilo v. City University of City of New York, Not Reported in F.Supp.2d (2003)
2003 WL 1809471

prosecution of plaintiff. *See* Compl., Count I, "wherefore" clause (seeking $1,000,000.00 in actual and compensatory damages); *id.,* Count II, "wherefore" clause (same). Nowhere in these complaints does plaintiff seek injunctive relief. Thus, there being no claim for prospective injunctive relief, *Ex Parte Young* is in applicable to this case. *See Ford,* 316 F.3d 351, 2003 WL 132977, at *4. Accordingly, as plaintiff's § 1981 and § 1983 claims against Jackson, Martinez and Yurman seek solely "retrospective compensatory relief" for actions taken in their official capacity, these claims are dismissed.[30] *See Chinn,* 963 F.Supp. at 225 (dismissing on Eleventh Amendment basis § 1981 claims for monetary relief asserted against Dean of CUNY senior college in her official capacity).

[30]   Since these claims are dismissed on Eleventh Amendment grounds, it is not necessary to consider state defendants' alternative ground for dismissal, namely that neither a state agency or entity, nor a state official sued in his or her official capacity, is a "person" subject to suit within the meaning of § 1981 or § 1983.

### (2)

### Individual Capacity Claims

**\*18**  " 'However, the eleventh amendment does not extend to a suit against a state official in his [or her] individual capacity, even when the conduct complained of was carried out in accordance with state law.' " *Ford,* ——U.S. ——, at ——, 123 S.Ct. 1303, 154 L.Ed.2d 1029, at ——, 2003 WL 132997, at *4 (quoting *Berman Enters. v. Jorling,* 3 F.3d 602, 606 (2d Cir.1993)). In his amended complaint, plaintiff seeks to assert his § 1981 and § 1983 claims against Martinez and Yurman in their individual, as well as official, capacity. In both his original and amended complaints, plaintiff sued Jackson in both her individual and official capacity. These individual-capacity claims are not barred by the Eleventh Amendment. *See Chinn,* 963 F.Supp. at 225.

### Martinez and Yurman

**[10]**   State defendants, however, assert that the § 1983 claims against Martinez and Yurman in their individual capacity should be dismissed pursuant to Rule 12(b)(6) for

failure to state a claim because those defendants (1) acted with probable cause and/or (2) are entitled to qualified immunity.[31]   The crux of plaintiff's claims against these defendants is that Martinez and Yurman had no justification for "approaching" plaintiff, "escorting" him to the campus security office, and thereafter contacting the NYPD. *See* Compl. ¶¶ 17–21. However, by plaintiff's own account, these officers acted with probable cause, and their conduct is thus not actionable. Indeed, as stated above, probable cause is an absolute defense to an action for false arrest under § 1983. *See Singer,* 63 F.3d at 188 (citations omitted). In this case, Martinez and Yurman were responding to a report of sexual assault by Tomey, a person described as plaintiff's girlfriend. *See* Compl. ¶ 17. In the Second Circuit, an allegation by a crime victim personally acquainted with her alleged assailant establishes probable cause. *See Curley,* 268 F.3d at 70; *Lee,* 136 F.3d at 103. As noted above, plaintiff's complaint sets forth no allegations that undermine Tomey's accusations. Thus, Martinez and Yurman were justified in relying on Tomey's complaint to establish probable cause to detain plaintiff.

[31]   State defendants do not argue any grounds for dismissal of plaintiff's § 1981 claim asserted against Martinez, Yurman and Jackson in their individual capacity. Nonetheless, plaintiff cannot maintain a § 1981 claim against Martinez and Yurman because plaintiff's complaint is devoid of any allegations that these state defendants had an intent to discriminate against him or that, even if they did, they deprived plaintiff of one of the statute's enumerated rights. Plaintiff's § 1981 claim against Jackson is discussed *infra* in the context of plaintiff's claims against Jackson in her individual capacity.

