UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
————————————————————————————

KAREEM RASHAWN YOUNG,

                              Plaintiff,

                                                    6:18-cv-00135
v.                                                  (DNH/TWD)

COMMISSIONER OF INTERNAL REVENUE,

                              Defendant.
————————————————————————————

APPEARANCES:

Kareem Rashawn Young
Plaintiff, pro se
04-B-2504
Watertown Correctional Facility[1]
PO Box 168
Watertown, NY 13601

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

                     **ORDER AND REPORT-RECOMMENDATION**

I.    **INTRODUCTION**

        *Pro se* Plaintiff Kareem Rashawn Young commenced this action pursuant to 26 U.S.C. §

7422.  (Dkt. No. 1.)  On October 4, 2018, this Court recommended that the complaint be *sua*

*sponte* dismissed for lack of subject matter jurisdiction without prejudice and with leave to

amend: (1) naming the United States as the proper Defendant; and (2) providing a basis for this

_____

[1]  By letter dated April 23, 2019, Plaintiff advised he is currently being held at the Broome
County Jail on a "court hold."  (Dkt. No. 16.)  According to the publicly available website
maintained by the New York State Department of Corrections and Community Supervision,
Plaintiff's custody status is "out to court."  *See* http://nysdoccslookup.doccs.ny.gov (DIN
04B2504) (last visited May 9, 2019).  The Clerk is directed to mail a copy of this Order and
Report-Recommendation to Plaintiff at the Watertown Correctional Facility and Broome County
Jail.

Court's subject matter jurisdiction.  (Dkt. No. 10.)  No objections to the October 2018 Report-Recommendation were filed.  However, on October 17, 2018, Plaintiff filed an "Affidavit in support of plaintiff's request for leave to amend the complaint that was filed by naming the United States as the proper defendant."  (Dkt. No. 13.)  By Decision and Order filed February 5, 2019, the Honorable David N. Hurd, United States District Judge, adopted the October 2018 Report-Recommendation in all respects and referred the matter back to this Court for review of Plaintiff's motion to amend.  (Dkt. No. 15.)

## II.    LEGAL STANDARD

Having previously found Plaintiff meets the financial criteria for commencing this case *in forma pauperis* and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the proposed amended complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. §1915A.  (See Dkt. Nos. 7, 10.)

Section 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

Similarly, under § 1915A a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief can be granted; or . . . seeks monetary relief against a person who is immune from such relief."

28 U.S.C. § 1915A(a),(b)(1)-(2).  Additionally, if a court "determines at any time that it lacks subject-matter jurisdiction, the Court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation."  *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable

inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

## III.    DISCUSSION

As previously discussed in the October 2018 Report-Recommendation, "[f]ederal courts are courts of limited jurisdiction[.]" *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552 (2005). Federal courts "have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). "[S]ubject matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). When a court lacks subject matter jurisdiction, dismissal of the complaint is mandatory. *Arbaugh*, 546 U.S. at 514.

Under the doctrine of sovereign immunity, no person may sue the federal government absent its consent to be sued. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Through 28 U.S.C. § 1346(a)(1), Congress has broadly consented to suits against the United States in the

district courts for the refund of any federal taxes "alleged to have been erroneously or illegally assessed or collected, . . . or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."  28 U.S.C. § 1346(a)(1).  "But, other statutory provisions, as well as the Supreme Court's interpretation of § 1346(a)(1), establish a range of restrictions that qualify a taxpayer's right to bring an independent refund suit in the district court."  *United States v. Forma*, 42 F.3d 759, 763 (2d Cir. 1994).  Specifically, 26 U.S.C. § 7422(a) provides that a taxpayer must have first filed a "claim for refund or credit" with the IRS to maintain a refund suit and § 1346(a)(1) has been read by the Supreme Court to require full payment of an assessed tax before a taxpayer can invoke the jurisdiction of the district courts for the refund of any portion of such tax.  *See Flora v. United States*, 362 U.S. 145, 177 (1960).  Thus, without making a claim for refund *and* paying the amount assessed, a plaintiff cannot establish the government's waiver of sovereign immunity, and the district court is without jurisdiction to hear the matter.  *See United States v. Dalm*, 494 U.S. 596 (1990).  "If such terms are not met, a court does not have jurisdiction over the suit—or specific claims therein—and it must be dismissed."  *Silipigno v. United States*, No. 1:15-CV-0017 (LEK/CFH), 2017 WL 2973967, at *4 (N.D.N.Y. July 12, 2017)[2] (citing *Meyer*, 510 U.S. at 475 (1994)).

This Court previously determined that it lacked subject matter jurisdiction over Plaintiff's refund action because, *inter alia*, neither the allegations in the initial complaint nor the attached exhibits gave any indication Plaintiff actually *paid* the $6,125,000.00 tax he was seeking to contest, a jurisdictional prerequisite to a refund suit.  *Magnone v. United States*, 902 F.2d 192, 193 (2d Cir. 1990) ("[T]he full payment rule requires as a prerequisite for federal court

---

[2]  Plaintiff will be provided with copies of unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

jurisdiction over a tax refund suit, that the taxpayer make a full payment of the assessment, including penalties and interest."); *see also Smith v. Shulman*, 333 F. App'x 607, 608 (2d Cir. 2009) ("With respect to a claim for refund of income tax paid, [the plaintiff] was statutorily required to file an administrative claim and pay the tax in full prior to filing suit in the district court."); *Follum v. United States*, No. 98-CV-0126A, 1999 WL 250746, at *3 (W.D.N.Y. Mar. 5, 1999) ("Under 26 U.S.C. § 7422(a), plaintiff may bring a refund action in district court only after paying his tax liability in full and filing a claim for refund with the IRS.").

Further, this Court noted that while Plaintiff attached a 2014 tax notice suggesting that in tax year 2013 he made payments in the amount of $6,125,000.00, publicly available documents indicated Plaintiff had been indicted under 18 U.S.C. § 287 for filing a false claim against the United States for payment of a refund of taxes in the amount of $6,125,000.00 in 2014.  *See United States v. Kareem Young*, No. 3:18-CR-124 (TJM), Dkt. No. 1.

Upon review of the proposed amended complaint, the Court finds Plaintiff fails to cure one of the jurisdictional deficiencies identified in the October 2018 Report-Recommendation. (Dkt. No. 13.)  Although his proposed amended complaint properly names the United States as Defendant, as opposed to the Commissioner of Internal Revenue, Plaintiff has not pleaded nor demonstrated that he actually *paid* the $6,125,000.00 tax he is seeking to contest, a jurisdictional prerequisite to a refund suit.  *See, e.g.*, *Williams*, 2013 WL 7121192, at *3 ("A taxpayer's ability to prosecute a refund action against the United States in federal district court is subject to the jurisdictional prerequisites that []he have first paid the tax at issue and timely filed a valid refund claim with the IRS.").

Furthermore, the Court takes judicial notice that on May 2, 2019, following a three day jury trial before the Honorable Thomas J. McAvoy, Senior United States District Judge, Plaintiff

was convicted of one count of filing a false claim for refund under 18 U.S.C. § 287.  *See United States v. Kareem Young*, No. 3:18-CR-124 (TJM), Dkt. No. 68.

Where, as here, a plaintiff does not show or allege that he actually *paid* the tax and a claim was timely filed and denied by the IRS, the district court lacks subject matter jurisdiction over any claim against the United States for a refund of taxes.  *See, e.g.*, *Williams*, 2013 WL 7121192, at *5 (*sua sponte* dismissing plaintiff's complaint for lack of subject matter jurisdiction over any claim for refund against the United States); *Metcalf*, 2012 WL 2357761, at *3 (*sua sponte* dismissing plaintiff's complaint for lack of subject matter jurisdiction over any claim for refund against the United States).

In light of the foregoing, and because a taxpayer's failure to comply with a prerequisite to commencing suit in a federal court is a jurisdictional defect that cannot be waived, *see Deyo v. I.R.S.*, 134 F. App'x 475, 476 (2d Cir. 2005), the Court lacks subject matter jurisdiction.  *See, e.g.*, *Johnson v. I.R.S.*, No. 3:18-cv-278 (VAB)(WIG), 2018 WL 1750469, at *1 (D. Conn. Feb. 26, 2018) (*sua sponte* dismissing refund action for lack of subject matter jurisdiction when the plaintiff did not comply with the jurisdictional prerequisites); *see also Nastasi v. Lari*, No. 15-CV-06066 (SIL), 2017 WL 943935, at *4 (E.D.N.Y. Mar. 9, 2017) (denying motion to amend for lack of subject matter jurisdiction over the claims set forth in the proposed amended complaint).

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's motion to amend (Dkt. No. 13) be **DENIED** for lack of subject matter jurisdiction; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of all unpublished decisions cited herein in accordance with

*Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam) at both the **Watertown**

**Correctional Facility and Broome County Jail.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.[3]  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1)

(Supp. 2013); Fed. R. Civ. P. 72, 6(a).


Dated: May 9, 2018
　　　　Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[3]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 6:18-cv-00135-DNH-TWD    Document 17    Filed 05/09/19    Page 9 of 41

Silipigno v. United States, Not Reported in Fed. Supp. (2017)

2017 WL 2973967, 120 A.F.T.R.2d 2017-5161

2017 WL 2973967
United States District Court, N.D. New York.

David B. SILIPIGNO, Plaintiff,
v.
UNITED STATES of America, Defendant.

1:15-CV-0017 (LEK/CFH)
|
Signed 07/12/2017

**Attorneys and Law Firms**

Lauren S. Owens, William J. Dreyer, Dreyer, Boyajian
Law Firm, Albany, NY, for Plaintiff.

Stephen T. Lyons, U.S. Department of Justice,
Washington, DC, for Defendant.

MEMORANDUM-DECISION AND ORDER

Lawrence E. Kahn, U.S. District Judge

**I. INTRODUCTION**

 *1 Plaintiff David B. Silipigno commenced this action
against the United States on January 7, 2015, to recover
tax refunds for the 2004 and 2005 tax years. Dkt. No. 1
("Complaint") ¶ 1. Plaintiff seeks a refund for the 2004
tax year in the amount of $806,586, plus statutory interest,
due to a net operating loss ("NOL") carryback from the
2009 tax year. Id. ¶ 13. He also seeks a refund for the 2005
tax year in the amount of $509,752, plus statutory interest,
due to a NOL carryback from the 2007 tax year. Id. ¶ 13. [1]

[1]    The Complaint includes a third cause of action
       regarding Plaintiff's alleged entitlement to restitution.
       Id. at 6. However, Plaintiff consented to the dismissal
       of this claim. Dkt. No. 29 ("Plaintiff's Opposition")
       at 1.

On October 11, 2016, both parties moved for summary
judgment. Dkt. No. 27 ("Plaintiff's Motion"); Dkt.
No. 26 ("Defendant's Motion"); see also Dkt. No.
27-1 ("Plaintiff's Memorandum"); Dkt. No. 27-2
("Plaintiff's Statement of Material Facts"); Dkt. No.
26-20 ("Defendant's Memorandum"); Dkt. No. 26-1
("Defendant's Statement of Material Facts"). On
November 29, 2016, the parties filed memoranda in
opposition. Pl.'s Opp.; Dkt. No. 29-8 ("Plaintiff's

Responsive Statement of Material Facts"); Dkt. No.
30 ("Defendant's Opposition"); Def.'s Opp., Ex. 1
("Defendant's Responsive SMF"). The Government also
filed a reply to Plaintiff's Opposition on December 8, 2016.
Dkt. No. 34 ("Defendant's Reply"). [2] For the reasons
stated below, Plaintiff's motion for summary judgment
is denied, Defendant's motion for summary judgment is
granted in part, and the Court dismisses Plaintiff's first
claim for lack of subject matter jurisdiction.

[2]    The Government submitted a Second Responsive
       Statement of Facts in the same document as its Reply.
       To avoid confusion, the paragraphs beginning on
       page one of the Reply are cited as "Def.'s Second
       Responsive SMF ¶ _____."

**II. BACKGROUND**
Plaintiff is an individual taxpayer residing in Saratoga
Springs, New York. Pl.'s SMF ¶ 1; Def.'s SMF ¶ 1. Since
1990, he has had a diverse business career, working for,
owning, and investing in a number of businesses. Pl.'s
SMF ¶ 2; Def.'s SMF ¶ 1; Pl.'s Responsive SMF ¶ 1. As
relevant to the issues before the Court, Plaintiff was a
consultant to First Guarantee Mortgage, LLC ("FGM"),
a mortgage brokering company, from 2000 to 2008 or
2009. Pl.'s SMF ¶ 2; Def.'s SMF ¶ 1; Pl.'s Responsive
SMF ¶ 1. He was the sole owner of Saratoga Venture
Capital, LLC ("SVC"), a venture capital business, and
Consumer Direct Marking ("CDM"), a telemarketing
leads company. Pl.'s Responsive SMF ¶ 10; Def.'s Second
Responsive SMF ¶ 10. He was also an investor, through
contributions made by SVC and CDM, in Drug Risk
Solutions, LLC ("DRS"), a drug testing company that
filed for bankruptcy in 2006. Pl.'s Responsive SMF ¶ 11–
12; Def.'s Second Responsive SMF ¶ 11–12.

**A. Tax Returns**
Plaintiff brought this action to recover tax refunds for the
2004 and 2005 tax years attributable to NOL carrybacks
from the 2009 and 2007 tax years, respectively. Compl.
¶ 13. "Net operating loss carryback is a form of income
averaging that permits a taxpayer to use current losses to
reduce taxable income in prior years." In re First Cent.
Fin. Corp., 269 B.R. 481, 488–89 (Bankr. E.D.N.Y. 2001),
aff'd, 377 F.3d 209 (2d Cir. 2004). NOLs are regulated by
26 U.S.C. § 172. A claim for refund attributable to an NOL
puts at least two tax returns at issue: The return for the
year in which the NOL occurred and the return for the

Silipigno v. United States, Not Reported in Fed. Supp. (2017)

2017 WL 2973967, 120 A.F.T.R.2d 2017-5161

year to which the NOL is being applied. Therefore, the tax returns directly relevant to Plaintiff's refunds are from the 2004, 2005, 2007, and 2009 tax years.

**\*2** Plaintiff timely filed (with extensions) his 2004 U.S. Individual Income Tax Return (Form 1040) on October 17, 2005. Pl.'s SMF ¶ 7; Def.'s Responsive SMF ¶ 7. Plaintiff reported $10,659,032 in total income and paid $2,536,431 in federal taxes. Dkt. No. 26-7, Ex. D2, at 2747–48.

Plaintiff timely filed (with extensions) his 2005 U.S. Individual Income Tax Return (Form 1040) on October 16, 2006. Pl.'s SMF ¶ 8; Def.'s Responsive SMF ¶ 8. Plaintiff reported $8,286,060 in total income and paid $2,630,185 in federal taxes. Dkt. No. 26-8, Ex. D3, at 2–3. [3] He also filed an Amended U.S. Individual Income Tax Return (Form 1040X) for the 2005 tax year on November 29, 2007, seeking a refund of $9,723. Def.'s SMF ¶ 6; Pl.'s Responsive SMF ¶ 6.

[3]     The cited page numbers for this Exhibit refer to those generated by the Court's electronic filing system ("ECF").

Plaintiff did not timely file (with extensions) his 2007 U.S. Individual Income Tax Return (Form 1040) on or before October 15, 2008. Def.'s SMF ¶ 5; Pl.'s Responsive SMF ¶ 5. He filed his Form 1040 for his 2007 taxes on October 4, 2010, claiming an NOL of $1,414,014. Def.'s SMF ¶ 5; Pl.'s Responsive SMF ¶ 5. He also timely filed an Amended U.S. Individual Income Tax Return (Form 1040X) on October 15, 2010, seeking a refund of $509,752 from his 2005 taxes attributable to his 2007 NOL. Id.

Plaintiff timely filed (with extensions) his 2009 U.S. Individual Income Tax Return (Form 1040) on October 15, 2010, claiming an NOL of $2,194,793. Def.'s SMF ¶ 4; Pl.'s Responsive SMF ¶ 4. He also timely filed an Application for Tentative Refund (Form 1045) on October 15, 2010, seeking a refund of $806,586 from his 2004 taxes attributable to his 2009 NOL. Def.'s SMF ¶ 4; Pl.'s Responsive SMF ¶ 4. This Form 1045 was the only document submitted by Plaintiff to the IRS that sought a refund of income taxes for the 2004 tax year. Def.'s SMF ¶ 4; Pl.'s Responsive SMF ¶ 4.