Plaintiff alleges that he "attempted to plead his innocence," but that the officers ignored his pleas, and nevertheless contacted the NYPD, who arrested plaintiff. However, probable cause is not foreclosed when an officer relies on a victim's complaint, even if the alleged assailant provides a different version of events. *See Curley,* 268 F.3d at 70. Thus, under applicable law, and based on information available to them at the time of plaintiff's detainment, Martinez and Yurman acted appropriately and with probable cause. Accordingly, plaintiff's proposed § 1983 false arrest claim against these state defendants in their individual capacity is denied as futile.

Obilo v. City University of City of New York, Not Reported in F.Supp.2d (2003)

2003 WL 1809471

**[11]** Alternatively, even if Martinez and Yurman did not have actual probable cause, state defendants argue that their conduct was not objectively unreasonable and that these defendants are therefore entitled to qualified immunity. [32] In the false arrest context, an action is objectively unreasonable only if " 'no officer of reasonable competence could have made the same choice in similar circumstances.' " *Lee,* 136 F.3d at 102 (quoting *Lennon,* 66 F.3d at 420–21). In this case, Martinez and Yurman responded appropriately to a report of sexual assault by a crime victim, who could not have been mistaken as to plaintiff's identity. Thus, even if plaintiff can prove that he presented Martinez and Yurman with an account that conflicted with Tomey's version of events, these defendants are entitled to qualified immunity because "officers of reasonable competence could disagree" as to the determination of probable cause. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Accordingly, the proposed § 1983 claim against Martinez and Yurman in their individual capacity is subject to dismissal on this alternative ground and is denied as futile.

[32] Of course, as with Burgess, if Martinez and Yurman had actual probable cause, they would be entitled to qualified immunity on the basis that their conduct did not violate plaintiff's constitutional right. *See Saucier,* 533 U.S. at 201; *see also Lee,* 136 F.3d at 102 (stating that the right not to be arrested without probable cause is a constitutional right).

### Jackson

#### A. § 1983

**\*19** To the extent that plaintiff alleges against Jackson a § 1983 claim premised on plaintiff's arrest and/or prosecution, state defendants argue that this claim fails. To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and law of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988). Plaintiff's amended complaint contains no allegations whatsoever of Jackson's involvement in any of the events relating to plaintiff's arrest and prosecution. [33] "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,*

21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffit v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir.1991)). Because plaintiff's complaint contains no allegations of Jackson's personal involvement in plaintiff's arrest and prosecution, any claim for false arrest against her is "fatally deficient on its face" and is dismissed. *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987) (quotation and citation omitted); *see also Dove v. Fordham University,* 56 F.Supp.2d 330, 335–36 (S.D.N.Y.1999), *aff'd without opinion,* 210 F.3d 354 (2d Cir.2000) (table) (dismissing § 1981 and § 1983 claims as legally deficient because compliant was devoid of allegations of wrongdoing or personal involvement by particular defendants).

[33] Plaintiff's complaint does, however, allege that each defendant was acting under color of state law. *See* Compl. ¶ 15.

Nonetheless, Count I of plaintiff's amended complaint contains the following allegation against Jackson:

> [S]hortly after the arrest of the plaintiff, Defendant Carol Jackson, as the Vice President of [CSI] coerced and forced and threatened the plaintiff and in effect disbarred and unlawfully removed the plaintiff as a student of [CSI], even though the plaintiff was duly qualified to be in attendance at said College. Despite being found not guilty by the jury at the completion of the criminal prosecution against the plaintiff, defendant Carol Jackson has unjustly and unlawfully failed and/or refused to permit the plaintiff to continue his studies at [CSI]. The actions of Defendant Jackson were not in accordance with the Plaintiff's Constitutional rights and other legal requirements and were done with race based animus towards the plaintiff solely because he is Black and born in Nigeria.