**B. IRS Audit**

On or about February 4, 2008, the Internal Revenue Service ("IRS" or "Service") initiated an audit of Plaintiff's taxes, in particular his Amended U.S. Individual Income Tax Return (Form 1040X) for the 2005 tax year, filed on November 29, 2007. Dkt. No. 26-15, Ex. F ("Donnelly Declaration"), ¶ 2. The examining officer was Anne Donnelly, an IRS revenue agent. Id. ¶ 1. As part of the audit, Donnelly communicated with Plaintiff's power of attorney, John Gilooly. Id. ¶ 3. Gilooly, a certified public accountant, had prepared tax returns for Plaintiff and several of Plaintiff's business interests for approximately twenty years. Pl.'s SMF ¶ 5; Def.'s SMF ¶ 5. The audit continued until September 8, 2009, when Donnelly suspended her work. Donnelly Decl., Ex. 1, at 8; [4] see also Pl.'s SMF ¶ 31; Def.'s Responsive SMF ¶ 31.

[4]     The cited page numbers for this Exhibit refer to those generated by the Court's electronic filing system ("ECF").

**C. Criminal Investigation**

In 2009, the United States Attorney's Office for the Northern District of New York ("USAO") initiated a criminal investigation into mortgage, bank, and tax fraud with respect to Plaintiff and FGM. Pl.'s SMF ¶ 19; Def.'s Responsive SMF ¶ 19. On June 9, 2009, the USAO, with the assistance of agents from the IRS and the Federal Bureau of Investigation, executed a search warrant on FGM's office in Saratoga Springs and Gilooly's offices. Def.'s SMF ¶ 9; Pl.'s SMF ¶ 9. The agents seized hundreds of boxes of documents, computers, servers, and other items from FGM. Pl.'s SMF ¶ 18; Def.'s Responsive SMF ¶ 18. The USAO also issued subpoenas to dozens of entities related to Plaintiff. Pl.'s SMF ¶ 19; Def.'s Responsive SMF ¶ 19. On September 8, 2009, the IRS suspended the audit to await the completion of the criminal investigation. Pl.'s SMF ¶ 31; Def.'s Responsive SMF ¶ 31.

**\*3** On or around January 13, 2011, the investigators served a subpoena on Gilooly, and he produced documents in or around March 2011. Pl.'s SMF ¶ 20; Def.'s Responsive SMF ¶ 20. [5]

[5]     The parties dispute the content of the documents that Gilooly produced in response to this subpoena. See Pl.'s SMF ¶ 20; Def.'s Responsive SMF ¶ 20.

Case 6:18-cv-00135-DNH-TWD Document 17 Filed 05/09/19 Page 11 of 41
Silipigno v. United States, Not Reported in Fed. Supp. (2017)
2017 WL 2973967, 120 A.F.T.R.2d 2017-5161

On multiple occasions between 2011 and 2014, Plaintiff's representatives contacted the IRS—both through phone calls and in-person visits to the IRS office in Glen Falls, New York—to discuss Plaintiff's outstanding refund requests. Pl.'s SMF ¶ 34; Def.'s Responsive SMF ¶ 34. The IRS informed Plaintiff's representatives that the refund requests were being "held." Pl.'s SMF ¶ 34; Def.'s Responsive SMF ¶ 34.

In or around August 2014, the USAO declined to prosecute Plaintiff. Pl.'s SMF ¶ 21; Def.'s Responsive SMF ¶ 21. On or around December 11, 2014, Plaintiff's tax file was removed from the IRS's fraud suspense, and Agent Donnelly resumed her review of the file. Pl.'s SMF ¶ 32; Def.'s Responsive SMF ¶ 32; Donnelly Decl., Ex. 1, at 8. Plaintiff commenced this action soon thereafter on January 7, 2015.

## III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

### A. 2009 NOL Carryback for the 2004 Tax Year

*4 Under the doctrine of sovereign immunity, no suit may be brought against the United States unless it has explicitly consented by statute to be sued. United States v. Dalm, 494 U.S. 596, 608 (1990). When a statutory waiver of immunity exists, the government may establish the terms of its consent, with which a plaintiff must strictly comply. Lane v. Pena, 518 U.S. 187, 192 (1996). If such terms are not met, a court does not have jurisdiction over the suit—or specific claims therein—and it must be dismissed. F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).

For actions that seek the recovery of taxes alleged to have been erroneously or illegally assessed or collected by the United States, Congress has waived sovereign immunity through 28 U.S.C. § 1346. United States v. Forma, 42 F.3d 759, 763 (2d Cir. 1994). However, under 26 U.S.C. § 7422(a), a plaintiff must "duly file[ ]" a claim with the IRS before initiating an income tax refund action in federal court. See Dalm, 494 U.S. at 601 ("Despite its spacious terms, § 1346(a)(1) must be read in conformity with other statutory provisions which qualify a taxpayer's right to bring a refund sit upon compliance with certain conditions. The first is § 7422(a) ...."). The statute provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary [of the Treasury], according to the provisions of law ... and

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:18-cv-00135-DNH-TWD    Document 17    Filed 05/09/19    Page 12 of 41

Silipigno v. United States, Not Reported in Fed. Supp. (2017)

2017 WL 2973967, 120 A.F.T.R.2d 2017-5161

the regulations of the Secretary established in pursuance thereof.

§ 7422(a).

The Government argues that Plaintiff failed, as required by § 7422(a) and the relevant implementing regulations, to duly file a claim for refund with respect to the 2009 NOL carryback for the 2004 tax year, and thus this Court lacks jurisdiction over this claim. Def.'s Mem. at 4–6. The Court agrees.

Regulations promulgated by the Department of the Treasury describe the manner in which a refund claim should be made. See 26 C.F.R. § 301.6402–3(a)(1) ("In general, in the case of an overpayment of income taxes, a claim for credit or refund ... shall be made on the appropriate income tax return."). Because Plaintiff is seeking a refund of individual income tax, "a claim for refund shall be made on a Form 1040X ('Amended U.S. Individual Income Tax Return')." Id.; Weisman v. C.I.R., 103 F. Supp. 2d 621, 627 (S.D.N.Y. 2000).

It is undisputed that Plaintiff did not comply with Section 301.6402–3(a)(2) by filing a Form 1040X for the 2004 tax year with respect to the 2009 NOL carryback. Def.'s SMF ¶ 4; Pl.'s Responsive SMF ¶ 4. Instead, he filed a Form 1045 ("Application for Tentative Refund"), pursuant to 26 U.S.C. § 6411(a), which provides the right to apply for a tentative carryback adjustment. Def.'s SMF ¶ 4; Pl.'s Responsive SMF ¶ 4. The relevant provisions of law and the IRS's regulations could not be clearer in stating that Form 1045 "shall not constitute a claim for credit or refund" as required by § 7422(a). See § 6411(a) ("an application under this subsection shall not constitute a claim for credit or refund."); Treas. Reg. § 1.6411-1(b)(2) ("An application for a tentative carryback adjustment does not constitute a claim for credit or refund.").

Nevertheless, Plaintiff argues that his Form 1045, coupled with additional written and oral submissions to the IRS, constitutes a timely informal claim that satisfies the jurisdictional requirement of § 7422(a). Pl.'s Mem. at 10–11. The Court disagrees.

**\*5** The informal claim doctrine permits a taxpayer's informal request, "i.e. one that does not comply with the formal requirements of the statute and regulations," to

satisfy § 7422 under certain conditions. Sumrall v. C.I.R., 83 T.C.M. (CCH) 1405, at \*5 (T.C. 2002). The Supreme Court first recognized this doctrine in United States v. Kales, 314 U.S. 186 (1941), and while "[t]here are no bright line rules as to what constitutes an informal claim," Sumrall, 83 T.C.M., at \*5, federal courts have generally required "three components to an informal claim." New England Elec. Sys. v. United States, 32 Fed. Cl. 636, 641 (1995) (citing Am. Radiator & Standard Sanitary Corp. v. United States, 162 Ct. Cl. 106 (1963)). "First, an informal claim must provide the Commissioner of the IRS with notice that the taxpayer is asserting a right to a refund. Second, the claim must describe the legal and factual basis for the refund. Finally, an informal claim must have some written component." Id.

"Numerous courts have held that an application for tentative refund [Form 1045] does not constitute an 'informal claim' for purposes of satisfying section 7422's administrative exhaustion requirement." McKenzie v. I.R.S., No. 12-cv-1336, 2013 WL 1181801, at \*6 (W.D. Pa. Mar. 20, 2013); see also Emax Fin. Grp., LCC v. United States V.I., No. 2009-cv-86, 2012 WL 1190470, at \*6 (D.V.I. Mar. 31, 2012) ("Numerous courts ... have rejected the argument that an application for a tentative carryback adjustment is an 'informal claim' for purposes of satisfying section 7422's administrative exhaustion requirement."); I.C.T.S. U.S.A., Inc., v. United States, No. 06-CV-6553, 2007 WL 512791, at \*2 (S.D.N.Y. Feb. 15, 2007) ("This argument [that an application for a tentative carryback adjustment may constitute an informal claim], if accepted, would not only contradict the plain meaning of the relevant regulations quoted above but would obliterate the distinction between a tentative application and a formal claim for a refund...."); Kirsh v. United States, 131 F. Supp.2d 389, 392 (S.D.N.Y. 2000) ("[C]ase law firmly supports the notion that Form 1045 does not provide timely informal notice for Form 1040X" (citing Rock v. United States, 279 F. Supp. 96, 98 (S.D.N.Y. 1968))), aff'd, 258 F.3d 131 (2d Cir. 2001). Given the clarity of the statutory language and this case law, the Court will not consider Plaintiff's Application for Tentative Refund (Form 1045) in its analysis of whether he filed a timely informal claim. Emax Fin. Grp., 2012 WL 1190470, at \*7. [6]

6      Plaintiff argues that the IRS did not provide "notice and a timely opportunity to file a Form 1040X," because the IRS did not respond to Plaintiff's Form

Case 6:18-cv-00135-DNH-TWD   Document 17   Filed 05/09/19   Page 13 of 41

Silipigno v. United States, Not Reported in Fed. Supp. (2017)

2017 WL 2973967, 120 A.F.T.R.2d 2017-5161

1045. Pl.'s Opp. at 6. The IRS typically responds to a Form 1045 within ninety days of submission, but the IRS is not required to do so. See § 6411(b) ("Within a period of 90 days from the date on which an application for a tentative carryback adjustment is filed ... the Secretary shall make, *to the extent he deems practicable in such period*, a limited examination of the application....." (emphasis added)); see also Comm'r v. Van Bergh, 209 F.2d 23, 25 (2d Cir. 1954) ("It will be observed that the Commissioner's action not only is described as a 'tentative carry-back adjustment', but that he need not make his 'limited examination' at all except 'to the extent he deems practicable' within the ninety days."). As discussed above, the relevant statutory and regulatory language could not be clearer in stating that Form 1045 does not constitute a proper, formal claim for refund. The IRS provides notice to all taxpayers through these documents. Cf. Thrif-Tee, Inc. v. United States, 492 F. Supp. 530, 534 (W.D.N.C. 1979) ("It was not necessary for the Plaintiff to await action by the Secretary on its application for tentative carryback adjustment to file its claim for refund. Such claim could have been filed at any time without regard to action or lack of action on the carryback application.").

**\*6** Plaintiff has not presented any evidence that he submitted relevant written correspondence (other than the Form 1045) to the IRS between October 15, 2010, the date he filed his Form 1040 for the 2009 tax year, and October 15, 2013, the date after which a claim for refund attributable to the 2009 NOL is time barred.[7] Plaintiff's correspondence with the IRS in 2015 and 2016, Pl.'s Opp. at 4, is irrelevant because it occurred after the statute of limitations on his refund claim had run and after Plaintiff had commenced this lawsuit. There is no indication in the communication between the IRS and Plaintiff that the IRS was aware of "the legal and factual basis" for Plaintiff's refund claim before the filing of his Complaint or the running of the statute of limitations. See Pl.'s Opp., Ex. C, at 1–2.[8]

[7]   The applicable period of limitations to file a claim for refund relating to an overpayment of taxes attributable to an NOL carryback is provided in 26 U.S.C. § 6511(d)(2). As relevant to the facts before the Court, a taxpayer must file such a claim within the "period which ends 3 years after the time prescribed by law for filing the return (including extensions thereof) for the taxable year of the net operating

loss ... which results in [the] carryback." § 6511(d)(2) (A).

[8]   The cited page numbers for this Exhibit refer to those generated by the Court's electronic filing system ("ECF").

The oral communication between Plaintiff's representatives and the IRS is similarly insufficient to qualify as a timely informal claim. Plaintiff's representative, Terry DeLong, testified that he spoke to the IRS on the phone and visited its office multiple times between 2011 and 2014. Pl.'s Mem, Ex. Q ("DeLong Deposition"), at 78–79. However, DeLong did not testify that he had any substantive conversations with the IRS that would have notified it of the "legal and factual basis" of the claim for refund. When asked about his conversations with the IRS, he testified, "But I mean, we really got nothing, every time we called, we got nothing." Id. at 83. In any event, an informal claim must have a written component, which Plaintiff has not presented, and there is no evidence that the IRS documented these conversations. See Emax Fin. Grp., 2012 WL 1190470, at \*5 ("In United States v. Kales, 314 U.S. 1986 (1941), the Supreme Court established the general parameters of an informal claim for a tax refund: (1) the claim must be in writing...."); Pinckes v. United States, 7 Cl. Ct. 570, 571 (1985) ("[U]ndocumented oral statements are insufficient.").

Since Plaintiff did not duly file a formal or informal claim for refund regarding his 2009 NOL carryback as applied to the 2004 tax year, this Court lacks jurisdiction over this claim and it must be dismissed.

### B. 2007 NOL Carryback for the 2005 Tax Year
There is no dispute regarding the Court's jurisdiction over Plaintiff's claim for refund due to an NOL that occurred in 2007, which Plaintiff elected to carryback to his 2005 income taxes. As noted above, IRS regulations direct individual taxpayers to make a claim for refund on Form 1040X. 26 C.F.R. § 301.6402–3(a)(1). Plaintiff timely filed a Form 1040X on October 15, 2010, seeking a refund of his 2005 taxes due to an NOL generated in 2007. Def.'s SMF ¶ 5; Pl.'s Responsive SMF ¶ 5.

With regard to the merits of Plaintiff's claim, "the burden of proof is on the taxpayer to prove an overpayment of tax and the amount he is entitled to recover." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993);

Case 6:18-cv-00135-DNH-TWD    Document 17    Filed 05/09/19    Page 14 of 41

Silipigno v. United States, Not Reported in Fed. Supp. (2017)

2017 WL 2973967, 120 A.F.T.R.2d 2017-5161

see also Zeeman v. United States, 394 F.2d 861, 865 (2d Cir. 1968) ("It was the well-established rule when the appellant began this suit that the burden of showing her right to carryback her loss ... would be on her."); Michael I. Saltzman & Leslie Book, IRS Practice and Procedure ¶ 1.04[2] (2d ed. 2005). However, a plaintiff may shift the burden of proof to the Government "with respect to any factual issue related to a taxpayer's tax liability if they maintained adequate records, satisfied applicable substantiation requirements, cooperated with [the IRS], and introduced during the court proceeding credible evidence on the factual issues." Tilman v. United States, 644 F. Supp.2d 391, 398 (S.D.N.Y. 2009) (quoting Gutierrez v. Comm'r, 86 T.C.M. (CCH) 611, at *2 (T.C. 2003)).

**\*7** Plaintiff argues that his burden does not apply to the income taxes he paid for the 2005 tax year, because the IRS may no longer assess previously undiscovered deficiencies against him regarding his 2005 income taxes due to the expiration of the relevant statute of limitations. Pl.'s Mem. at 5–9. This is not correct.