Am. Compl. ¶ 37. [34] As the paragraph indicates, plaintiff does not specify the constitutional rights that he alleges Jackson violated. A plaintiff "must make specific allegations that indicate a deprivation of constitutional rights; general indirect and conclusory allegations are not

sufficient." *Hankard v. Town of Avon,* 126 F.3d 418, 423 (2d Cir.1997); *see also Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987) (stating that complaints based on a violation of civil rights must include specific allegations of facts showing a violation of rights "instead of a litany of general conclusions that shock but have no meaning"). Thus, it is arguable that these general allegations are insufficient to state a claim under § 1983. Nonetheless, it is apparent that plaintiff's counsel merely inserted this paragraph at the end of the allegations in Count I. Thus, liberally construing the complaint, it can be argued that the previous paragraph, which asserts that the allegations in Count I constitute a violation of, *inter alia,* plaintiff's Fourteenth Amendment right to due process of the law and to be afforded the equal protection and benefit of the law" could be applied to his allegation.[35]

[34]    At oral argument, counsel for state defendant's argued that Obilo, in fact, voluntarily withdrew from CSI and even requested tuition reimbursement. However, for purposes of this motion, plaintiff's allegations will be accepted as true.

[35]    At oral argument, plaintiff's counsel argued that the allegations in paragraph 37 of plaintiff's amended complaint establish a violation of plaintiff's equal protection rights under the Fourteenth Amendment.

*20  [12]    To the extent that plaintiff's allegations could be construed to allege an equal protection claim under the Fourteenth Amendment, the allegations are insufficient on their face.[36] Plaintiff's complaint does not allege that similarly situated persons were treated differently by Jackson, an essential element in any equal protection claim. *See Gagliardi v. Village of Pawling,* 18 F.3d 188, 193 (2d Cir.1994) ("[I]t is axiomatic that plaintiff [making an equal protection claim] must allege that similarly situated persons were treated differently.").

[36]    The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1.

[13]    Similarly, to the extent that plaintiff's allegations could be construed to allege a due process violation under the Fourteenth Amendment, the allegations are facially defective. To establish a due process violation, plaintiff must allege: (1) that the government deprived him of an interest "encompassed by the Fourteenth Amendment's

protection of liberty and property," (2) without the constitutionally required process. *Bd. of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Thus, "[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Narumanchi v. Bd. of Trustees of Conn. State Univ.,* 850 F.2d 70, 72 (2d Cir.1988); *see also DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 195–96, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989) (stating that a claim based on a violation of due process must involve the deprivation of a recognized life, liberty, or property interest). Nowhere in plaintiff's complaint does he allege that he had a liberty or property interest of which Jackson deprived him. Accordingly, plaintiff fails to allege a violation of his due process rights. Thus, plaintiff's proposed claim against Jackson is subject to dismissal for failure to state a claim and is consequently denied as futile.

In addition, Count III of plaintiff's amended complaint seeks to impose liability on Jackson for "lack of sufficient and appropriate training" of, among others, CSI campus security officers,[37] which allegedly resulted in "the wrongful arrest, detention, abuse, harassment, threat, use of unnecessary force and excessive force, arbitrary stop and arrest of plaintiff." Am. Compl. ¶ 47. According to plaintiff, this insufficient training and resultant unlawful conduct "constituted a standing policing [sic] and custom and was condoned by the supervisory officials within [CSI] and [CUNY]." *Id.* ¶ 44.

[37]    A review of plaintiff's original and amended complaint reveals that plaintiff's amended complaint asserts against Jackson essentially the same claim that his original compliant asserts against Guliani and Kerik—the municipal liability claim that plaintiff's counsel agreed to withdraw at the February 5, 1999 conference.

[14]    As noted above, since Jackson is a state official, a § 1983 claim for damages can only be asserted against her in her individual capacity. *C.f., Will,* 491 U.S. at 68–70, 109 S.Ct. at 2311–12. Moreover, before she can be liable for damages in a § 1983 action, the plaintiff must allege Jackson's "personal involvement" in the alleged deprivation of plaintiff's constitutional rights. *Wright,* 21 F.3d at 501. Plaintiff has not alleged that Jackson was in any way personally involved in the detainment or subsequent arrest and prosecution of Jackson. Indeed, plaintiff's complaint does not assert that Martinez and