A claim for refund based on an NOL puts at least two tax returns at issue: The return for the year in which the NOL occurred and the return for the year to which the NOL is being applied. Plaintiff has put his 2005 income taxes at issue by seeking a refund from the taxes he paid for 2005. Case law is clear that time limitations on the IRS's ability to assess previously undiscovered deficiencies do not affect its—and this Court's—duty to determine whether a refund is properly due. The Supreme Court settled this issue in Lewis v. Reynolds, 284 U.S. 281 (1932), which courts have applied consistently since. In Lewis, the Supreme Court stated, "[T]he ultimate question presented for decision, upon a claim for refund, is whether taxpayer has overpaid his tax. This involves a redetermination of the *entire tax liability.* While no new assessment can be made, after the bar of the statute has fallen, the taxpayer, nevertheless, is not entitled to a refund unless he has overpaid his tax." Id. at 283 (emphasis added); see also Fisher v. United States, 80 F.3d 1575, 1581 (Fed. Cir. 1996) ("Lewis and Dysart together stand for the proposition that the government may offset against a tax refund claim any additional amounts the taxpayer owes with respect to the tax shown on the return, even though the statute of limitations would bar assessing the additional amount owed."); Dysart v. United States, 340 F.2d 624, 628 (Ct. Cl. 1965) ("It is not enough that [the taxpayer] can prevail

on the particular items on which he sues, for he may have underpaid with respect to other components entering into that tax.... His entire tax liability under the particular tax return is therefore open for redetermination."); Saltzman ¶ 11.02[1][a] ("Under the principles of Lewis v. Reynolds, the Service is permitted to reduce the amount of the taxpayer's refund by the correct tax for the year, even if the Service can no longer assess the amount of any deficiency it may have determined to be due."). Plaintiff bears the burden of proof that the taxes he paid in 2005 and the loss he claimed in 2007 are correct.

The Government raises two deficiencies with regard to Plaintiff's tax returns: (1) the inclusion of $4,510,050 in expenses for "cost of goods sold" on Plaintiff's 2005 Schedule C for his mortgage consultancy business, and (2) the loss of Plaintiff's $2,129,876 investment in DRS, which created the NOL on his 2007 return. Def.'s Mem. at 16–21. [9]

9    Since both parties moved for summary judgment, the Court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Schwabenbauer v. Bd. of Ed. of City Sch. Dist. of City of Olean, 667 F.2d 305, 314 (2d Cir. 1981). Because this section considers the Government's argument that Plaintiff did not provide proper support for his 2005 or 2007 tax returns, Def.'s Mem. at 16–21, "the Court is obligated to draw all factual inferences in favor of" Plaintiff, Reeves, 530 U.S. at 150.

**\*8** On his original 2005 tax return, Plaintiff subtracted $4,510,050 from his gross business income as a mortgage consultant for "cost of goods sold." Dkt. No. 26-8, Ex. D3, at 6–7. He did not amend these expenses on his Form 1040X for the 2005 tax year, filed on October 15, 2010. Dkt. No. 26-11, Ex. D6, at 2. [10] Under 26 C.F.R. § 1.61–3(a), "[t]he cost of goods purchased for resale in a taxpayer's business [may be] subtracted from gross receipts to compute gross income." Newman v. Comm'r, 80 T.C.M. (CCH) 661, at *2 (T.C. 2000). However, Plaintiff did not submit any records to justify these expenses or why he is entitled to include such expenses on his personal tax return. Plaintiff admits that he does not have an ownership interest in FGM, the entity that directly incurred these expenses; instead, he claims that he is entitled to subtract FGM's cost of goods from his business income because of an expense-sharing agreement

Case 6:18-cv-00135-DNH-TWD    Document 17    Filed 05/09/19    Page 15 of 41

Silipigno v. United States, Not Reported in Fed. Supp. (2017)
2017 WL 2973967, 120 A.F.T.R.2d 2017-5161

between FGM and other entities he owned. Dkt. No. 27-18, Ex. O ("Silipigno Deposition"), at 25. Plaintiff did not submit any records that verify this arrangement.

[10]    The cited page numbers for this Exhibit refer to those generated by the Court's electronic filing system ("ECF").

Taxpayers must keep sufficient records to substantiate the cost of goods sold. § 6001; Newman, 80 T.C.M. (CCH) at *2. Without such records, Plaintiff is not able to demonstrate that his 2005 taxes were filed correctly. Wages v. Comm'r, T.C.M. (RIA) 2017-103, at *19–20 (T.C. 2017) ("All we have before us are petitioners' unsubstantiated claims in their petition, brief, and other filings that they incurred certain expenses. These unsupported statements are insufficient to justify even the roughest estimate of their true expenses."); WB Acquisition, Inc. v. Comm'r, 101 T.C.M. (CCH) 1157, at *20 (T.C. 2011) ("Petitioners have not provided receipts, invoices, canceled checks, or any other evidence to prove the nature of these [cost-of-goods] expenses or whether such expenses were paid. Accordingly, petitioners have failed to meet their burden of proof....").

Plaintiff's record keeping was clearly complicated by the fact that federal investigators seized thousands of records from FGM and Gilooly on June 9, 2009. Pl.'s SMF ¶ 18; Def.'s Responsive SMF ¶ 18. Plaintiff raised this fact multiple times in his papers, even after he consented to the dismissal of his claim for equitable restitution. E.g., Pl.'s Opp. at 11. Nevertheless, he does not present an argument as to its relevance, possibly because "equitable considerations" will not affect Plaintiff's burden except in the most extraordinary circumstances. See Fisher, 80 F.3d at 1581; Andrew Crispo Gallery, Inc. v. Comm'r, 16 F.3d 1336, 1341 (2d. Cir. 1994). Plaintiff has not attempted to show that his experience was extraordinary or even to delineate what documents might have been lost in the 2009 raid, which might justify their absence from the record. In addition, Plaintiff failed to produce records during the initial phase of the IRS audit in 2008, more than a year prior to the raid, when asked for documentation to support these expenses. Donnelly Decl. ¶ 5. Plaintiff also reaffirmed the validity of his 2005 tax return under the penalty of perjury when he filed his Form 1040X for 2005 on October 15, 2010, more than a year after the raid occurred.[11]

[11]    The parties dispute whether additional documents were taken from Plaintiff's possession in 2011, when Gilooly responded to a subpoena issued by the USAO. Pl.'s SMF ¶ 20; Def.'s Responsive SMF ¶ 20. However, the Government submitted the only sworn statement from a person with personal knowledge of the documents produced in response to the 2011 subpoena. See Dkt. No. 26-19, Ex. J, ("Carruthers Declaration") ¶ 4. IRS Special Agent Julie Carruthers states in this declaration that "[t]he documents obtained pursuant to the subpoena served on Mr. Gilooly in January 2011 were only copies of some of Mr. Silipigno's previously filed tax returns." Id. Plaintiff did not submit any sworn statement from a person with personal knowledge of these documents to dispute this declaration. Therefore, the Court shall credit Carruthers's description of the documents produced. Fed. R. Civ. P. 56(c)(4); Deshais v. Consol. Rail Corp., 956 F. Supp. 230, 238 (N.D.N.Y. 1997) ("It is well settled that affidavits of persons without personal knowledge of the facts, inadmissible hearsay statements, and conclusory allegations are not sufficient to defeat a properly supported summary judgment motion.").

**\*9** While the Court is sympathetic to the large number of years over which the investigation spanned, Plaintiff is not excused from his responsibility to maintain sufficient records to justify his returns. Given the complete lack of records submitted in support of Plaintiff's 2005 "cost of goods" expenses, no reasonable jury could find that Plaintiff was entitled to subtract these expenses from his business income. Therefore, Plaintiff's 2005 income taxes were under-reported based on the inclusion of $4,510,050 in cost-of-goods expenses on his Schedule C for his mortgage consultancy business.

Although the IRS is time barred from assessing this deficiency, it may be used to offset any refund to which Plaintiff is entitled. Even if the Court were to find that he is entitled to carryback the $1,414,014 in net operating losses from 2007 to 2005, the deficient $4,510,050 in gross income would negate any refund to which Plaintiff would be entitled. Thus, the Court will not address whether Plaintiff's 2007 NOL was calculated properly. In any event, Plaintiff has failed to demonstrate that a reasonable jury could return a verdict on his behalf. Therefore, Plaintiff's Motion must be denied and Defendant's Motion, with respect to the requested refund from Plaintiff's 2005 taxes, must be granted.

2017 WL 2973967, 120 A.F.T.R.2d 2017-5161

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Second Cause of Action (Dkt. No. 1) is **DISMISSED for lack of subject matter jurisdiction**; and it is further

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No. 26) is **GRANTED in part**; and it is further

**ORDERED**, that Plaintiff's Motion for summary judgment (Dkt. No. 27) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court enter judgment for the Defendant and close this case; and it is further

**ORDERED**, that the Clerk serve copies of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2973967, 120 A.F.T.R.2d 2017-5161

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 7121192
United States District Court,
W.D. New York.

Theresa WILLIAMS, Plaintiff,
v.
U.S. DEPARTMENT OF TREASURY*INTERNAL
REVENUE SERVICE, T. Rowe Price,
Entergy Services, Inc., Defendants.

No. 07–CV–212C.
|
Jan. 29, 2013.

**Attorneys and Law Firms**

Theresa Williams, Buffalo, NY, pro se.

DECISION AND ORDER

CHARLES J. SIRAGUSA, District Judge.

INTRODUCTION

*1 On March 30, 2011, this Court ordered, *inter alia,* that *pro se* plaintiff's motions to file a third amended complaint and to file supporting exhibits under seal be granted. (Docket No. 23).[1] The Court accordingly directed that plaintiff's proposed amended complaint be filed as her "Third Amended Complaint" and that plaintiff's supporting exhibits 1–3 be filed under seal in accordance with W.D.N.Y. Loc. R. Civ. P. 5.4(b). (*Id., see also* Docket No. 24 (Third Amended Complaint) and Docket No. 25 (Sealed Document). The March 30, 2011 Order noted that the third amended complaint would be reviewed pursuant to 28 U.S.C. § 1915(e)(2)(B). For the reasons set forth below, the Court determines that plaintiff's claims must be dismissed.

[1]    Plaintiff commenced this action with a complaint filed on March 30, 2007 (Docket No. 1) and naming the "Internal Revenue Department" as the sole defendant. Shortly thereafter, she moved to stay the action. (Docket No. 3). By Order dated July 30, 2007, the Court granted the request for a stay, and directed plaintiff to make appropriate application to the Court by October 15, 2007. (Docket No. 5). Plaintiff then moved to lift the stay and on May 30,

2008 filed an amended complaint which added as defendants Entergy Services, Inc. and T. Rowe Price. (Docket Nos. 6 and 7). By Order dated September 24, 2008, the Court granted plaintiff's motion to lift the stay, and upon review of the amended complaint, determined that the claims asserted therein would be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) unless plaintiff filed a further amended complaint as directed in the Order by October 24, 2008. (Docket No. 8). Thereafter, following the granting of several requests for an extension of time (Docket Nos. 10, 12), plaintiff filed a second amended complaint (Docket No. 13) and a motion for leave to file supporting exhibits under seal (Docket No. 14). Prior to the Court's review of the second amended complaint, plaintiff filed a motion requesting that the action again be stayed pending the completion of certain audits or investigative reports by several federal and state agencies which plaintiff believed relevant to the instant action. (Docket No. 15). Plaintiff's application for a stay was granted, subject to the requirement that she timely make application to lift the stay and explain why it should be continued or withdraw the action, and her motion to file exhibits under seal was ordered to be held in abeyance until such time as the Court either lifted the stay or dismissed the action. (Docket No. 16). Thereafter, plaintiff filed, *inter alia,* a motion to file a further amended complaint. (Docket No. 22). By Order dated March 29, 2011, the Court (Hon. Michael A. Telesca) granted plaintiff's motion to file a further (third) amended complaint and directed that the exhibits previously filed by plaintiff in support of her second amended complaint be filed under seal inasmuch as they appeared to be relevant to the allegations set forth in the third amended complaint. (Docket No. 23)

STANDARD OF REVIEW

Section 1915(e)(2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has been granted if, at any time, the Court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007) (citing *Shakur v. Selsky,* 391 F.3d 106, 112 (2d Cir.2004)).

In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiffs favor. *See Larkin v. Savage,* 318 F.3d 138, 139 (2d Cir.2003) (per curiam); *King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999). Moreover, "a court is obliged to construe [*pro se* ] pleadings liberally" *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004); *and see Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998). "The policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.' " *Abbas,* 480 F.3d at 639 (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983)). "A document filed *pro se* is to be liberally construed, ..., and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson,* 551 U.S. at 94 (internal quotation marks and citations omitted).

Nevertheless, even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon,* 360 F.3d 73 (2d Cir.2004). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although a complaint need not include "detailed factual allegations," it must do more than put forth "labels and conclusions." *Id.* at 555. A claim will be considered "plausible on its face ... when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

**\*2** Moreover, even assuming that a complaint satisfies the liberal pleading standards applicable to a *pro se* plaintiff, a claim must be dismissed if it is one over which the Court lacks subject-matter jurisdiction. It is well established that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3); see *Natl. Comm. to Pres. Soc. Sec. & Medicare v. Philip Morris USA Inc.,* 395 Fed. Appx. 772, 774 (2d Cir.2010) (summary order); *Brow v. Gov't of the United States V.I.,* 2012 U.S. Dist. LEXIS 169223, at \*4 (E.D.N.Y.2012) (The court is duty bound to ascertain that it ha[s] jurisdiction before it may adjudicate the merits of a claim. Accordingly, it may dismiss an action

for lack of subject matter jurisdiction on motion or *sua sponte.*" ) (internal quotation and ciitations omitted).

### *DISCUSSION*

The third amended complaint restates plaintiff's claims that defendants Entergy Services, Inc. ("Entergy") and T. Rowe Price incorrectly reported to defendant Internal Revenue Service (IRS) certain distributions made to or on behalf on plaintiff for the years 2002 and 2004– 2007, as a result of which the IRS incorrectly assessed additional taxes and penalties on plaintiff for the years in question. The sealed exhibits (Docket No. 25) include correspondence between plaintiff and defendant Entergy which plaintiff believes spells out the errors made by defendants Entergy and T. Rowe Price in reporting the distributions in question. Plaintiff asserts, as the jurisdictional bases for her claims against the defendants, Title 26 of the United States Code (Internal Revenue Code) and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

#### A. *Claims against the Internal Revenue Service* [2]

[2]    The third amended complaint designates the "U.S. Department of the Treasury\*Internal Revenue Service" as defendant. For the reasons explained *infra,* the Court is substituting the United States as a defendant in place of the IRS.

Plaintiff maintains that the improper "coding" on forms 1099 of certain distributions made to or on behalf of plaintiff defendants Entergy and T. Rowe Price caused the IRS to improperly treat such payments as taxable income and to issue tax assessments and penalties against plaintiff for the years in question. [3] Plaintiff seeks abatement or refund by the IRS. of those assessments.

[3]    The basis of plaintiff's claims that the payments or distributions made to her or on her behalf by defendants Entergy and T. Rowe Price were improperly coded on the forms 1099 issued by them are explained in *infra* in connection with the Court's review of her claims against those defendants.

This Court's jurisdiction over federal tax disputes was spelled out in its decision dated September 24, 2008 ("September 24 Order"), familiarity with which is assumed (Docket No. 8). The September 24, 2008 Order

noted, *inter alia,* in this regard that the United States Tax Court has exclusive jurisdiction to review IRS tax deficiency assessments; that this court has jurisdiction to review challenges to certain penalties imposed by the IRS, but lacks jurisdiction to address other penalties or claims for the abatement of interest imposed by the IRS for tax deficiencies, as such claims are the exclusive province of the Tax Court; and that while federal district courts have jurisdiction over a tax refund suits, such a suit must be preceded by a timely filed claim for refund with the IRS. (Docket No. 8, at 9–12). The September 24 Order noted that it was "difficult to ascertain, from the barebones allegations of the complaint, the precise nature of the tax claim or claims plaintiff is attempting to assert, *i.e.,* whether she is seeking to challenge the *assessment* of additional taxes, penalties and interest that were imposed upon her for the years 2002–2006, or whether she is instead asserting *refund claims* for amounts which she believes that the IRS erroneously forced her to pay." In this regard, the September 24 Order discussed and contrasted the jurisdiction of both this court and the United States Tax Court with respect to taxpayer claims arising from, e.g., assessments of tax and penalties, claims for refund of taxes paid and the imposition of interest on unpaid taxes. The Court then concluded that while it appeared doubtful, based upon the allegations of plaintiff's first amended complaint, that it had jurisdiction over plaintiff's tax claims, it would nevertheless afford plaintiff the opportunity to further amend her claims given plaintiff's *pro se* status, and the complexity of the statutes governing tax assessments, penalties and refund claims. The Court advised, in this regard, that in stating her claims against the IRS, plaintiff should "should clearly indicate whether she is seeking to contest an assessment or assessments of tax and penalties by the IRS, or to claim refunds of federal income taxes that she has paid. In addition, she should attach to her further amended complaint copies of notices of deficiency and other documents from the IRS that indicate the additional taxes and penalties that the defendant has assessed or otherwise claimed to be owing."