2003 WL 1809471

Yurman detained plaintiff at Jackson's request or that Jackson called the NYPD. Nonetheless, plaintiff does allege that Jackson had "an obligation and duty to plaintiffs to properly train and supervise campus police officers." Am. Compl. ¶ 43. Borrowing from the municipal liability context, as a supervisor, Jackson can be liable under § 1983 if plaintiff alleges (1) Jackson "directly participated" in the violation, (2) Jackson "created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue," or (3) Jackson was "grossly negligent in managing subordinates who caused the unlawful condition or event." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). However, it is not necessary to determine whether plaintiff has adequately alleged such liability on the part of Jackson, because, as discussed above, plaintiff's compliant establishes that Martinez and Yurman had actual, or at least, arguable probable cause and thus, are not liable to plaintiff. In other words, if Martinez and Yurman are not liable to plaintiff on the § 1983 false arrest claim, Jackson cannot be liable in a supervisory capacity. Accordingly, plaintiff's proposed claim against Jackson in her individual capacity is denied as futile.

## B. § 1981

**\*21** Lastly, to the extent that paragraph 37 of plaintiff's amended complaint seeks to assert a § 1981 claim against Jackson, that claim fails since plaintiff has not alleged a deprivation of one of the statute's enumerated rights. As indicated above, to state a claim under § 1981, plaintiff must allege, *inter alia,* that the discrimination concerned one or more of the activities enumerated in the statute, namely make and enforce contracts, sue and be sued, give evidence, etc. *See Mian,* 7. F.3d at 1087. Assuming, *arguendo,* that plaintiff's allegations could establish racially discriminatory intent, plaintiff's compliant contains no allegations that Jackson thwarted plaintiff's attempt to enforce his rights or that plaintiff has a contractual relationship with Jackson. Accordingly, like plaintiff's proposed § 1983 claim, plaintiff's proposed § 1981 claim is defective on its face and is denied as futile.

## Conclusion

In sum,

• Plaintiff's proposed § 1983 claim against Burgess in his individual capacity is DENIED since (1) Burgess had probable cause to arrest and prosecute plaintiff or (2) at least, Burgess had arguable probable cause and is therefore entitled to qualified immunity.

• Plaintiff's proposed § 1981 claim, to the extent he asserts it against Burgess in his individual capacity, is DENIED because plaintiff has failed to allege racially purposeful discrimination and, even if he did, he has failed to allege that the discrimination concerned one or more of the activities enumerated in the statute.

• Plaintiff's § 1983 claim against Burgess in his official capacity is DISMISSED as plaintiff has failed to adequately allege a municipal policy or custom, and, even if he did, Burgess is not liable to plaintiff because he either had probable cause to arrest plaintiff or is entitled to qualified immunity.

• Plaintiff's pendent state law claims against Burgess and the unnamed police officers are DISMISSED as all of plaintiff's federal claims against those defendants are dismissed.

• All of plaintiff's claims against CUNY and CSI are DISMISSED as these defendants are entitled to Eleventh Amendment immunity.

• All of plaintiff's claims against Jackson, Martinez and Yurman in their official capacity are DISMISSED as these defendants are entitled to Eleventh Amendment immunity.

• Plaintiff's proposed § 1983 claim against Martinez and Yurman in their individual capacity is DENIED since (1) they had probable cause to detain plaintiff or (2) at least, they had arguable probable cause and are therefore entitled to qualified immunity.

• Plaintiff's proposed § 1981 claim, to the extent he asserts it against Martinez and Yurman in their individual capacity, is DENIED because plaintiff has failed to allege racially discriminatory intent.

• Plaintiff's proposed § 1983 claims against Jackson in her individual capacity is DENIED because (1) she was not personally involved in any alleged constitutional deprivation and (2) to the extent, plaintiff seeks to impose

2003 WL 1809471

liability on Jackson for the actions of Martinez and Yurman, those defendants are not liable to plaintiff since they had probable cause to detain plaintiff or are subject to qualified immunity.

**\*22**  • Plaintiff's proposed § 1981 claim, to the extent he asserts it against Jackson in her individual capacity, is DENIED because plaintiff has failed to allege racially purposeful discrimination and, even if he did, he has failed to allege that the discrimination concerned one or more of the activities enumerated in the statute.

• Plaintiff's request to amend his complaint is DENIED because, as indicated above, all of plaintiff's proposed claims are subject to dismissal and are therefore futile.

Since none of plaintiff's claims remain, this case is dismissed in its entirety. The Clerk of the Court is directed to close the case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 1809471

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.