**\*3** As set forth in her third amended complaint, plaintiff's Statement of Claim against the IRS states:

> On 11/1/2004, defendant Internal Revenue Service issued a letter of stating Individual Tax assessments. Income was

reported/recorded incorrectly. Tax calculation summary was incorrect. Therefore, all I.R.C. (Internal Revenue Codes) are not correct. Please note that the tax years for 2005, 2006 & 2007 remain coded incorrectly and therefore have added a 10% penalty to the taxpayer incorrectly. The federal basis for this claim is under Title 26 and Title 29. Plaintiff, seeks refund and applicable damages under the law. Note form # 843 and form # 5329 is pending a review in addition, the request for audit on the employer/sponsor, Entergy, Inc.

(Docket No. 24 at 6 ["First Claim"] ).

Plaintiff's allegations are not sufficient to allow her tax claims to proceed. As explained in the September 24 Order, this Court does not have jurisdiction over lawsuits seeking to challenge assessments of tax deficiency by the IRS; 26 U.S.C. § 6330(d) vests exclusive jurisdiction over determinations by the IRS assessing a tax deficiency with the United States Tax Court. *See* discussion, Docket No. 8 at pp. 10–11; *see also, Follum v. United States,* 1999 U.S. Dist. LEXIS 4036, at \* 6 (W.D.N.Y. March 5, 1999) ("Plaintiff ... is attempting to challenge the underlying merits of the tax assessments made against him for the tax years 1990, 1991, 1992 and 1993. Generally, however, tax assessments may only be contested in the United States Tax Court or, *upon payment of the assessment,* in a refund action in federal district court or the Court of Claims.") (emphasis added) (citing *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962)). Therefore, to the extent that plaintiff's claim against the IRS is premised upon her allegation, quoted above, that defendant issued incorrect assessments of tax against her, this Court lacks subject matter jurisdiction.

This Court does, as explained in the September 24 Order, have jurisdiction over *refund* claims by plaintiff. (Docket No. 8, at 12). Pursuant to 28 U.S.C. § 1346(a)(1), District Courts have jurisdiction over actions for the recovery of taxes alleged to have been erroneously or illegally assessed or collected. The IRS itself is immune from civil actions seeking tax refunds. *Allison v. Internal Revenue Service,*

2012 U.S. Dist. LEXIS 45257, at *n. 1 (D.Conn.2012) (citing *Murphy v. IRS,* 493 F.3d 170, 173 (D.C.Circuit)). However, Congress has broadly consented to suits against the United States for the refund of any federal taxes. 28 U.S.C. § 1346(a)(1); *see Murphy,* 493 F.3d at 173 (waiver of immunity from tax refund actions under 28 U.S.C. § 1346(a)(1) applies to United States but not IRS). When, as in the instant action, the Internal Revenue Service has been sued for refund, the United States has been substituted for the Internal Revenue Service as the defendant. *See, e.g., Baker v. Internal Revenue Service,* 2009 U.S. Dist. LEXIS 44623, at *6 (D.W.Va.2009); *Toland v. Internal Revenue Service,* 2000 U.S. Dist. LEXIS 7467 (D.Nev.2000). Such substitution may be effected by the Court *sua sponte. See* 26 U.S.C. § 7422(f)(2) (providing that where a suit for recovery of an internal revenue tax is improperly brought against an officer or employee of the United States, "the court shall order, upon such terms as are just, that the pleadings be amended to substitute the United States as a party for such officer or employee as of the time such action commenced."); *Reyes v. Dep't of the Treasury,* 2009 U.S. Dist. LEXIS 31471, at *13–14 I. (E.D.Cal.2009) (deeming complaint to be amended to substitute the United States as the defendant); *Toland,* 2009 U.S. Dist. LEXIS 7467, at *1 (substituting the United States for the IRS as the defendant). Accordingly, the Court will substitute the United States as a defendant in this action in lieu of the U.S. Department of Treasury, Internal Revenue Service.

**\*4** However, as explained in the September 24 order, a taxpayer's ability to prosecute a refund action against the United States in U.S. district court is subject to the jurisdictional prerequisites that she have first paid the tax at issue and timely filed a valid refund claim with the IRS. (Docket No. 8 at 12). *Follum,* 1999 U .S. Dist. LEXIS 4036, at *7 ("Under 26 U.S.C. § 7422(a), plaintiff may bring a refund action in district court only after paying his tax liability in full and filing a claim for refund with the IRS."); *see also Falik v. United States,* 343 F.2d 38, 42 (2d Cir.1965) ("[A] person whose sole claim is that a federal tax assessment was not well grounded in fact and law must 'pay first and litigate later.' " *Falik,* 343 F.2d at 42 (quoting Flora, 362 U .S. at 164) (quoting *Flora v. United States,* 362 U.S. 145, 164, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960); *Stewart v. IRS,* 1995 U.S. Dist. LEXIS 5159, at *4–7 (E.D.N.Y.1995) (jurisdictional prerequisites for filing a tax refund suit require that claimant "have paid any outstanding tax assessment, including interest and

penalties" and timely file a refund claim with the IRS. (citations omitted). The limitations period applicable to such refund claims is set forth in 26 U.S.C. § 6532:

(a) Suits by taxpayers for refund.

(1) General rule. No suit or proceeding under section 7422(a) [26 USCS § 7422(a) ] [4] for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

---

[4]   26 U.S.C. § 7422(a) provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 6532(a)(1).

While plaintiff in the instant matter alleges that she "seeks refund," neither the allegations of the amended complaint nor the sealed exhibits contain information showing that she paid the tax she is seeking to contest and timely filed a refund claim or claims with the IRS. The Court notes, in this regard, that the September 24 Order advised plaintiff to "clearly indicate whether she is seeking to contest an assessment or assessments of tax and penalties from the IRS or to claim refunds of federal income taxes that she has paid" and, in addition, to attach to the amended complaint copies of notices of deficiency and other relevant documents from the IRS that would serve to elucidate that nature of her claims. (Docket No. 8 at 13). The amended complaint does not clearly indicate the nature of plaintiff's claims, nor does plaintiff append notices or statements from the IRS that would enable the Court to ascertain whether plaintiff is seeking to contest

assessments of tax or to obtain refunds of taxes paid-or both. Plaintiff does refer to "form # 843," which is the IRS "Claim for Refund" form, as well as "form # 5329" which is the IRS form used to report additional taxes on the early distribution of e.g., qualified retirement plans. However, she does not attach copies of those forms, assuming she has filed them with the IRS, and she does not explain what she means by indicating that the forms are "pending a review." [5] As noted, the commencement of a refund suit in this Court is jurisdictionally proper only where a taxpayer has paid the tax at issue, and has filed a refund claim which has been denied by the IRS. Plaintiff's third amended complaint gives no indication that a refund claim has been filed with *and* denied by the IRS or that the IRS has not rendered a decision on or otherwise responded to a refund claim.

[5]  The Court notes that Form 843, which the complaint indicates is "pending" before the IRS, is not the correct form to use in requesting a refund of income tax. *See* Instructions for Form 843 (Department of the Treasury), http://www.irs.gov/pub/irs-pdf/i843.pdf.

**\*5** Inasmuch as the timely filing of a refund claim is a jurisdictional prerequisite of a refund suit, *Deyo v. IRS,* 134 Fed. Appx. 475, 476 (2d Cir.2005) (unpublished), plaintiff's failure to explicitly show or allege that she filed such a claim and that such claim has been denied by the IRS, and the date of such denial, deprives this Court of subject matter jurisdiction over any claim for refund against the United States The Court will accordingly dismiss plaintiff's claim against the United States but such denial will be without prejudice to plaintiff re-filing in the event that she does in fact (as her allegations might be construed as indicating) have a claim for refund timely submitted to the IRS on form 843, and such claim is, as plaintiff appears to state, "pending." *See Jurca v. United States,* 1999 U.S.App. LEXIS 34060, at \*3–4 (6th Cir.1999) ("Jurca's district court action was premature because the IRS had not denied Jurca's refund claim, and less than six months had elapsed from the date Jurca filed his return requesting a refund until he filed suit. *See* 26 U.S.C. § 6532(a).").

The Court likewise lacks jurisdiction over plaintiff's related claims that the IRS incorrectly assessed penalties and interest. (Docket No. 24 at 1, 6). To the extent that plaintiff's barebones allegation [6] with respect to interest can be construed as a request for an *abatement* of interest

imposed by the IRS on the deficiencies assessed against her, as explained in the September 24 Order (Docket No. 8 at 14), under 26 U.S.C. § 6404, only "the Tax Court provides the exclusive forum for judicial review of a refusal to abate interest under § 6404(e)(1)." *Hinck v. United States,* 550 U.S. 501, 506–07, 127 S.Ct. 2011, 2013, 167 L.Ed.2d 888 (2007). While the Court would arguably have jurisdiction under 28 U.S.C. § 1346(a)(1) to consider a claim for the *refund* of interest imposed by the IRS, *see Magnone v. United States,* 733 F.Supp. 613, 615 (S.D.N.Y.1989), affd, 902 F.2d 192 (2d Cir.1990), as with the taxes to which the interest relates, the Court can only entertain such a claim for refund if all of the interest that has accrued on the deficiency has been paid. *Id.* at 616.

[6]  With respect to penalties and interest, plaintiff's third amended complaint contains only the conclusory assertion that "[p]enalties and interest are assessed incorrectly." (Docket No. 24 at 1).

The allegations of the third amended complaint likewise provide no basis for this Court to exercise jurisdiction over whatever penalties plaintiff is seeking to contest. *See* September 24 Order at 10–11 (Docket No. 8) (discussion of the jurisdiction of the Tax Court and the U.S. District Court regarding tax penalties).

### B. *Claims against Enterav Services, Inc.*
Plaintiff alleges (Second Claim) that defendant Entergy issued two forms 1099–R (Distributions From Pensions, Annuities, Retirement or Profit–Sharing Plans, IRAs, Insurance Contracts, etc.) for the year 2002 which erroneously reported distributions from the "Savings Plan of Entergy Corporation and Subsidiaries" as taxable income when such distributions should have been reported as tax-free. The two Forms 1099–R are included in the sealed exhibits to the complaint, *See* Docket No. 25 at p. 15. They show distributions to plaintiff from Entergy's Savings Plan in the amounts of $1,120 and $60,994.51, respectively.

**\*6** Plaintiff asserts that her claim against Entergy arises under Title 29 of the U.S.Code (ERISA), and she seeks damages "of investment, credit defamation, financial loss, failing to maintain employment records, etc. In addition, the incorrect coding added to the loss of benefits." (Docket No. 24 at 6). A more specific statement of plaintiff's ERISA claims against Entergy is set forth in the attachment to the third amended complaint, which is a

copy of a letter dated December 17, 2010 which she sent to the Employment Benefits Security Administration of the U.S. Department of Labor asking that an investigation and audit of Entergy be initiated for "the E.R.I.S.A. violations that have occurred." Plaintiff's letter then recites five sections of the ERISA statute: §§ 1021 (Duty of Disclosure and Reporting), 1027 (Retention of Records), 1059 (Record Keeping and Reporting), 1104 (Fiduciary Duties), and 1105 (Liability for Breach of Co–Fiduciary Duty). (Docket No. 24 at 7). The essence of plaintiff's claim against Entergy appears to be that defendant breached its fiduciary duties to plaintiff by issuing, or allowing T. Rowe Price in its capacity as savings plan administrator to issue, incorrectly coded forms 1099–R in reporting certain distributions from the savings plan to plaintiff upon termination of her employment.

(i) *Distribution of $60,994.51*
As explained in her letter to Entergy dated April 10, 2009, responding to a letter from defendant dated January 12, 2009, both of which are contained in the sealed exhibits (Docket No. 25), plaintiff maintains that Entergy failed to use the proper distribution code in box 7 of the Form 1099–R in reporting the $60,994.51 distribution. Plaintiff alleges (Docket No. 25 at 3) that the distribution code that should have been used in reporting the distribution to the IRS in box 7 was the number "3" which is used to report distributions to recipients who are disabled within the meaning of I.R.C. § 72(m)(7). *See* IRS Instructions for Forms 1099–R at p. 13, http://www.irs.gov/pub/irs-pdf/i1099r.pdf. *see also Welker v. Comm'r,* T.C. Summary Opinion 2009–193, at *2–3 (Tax Court 2009) ("Each of these amounts was reported on a Form 1099–R designating a distribution code 3 indicating an early distribution due to disability.") The distribution was instead coded in Box 7 of the Form 1099–R as "G", which is used to report direct rollovers from qualified retirement plans "to an eligible retirement plan (another qualified plan, a 403(b) plan *or an IRA."* IRS Instructions for Forms 1099–R at at p. 14.

The January 12, 2009 letter from Entergy to which plaintiff's April 10 letter responded, explained that the 1099–R was coded "G" to reflect the fact that the distribution had been made in the form of a direct rollover from a qualified retirement plan to an Individual Retirement Account (IRA) maintained by defendant T. Rowe Price. (Docket No. 25 at 25–26). It is clear from other documents contained in plaintiff's exhibits that she

did, in fact make a rollover contribution to an IRA maintained by T. Rowe Price in 2002. *See* Docket No. 25 at 2–13 [letter dated August 22, 2002 from T. Rowe Price to Theresa C. Williams indicating a rollover distribution from Entergy Savings Plan] and at 14 [2002 Form 5498, issued by T. Rowe Price Trust Co. and reporting "rollover contributions" by "Theresa Williams Rollover Account"].

**\*7** A rollover of amounts held in a qualified retirement plan to an IRA is not a taxable event. *See* 26 U.S.C. § 402(c); 26 C.F.R. § 1.402(c)–2; *Timmerman v. Comm'r,* 2002 Tax Ct. Summary LEXIS 51, at *7 (Tax Court, 2002) ("Section 402(c) provides that certain amounts paid to an employee from a qualified trust are considered "rollover" distributions, and thus excludable from income. Under section 402(c)(5), a transfer from a qualified plan to an eligible retirement plan, including an individual retirement account described in section 408(a) or individual retirement annuity described in section 408(b), shall be treated as a rollover contribution described in section 408(d)(3).") Therefore, Entergy's coding of the form 1099–R issued to plaintiff for 2002, reporting the rollover of the amount in the Entergy Savings Plan to an IRA did not, contrary to plaintiff's allegation, report that distribution as taxable income. Defendant's use of the "G" code in reporting the rollover distribution of $60,994.51 from the Entergy Savings Plan as a rollover contribution to an IRA maintained with T. Rowe Price was correct, and would not have caused he IRS to treat that distribution as a taxable event to the plaintiff. Plaintiff's assertion that Entergy "[r]eported rollover 2X to the internal revenue and issued 21099's to the plaintiff, stating savings plan was actually, taxable income when savings plan was actually tax-free savings" (Docket No. 24 [Third Amended Complaint] at 6 is thus not correct: the 1099s issued by Entergy in fact reported the distribution to plaintiff as a tax-free rollover.

Plaintiff also alleges that Entergy "reported false information to benefit carrier concerning employment status." *Id.* This allegation is fleshed out in the April 10, 2009 letter sent by plaintiff to Entergy in which she maintains that T. Rowe Price's use of distribution code1 in subsequently reporting distributions to plaintiff from her IRA, (*see* discussion at "C" *infra),* resulted her being coded by defendant T. Rowe Price, when it subsequently issued 1099s to plaintiff as "terminated' (Code "1")[7] rather than as disabled (Code "3").*See* Docket No. 25 at pp. 3–5. There is nothing, however, in the 1099R issued by Entergy reporting the $60,994 distribution which uses

Code 1 or which otherwise reports plaintiff as having been "terminated." As explained above, the 1099–R reflecting the $60,994.51 distribution shows only Code G, reflecting a distribution from the Entergy Saving Plan to plaintiff's IRA.

7    Contrary to plaintiff's characterization of Code 1 as "terminated," Code 1 is labeled by the IRS as "early distribution, no known exceptions." *See* http://www.irs.gov/pub/irs-pdf/i1099r.pdf. (P. 13).

In accordance with the foregoing analysis, the Court concludes that plaintiff's allegations with respect to the Form 1099–R issued by Entergy and reporting plaintiff's rollover of $60,994.51 from Entergy's savings plan to an IRA fail to state a claim, and must be dismissed.

(ii) *Distribution of $1,120*

The second distribution reported by Entergy to plaintiff on a Form 1099–R for the year 2002 reflects a distribution of $1,120, and uses the distribution code "3" to classify the distribution in box 7 of the form. (Docket No. 25, p. 14). As explained in connection with the discussion of the $60,994.51 distribution, *supra,* code "3" is used to report distributions to recipients who are disabled. Accordingly, as explained in Entergy's letter to plaintiff plaintiff's claims against defendant T. Rowe Price concern the coding of Forms 1099–R issued to plaintiff. Plaintiff alleges that defendant incorrectly coded distributions made to her for the years 2004–2007 from the IRA maintained by T. Rowe Price with the result that the distributions were treated by the IRS as taxable or at least partly taxable. For the years in question, defendant issued forms 1099–R to the plaintiff showing distributions to her in the amounts of 10,082.96, 23,034.01, 10,451.14 and 1,700.00, respectively. (Docket No. 25, pp. 5, 16–18). Box 7 of the forms 1099–R for these years reported a distribution code of "1". As stated in the IRS Instructions for Forms 1099–R, distribution code "1" is used to report an early distribution, *i.e.,* before age 59/4, from, e.g., an IRA, where the payer does not know that any of the exceptions to the taxability of the distribution set forth under Codes 2, 3 or 4 applies to the distribution. *See* http://www.irs.gov/pub/irs-pdf/i1099r.pdf., p. 13.

**\*8** Plaintiff asserts that the distributions to her for the years in question should have been coded "3", which as noted *supra,* is used to report distributions to recipients who are disabled within the meaning of I.R.C. § 72(m)(7). The consequence of classifying a recipient as "disabled"

within the meaning of distribution code 3 is that she will be relieved of the 10–percent additional tax that would otherwise be owing on an early distribution from a qualified retirement plan pursuant to 26 U.S.C. § 72(t)(1). *See Welker,* 2009 Tax Ct. Summary LEXIS 196, at *4–5 ("Section 72(t)(1) generally imposes a 10–percent additional tax on an early distribution from a qualified retirement plan, unless the distribution comes within one of the statutory exceptions under section 72(t)(2).... Section 72(t)(2)(A)(iii) provides an exception for distributions 'attributable to the employee's being disabled within the meaning of subsection (m)(7)' "). The disability exception, if applicable, relieves the taxpayer only of the 10–percent additional tax; ordinary income tax is still owed on an early distribution out of an IRA. 26 U.S.C. § 408(d)(1); *see also, Colegrove v. Comm'r,* T.C. Summary Opinion 2010–44, 2010 Tax Ct. Summary LEXIS 45, at *4–5 ("Generally, section 408(d)(1) provides that 'any amount paid or distributed out of an individual retirement plan shall be included in gross income by the payee or distributee * * * in the manner provided under section 72.' " (citing *Campbell v. Commissioner,* 108 T.C. 54, 1997 WL 65944 (1997)).

Review of this claim necessitates close examination of the forms 1099–R issued by the defendant to plaintiff for the four years in question and the IRS instructions to the payers of IRA distributions and to the recipients of such distributions. The instructions for reporting a distribution from pensions, IRAs etc. advise that the payer is "not required to compute the taxable amount of a traditional IRA." Therefore, the payer is instructed to report the total amount distributed from an IRA in box 2a ("Taxable Amount") of form 1099–R which will be the same as the amount reported in Box 1 "Gross Distribution". *See* Instructions for Forms 1099–R and 5498 for years 2004–2007. [8] The instructions to the recipient of the 1099–R advise that "[f]or distributions from a traditional individual retirement arrangement (IRA) ... generally the payer is not required to compute the taxable amount. Therefore the amounts shown in boxes 1 and 2a will be the same most of the time. *See* the form 1040 or 1040A instructions to determine the taxable amount." *See* 1099–R Instructions for Recipient, years 2004–2007. [9] Review of the forms 1099–R issued by T. Rowe Price to plaintiff for the years in question shows that the same distribution amounts are reported in boxes 1 and 2a. (Docket No. 25 at 16–19).

8    The 1099–R instructions for both the payer and recipient for the years at issue (2004–2007), discussed and quoted herein, are available on the IRS website, and have been reviewed by the Court in considering plaintiff's claims against T. Rowe Price. See http://www.irs.gov/pub/irs-prior/f1099r_2004.pdf;    http://www.irs.gov/pub/irs-prior/f1099r_2005.pdf;    http://1099plus.com/2006% 201099–R%        20Instructions%        20for% 20Recipient.pdf; http://1099plus.com/2007% 201099– R%    20Instructions%    20for%    20Recipient.pdf (Recipient Instructions); http://www.irs.gov/pub/irs-prior/i1099r_2004.pdf;    http://www.irs.gov/pub/irs-prior/i1099r_2005.pdf;    http://    www.irs.gov/pub/irs-prior/i1099r_2005.pdf;    http://www.irs.gov/pub/irs-prior/i1099r_2006.pdf;    http://www.irs.gov/pub/irs-prior/i1099r_2007.pdf

9    See n. 1, supra.

The instructions to payers further advise with respect to the first box 2b ("Taxable Amount Not Determined") that an "X" should be entered in this box "only if you are unable to reasonably determine the data needed to compute the taxable amount. If you check this box, leave box 2a blank. Except for IRAs, make every effort to compute the taxable amount." The corresponding instructions to the recipient advise that if the first box on the box 2b is checked "the payer was unable to determine the taxable amount, and box 2a should be blank. However, if this is a traditional IRA, SEP or SIMPLE distribution, then *see IRAs* earlier." The reference here is to the section of the recipient instructions, quoted previously, which instructs that in the case of a distribution from, *inter alia,* an IRA, the payer is not required to compute the taxable amount and therefore the amounts reported in boxes 1 and 2a "will be the same most of the time." While hardly a model of clarity, when read together, the 1099–R instructions for the payer and the recipient appear to indicate that while box 2a ("Taxable amount") should be left blank if the first box 2b ("taxable amount not determined") is checked, this directive does not apply where the distribution is from an IRA, as to which the payer is not required to compute the taxable amount. In that situation, the payer is to report the same figure for the total distribution (box 1) and the taxable amount of that distribution (box 1a), even while checking box 2b ("Taxable amount not determined"). It is then encumbent upon the recipient, as indicated in the IRS instructions to the recipient, to consult the form 1040 or 1040A instructions to determine the taxable amount.

*9 The forms 1099–R issued by T. Rowe Price for the years in question appear to follow the reporting format outlined above: boxes 1 and 2a report the same distribution amount and box 2b is checked, which, as explained above, left it to the recipient, the plaintiff herein, to determine the taxable amount of the IRA distribution that she had received. (Docket No. 25, at 16–19).

Plaintiff's claim, with respect to the 1099s issued by defendant, is that T. Rowe Price should have coded box 7 ("Distribution code") of the form as "3", which, as explained *supra* in connection with the Court's consideration of the claim against defendant Entergy, is the designation for a recipient classifiable as disabled within the meaning of I.R.C. § 72(m)(7). Rather than using distribution code 3, however, defendant used code 1, which, according to the form's instructions, is to be used "only if the employee/taxpayer has not reached age 59½ and you do not know if any of the exceptions under Code 2, 3 or 4 apply." Notably, the general instructions to issuers of form 1099–R with respect to Box 7 state that the payer should, in filling out the Form 1099–R, "[r]ead the codes carefully and enter them accurately because the IRS uses the codes to help determine whether the recipient has properly reported the distribution. If the codes you enter are incorrect, the IRS may improperly propose changes to the recipient's taxes." See Instructions for Forms 1099– R and 5498 ["Box 7. Distribution Code(s)"], cited in n. 7, *supra.*

Construing the allegations of the third amended complaint liberally, as required with respect to the pleadings of *pro se* litigants, plaintiff is asserting that defendant T. Rowe Price, as trustee of her IRA, breached a fiduciary duty when it failed to properly code IRA distributions made to her for the years 2004–2007, as a result of which the Internal Revenue Service treated as taxable distributions that would not have been so classified had the defendant used the proper code (code 3–"disability"). Plaintiff invokes, as the basis for this claim, Title 29 of the United States Code, which contains the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq.

Only plaintiffs who are properly considered "participants" or "beneficiaries" (or "fiduciaries") of an employee benefit plan have standing to sue under ERISA. *See Caltagirone v. N.Y. Cmty. Bancorp, Inc.,* 257 Fed. Appx. 470, 472 (2d Cir.2007) (unpublished); *Central*

*States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC,* 433 F.3d 181, 200–01 (2d Cir.2005); *DaPonte v. Manfredi Motors, Inc.,* 157 Fed. Appx. 328, 331 (2d Cir.2005) (quoting *Aetna Health Inc. v. Davila,* 542 U.S. 200, 210, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004)). IRA accounts, like the one held by plaintiff, "are explicitly carved out of the scope of ERISA." *Burns v. Del. Charter Guar. & Trust Co.,* 805 F.Supp.2d 12, 20 (S.D.N.Y.2011); see 29 U.S.C. § 1051(6) (exempting from coverage under Title I of ERISA "an [IRA] or annuity described in section 408 of [the Code]"); 29 C.F.R. § 2510.3–2(d)(1) ( "For purposes of title I of [ERISA], the terms 'employee pension benefit plan' and 'pension plan' shall not include an [IRA] described in section 408(a) of the Code."). Courts have repeatedly held that ERISA does not apply to IRAs. *See, e.g., Rose v. The Long Island R.R. Pension Plan,* 828 F.2d 910, 913 (2d Cir.1987); *Charles Schwab & Co. v. Debickero,* 593 F.3d 916, 919 (9th Cir.2010) ("IRAs are specifically excluded from ERISA's coverage" because IRAs involved "no employer oversight, no ongoing employer commitment, nor any potential for employer abuse"); *Burns, supra; Grund v. Del. CharterGuar. & Trust Co.,* 788 F.Supp.2d 226, 236 (S.D.N.Y.2011).

**\*10**  In addition, the fact that the amounts held in plaintiff's IRA maintained with T. Rowe Price were rolled over from the Entergy Savings Plan, which was administered by T. Rowe Price, makes no difference in this regard. *See SEC v. Aragon Capital Advisors, LLC,* 2011 U.S. Dist. LEXIS 82531, at \*23, n. 12 (S.D.N.Y.2011) ("[T]o the extent that [defendant] contends that ERISA protects his IRAs because they were "rolled-over" from a qualified plan, his contention is meritless. ERISA plainly states that IRAs are not within the statute's coverage. 29 U.S.C. § 1051(6). Moreover, the fact that the funds in an IRA may have come from a qualified plan 'is beside the point' if the IRA is 'established and maintained' by the employee, not the employer, and therefore outside the scope of ERISA." (citations omitted); *see also In re Rayl,* 299 B.R. 465, 467 (Bankr.S.D.Ohio 2003) (rejecting bankruptcy trustee's argument that IRA plans were employee benefit plans and therefore ERISA preempted state law which allowed IRA accounts to be considered exempt: "Although the ultimate source of the rolled-over funds was a plan established and maintained by the debtor's former employer, it does not follow that the IRA accounts were established and maintained by her former employer. Rather, it is the debtor who rolled over the

funds into the IRA accounts and who maintains them with T. Rowe Price."); *In re Mann,* 134 B.R. 710, 713 (Bankr.E.D.N.Y.1991) ("The use or disposition of funds after distribution from an ERISA Plan is not governed by the provisions of ERISA.") (emphasis added).

In accordance with the above, the Court concludes that plaintiff's claims against T. Rowe Price must be dismissed because does not have standing to assert ERISA claims against the defendant and has otherwise failed to state a claim. *See Burns,* 805 F.Supp.2d at 20–21 (dismissing plaintiff's ERISA claims related to IRA accounts for failure to establish standing or to state a claim).

### *CONCLUSION*

For the reasons set forth above, the Court determines that United States shall be substituted for the U.S. Department of Treasury, Internal Revenue Service as a defendant in this action; that plaintiff's claims against the United States challenging the assessment of taxes, penalties and interest by the Internal Revenue Service are dismissed with prejudice for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(h)(3), and in the alternative for failure to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e)(2)(B)(ii); that plaintiff's claims for refund of income taxes, penalties and/or interest against the United States are dismissed without prejudice; that plaintiff's claims against Entergy Services, Inc. are dismissed with prejudice for failure to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e)(2)(B) (ii); and that plaintiff's claims against T. Rowe Price are dismissed with prejudice for lack of standing and for failure to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e) (2)(B)(ii).

**\*11**  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

2013 WL 7121192, 112 A.F.T.R.2d 2013-7286

## *ORDER*

IT HEREBY IS ORDERED, that the United States be substituted for the U.S. Department of Treasury, Internal Revenue Service as a defendant in this action;

FURTHER, that plaintiff's claims against the United States challenging the assessment of taxes, penalties and interest by the Internal Revenue Service are dismissed with prejudice;

FURTHER, that plaintiff's claims for refund of income taxes, penalties and/or interest against the United States are dismissed without prejudice;

FURTHER, that plaintiff's claims against Entergy Services, Inc. are dismissed with prejudice;

FURTHER, that plaintiff's claims against T. Rowe Price are dismissed with prejudice;

FURTHER, that leave to appeal to the Court of Appeals as a poor person is denied;

FURTHER, that the Clerk of the Court is hereby ordered to close this case.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 7121192, 112 A.F.T.R.2d 2013-7286

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

1999 WL 250746
United States District Court, W.D. New York.

Warren Richard FOLLUM, Plaintiff,
v.
UNITED STATES of America,
Commissioner of the IRS, Defendant.

No. 98–CV–0126A.
|
March 5, 1999.

**Attorneys and Law Firms**

Warren Richard Follum, Pro Se, Lewiston, for the Plaintiff.

Jane B. Wolfe, Esq., Assistant United States Attorney, Buffalo, William M. Kostak, Esq., Tax Division Dept. of Justice, Washington, DC, for the Government.

DECISION AND ORDER

ARCARA, District J.

INTRODUCTION

*1 Plaintiff Warren Richard Follum commenced this action *pro se* on February 24, 1998, against the United States, seeking relief under 28 U.S.C. § 2410. Plaintiff claims that the United States Internal Revenue Service ("IRS") has improperly assessed that he owes taxes for the tax years 1990, 1991, 1992, and 1993. More specifically, plaintiff claims that the tax assessments regarding 1990 and 1991 are barred by the three-year statute of limitations in 26 U.S.C. § 6501(a) and that any levy or lien claimed by the United States under 26 U.S.C. § 6502 regarding those assessments is therefore invalid. He further claims that all the disputed assessments should be barred because the IRS improperly conducted a second investigation of his records, without notice, in violation of 26 U.S.C. § 7605(b). Plaintiff asks that the Court enjoin the IRS from placing a lien on plaintiff's property for the purpose of collecting the disputed tax assessments.

On March 10, 1998, plaintiff filed a motion for a preliminary injunction, seeking an order from the Court enjoining the IRS from "proceeding with tax levy/liens against the plaintiff for the tax years 1990, 1991, 1992 and 1993 until a final disposition" of this case on the merits. In a Decision and Order filed April 29, 1998, the Court denied plaintiff's motion for a preliminary injunction.

On May 11, 1998, the United States moved to dismiss the action, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), or in the alternative, for summary judgment, pursuant to Fed.R.Civ.P. 56. On that same day, May 11, 1998, plaintiff moved to amend his complaint. By Order filed May 18, 1998, the Court granted plaintiff's motion to amend his complaint and denied, without prejudice, the United States' motion to dismiss and for summary judgment.

On May 19, 1998, the Clerk of Court filed plaintiff's amended complaint. The amended complaint is similar to the first complaint, except: (1) instead of naming the United States as a defendant, the amended complaint identifies the defendant as "United States of America, Commissioner of the IRS;" and (2) while plaintiff's original complaint did not specify any real or personal property to which his quiet title action related, the amended complaint specifies such personal property (two motor vehicles and his wages from his employer).

On June 15, 1998, the United States moved to dismiss the amended complaint, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), or in the alternative, for summary judgment, pursuant to Fed.R.Civ.P. 56. Plaintiff filed a response to the motion on July 15, 1998. The United States filed a reply on March 1, 1999.

Because in their motion papers both parties have referred to and included evidence outside the pleadings, the Court will consider the United States' motion as one for summary judgment rather than a motion to dismiss. After carefully reviewing the papers, the Court grants the United States summary judgment.

DISCUSSION

A. *Summary Judgment Standard*

*2 Summary judgment is appropriate if the moving party can demonstrate that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). In other words, the moving party in entitled to summary judgment where the

Follum v. U.S., Not Reported in F.Supp.2d (1999)    **Case 6:18-cv-00135-DNH-TWD**   **Document 17**   **Filed 05/09/19**   **Page 28 of 41**

1999 WL 250746, 83 A.F.T.R.2d 99-1622, 99-1 USTC P 50,395

record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). Once a motion for summary judgment has been made and supported, the nonmoving party may not rest on mere allegations, but must set forth proof of specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party. *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985). At the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In other words, on a motion for summary judgment, a court cannot try issues of fact, it can only determine whether there are issues to be tried. *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987). Finally, the Supreme Court has directed that allegations contained in a *pro se* complaint are to be held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520 (1972). Accordingly, when a party seeks summary judgment against a *pro se* litigant, the Court must afford the nonmovant special solicitude. *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

### B. *Lack of Jurisdiction Over Merits of the Tax Assessments*

In order to maintain an action against the United States, the plaintiff must demonstrate that the United States has waived its sovereign immunity and consented to the suit. *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 475 (1994); *United States v. Mitchell,* 445 U.S. 535, 538 (1980). A waiver of sovereign immunity must be unequivocally expressed in an Act of Congress and cannot be implied. *Lehman v. Nakshian,* 453 U.S. 156, 160–61 (1981). Such waivers are strictly construed in favor of the sovereign. *Lane v. Pena,* 518 U.S. 187, 192 (1996).

Plaintiff, through this suit, is attempting to challenge the underlying merits of the tax assessments made against him for the tax years 1990, 1991, 1992 and 1993. Generally, however, tax assessments may only be contested in the United States Tax Court or, upon payment of the assessment, in a refund action in federal district court or the Court of Claims. *Enochs v. Williams Packing &*

*Navigation Co.,* 370 U.S. 1, 7 (1962); *Falik v. United States,* 343 F.2d 38, 40–43 (2d Cir.1965).

Plaintiff attempted to proceed in the Tax Court, but his petition was dismissed for lack of jurisdiction. The Tax Court found that the petition was untimely under 26 U.S.C. § 6213(a) because it was not filed within 90 days after the IRS mailed notices of deficiency to plaintiff at the address shown on his most recently filed income tax return, and that the address was the proper address for mailing such notices, because at the time of mailing, the IRS had no reason to know plaintiff had, in fact, moved without leaving a forwarding address. The Tax Court rejected plaintiff's contention that the IRS failed to show that it had sent the deficiency notices to plaintiff by certified mail. The Tax Court's dismissal was affirmed by the Second Circuit Court of Appeals. *Follum v. Commissioner of Internal Revenue,* 128 F.3d 118 (2d Cir.1997).

**\*3** At the present time, plaintiff is barred from pursuing a refund action in this Court. Under 26 U.S.C. § 7422(a), plaintiff may bring a refund action in district court only after paying his tax liability in full and filing a claim for refund with the IRS. *See also Flora v. United States,* 362 U.S. 145 (1960). To date, plaintiff has not fully paid his assessed tax liabilities for 1990, 1991, 1992 and 1993, nor has he filed a claim for refund. Accordingly, the United States has not waived its sovereign immunity for a refund action and the Court lacks jurisdiction to entertain any part of the plaintiff's suit that directly challenges the underlying merits of the tax assessments made against plaintiff for the 1990, 1991, 1992 and 1993 tax years.

### C. *Anti–Injunction Act*

Plaintiff is barred by the Anti–Injunction Act, 26 U.S.C. § 7421(a), from obtaining injunctive relief in this case. The Anti–Injunction Act provides that, with certain statutory exceptions not applicable here, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person ...." "The object of § 7421(a) is to withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes." *Williams Packing,* 370 U.S. at 5. Under the Anti-injunction Act, the United States is permitted "to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the

United States is assured of prompt collection of its lawful revenue." *Id.* at 7; *see also Bob Jones Univ. v. Simon,* 416 U.S. 725, 736–37 (1974).

In *Williams Packing,* 370 U.S. at 7, the Supreme Court did enunciate a narrow exception to the bar against suits to enjoin the collection of taxes. The Court stated that the attempted collection may be enjoined "if it is clear that under no circumstances could the Government ultimately prevail" and "if equity jurisdiction otherwise exists." Thus, under *Williams Packing,* a district court may enjoin the collection of a tax if: (1) the disputed tax assessment is unquestionably incorrect; (2) the plaintiff will suffer irreparable injury if forced to pay; and (3) the plaintiff is without an adequate remedy at law.

The Court finds that the *Williams Packing* exception to the Anti–Injunction Act does not apply in this case. First, plaintiff has failed to show that under no circumstances could the IRS ultimately prevail. In fact, as discussed in more detail *infra,* plaintiff's arguments that the disputed tax assessments are incorrect are totally without merit.

Second, plaintiff has failed to show that he will suffer irreparable harm if forced to pay the disputed tax assessments. Plaintiff claims he will suffer irreparable harm if the injunction is not granted because he is already in a precarious financial position and will have to declare personal bankruptcy if he is forced to pay the taxes. However, other than his own affirmation in support of his preliminary injunction motion, plaintiff has failed to provide any proof of his financial situation. For example, plaintiff has not provided any documentation regarding his income, his assets or his liabilities. He states that he must pay child support and that his family will suffer if he is forced to pay the tax, but he provides no documentation regarding the child support payments and gives no specifics as to his family situation or his family's other sources of income. Plaintiff also states without support that he will be unable to secure a loan to pay the taxes. There is no indication in his papers that he ever tried to secure such a loan. Nor has he provided any information regarding his credit status. The fact that plaintiff may have a difficult time paying the tax and may have to declare personal bankruptcy does not constitute the type of irreparable harm contemplated by the Supreme Court in *Williams Packing.*

**\*4** Third, plaintiff has an adequate remedy at law—he may fully pay his assessed tax liability, file a claim for refund with the IRS and, if the claim is denied (or not acted upon within six months), he may file a complaint in district court or the Court of Claims for a refund. If he is successful in such an action, he will be refunded the payment plus interest. *See United States v. Dema,* 544 F.2d 1373, 1377 (7th Cir.1976), *cert. denied,* 429 U.S. 1093 (1977). The Court further notes that plaintiff could have pursued his case in Tax Court without first paying the tax, but lost that right when he neglected to provide a forwarding address when he moved. Equity does not favor a plaintiff who puts himself in a precarious situation through his own actions or omissions.

In sum, as the Second Circuit stated in *Falik,* "a person whose sole claim is that a federal tax assessment was not well grounded in fact and law must 'pay first and litigate later.' " *Falik,* 343 F.2d at 42 (quoting *Flora,* 362 U.S. at 164).

D. *Lack of Jurisdiction Over Suit for Wrongful Levy*
To the extent that plaintiff's action may be viewed as suit for wrongful levy against the United States, the Court lacks jurisdiction over such a suit because 26 U.S.C. § 7426(a) states, in pertinent part, that "[i]f a levy has been made on property or property has been sold pursuant to a levy, any person (*other than the person against whom is assessed the tax out of which such levy arose* ) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States ...." (emphasis added). As specifically stated in § 7426(a), the United States has not waived its sovereign immunity to be sued by the person against whom is assessed the tax out of which the levy arose. Therefore, a wrongful levy suit brought by such person against the United States or its agencies must be dismissed for lack of jurisdiction. *McGinness v. United States,* 90 F.3d 143, 145 (6th Cir.1996); *Shannon v. United States,* 521 F.2d 56, 59 (9th Cir.1975). Accordingly, in this case, the Court lacks jurisdiction to entertain a wrongful levy action by plaintiff against the United States with regard to the levying of plaintiff's property for satisfaction of the tax assessments for the 1990, 1991, 1992 and 1993 tax years. [1]

[1]    In addition, the IRS has not yet levied against any property or wages of the plaintiff to satisfy the

assessed tax liabilities of the plaintiff for the 1990, 1991, 1992 and 1993 tax years, and the plaintiff has not alleged that the IRS has done so. Accordingly, a suit for wrongful levy, even if otherwise proper, would not be ripe for adjudication until a levy is made. *See* 26 U.S.C. § 7426(a).

E. *Lack of Jurisdiction Over Quiet Title Action*

As stated above, in order to maintain an action against the United States, plaintiff must demonstrate that the United States has waived its sovereign immunity and consented to the suit. Here, plaintiff has styled his amended complaint as an action to quiet title against the United States under 28 U.S.C. § 2410. Section 2410 provides that "the United States may be named a party in any civil action or suit in any district court ... to quiet title to ... real or personal property on which the United States has or claims a mortgage or other lien." Under § 2410, the United States has expressly waived its sovereign immunity for actions to quiet title to property on which it has a lien. [2]

[2]     In his amended complaint, plaintiff identifies the personal property in which the United States may have or claim a tax lien—two motor vehicles and the plaintiff's wages from his employer. While it is settled law that present (earned but not yet paid) wages can be subject of a quiet title action, it is unclear whether future (not yet earned) wages can be the subject of a quiet title action. In *Harrell v. United States,* 13 F.3d 232, 234 (7th Cir.1993), the Seventh Circuit held that a taxpayer "has no property right in wages that he has not yet earned, his entitlement to them being contingent on his continued employment. Without a colorable title, [the plaintiff] has no basis for a quiet-title action." (citations omitted).

**\*5** It is well established, however, that a taxpayer may not use § 2410 to circumvent the Anti–Injunction Act and attack the validity of an underlying tax assessment. *Laino v. United States,* 633 F.2d 626, 633 n.8 (2d Cir.1980) (the Anti-injunction Act cannot be circumvented by coloring a complaint as an action to quiet title where the plaintiff clearly seeks to attack the validity of the underlying assessment); *Falik,* 343 F.2d at 41; *see also Hughes v. United States,* 953 F.2d 531, 538 (9th Cir.1992); *Lonsdale v. United States,* 919 F.2d 1440, 1442–43 (10th Cir.1990); *Fisher v.. United States,* 860 F.Supp. 680, 683 (D.Ariz.1994). Allowing taxpayers to challenge the substantive validity of tax assessments simply by styling their complaints as quiet title actions would render the Anti–Injunction Act illusory. Accordingly, "courts have

rejected attempts by taxpayers to invoke the waiver of sovereign immunity for the purpose of circumventing the time honored 'pay first, litigate later' rule, by framing their contest to the Government's tax assessment or collection actions in the guise of a quiet title action." *Lonsdale,* 919 F.2d at 1443 (citations omitted).

A narrow exception to this restriction allows a party to use § 2410 to challenge "procedural irregularities" in the assessment process. *Johnson v. United States,* 990 F.2d 41, 42 (2d Cir.1993); *Kulawy v. United States,* 917 F.2d 729, 733 (2d Cir.1990). The scope of this exception includes "procedural violations arising from assessment, levy and seizure." *Guthrie v. Sawyer,* 970 F.2d 733, 735 (10th Cir.1992). A procedural claim is one which does not challenge the "existence or extent of the substantive tax liability." *Id.* at 736.

In his amended complaint, plaintiff claims that the tax assessments for 1990 and 1991 are barred by the three-year statute of limitations in 26 U.S.C. § 6501(a), and asks that the defendant be permanently enjoined from collecting the tax assessments for those years. He further claims that all the disputed assessments are invalid because the IRS improperly conducted a second investigation of his records, without notice, in violation of 26 U.S.C. § 7605(b), and asks that defendant be enjoined from placing liens on his property to collect on the disputed assessments. [3] When plaintiff's claims are boiled down, it is clear that what he is attempting to do in this lawsuit is to attack the validity of the underlying tax assessments. This is not a case where the taxpayer is simply asking the Court to require the IRS to correct a procedural irregularity. To the contrary, what plaintiff is asking the Court to do here is to declare that the disputed tax assessments are invalid and to permanently enjoin the IRS from collecting on them. Such a challenge is clearly substantive rather than procedural in nature and therefore cannot be brought under § 2410. [4]

[3]     Section 7605(b) provides, in pertinent part, that "only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the [IRS], after investigation, notifies the taxpayer in writing that an additional inspection is necessary."

[4]     In his response to the motion for summary judgment, plaintiff claims that the disputed tax assessments are

also invalid because: (1) the assessment officer failed to sign the record of assessment; and (2) the IRS failed to give him timely notice of the tax demand. These claims, however, were not raised in the amended complaint and therefore may not be considered. The Court is mindful of plaintiff's *pro se* status, but he has already been given an opportunity to amend his complaint. In any event, plaintiff's claims that the tax assessments are invalid are without merit for the reasons stated by the United States in its reply brief.

F. *Lack of Substantive Merit*

Even if it is assumed *arguendo* that plaintiff's claims in this case deal with "procedural irregularities" rather than the substantive validity of the underlying tax assessments, and that the Court therefore has jurisdiction under § 2410 to hear the claims, summary judgment in favor of the defendant is still appropriate because plaintiff's claims are contrary to the evidence in the record and therefore lack any substantive merit.

 **\*6** Official acts of the IRS are presumed to be procedurally correct. *United States v. Ahrens*, 530 F.2d 781, 785–86 (8th Cir.1976). The presumption is defeated only by a showing of clear evidence to the contrary. *Id.* Plaintiff has failed to make such a showing.

Plaintiff argues that the tax assessments made against him for the 1990 and 1991 tax years were untimely. This argument, however, is not supported by the facts in the record.

On December 1, 1992, plaintiff filed a Form 5213 with the IRS. The Form 5213 was signed by the plaintiff and dated October 16, 1992. Filing the Form 5213 is the means by which a taxpayer elects to postpone, for a certain number of years, the determination as to whether a certain activity is engaged in for profit, for purposes of applying 26 U.S.C. § 183.[5] The Form 5213 provides that if a taxpayer makes the election, "[t]he determination is postponed until the close of: (a) the 6th tax year, for an activity that consists mainly of breeding, training, showing, or racing horses; or (b) the 4th year for any other activity, after the tax year in which the taxpayer first engaged in the activity." *See* Item No. 20, Exhibit 9.

<hr>

[5]    Specifically, the Form 5213 is the IRS form for taxpayers to make the election as provided under 26 U.S.C. §§ 183(e)(1) and (3). Section 183 is the Internal Revenue Code section that generally

disallows deductions for activities not engaged in for profit (which are more commonly known as "hobby losses").

26 U.S.C. § 183(e) provides as follows:

(e) Special Rule.—

(1) In general.—*A determination as to whether the presumption provided by subsection (d) applies with respect to any activity shall, if the taxpayer so elects, not be made before the close of the fourth taxable year (sixth taxable year, in the case of an activity described in the last sentence of such subsection) following the taxable year in which the taxpayer first engages in the activity.* For purposes of the preceding sentence, a taxpayer shall be treated as not having engaged in an activity during any taxable year beginning before January 1, 1970.

(2) Initial period.—If the taxpayer makes an election under paragraph (1), the presumption provided by subsection (d) shall apply to each taxable year in the 5–taxable year (or 7–taxable year) period beginning with the taxable year in which the taxpayer first engages in the activity, if the gross income derived from the activity for 3 (or 2 if applicable) or more of the taxable years in such period exceeds the deductions attributable to the activity (determined without regard to whether or not the activity is engaged in for profit).

(3) Election.—An election under paragraph (1) shall be made at such time and manner, and subject to such terms and conditions, as the Secretary may prescribe.

(4) Time for assessing deficiency attributable to activity.—*If a taxpayer makes an election under paragraph (1) with respect to the activity, the statutory period for the assessment of any deficiency attributable to such activity shall not expire before the expiration of 2 years after the date prescribed by law (determined without extensions) for filing the return of tax under chapter 1 for the last taxable year in the period of 5 taxable years (or 7 taxable years) to which the election relates. Such deficiency may be assessed notwithstanding the provisions of any law or rule of law which would otherwise prevent such an assessment.* (emphasis added).

On the Form 5213, the plaintiff described the activity for which he elected to postpone the "for profit" determination as "Tournament Sport Fishing—The activity consists of fishing the various tournaments with the intent of earning income from these events." *Id.* The

plaintiff also indicated on this form that the first tax year in which he engaged in this activity was 1990. *Id.*

Under 26 U.S.C. § 183(e)(4), if a taxpayer elects to postpone the determination of whether an activity is engaged in for profit, then the statutory period for making assessments with regard to that activity does not expire until two years after the end of the five-taxable-year period to which the election applies. Because the plaintiff elected to postpone the determination of whether his "tournament sport fishing" activity was engaged in for profit, beginning with the 1990 tax year, the statute of limitations for making tax assessments with regard to that activity for the 1990 and 1991 tax years did not expire until April 15, 1997.[6] The Notice of Deficiency for tax year 1990 and the Notice of Deficiency for tax years 1991, 1992 and 1993 were both dated November 3, 1995. In both of these Notices, the IRS explained that the adjustments in the plaintiff's tax liability for these years were the result of the disallowance of certain Schedule C losses attributable to the plaintiff's "tournament sport fishing" activity which the IRS had determined was not engaged in for profit. On April 8, 1996, the IRS made tax assessments against the plaintiff based on these adjustments. Accordingly, these tax assessments were not made after the expiration of the statute of limitations as alleged by plaintiff in his amended complaint.

[6]   The Court calculated this date in the following manner. Plaintiff's election applied for the tax years beginning 1990 through 1994. The tax return for 1994 was due, without extensions, on April 15, 1995. Under 26 U.S.C. § 183(e)(4), the statute of limitations for making assessments with regard to that activity for the years 1990 through 1994 remained open for the greater of the period of time as provided in 26 U.S.C. § 6501 or two years after April 15, 1995.

Plaintiff argues that the filing of the Form 5213 did not constitute a "waiver" of the statute of limitations because the IRS did not sign the Form 5213. There was no requirement, however, for the IRS to sign the Form 5213 in order for it to be effective. As stated above, the Form 5213 is the IRS form used by taxpayers to make the election under 26 U.S.C. § 183(e)(1) to postpone the determination as to whether a certain activity is engaged in for profit. This election is one statutorily available to the taxpayer, and the IRS has no power or authority to prevent a taxpayer from making this election. Thus, once a taxpayer signs and files a Form 5213, the three-

year statute of limitations under § 6501(a) is automatically extended by operation of law. *See* 26 U.S.C. § 183(e)(4). There is no requirement that the Form 5213 be signed by the IRS, as the election is made by the taxpayer unilaterally.

**\*7** Plaintiff next argues that the disputed tax assessments are void because the IRS made a second inspection of his books and records, without his knowledge or consent, in violation of 26 U.S.C. § 7605(b). Plaintiff alleges in his amended complaint that the "IRS considers an audit with a taxpayer and the examination of the taxpayer's books and records for the year or years under examination completed when the taxpayer is notified in writing of an adjustment to his tax liability .... Therefore the first examination and determination of a tax deficiency for years 1990, 1991, 1992 and 1993 took place in April and June of 1994 and was concluded when the IRS sent the plaintiff the thirty (30) day letter dated 21 June 1994 ."[7] He also alleges that the IRS mailed him a letter dated August 29, 1995, instructing him to appear for an office audit and to bring all records needed to verify his Schedule C business expenses for 1990, 1991, 1992 and 1993. He further alleges that the IRS sent a thirty-day letter to him on September 27, 1995 proposing adjustments to his federal income taxes for years 1990, 1991, 1992 and 1993. From these facts, plaintiff argues that the IRS improperly undertook a second examination of his books and records, and that this second inspection renders the underlying tax assessments null and void. The Court finds this argument without merit.

[7]   The term "thirty-day letter" refers to a Notice of Proposed Deficiency. The thirty-day letter referenced by plaintiff here was actually dated June 24, 1994 rather than June 21, 1994.

As stated above, on December 1, 1992, plaintiff filed with the IRS a Form 5213 dated October 12, 1992, electing to postpone a determination of whether his "tournament sport fishing" activity was engaged in for profit until after the close of the 1994 tax year. By doing so, the plaintiff consented to have his books and records inspected with regard to that activity after the expiration of the five-year period to which the election applied.

By filing the Form 5213, plaintiff prevented the IRS from closing its first investigation with regard to his "tournament sport fishing" activity.[8] Therefore, the IRS

did not improperly make a second inspection of the plaintiff's books and records when it sent him the letter dated August 29, 1995, requesting him to appear and bring documentation to support his Schedule C deductions for his "tournament sport fishing" activity for the tax years 1990, 1991, 1992 and 1993. The IRS was simply continuing the inspection of that activity for those tax years that it had originally begun in 1992. [9]

[8]    Plaintiff does not allege in his amended complaint that the IRS sent him a Notice of Deficiency (commonly known as a "ninety-day letter") prior to the mailing of the second "thirty-day letter" in September 1995. Only a ninety-day letter makes a final adjustment to a taxpayer's tax liability (because a thirty-day letter only gives notice regarding a proposed adjustment). In any event, 26 U.S.C. § 183(e)(4) provides that if a taxpayer makes an election to postpone the "for profit" determination under § 183, the deficiency ultimately arising as a result of that postponement "may be assessed notwithstanding the provisions of any law or rule of law which would otherwise prevent such assessment." *See also* 26 U.S .C. § 6212(c)(2)(C) (provides a cross-reference to § 183(e)(4) as an *exception* to the general rule in § 6212(c)(1), which states that the IRS may not determine any additional deficiency for the same tax year once the IRS mails a ninety-day letter to a taxpayer and the taxpayer timely files a petition with the Tax Court).

[9]    Plaintiff further alleges in his amended complaint that the IRS improperly issued an administrative

summons upon him, citing *United States v. Powell,* 379 U.S. 48 (1964). However, plaintiff has not alleged any further facts or presented any evidence which supports the contention that the IRS issued an administrative summons in this case. In any event, even if a summons was issued, such fact would have no bearing on the outcome of this case.

### CONCLUSION

This Court is without jurisdiction to consider plaintiff's attack on the merits of the disputed tax assessments. Further, the Court finds that in light of the lack of probative contrary evidence, plaintiff's filing of a Form 5213 effectively extended the statute of limitations period and allowed the IRS to continue its inspection of plaintiff's books and records. Therefore, the Court finds that there is no genuine issue as to any material fact and summary judgment is appropriate in this case. Accordingly, the Clerk of Court is hereby ordered to enter judgment in favor of defendant and to take all steps necessary to close the case.

**\*8** IT IS SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 1999 WL 250746, 83 A.F.T.R.2d 99-1622, 99-1 USTC P 50,395

---

**End of Document**    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 1750469
United States District Court, D. Connecticut.

Adrien JOHNSON, Plaintiff,
v.
IRS, Defendant.

No. 3:18-cv-278 (VAB)(WIG)
|
Signed 02/26/2018

**Attorneys and Law Firms**

Adrien Johnson, Bridgeport, CT, pro se.

**RECOMMENDED RULING OF DISMISSAL**

WILLIAM I. GARFINKEL, United States Magistrate
Judge

**\*1** Plaintiff Adrien Johnson filed this action against
defendant IRS [1] on February 15, 2018. Now before the
Court is Plaintiff's motion for leave to proceed *in forma
pauperis* pursuant to 28 U.S.C. § 1915. [Doc. # 19]. For
the reasons that follow, Plaintiff's motion is granted, but
the Court recommends this matter be dismissed pursuant
to 28 U.S.C. § 1915(e)(2)(B).

[1]      The Court assumes Plaintiff intends to refer to the
         Internal Revenue Service with the use of the acronym
         "IRS."

Applications to proceed *in forma pauperis* require a
two-step process of review by the district court. *See
Bey v. Syracuse Univ.*, 155 F.R.D. 413, 413 (N.D.N.Y.
1994). First, the Court must determine whether the
litigant qualifies to proceed *in forma pauperis* based upon
economic status. 28 U.S.C. § 1915. Based upon review
of Plaintiff's financial affidavit, the motion to proceed *in
forma pauperis* is granted.

Second, the Court must determine whether the cause
of action is frivolous, malicious, or without merit. 28
U.S.C. § 1915(e)(2)(B). This Court "*shall dismiss the case
at any time if the court determines that ... the action
(i) is frivolous or malicious; (ii) fails to state a claim on
which relief may be granted; or (iii) seeks monetary relief
against a defendant who is immune from such relief.*" *Id.*

(emphasis added). The term "frivolous" is not intended to
be insulting or demeaning; it is a term of art that has a
precise meaning. A claim is said to be frivolous if it does
not have an arguable basis in law or fact. *See Neitzke v.
Williams*, 490 U.S. 319, 325 (1989). The Court, by using
this term as required, does not intend to diminish what the
plaintiff has experienced.

When a plaintiff appears *pro se*, the complaint must be
construed liberally in the plaintiff's favor and must be
held to a less stringent standard than formal pleadings drafted
by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Estelle
v. Gamble*, 429 U.S. 97, 106 (1976). It is well established
that "[t]he power to dismiss *sua sponte* must be reserved
for cases in which a *pro se* complaint is so frivolous that,
construing the complaint under the liberal rules applicable
to *pro se* complaints, it is unmistakably clear that the court
lacks jurisdiction or that the claims are lacking in merit."
*Mendlow v. Seven Locks Facility*, 86 F. Supp. 2d 55, 57 (D.
Conn. 2000).

Here, the complaint alleges that Plaintiff should have
received tax checks, but someone stole them and threw
them away. Plaintiff's suit against the IRS fails for several
reasons. First, the IRS is not an entity that can be named
as a defendant in a law suit under the circumstances
Plaintiff alleges here. *See Roberts v. I.R.S.*, 297 Fed.Appx.
63, 65 (2d Cir. 2008) (explaining that the IRS, including
IRS employees acting in their official capacities, "are
immune from suit under the doctrine of sovereign
immunity"). Read liberally, Plaintiff's complaint may
plead an action for a refund of taxes. The IRS itself,
however, is immune from tax refund actions. *Williams
v. U.S. Dept. of Treasury*, No. 07-cv-212C, 2013 WL
7121192, at \* 3, (W.D.N.Y. Jan. 29, 2013). While the
United States may be sued for refund of federal taxes, such
suits are "jurisdictionally proper only where a taxpayer
has paid the tax at issue, and has filed a refund claim
which has been denied by the IRS." *Id.* at \*3, 4. When,
as here, a plaintiff does not show or allege that a claim
was filed and denied, the district court lacks subject matter
jurisdiction over any claim against the United Stated for
a refund of taxes. *See id.* at \*5. Therefore, the complaint
should be dismissed. *See also Dubay v. I.R.S.*, No. CIV.
3:96CV1399 AHN, 1997 WL 76577, at \*3 (D. Conn. Feb.
7, 1997) (dismissing a refund action for lack of subject
matter jurisdiction when the plaintiff did not "fulfill the
applicable preconditions").

**\*2** Further, the complaint does not allege any facts that would allow the Court to determine that the IRS committed any wrongful conduct in this case. Even construing the complaint liberally, the Undersigned cannot determine the legal basis for this action. The complaint fails to contain information sufficient to provide "a fair understanding of what the plaintiff is complaining about and ... whether there is a legal basis for recovery." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). Because the complaint does not, as it must, put the defendant on notice of the allegations against it, it should be dismissed for failing to state a claim on which relief can be granted.

For the reasons set forth above, the Court recommends that this matter be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). This is a Recommended Ruling. *See* Fed. R. Civ. P. 72(b)(1). Any objection to this Recommended Ruling should be filed within 14 days after service. *See* Fed. R. Civ. P. 72(b)(2). Failure to timely object will preclude appellate review. *Impala v. United States Dep't of Justice*, 670 Fed.Appx. 32, 32 (2d Cir. 2016).

SO ORDERED, this 26<u>th</u> day of February, 2018, at Bridgeport, Connecticut.

**All Citations**

Slip Copy, 2018 WL 1750469, 121 A.F.T.R.2d 2018-1262

---

End of Document

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 6:18-cv-00135-DNH-TWD   Document 17   Filed 05/09/19   Page 36 of 41

Nastasi v. Lari, Not Reported in Fed. Supp. (2017)
2017 WL 943935

2017 WL 943935
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Anthony NASTASI, Nastasi & Associates, Inc.,
Jackson Avenue Supply, LLC, 511 Jackson Realty
LLC, 240 Madison Street Realty, LLC, Plaintiffs,
v.
Michelle LARI, Defendant.
Michelle Lari, Counterclaimant,
v.
Anthony Nastasi, Counterdefendant.

15-CV-06066 (SIL)
|
Signed 03/09/2017

**Attorneys and Law Firms**

Michael A. Kofsky, Carle Place, NY, for Plaintiff/
Counterdefendant.

Daniela Barreto, Marin, Eljaiek, and Lopez, P.L.,
Coconut Grove, FL, for Defendant/Counterclaimant.

Michelle Lari, Los Angeles, CA, pro se.

**ORDER**

STEVEN I. LOCKE, United States Magistrate Judge

 **\*1**    Presently before the Court on diversity grounds
in this tort and breach of contract litigation is the
Plaintiffs'—Anthony Nastasi; Nastasi and Associates,
Inc.; Jackson Avenue Supply, LLC; 511 Jackson Realty,
LLC; and 240 Madison Street Realty, LLC ("Plaintiffs"
or "Nastasi")—motion to amend the Complaint pursuant
to Federal Rule of Civil Procedure 15(a) ("Rule 15a"). [1]
*See* Plaintiffs' October 4, 2016 Letter Motion ("Pl. Mot.
to Amend"), Docket Entry ("DE") [45]. The Defendant,
Michelle Lari ("Defendant" or "Lari"), opposes. *See*
Defendant's Reply in Opposition to Plaintiffs' Motion to
Amend the Complaint to Add New Parties ("Def. Opp."),
DE [41]. For the reasons set forth herein, Plaintiffs' motion
is denied in its entirety.

---

[1]    The parties consented to the Court's jurisdiction on
October 14, 2016, pursuant to 28 U.S.C. § 636(c). *See*

DE [49]. Accordingly, this matter was referred to the
Court for all further proceedings. DE [52].

**I. RELEVANT BACKGROUND**

 **A. The Parties**
From 2011 through 2014, Plaintiff Anthony Nastasi,
a New York resident, was a close associate of and
romantically interested in Lari, a current resident of Los
Angeles, California. *See* Complaint ("Compl."), DE [1],
¶ 1; Proposed Amended Complaint ("Amend. Compl."),
DE [37], ¶¶ 12-13, 29-30. He is the sole principal and
owner of all the other named plaintiffs, which are New
York State limited liability companies operating and
headquartered in New York. *See* Compl. ¶ 1. Jacobo
Piwko and Gricelda Piwko (collectively, the "Piwkos"),
whom the Defendant seeks to join in this action, are the
Defendant's parents and Florida residents. *See* Amend.
Compl. ¶ 9.

 **B. The Allegations**
Plaintiffs allege that Defendant's affection for Plaintiff
Anthony Nastasi was a confidence scheme in that Lari
feigned romantic interest in him to gain access to Plaintiffs'
wealth and assets. *See* Amend. Compl. ¶¶ 76-80. Over the
course of their relationship, Plaintiffs made transfers to
Defendant totaling approximately $477,436.55 that they
assert were multiple six-month, no-interest, renewable
loans that all have since come due and are presently still in
default. *See id.* ¶ 78. During this same time, Plaintiffs also
made gifts to Defendant totaling $299,977.96 in jewelry,
clothing, pocketbooks, shoes, and concert tickets. *See id.*
¶ 76.

In response to Defendant's alleged refusal to repay
the outstanding loans, Plaintiffs assert causes of action
for breach of oral agreement and unjust enrichment.
*See* Compl. ¶¶ 27-56. On September 26, 2016, the
Court granted Plaintiffs' motion for leave to amend the
Complaint to include additional claims against Lari of
fraud and conversion, but denied without prejudice their
application to add causes of action against the Piwkos. *See*
DE [42].

On October 4, 2017, Plaintiff renewed their application
to amend the complaint to include a cause of action
against the Piwkos for unjust enrichment. *See* Pl. Mot.
to Amend; Amend. Compl. ¶¶ 94-103. [2] In the Proposed
Amended Complaint, Plaintiffs allege that Nastasi wired

Nastasi v. Lari, Not Reported in Fed. Supp. (2017)

Case 6:18-cv-00135-DNH-TWD Document 17 Filed 05/09/19 Page 37 of 41

2017 WL 943935

$50,000 into Defendant's bank account on February 25, 2013 as part of an oral agreement to loan Lari that money and that Defendant later gave $35,000 of that money to her parents, the Piwkos. *See* Amend. Compl. ¶¶ 95, 98. Plaintiffs also assert that because Lari did not give Nastasi authorization to make the deposits into her accounts and because she denies that there ever was a loan agreement, she had no right to any part of the money at issue. *See id.* ¶¶ 96-97, 100-01. Based upon the foregoing, Plaintiffs demand that the Piwkos repay the $35,000 with interest under a theory of unjust enrichment. *See id.* In support of this relief, Nastasi argues that it is immaterial that the Piwkos are "innocent of wrongdoing in receiving [P]laintiffs' monies" because unjust enrichment does not require substantiating prior dealings or malice, only that the money at issue has been "transferred directly from [P]laintiffs' account to theirs (albeit by a third party/ defendant Michelle Lari)." Pl. Mot. to Amend at 2 (citing *T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.,* 10-CV-2843, 2010 WL 4038826, at *5 (E.D.N.Y. Oct. 14, 2010) (finding elements of unjust enrichment properly pled where plaintiff was fraudulently induced to transfer $2.09 million into a bank account that was otherwise empty and created for the sole purpose of receiving the funds, after which, within days approximately 99 percent of those funds had been transferred out of the HSBC account into defendant's account)). Were the Court to determine that it is necessary for Plaintiffs to demonstrate a more direct relationship between the Piwkos and Nastasi, Plaintiffs offer in their papers additional facts they could plead including that the Piwkos used Nastasi's skybox at Madison Square Garden to attend a Rangers NHL hockey game, that Plaintiffs purchased tickets to the Jersey Boys musical and the Christmas Spectacular at Radio City Music Hall for the Piwkos, and that Nastasi paid for them to eat Thanksgiving dinner at Scotto. *Id* at 3. Additionally, Plaintiffs assert that Griselda Piwko was aware of Lari's ongoing relationship with Plaintiff Anthony Nastasi and, finally, that Defendant requested a $250,000 loan to purchase a new house for her parents. *See id.*

[2] Both Plaintiffs and Defendant reference an additional cause of action for "Money had and received." *See* Pl. Mot. to Amend at 1; Def. Opp. § I.C. The Proposed Amended Complaint, however, contains only one additional claim for unjust enrichment. *See* Amend. Compl. ¶¶ 94-103. Accordingly, the Court here addresses the only amendment that Plaintiffs have actually articulated in the Proposed Amended Complaint.

**\*2** In opposition, Defendant initially argues that the amendments regarding the Piwkos are futile due to a lack of both subject matter and personal jurisdiction. *See* Def. Opp. § I.A. Alternatively, Lari argues that the Proposed Amended Complaint must be dismissed because Plaintiffs failed to plead enough facts as could substantiate the requisite nexus between the Piwkos and Plaintiffs to sustain a charge of unjust enrichment. *See id.* at I.B-C. Finally, Lari urges the Court to deny Nastasi's application because it is made in bad faith, with undue delay, and would cause prejudice to accrue to the Defendant. *See id.* at § I.D-F.

## II. LEGAL STANDARD

Motions to amend pleadings are governed by Rule 15(a), which provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Amaya v. Roadhouse Brick Oven Pizza, Inc.,* 285 F.R.D. 251, 253 (E.D.N.Y. 2012) ("A court should freely give leave [to amend] when justice so requires and such leave is in the court's discretion.") (internal quotation omitted); *Assam v. Deer Park Spring Water, Inc.,* 163 F.R.D. 400, 404 (E.D.N.Y. 1995) ("Federal Rule of Civil Procedure 15(a) dictates that motions to amend complaints be liberally granted absent a good reason to the contrary...."). Motions to add parties are governed by Federal Rule of Civil Procedure 21 ("Rule 21") and are afforded the "same standard of liberality afforded to motions to amend pleadings under Rule 15." *Addison v. Reitman Blacktop, Inc.,* 283 F.R.D. 74, 79 (E.D.N.Y. 2011); *see* Fed. R. Civ. P. 21; *Amaya,* 285 F.R.D. at 253 ("There is ... little practical difference between Rule 15 and Rule 21 since they both leave the decision whether to permit or deny an amendment to the district court's discretion.").

Therefore, leave to amend a complaint should only be denied "if there is delay, bad faith, futility, or prejudice to the non-moving party." *Hosking v. New World Mortg., Inc.,* 602 F. Supp. 2d 441, 445 (E.D.N.Y. 2009) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)). An amendment is futile if "the proposed claim could not withstand a ... motion to dismiss." *Salazar v. Browne Realty Assocs., L.L.C.,* 796 F. Supp. 2d 378, 383 (E.D.N.Y. 2011). Therefore, a proposed amended complaint must "contain enough allegations of fact to

Nastasi v. Lari, Not Reported in Fed. Supp. (2017)

2017 WL 943935

state a claim for relief that is 'plausible on its face.' " *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). When a party opposes a motion to amend on futility grounds, "the moving party must merely show that it has at least colorable grounds for relief." *Copantilla v. Fiskardo Estiatorio, Inc.*, 09 Civ. 1608, 2010 WL 1327921, at *3 (S.D.N.Y. Apr. 5, 2010) (internal quotation omitted). The party opposing a motion to amend bears the burden of establishing that the amendment should be denied. *See Joinnides v. Floral Park–Bellerose Union Sch. Dist.*, 12-CV-5682, 2015 WL 1476422, at *9 (E.D.N.Y. Mar. 31, 2015) ("With respect to the Rule 15(a) factors, '[t]he party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile.' ") (quoting *Cummings–Fowler v. Suffolk Cty. Cmty. Coll.*, 282 F.R.D. 292, 296 (E.D.N.Y. 2012)). Accordingly, on a motion to amend, "the Court is required to accept the material facts alleged in the amended complaint as true and draw reasonable inferences in the plaintiff's favor." *Mendez*, 2 F. Supp. 3d at 451 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 1949 (2009)).

### III. DISCUSSION

In examining the alleged futility of the Proposed Amended Complaint, before considering its factual sufficiency, the Court first turns to whether jurisdiction over the new claim and the new parties the amendment seeks to join is proper. *See Certain Underwriters, Subscribing To Policy Numbers DG055707, DG061908, 4N65010001, RMP201072954 & PCA9002942-00 v. LLC Doncasters, Inc.*, 3:10-CV-00915, 2011 WL 1217169, at *4 (D. Conn. Mar. 30, 2011) (noting that the motion to amend cannot be considered until the motion to dismiss on jurisdictional grounds has been decided).

### A. <u>Subject Matter Jurisdiction</u>

**\*3** As the amount in controversy alleged against the Piwkos is below $75,000, the Court lacks subject matter jurisdiction over the claims against them and thus cannot grant Plaintiffs' motion to amend because such an amendment would rightly be subject to a motion to dismiss. Preliminarily, a cause of action "is properly dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") when the district court lacks the statutory or

constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When a court reviews a motion to dismiss for lack of subject-matter jurisdiction, it "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to [the] plaintiff[ ]." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). In this context, the plaintiff "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

When applied to the present matter, where the diversity of the parties is undisputed, the only question remaining as to subject matter jurisdiction is whether the "amount in controversy" exceeds the statutory threshold of $75,000, exclusive of interests and costs. *See* 28 U.S.C. § 1332(a). A plaintiff may satisfy this jurisdictional minimum by aggregating claims against multiple defendants, but only when their liability is common, undivided, or joint. *Esmilla v. Cosmopolitan Club*, 09 CIV. 10169, 2011 WL 814007, at *4 (S.D.N.Y. Mar. 3, 2011) (citing *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 933–35 (2d Cir. 1998) (finding that, in diversity actions, "several liabilities of different defendants to the same plaintiff cannot be aggregated to satisfy the jurisdictional minimum) (internal quotation omitted)). By contrast, when defendants' liabilities are several and distinct, the amount in controversy threshold must be met with respect to each and every individual defendant regardless of whether the claims are temporally proximate or factually interrelated. *See* *Green v. Doukas*, 97 CIV. 8288, 2001 WL 767069, at *2 (S.D.N.Y. June 22, 2001) (quoting 1 J.W. Moore, Federal Practice ¶ 0.97[2] (2d ed. 1995)) (" '[A]ggregation is allowed when the defendants' liability to the plaintiff is common, undivided, or joint. It is not allowed when the defendants' liability is several, or if the claims against them are separate and distinct from one another.' "); *Congram v. Giella*, 91 Civ. 1134, 1992 WL 349845, at *3 (S.D.N.Y. Nov. 10, 1992) (quoting J.W. Moore, Federal Practice ¶ 0.97[2] ) (holding that plaintiff could not aggregate claims against co-defendants that relied on different bases of liability, as " '[a]ggregation depends upon the nature of the defendants' liability to the plaintiff rather than on the source of the right to sue or transactional relatedness of the claims' ").

Nastasi v. Lari, Not Reported in Fed. Supp. (2017)

Case 6:18-cv-00135-DNH-TWD   Document 17   Filed 05/09/19   Page 39 of 41

2017 WL 943935

Plaintiffs allege that Defendant transferred to the Piwkos $35,000 that rightfully belongs to Nastasi and, thus, seek to assert a claim of unjust enrichment against them. *See* Amend. Compl. ¶¶ 95-98. As set forth by Plaintiff, the sole basis for the Court's jurisdiction over this additional state law claim is diversity. *See* Amend. Compl. ¶ 9. Additionally, there is no assertion that the Piwkos are jointly liable for any of the damages attributed to Lari beyond the $35,000 that she allegedly transferred to them. *See id.* There are no allegations that the Piwkos acted affirmatively, with malice, or had any meeting of the minds with Defendant regarding the transfer of the funds or any of Lari's other allegedly tortious conduct. *See* Amend. Compl. ¶¶ 93-103. Therefore, there is no support for a contention that they and Defendant were jointly liable for any amount in excess of the $35,000 that they purportedly received from their daughter. *See id.* Accordingly, Plaintiffs cannot aggregate this amount with the much larger sum they seek from Defendant directly on their other claims for fraud, conversion, breach of oral agreement, and unjust enrichment because these claims do not give rise to common, undivided or joint liability with the Piwkos for an amount exceeding $75,000. *See Esmilla*, 2011 WL 814007, at *5 (on a diversity matter, denying motion to amend the complaint where liability with otherwise joinable defendants was several and state-law claims failed to exceed the statutory minimum).

 **\*4** Although supplemental jurisdiction, as set forth in 28 U.S.C. § 1367, often allows a court with original jurisdiction over at least one claim to hear other, related claims, section 1367 does not allow a plaintiff to circumvent the jurisdictional limit in a diversity matter. *Congram*, 1992 WL 349845, at *3 (noting that, in a case where original jurisdiction is grounded solely in section 1332, the aggregation rules of section 1332 apply in determining whether the Court has supplemental jurisdiction under section 1367 over claims by a plaintiff). For, although section 1367(a) provides,

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy

under Article III of the United States Constitution,

the exception created by section 1367(b) is applicable here. *See* 28 U.S.C. § 1367(a). Section 1367(b) clearly states that when subject matter jurisdiction is founded solely upon diversity,

> "the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b).

Here, Plaintiffs' proposed unjust enrichment claim against the Piwkos would sufficiently relate to the other claims against Lari, which fall within the Court's original jurisdiction, to be considered part of the same case or controversy under Article III. *See Esmilla*, 2011 WL 814007, at *5 (noting that corporate officers' individual roles in plaintiff's termination were properly related to the original cause of action against employer as to make them joinable). However, as original jurisdiction in this case is based solely on diversity and as the Piwkos would be made defendants as permissive parties under Rule 20, *see* Fed. R. Civ. P. 20(a)(2), "the Court may not exercise supplemental jurisdiction over Plaintiff['s'] proposed claim, if doing so would be inconsistent with the jurisdictional requirements of Section 1332," specifically the $75,000 threshold. *Esmilla*, 2011 WL 814007, at *5; *Green*, 2001 WL 767069, at *2 (dismissing claims against proposed additional diverse parties over whom the court would not have had original jurisdiction because the amount in controversy with respect to each of them was under $75,000 and liability was several).

As explained above, Plaintiffs' proposed claim against the Piwkos does not meet the amount-in-controversy requirement of Section 1332. *See supra* at 8-10. Accordingly, Section 1367 cannot provide a basis for jurisdiction. *See Green*, 2001 WL 767069, at *2 (citing *Am. Bldg. Maint. Co. v. 1000 Water Street Condo. Assoc.*, 9

Nastasi v. Lari, Not Reported in Fed. Supp. (2017)

2017 WL 943935

F. Supp. 2d 1028, 1031–32 (E.D. Wisc. 1998) (holding that the district court could not exercise supplemental jurisdiction over diverse party permissibly joined as a defendant, unless the plaintiff's claims against this party independently satisfied the amount-in-controversy requirement)). Based on the foregoing, the Court denies Plaintiffs' motion for leave to amend as it lacks subject matter jurisdiction over the proposed unjust enrichment claim against the Piwkos, rendering the amendment subject to a motion to dismiss and thus futile.

**B. Personal Jurisdiction**

 **\*5**  Even were the amount in controversy to surpass the statutory requirement of $75,000, Plaintiffs' motion would nevertheless be denied because the Court lacks personal jurisdiction over the Piwkos. Personal jurisdiction in a diversity case is determined by the law of the state in which the district court sits so long a state's assertion of jurisdiction does not violate a party's due process rights under the United States Constitution. *See SAS Grp., Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 547-48 (S.D.N.Y. 2003) (citing *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999)); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963)) (" '[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with federal law entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee.' ").

As it is not disputed that the Piwkos are neither residents nor domiciliaries of New York; *see* Amend. Compl. ¶¶ 9, 93-103; Def. Opp.; a claim of personal jurisdiction over them must be premised on Section 302(a) of New York's long-arm statute. That statute provides that a court may obtain jurisdiction over a non-domiciliary defendant if it:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except

as to a cause of action for defamation of character arising from the act, if it

i. regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

ii. expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. 302(a).

Plaintiff has not pled any facts as would support a finding of personal jurisdiction under subsections 1, 2, 3, or 4 above. Subsections 1 and 4 are wholly inapplicable to the present case as the Piwkos are individuals and no specific facts regarding their businesses, employment, or holdings have been raised in the pleadings. *See* Amend. Compl. ¶¶ 9, 94-103. Additionally, Plaintiffs' claim for unjust enrichment cannot satisfy the requirements of subsections 2 or 3 because unjust enrichment is not properly classified as a tortious act. Unlike a tort, which is founded in law, unjust enrichment is a claim rooted in equity. *See Miller v. Schloss*, 218 N.Y. 400, 407, 113 N.E. 337 (1916) (holding the claim to be based on "the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another"). Unjust enrichment is "a 'quasi-contract claim' and contemplates 'an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties.' " *Campione v. Campione*, 942 F. Supp. 2d 279, 283 (E.D.N.Y. 2013) (quoting *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516, 950 N.Y.S.2d 333, 336, 973 N.E.2d 743, 746 (2012) (internal quotation marks and citations omitted)). As Plaintiffs properly contend, the elements of unjust enrichment do not require any proof regarding the *mens rea* of or acts by the liable party. *Compare* Pl. Mot. at 1-2 *with Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182, 919 N.Y.S.2d 465, 944 N.E.2d 1104 (2011) (brackets and internal quotation marks omitted) (holding that adequately pleading unjust enrichment requires a plaintiff to allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain

Case 6:18-cv-00135-DNH-TWD   Document 17   Filed 05/09/19   Page 41 of 41

**Nastasi v. Lari, Not Reported in Fed. Supp. (2017)**
2017 WL 943935

what is sought to be recovered"). Regarding the Piwkos, Nastasi has pled only that they are in possession of funds that belong to Plaintiffs and not that they have committed any other acts either within or outside the State of New York. *See* Amend. Compl. ¶¶ 99-103. As a consequence, neither subsection 2 nor subsection 3 provide any basis to assert personal jurisdiction over the Piwkos, because the cause of action asserted against them does not constitute a tortious act.

**\*6** Accordingly, as this Court lacks personal jurisdiction over the parties that Plaintiffs seek to add through the Proposed Amended Complaint, the Court again denies the motion as the amendment is subject to dismissal and thus futile. *See* Fed. R. Civ. P. 12(b)(2). [3]

[3]     Though the Defendant also disputes Plaintiffs' argument that the Proposed Amended Complaint properly articulates a cause of action for unjust enrichment against the Piwkos, because the Court lacks both subject matter jurisdiction over the proposed claim and personal jurisdiction over the proposed parties, the Court declines to examine the factual sufficiency of the pleadings themselves. *Cf.*

Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Manway Constr. Co. v. Housing Auth. of Hartford,* 711 F.2d 501, 503 (2d Cir. 1983) ("It is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte,* at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction; and, if it does not, dismissal is mandatory."); *Jackson v. AFSCME Local 196,* 3:07–CV–471, 2008 WL 544730, at \*2-3 (D. Conn. Feb. 25, 2008) (holding that a court must deny a motion to amend the complaint if the Court lacks subject matter jurisdiction over the claims set forth in the proposed amended complaint).

## IV. CONCLUSION

For the reasons set forth herein, Plaintiffs' present motion to amend the Complaint is denied in its entirety.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 943935

---